UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED VB
APR 30 2024
IN MISCELLANEOUS UNIT

Aura Moody

Write the full name of each plaintiff.

24 CV 3320

(Include case number if one has been assigned)

-against-

Do you want a jury trial?

☒ Yes ☐ No

United States Equal Employment Opportunity Commission, Luis Calzada, William Sanchez, Madeline McGrath, Alexander Adeshchenko

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Aura A Moody
First Name Middle Initial Last Name

112-26 197 Street
Street Address

Saint Albans NY 11412
County, City State Zip Code

(347) 248-5208 Quinonesmoody@aol.com
Telephone Number Email Address (if available)

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1: U.S. Equal Employment Opportunity Commission
Name
33 Whitehall Street, 5th Floor
Address where defendant may be served
New York NY 10004
County, City State Zip Code

Defendant 2: Luis Calzada, William Sanchez
Name
525 F.D. Roosevelt Avenue, Suite 1202
Address where defendant may be served
San Juan PR 00918-8001
County, City State Zip Code

Defendant 3: Madeline McGrath, Alexander Adeshchenko
Name
33 Whitehall Street, 5th Floor
Address where defendant may be served
New York NY 10004
County, City State Zip Code

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

New York City Department of Education
Name
65 Court Street
Address
Brooklyn NY 11201
County, City State Zip Code

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: ____________________

☐ color: ____________________

☒ religion: Catholic

☐ sex: ____________________

☐ national origin: ____________________

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: Black

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: 1960

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: COVID-19

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: COVID-19

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☒ Other (may include other relevant federal, state, city, or county law):

First Amendment, Fourteenth Amendment
NY Education Law Section 3020
NY Health Law
HIPPA
Contract Bargaining Agreement DOE-UFT
Others as deemed appropriate

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☐ did not promote me
- ☒ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☒ other (specify): The EEOC declined to investigate my charge of Employment Discrimination against the DOE and UFT

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please See attached Statement of Facts in Support of Plaintiff's Employment Discrimination Complaint dated April 30, 2024 and its accompanying 21 Exhibits.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? March 3, 2022

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? September 7, 2023 → DOE

When did you receive the Notice? September 14, 2023

☐ No

March 21, 2024 → UFT
March 21, 2024

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☒ direct the defendant to re-employ me

☐ direct the defendant to promote me

☒ direct the defendant to reasonably accommodate my religion

☒ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

I filed a Notice of Claim for Municipal Respondents. I am Seeking monetary and Punitive damages from all Respondents and EEOC.

I am respectfully requesting injunctive relief pending the adjudication of this action. In God I Trust!

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

April 30, 2024 — Aura Moody
Dated — Plaintiff's Signature

Aura — A — Moody
First Name — Middle Initial — Last Name

112-26 197 Street
Street Address

Saint Albans — NY — 11412
County, City — State — Zip Code

(347) 248-5208 — Quinonesmoody@aol.Com
Telephone Number — Email Address (if available)

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Aura Moody On Behalf of Herself And Similarly Situated Individuals

- against -

The United States Equal Employment Opportunity Commission,
Luis Calzada, William Sanchez, Madeline McGrath and
AlexandeAdeshchankor

**Docket No. ____________________**

**Jury Trial Demanded**

**STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S EMPLOYMENT DISCRIMINATION COMPLAINT**

**THE PARTIES**

1 **Aura Moody** is the Plaintiff in this action (hereinafter "Plaintiff" or "I"). I am proceeding pro se on behalf of myself and other similarly situated individuals. I am a Black Hispanic woman. The statements herein are to the best of my knowledge, information and belief. The legal references have to be looked at with caution because I am not an attorney.

2. I was employed by the New York City Department of Education ("DOE") in 1999 as a Bilingual School Social Worker (Spanish). I was objectively qualified for my position and tenured. I am a member of the United Federation of Teachers ("UFT"). I am the the victim of unlawful discrimination and retaliation by my employer and union for non-compliance with the unconstitutional COVID-19 vaccine mandate imposed on DOE employees ("Vaccine Mandate") by Arbitrator Martin Scheinman via the UFT Award issued on September 10, 2021 (aka "Impact Bargaining" or "Scheinman Award"). I was discriminated against on the basis of disability, religion and in retaliation, among other grounds. I was harassed, vilified, defamed and ridiculed by the City of New York ("City"), my employer and union because of my vaccination status, creating a hostile work environment.

3. **The New York City Department of Education** is the department of the government of New York City that manages the City's public school system. The City School District of the City of New York is the largest school system in the United States of America, with over 1.1 million students taught in more than 1,800 separate schools. *See* http://www.schools.nyc.gov/

4. **The United Federation of Teachers** is an unincorporated labor organization that operates pursuant to the General Associations Law of New York State and is affiliated with the Municipal Labor Committee ("MLC"). The UFT represents most teachers in New York City public schools. As of 2005, there were about 118,000 in-service teachers and nearly 30,000 paraprofessional educators in the union, as well as about 54,000 retired members. *See* https://www.uft.org/. The UFT has been the exclusive bargaining representative of a unit of employees of the DOE, which includes Social Workers and other personnel. As the exclusive bargaining representative of Social Workers, the UFT is and has been a party to a Collective

Bargaining Agreement ("CBA") with the DOE.

5. **The United States Equal Employment Opportunity Commission** ("EEOC") is a Defendant in this action. The EEOC is a federal agency that was established via the Civil Rights Act of 1964 to administer and enforce civil rights laws against workplace discrimination. *See* https://www.eeoc.gov/

6. **Luis Calzada** is a Defendant in this action. He is the EEOC Investigator at the San Juan Local Office assigned to investigate my Charge of Discrimination ("Charge").

7. **William Sanchez** is a Defendant in this action. He is the EEOC Regional Director at the San Juan Local Office.

8. **Madeline McGrath** is a Defendant in this action. She is the EEOC Investigator at the New York District Office assigned to investigate my Charge of Discrimination.

9. **Alexander Adeshchanko** is a Defendant in this action. He is the EEOC Supervisory Investigator at the New York District Office-Enforcement.

**PRELIMINARY STATEMENT**

**Plaintiff's Unlawful Placement On Leave Without Pay And Termination**

10. **On October 4, 2021**, the DOE administratively separated and unlawfully placed me on Leave Without Pay ("LWOP" or "Unpaid Leave") for non-compliance with the "constitutionally suspect" Health Order effectuated by the New York City Commissioner of Health and Mental Hygiene Dave Chokshi on August 24, 2021 ("Health Order") that mandated COVID-19 vaccines for DOE personnel. This Health Order was deemed illegal as it did not provide for exemptions or accommodations; and it was rescinded and amended on September 15, 2021 by Health Commissioner Dave Chokshi. To add insult to injury, I was prohibited from gainful employment while on unpaid leave. In order to extend this leave and continue to receive the commensurate benefits, I was required to file a form created by the DOE, which included a waiver of my rights to challenge the involuntary resignation through a contractual or statutory disciplinary process. I shall not be eligible for unemployment insurance benefits. **[Moody Ex. 26 of Charging Party's Rebuttal to UFT's Position Statement dated March 15, 2024]**.

The prohibition of gainful employment has created financial hardships, socio-emotional distress and other irreparable harm to me and my family.

11. **On October 14, 2021**, during a per session grievance, I learned for the first time that the DOE tampered with my personnel file by placing a problem code ("PR Code") without my knowledge and consent, an action that affected my job prospects. **[Moody Ex. 31 of Charging Party's Rebuttal to UFT's Position Statement]**.

12. **On October 15, 2021**, while I was placed on unpaid leave, the DOE improperly blocked my email account. The DOE failed to restore my email account despite my timely notification to DOE and UFT officials. **[Moody Ex. 33 of Charging Party's Rebuttal to UFT's Position Statement]**.

13. **On February 8, 2022,** at the suggestion of the UFT, I asked for a 3020-a due process hearing pursuant to New York Education Law §3020 ("Rule §3020-a" or "3020-a Hearing"). **[Moody Ex. 61 of Charging Party's Rebuttal to UFT's Position Statement]**. The DOE failed to process my request.

14. **On February 11, 2022,** I was terminated from my employment without legitimate cause, notification and due process. **[Moody Ex. 58 of Charging Party's Rebuttal to UFT's Position Statement]**. Upon information and belief, I was separated from my job and replaced by a younger selectee outside of my protected class. I was not afforded a 3020-a due process hearing, in violation of the provisions of the CBA. I was not served with a Final Notice of Placement on Leave Without Pay and/or Non-Personalized Notice of Termination, documents that were allegedly sent to the DOE employees via email, to wit, I did not have access. **[Moody Ex. 41 and 58 of Charging Party's Rebuttal to UFT's Position Statement]**.

**Procedural History of Plaintiff's Charge of Discrimination Against The DOE And UFT**

15. **On October 21, 2021,** I submitted a Charge of Discrimination against the DOE and UFT online via the EEOC Public Portal, pending scheduling of an intake interview with the EEOC New York District Office.

16. **On March 3, 2022,** I officially filed a Charge of Discrimination against the DOE and UFT with the EEOC New York District Office because I believe that I was discriminated against on the basis of my vaccination status, disability, religion and in retaliation, among other grounds. **[Moody Ex. 1]**. The gravamen of the Charge concerns the Respondents' failure to provide me with medical and/or religious accommodations, which I requested prior to me being placed on unpaid leave and subsequently terminated. I argued that my employer and union unlawfully discriminated and retaliated against me for non-compliance with the vaccine mandate, They violated my due process, equal protection and other constitutional and labor rights by adopting improper procedures to request medical and religious exemptions or accommodations, process that was later deemed "constitutionally suspect" by the United States Court of Appeals for the Second Circuit ("Second Circuit"). The charges are not barred in whole, or in part.

17. **On April 19, 2022,** the DOE submitted its Position Statement to the EEOC. The DOE provided misleading statements, made bare allegations, misapprehends the facts and provided no evidence in support of its adverse employment actions against me.

18. **On August 30, 2022,** I submitted my Rebuttal to the DOE's Position Statement to debunk my employer's meritless allegations regarding its adverse employment actions against me. I attached 103 Exhibits containing tangible evidence in support of my claims. ***See*** **link to Charging Party's Rebuttal to DOE's Position Statement, without Exhibits:**
https://docs.google.com/document/d/1c9tA3V7J63EaIzDfiilyAdDYtKfB2SP90Y3qQNNQ1I8/edit?usp=sharing.

19. **On February 3, 2023,** my Charge against the DOE was transferred from the New York District Office to the Miami District Office due to workload redistribution. **[Moody Ex. 2]. On**

**February 10, 2023**, the Miami District Office informed the parties that the Charge had been transferred to them.

20. **On February 13, 2023**, my Charge against the DOE was transferred from the Miami District Office to the San Juan Local Office for processing .[**Moody Ex. 3**].

21. **On September 7, 2023**, EEOC Investigator Luis Calzada sent me a letter informing that my Charge of Discrimination would be dismissed. He wrote in part: "*On the basis of the information obtained, it is not likely that further investigation would yield evidence sufficient to show that a violation occurred. Therefore, it has been determined that no further action is warranted and your charge will be dismissed. You will receive the dismissal notice which describes your right to pursue this matter further by filing a lawsuit in federal court within 90 days of your receipt of the dismissal notice. If you fail to file a lawsuit within the statutory 90-day period, your right to sue in federal court will expire and cannot be restored by the EEOC. We hope this information is helpful and regret there is nothing further we can do in this matter.*" [**Moody Ex. 4**]. Investigator Luis Calzada did not get in contact with me before my Charge was dismissed.

22. **On September 7, 2023**, Regional Director Luis Calzada issued a Determination and Notice of Rights. He stated that the EEOC would not proceed further with its investigation and make no determination about whether further investigation would establish violations of the statute. [**Moody Ex. 5**].

23. **On September 14, 2023**, I sent an email to Regional Director William Sanchez expressing my disagreement with the EEOC's decision and requested reconsideration. I wrote in part: "*I am reaching out to you to express my discontent with the way how my case was handled, as well as to request the reopening of my charge to reexamine the evidence that I believe was incorrectly analyzed by the Investigator, a person who never contacted me to discuss the allegations in my charge and failed to objectively review the monumental evidence that I had submitted to EEOC in order to substantiate my claims against the New York City Department of Education and United Federation of Teachers. This is a travesty of justice!*" [**Moody Ex. 6**].

24. **On September 15, 2023**, Regional Director William Sanchez sent me a letter denying my request for reconsideration. [**Moody Ex. 7**].

25. **On September 20, 2023**, I sent an email to Regional Director William Sanchez that in part reads: "*Attached please find the email that I received from the EEOC on September 20, 2023 regarding the case filed by the United States Equal Employment Opportunity Commission against United Healthcare Services for religious exemption discrimination due to the COVID-19 vaccine mandate. See Moody Ex. 20. I would like the United Healthcare Services case to be considered when processing my request to reopen my charge for reconsideration, as per my email to you dated September 14, 2023. Upon reviewing the grounds for the EEOC to sue United Healthcare Services, I find that my case is similar to the Telecommuter since my job duties do not require face-to-face contact with the parents/guardians and students I work with. Furthermore, I worked during the 2020-2021 school year virtually. After I was denied due process and unlawfully placed on Leave Without Pay on October 4, 2021, I submitted to the DOE and UFT the results of my negative COVID-19 test results up to January 4, 2022 on a weekly basis showing that I was not a health threat to others. I would be a subject of differential treatment by*

*the EEOC if my charge is not reopened given the similarities of this case, in addition to the merits of my charge. Please refer to my statements of facts, arguments and evidence I have previously submitted to the EEOC to substantiate my request.*" **[Moody Ex. 8]**.

26. **On September 28, 2023,** I sent an email to the EEOC, which in part reads: "*I am calling to follow up on my request to reopen my charge, as well as for an investigation as to they way how my case was handled by the Puerto Rico Regional Office. On September 28, 2023, I called the EEOC at (800) 669-4000 and spoke with Crystal about my requests. In addition, I would like to know why the UFT has not submitted a Position Statement from the UFT since I included both the DOE and UFT as respondents when I filed my charge on March 3, 2022. Please refer to the attached emails that I exchanged with Ms. Madeline McGrath on March 3, 2022 for additional information and action. I strongly believe that justice has not been served. Therefore, I am again requesting that my charge against the DOE and UFT be reopened, that an investigation on the handling of my charge be conducted, and that I be provided with the UFT's Position Statement. I also want to see the evidence that the DOE and UFT have submitted to the EEOC for my perusal and dispute as deemed necessary.*" **[Moody Ex. 8]**.

27. **On November 9, 2023,** I reached out to the EEOC to inquire about the status of my request for reconsideration, but I did receive a response. **On November 17, 2023,** I sent the following email to the EEOC: "*Please be advised that, this morning (November 17, 2023), I called the EEOC at (800) 669-4000 to inquire about the status of my charge, my request for reconsideration and my request for an investigation on the handling of my charge. I spoke with a gentleman who identified himself as Willie. Upon listening to my concerns/grievances, he instructed me to call the Office of Field Programs/Field Management Program at (202) 921-3210 for further assistance. I immediately called that number, but nobody answered the phone so I left a message on the voice mail. He issued the Incident No. 231117-000150. I am looking forward to hearing from the EEOC as soon as possible. I am seeking justice and equal treatment under the law!*" **[Moody Ex. 8]**.

28. **On November 21, 2023,** I sent the following email to Mercedes Casasola from the Office of Field Programs/Field Management Program: "*As per our telephone conversation held on November 20, 2023, I am forwarding to you some of the emails that I have sent to the EEOC requesting that my charge be reopened. To recap, on October 2, 2021, I was unlawfully placed on leave without pay while my application for a medical exception to the COVID-19 vaccine requirement was pending a decision, in contravention of the law. On November 21, 2021, I applied for a religious exemption, but I have not received a response from the DOE. I was allegedly terminated from my employment on February 11, 2022, but I have not been served with a final notice of placement on leave without pay nor with a termination notice since my DOE email account was blocked on October 15, 2021, and it was never restored despite my timely notification to the DOE and UFT. As a tenured pedagogue, on February 9, 2022, I requested a 3020-a hearing, which was expected to be processed within 60 days, but I have not even received an acknowledgement. I asked to work remotely while a decision on my applications for medical and religious exemptions were pending, but my request was not considered. I will provide more details about my case if deemed appropriate. Please let me know if you need additional information. I would also like to bring to the attention of the EEOC that I initially filed charges against the DOE and UFT. However, my charge against the UFT has not been processed. I have already submitted documents regarding this matter. A claim about age discrimination also needs*

*to be addressed. As per our telephone conversation held this morning, I will not attach my evidence since it is already in the record. However, I am including the case of the United Healthcare Services dated September 20, 2023, which refers to a case similar to my situation. As a Bilingual School Social Worker, I was not required to have face-to-face contact with the students and parents/guardians I worked with. Furthermore, I worked remotely before I was unlawfully placed on unpaid leave. I voluntarily submitted weekly COVID-19 tests to the DOE and UFT since the time I was unlawfully placed on unpaid leave until January 2022 proving that I was not contagious. Equal application of the law has not taken place in my case. Justice has not been served! I am seeking justice. Thank you in advance for reopening my case. In God I Trust!*" [**Moody Ex. 8**].

29. **On November 29, 2023**, I sent the following email to the Office of Field Programs/Field Management Program: "*This is a follow up to my voice mail message left on your voice mail - (202) 921-3210 - a few minutes ago. I am reaching out to inquire about the status of my request.*" [**Moody Ex. 8**].

30. **On December 20, 2023**, my Charge against the DOE was transferred from the San Juan Local Office to the New York District Office for processing .[**Moody Ex. 9**].

31. **On January 12, 2024,** the EEOC decided to proceed with the investigation of my Charge against the UFT by sending me an email that in part reads: "*You recently submitted correspondence to the U.S. Equal Employment Opportunity Commission (EEOC) about alleged employment discrimination by UNITED FEDERATION OF TEACHERS. We have opened EEOC Inquiry 520-2024-02267 based on your submission. Please be aware that submitting an inquiry is NOT the same as filing an official Charge of Discrimination. A Charge of Discrimination is a signed statement asserting that an organization engaged in unlawful employment discrimination. The laws enforced by the EEOC, except the Equal Pay Act (EPA), require you to file a charge before you can file a lawsuit in court for unlawful employment discrimination. There are strict time limits for filing a charge. To complete the inquiry process, you must schedule an appointment for an interview with an EEOC staff member to discuss your claim and the implications of filing a charge with the EEOC.*" [**Moody Ex. 10**].

32. **On February 10, 2024,** the UFT filed its Position Statement dated February 9, 2024 with EEOC, which contains misleading information that is not supported by the evidence in the record. *See* **link to the UFT's Position Statement dated February 9, 2024:**
https://acrobat.adobe.com/link/review?uri=urn:aaid:scds:US:7c82935a-f0dd-3352-bd9a-c425792c84d8

33. **On March 15, 2024,** I submitted my Rebuttal to the UFT's Position Statement along with tangible evidence to debunk the union's meritless allegations for its adverse employment actions. I requested that the EEOC issue a finding of probable cause rather than dismissing my Charge. *See* **link to Charging Party's Rebuttal to the UFT's Position Statement with 118 Exhibits:**
https://acrobat.adobe.com/id/urn:aaid:sc:US:9729a458-43fd-4391-9f42-37694df00fe5

34. **On March 21, 2024,** the EEOC declined to investigate my Charge and issued me a Right to Sue Letter. [**Moody Ex. 11**].

35. **On April 4, 2024,** I requested Reconsideration by sending an email to Supervisory Investigator Alexander Adeshchenko, which in part reads:"*I strongly disagree with your*

*decision. As per your email below, I was preparing my formal request for reconsideration, but you have decided to deny it this morning (April 4, 2024), before the deadline. I have a good faith belief that the Equal Employment Opportunity Commission (EEOC) has been biased and discriminated against me when rendering its decisions. Please provide me wi th the name and contact information about the next level of appeal so I can continue seeking relief pursuant to the provisions of the United States Departments of Labor and Justice. I am respectfully requesting that the Right to Sue letters issued by the EEOC against the United Federation of Teachers (EEOC Charge No. 520-2024-02267) and the New York City Department of Education (EEOC Charge No. 520-2022-01233) concerning my charges of employment discrimination be rescinded. The EEOC should proceed with the investigation of my charges in the interest of justice.*"

36. **On April 5, 2024,** Supervisory Investigator Alexander Adeshchenko denied my request for reconsideration via email, which in part reads: "EEOC has no obligation to reconsider the final findings we have issued on a charge. EEOC directors, therefore, may decline to review a request to reconsider an EEOC final finding unless the charging party presents substantial new and relevant evidence, or a persuasive argument that the EEOC's prior decision was contrary to law or the facts. Our review has determined that no appropriate evidence has been overlooked or misinterpreted in evaluating your charge… We regret your dissatisfaction with the results of the processing of your charge. Please be assured that we have reviewed your case and the information you provided. This information, however, would not alter the final action taken on your charge. The final dismissal notice you received described your right to pursue the matter in court by filing a lawsuit within 90 days of your receipt of the dismissal notice. This 90-day period for filing a private lawsuit cannot be waived, extended, or restored by the EEOC."

37. **On April 5, 2024,** I sent an email to Supervisory Investigator Alexander Adeshchenko, which in part reads: "I insist that the EEOC made an error when rendering a decision on my charges. The decisions were contrary to law and the facts. I presented persuasive arguments and substantial and relevant evidence in support of my charges. However, the EEOC overlooked the evidence and misinterpreted the facts in evaluating your charge. Therefore, I am appealing your decision."

38. **On April 8, 2024,** Supervisory Investigator Alexander Adeshchenko sent me an email, which in part reads: "*The Commission requested a "substantial* ***new*** *and relevant evidence", where you reiterated your previous arguments that were already considered by the Commission. Only Federal sector employees can request an appeal under the EEOC investigation process; Appeals | U.S. Equal Employment Opportunity Commission (eeoc.gov).*"

39. **On April 8, 2024,** I sent an email to Supervisory Investigator Alexander Adeshchenko, which in part reads: "*Your statement "Only Federal sector employees can request an appeal under the EEOC investigation process" is discriminatory itself. If that is the case, the EEOC policies need to be reviewed. Your agency did not review my facts and evidence correctly; otherwise the outcome would have been different. I would like to contact the person who is above you… There are numerous DOE employees who are also disappointed about the EEOC's decision not to investigate their cases, and they are also interested in contacting the person(s) above you as they have been discriminated against. Please provide the requested information.*"

40. **On April 8, 2024**, Supervisory Investigator Alexander Adeshchenko sent me an email, which in part reads: "*Here is our contact for process complaints:*
*Equal Employment Opportunity Commission* ***Joyce T. Willoughby, Inspector General***
*131 M Street, N.E., Suite 6NE23M, Washington, D.C. 20507*
***Main Phone Number:*** *(202) 663-4327;* ***Hotline Number:*** *(800) 849-4230*
***Hotline Number:*** *FAX: (202) 221-7781;* ***URL:*** *https://oig.eeoc.gov/.*"

41. **On April 18, 2024**, I sent an email to Supervisory Investigator Alexander Adeshchenko, which in part reads: "*I am trying to file my appeal using the EEOC Public Portal, but I having difficulty doing so. Can you please assist? Thanks!*"

42. **On April 19, 2024**, Supervisory Investigator Alexander Adeshchenko sent me an email, which in part reads: "*As I previously stated to you, EEOC complaint process does not provide an appeal procedure, except for Federal sector employees. Appeals | U.S. Equal Employment Opportunity Commission (eeoc.gov).*"

43. **On April 19, 2024**, I filed a Notice of Appeal/Petition-Complaint with the EEOC/Office of Federal Operations. I have not received a response as of this filing.

**The EEOC Failed To Properly Investigate Plaintiff's Charge Of Discrimination**

44. I contended to the EEOC that there was sufficient evidence of a pattern of discrimination and retaliation in the forced unpaid leave and terminations of myself and other similarly situated DOE employees. I presented evidence sufficient to warrant an investigation of my Charge, but the EEOC did not pursue my claims.

45. I would like to bring to this Court's attention that **the EEOC showed substantial bias by not completely processing my Charge of Discrimination since its inception, as well as excluding a claim of age discrimination from my Charge**. Although I included both my employer and union in my initial Charge, the EEOC only pursued an investigation against the DOE but not the UFT (EEOC Charge No. 520-2022-01233). Instead of issuing a finding of probable cause, my Charge against the DOE was dismissed on September 7, 2023 without me being contacted by EEOC Investigator Luis Calzada. Almost two years after the filing of my initial Charge and upon my insistence, the EEOC finally decided to pursue an investigation against the UFT (EEOC Charge No. 520-2024-02267). My Charge against the UFT was dismissed on March 21, 2024 by EEOC Investigator Madeline McGrath despite my opposition. Following the dismissal of my Charge of Discrimination against the DOE and UFT, I requested that the Right to Sue Letters issued by the EEOC be rescinded by reaching out to Regional Director William Sanchez and Supervisory Investigator Alexander Adeshchanko, to no success. The EEOC should have proceeded with the investigation of my Charge of Discrimination against the DOE and UFT in the interest of justice.

46. I believe that the EEOC did not follow the law when processing my Charge of Discrimination against the DOE and UFT. The EEOC also failed to include my claim of age discrimination, an issue that I raised at the time of filing my Charge and thereafter.. The EEOC did not give weight to the material facts, arguments and evidence that I submitted in support of my employment discrimination and retaliation claims via the Charging Party's Rebuttal to

DOE's Position Statement dated August 30, 2022 and the Charging Party's Rebuttal to UFT's Position Statement dated March 15, 2024.

47. The EEOC failed to admit that the DOE and UFT did not adhere to the provisions of the UFT Award. The EEOC failed to acknowledge that the Health Order that mandated COVID-19 vaccines for DOE employees was deemed "constitutionally suspect" by the Court. The EEOC failed to recognize that the UFT Award dated September 10, 2021 is illegal and unenforceable as it was created under an illegal Health Order issued on August 24, 2021, which was rescinded and amended on September 15, 2021 by Health Commissioner Dave Chokshi; however, the UFT Award was not amended to reflect those changes. The UFT Award was not signed by the parties, which questions its legality and enforceability since the arbitrator is not empowered to make changes to the CBA, particularly as it relates to creating conditions of employment. Moreover, the EEOC failed to admit that the process to request medical and religious accommodations was a sham, and that the time allotted to apply and appeal the denials was unreasonable..Further, the EEOC failed to recognize that the UFT Award discriminated against religion as it limited the exemption requests for recognized and established religious organizations. Per diem employees were also discriminated against as they were denied the opportunity to apply for exemptions or accommodations. The UFT Award also denied employees who have no religious objections to the vaccine mandate the opportunity to be heard. The EEOC also failed to acknowledge that Arbitrator Martin Scheinman exceeded his authority by allowing the DOE to unilaterally separate the unvaccinated employees without due process. The EEOC failed to admit that unvaccinated employees were placed on unpaid leave and terminated from their employment while awaiting a decision on their requests for exemptions or accommodations. The EEOC failed to concede that the DOE did not properly serve employees like me with a Final Notice of Leave Without Pay and/or Notice of Termination. The EEOC also failed to concede that the UFT Award for the 2021-2022 School Year expired on June 30, 2022 as it was not renewed by the parties, requiring vacatur and reinstatement of all unvaccinated employees who had been fired. The UFT failed to admit that the DOE employees were subject to disparate treatment compared to other municipal and private sector employees, including but not limited to athletes and performers. Other instances of employment discrimination and irregularities of the UFT Award will be presented below.

48. When responding to my Charge via its Position Statement dated April 19, 2022, the DOE misconstrued the facts of my case, concealed essential information and failed to present specific non-discriminatory reasons to the EEOC for its adverse employment actions against me. It is important to highlight that during the investigation process, the DOE did not meet legal standards, employer liability and burden of proof applicable to discrimination and retaliation claims under the federal, state and city laws. The DOE presented misleading statements to the EEOC, failed to submit an iota of tangible evidence in support of its adverse employment actions, and denied me an opportunity to review and rebuke the evidence that the DOE submitted to the EEOC, if any. The DOE's Position Statement consisted of unsubstantiated allegations without any evidence attached to it. Assuming that the DOE did not voluntarily provide any

evidentiary material in support of its adverse employment actions, the EEOC should have compelled the DOE to produce the required evidence prior to making its decision to dismiss my Charge. To add insult to injury, the EEOC did not give weight to the material facts, arguments and evidence that I submitted in support of my claims.

49. Similarly, in its Position Statement dated February 9, 2024, the UFT failed to provide convincing facts, arguments and evidence to debunk my claims of conspiracy and breach of duty of fair representation. I believe that the UFT engaged in discriminatory and retaliatory actions by allowing Arbitrator Martin Scheinman to issue an UFT Award mandating COVID-19 vaccine for DOE personnel that clearly violates the constitutional and labor rights of certain employees, particularly the unvaccinated workers and per diem staff. The UFT allowed the DOE to treat unvaccinated members differently than the unvaccinated ones. The UFT allowed unvaccinated employees like me to be placed on unpaid leave and subsequently terminated without cause and due process, in violation of the Contract Bargaining Agreement between the DOE and UFT, New York Education Law §3020, New York State Human Rights Law, New York City Human Rights Law, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the First and Fourteenth Amendments to the Constitution, among other statutes and regulations.

50. I believe that I was defrauded by the EEOC. I contended and provided compelling arguments and admissible evidence that demonstrated that the DOE and UFT made false and incorrect statements to justify their adverse employment actions, but the EEOC did not investigate my charge exhaustively. The EEOC failed to follow the proper process in assuring that my employer, union and myself were held to the same standard of review and burden of proof. The EEOC relied upon the bare allegations and false information provided by the DOE and UFT to conclude that my Charge has no merit,

51. Although there have been recent decisions in New York State that deemed that the DOE had violated the Constitutional rights of unvaccinated employees (i. e. **Kane v. de Blasio** ), the EEOC did not investigate my Charge although I am a DOE employee and similarly situated to the employees in Kane V. De Blasio.

**The EEOC Failed To Apply The Same Standards Used For Religious And Age Discrimination In Similar Cases**

52. The EEOC chose not to pursue my valid Charge although it has pursued similar Charges of Discrimination against employers in other states in the same time period.

53. The EEOC failed to apply the same standards of review as in other jurisdictions such as the one of the Teleworker who was denied a religious exemption to the COVID-19 vaccine requirement by United Healthcare Services in Ohio. **On September 20, 2023**, the EEOC filed a lawsuit against United Healthcare Services alleging that the company violated federal law Title VII by refusing to grant religious accommodations to a remote worker's request for exemption from the company's COVID-19 vaccine mandate. *See* **EEOC v. United Healthcare Services,**

**Inc., Case No.2:23-cv-03010-MHW-KAJ.** This lawsuit is interesting, in part, because it will apply the heightened burden standard provided in the Supreme Court's decision in Groff v. DeJoy, which provides employers guidance on their obligation to offer religious accommodations. *See* **Groff v. DeJoy, 35 F. 4th 161, 176 (3rd Cir. 2022.** As a Bilingual School Social, I performed my job entirely remotely since the 2020-2021 School Year. My job duties did not require me to enter the school building or meet face-to-face with students, their parents. *See* https://www.eeoc.gov/newsroom/united-healthcare-services-sued-eeoc-religious-discrimination#:~:text=(United)%20violated%20federal%20law%20when,a%20lawsuit%20it%20announced%20today.

54. On August 10, 2018, the EEOC filed an age discrimination lawsuit in the United States District Court for the Central District of Illinois, Urbana Division, after first attempting to reach a pre-litigation settlement through the EEOC's conciliation process. *See* **EEOC v. Urbana School District No. 116 and Urbana Education Association, IEA-NEA; Civil Action No. 18-cv-02212**. The lawsuit challenged a provision of the Collective Bargaining Agreement limiting the salary increases of teachers over the age of 45 years and who are within 10 years of retirement eligibility. On November 7, 2023, the District Court granted summary judgment to the EEOC, holding that the CBA provision violated the ADEA by limiting the compensation of teachers age 45 and older because of their age.

55. Further, the EEOC failed to demand that the DOE and UFT comply with the legal standards and employer liability applicable to employment discrimination and retaliation claims under the federal and state laws enforced by the EEOC. When dismissing my Charge, the EEOC failed to provide me with the specific information that I needed to challenge and appeal its decision so I could have continued seeking relief pursuant to the provisions of the United States Department of Labor and United States Department of Justice. The EEOC's actions against me are clear violations of my constitutional and labor rights, resulting in a miscarriage of justice that needs to be corrected by this Court.

56. I provided evidence to the EEOC supporting my claim that DOE has treated other employees who had committed serious misconduct better than me, For instance, grade fixers and sexual predators have been granted due process and put on paid leave pending investigation while I was put on unpaid leave though I had not committed any crime. I also submitted credible evidence showing that one group of employees (unvaccinated) has been treated much worse than another group of employees who allegedly used fake vaccine cards to keep their jobs, However, the EEOC declined to pursue my Charge.

57. When the EEOC dismissed my Charge without full investigation and issued Right to Sue Letters, the EEOC investigators initially did not inform me how to keep my Charge open despite knowing that I was in disagreement. In the Right to Sue Letters, the EEOC officials failed to inform me that I have a right to appeal the EEOC decisions. Instead I was later told that the EEOC's decision was final and there was no path forward with the Charge through EEOC.

Shortly after the EEOC declined to continue with my Charge, I was informed that the EEOC only allows federal employees to file appeals of EEOC decisions. This itself is discriminatory policy baked into the agency that is supposed to protect all Americans from employment discrimination.

58 I am taking legal action against the EEOC for improper handling of my Charge of Discrimination against the DOE and UFT. I believe that the EEOC was biased and discriminated against me, requiring remedy. Please refer to my EEOC Charge of Discrimination, the DOE's Position Statement, Charging Party's Rebuttal to the DOE's Position Statement, Charging Party's Rebuttal of the UFT's Position Statement, Right to Sue Letters and other relevant evidence attached hereto in support of my claims against the EEOC.

**CAUSE OF ACTION AND CLAIMS**

59. Since the filing of my Charge of Discrimination, I pleaded facts that suggest that the pre- or post-deprivation processes afforded to me were constitutionally and contractually deficient. A review of the record reveals that I was unlawfully separated from my employment, and that I have a plausible cause of action upon which relief should be granted in the interest of justice.

**Discrimination and Retaliation Claims**

60. In my Rebuttals to the DOE's and UFT;s Position Statements, I raised numerous claims and issues related to violations of my constitutional, civil and labor rights. I showed that both Respondents trampled upon my due process and equal protection rights, discriminated and retaliated against me by denying my applications for a medical exemption without justification; failing to grant a hearing on my appeals to the denials of my applications for a medical exemption; failing to render a decision on my appeals to the denials of my applications for a medical exemption by the Independent Panel of Arbitrators from Scheinman Arbitration and Mediation Services ("SAMS") and/or Citywide Appeals Panel; failing to process my application for a religious exemption; failing to process my request to work remotely; failing to comply with New York State Education Law § 3020 and the Collective Bargaining Agreement when negotiating the UFT Award for the 2021-2022 School Year; failing to address my concerns about acquired natural immunity at the bargaining table before the UFT Award was issued; failing to adhere to the provisions of the UFT Award when determining requests for exemptions or accommodations to the vaccine mandate; discriminating against me based on my religious beliefs as I do not meet the standards established by the UFT Award and New York City Mayor Bill de Blasio; coercing me into COVID-19 vaccination despite my religious beliefs, acquired natural immunity, bodily autonomy, medical privacy, rights to informed consent and to refuse medical treatment; retaliating against me for refusing COVID-19 vaccination; failing to amend the UFT Award after Health Commissioner Dave Chokshi's August 24, 2021 Health Order mandating COVID-19 vaccines for DOE employees was deemed "constitutionally suspect" by the Second Circuit and rescinded; placing me on LWOP while I was awaiting a decision on my applications/appeals for a medical exemption; blocking my DOE email account while I was placed on LWOP; failing to serve me with a Final Notice of Placement on LWOP; denying my Step 1 Grievance on my placement on LWOP; failing to file a Step 2 Grievance on my placement on LWOP; failing to serve me with a Charge and/or Notice of Determination of Probable Cause

pursuant to Education Law § 3020-a; failing to serve me with an Notice of Termination; failing to process my request for a 3020-a Hearing; placing a problem code on my personnel file without my knowledge and consent; failing to bring a claim directly to SAMS on the implementation of the UFT Award in bad faith; failing to file an Individual Special Grievance with the DOE on my behalf for improper placement on LWOP; failing to file a Group Special Grievance on behalf of DOE employees for improper placement on LWOP; failing of duty of fair representation related to the implementation of the vaccine mandate; failing to bargain in good faith with the unions before the implementation of the vaccine mandate for All City employees; failing to reinstate me after the expiration of the UFT Award on June 30, 2022; failing to file a grievance against the DOE upon expiration of the UFT Award; failing to file with the Court for an injunction to stop the termination of unvaccinated employees following the scandal related to the use of fake vaccine cards by unvaccinated DOE employees; failing to file legal action against the City on behalf of unvaccinated employees following New York City Mayor Eric Adams' Executive Order 62 exempting athletes and performers from the vaccine mandate; failing to schedule a 50-H Examination of Claims Hearing pursuant to New York General Municipal Law § 50-H upon service of Notices of Claim; failing to release official records stemming from the vaccine mandate pursuant to Freedom of Information Law-Freedom of Information Act (FOIL-FOIA) Requests dated February 20, 2022, May 14, 2022, September 25, 2022, September 26, 2022 and October 3, 2022; failing to update the Self-Service Online Leave Application System ("SOLAS") to include the appeal option under the drop-down menu, among other claims.

**Statutes, Legislations and Regulations Invoked By Plaintiff**

61. In addition to the United States Constitution and New York Constitution, I believe Respondents have violated many federal, state and city statutes and regulations as stated below. I respectfully request that the EEOC take jurisdiction over the state and city claims.

62. **The Constitution of the United States** - Preamble: "We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America." ***See*** https://www.archives.gov/founding-docs/constitution

63. **The Constitution of New York** - Establishes the structure of the government of the State of New York, and enumerates the basic rights of the citizens of New York. ***See*** https://en.wikipedia.org/wiki/Constitution_of_New_York#:~:text=voting%20in%20favor.-,Amending%20the%20Constitution,subject%20to%20voter%20approval%2C%20or

64 **The First Amendment to the United States Constitution** - Prevents the government from making laws that regulate an establishment of religion, or that prohibit the free exercise of religion, or abridge the freedom of speech, the freedom of the press, the freedom of assembly, or the right to petition the government for redress of grievances. ***See*** https://en.wikipedia.org/wiki/First_Amendment_to_the_United_States_Constitution

65. **The Fourteenth Amendment to the United States Constitution** - Promises that all persons in the United States shall enjoy the equal protection of the laws. That means that they cannot be discriminated against without good reason. Pursuant to **Section 1 of the XIV Amendment**: "*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No*

*State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*" *See* https://constitution.congress.gov/browse/amendment-14/

66. **The Fourteenth Amendment to the United States Constitution** - Promises that all persons in the United States shall enjoy the equal protection of the laws. That means that they cannot be discriminated against without good reason. *See* https://www.archives.gov/milestone-documents/14th-amendment#:~:text=No%20State%20shall%20make%20or,equal%20protection%20of%20the%20laws.

67. **The Due Process Clause in the Fourteenth Amendment** - Provides that no person should be deprived of "life, liberty or property without due process of law." *See* https://constitution.congress.gov/browse/essay/amdt14-S1-3/ALDE_00013743/#:~:text=No%20State%20shall%20make%20or,equal%20protection%20of%20the%20laws.

68. **The Equal Protection Clause in the Fourteenth Amendment** - Requires States to practice equal protection and forces them to govern impartially. It prohibits any State from denying to any person within its jurisdiction the "equal protection of the laws." *See* https://quizlet.com/107924477/equal-protection-flash-cards/#:~:text=Equal%20Protection%20Clause%20of%20the,treatment%20based%20on%20discriminatory%20classification.

69. **Title VII of the Civil Rights Act of 1964** - Protects employees and job applicants from employment discrimination based on race, color, religion, sex and national origin. Title VII protection covers the full spectrum of employment decisions, including recruitment, selections, terminations, and other decisions concerning terms and conditions of employment. *See* https://www.law.cornell.edu/uscode/text/42/2000e-2

70. **The Americans with Disabilities Act of 1990, As Amended** - Prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, schools, transportation, and all public and private places that are open to the general public. The purpose of the law is to make sure that people with disabilities have the same rights and opportunities as everyone else. The ADA gives civil rights protections to individuals with disabilities on the basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, state and local government services, and telecommunications. *See* https://www.ada.gov/law-and-regs/ada/

71. **New York State Human Rights Law** - Protects individuals from discrimination based on disability. gender (including sexual harassment) gender Identity. marital status and partnership status. Hostile working environment, unfair treatment at the workplace and retaliation are unacceptable and punishable under the law. *See* https://dhr.ny.gov/new-york-state-human-rights-law

72. **New York Civil Service Law § 209-a.2(a)** - It is an improper practice for an employee organization to interfere with, restrain or coerce public employees in the exercise of rights granted in section two hundred two, or to cause, or attempt to cause, a public employer to do so. Under the Equal Protection Clause of the Fourteenth Amendment, differential treatment between the vaccinated and unvaccinated is wrong and illegal. *See*

https://www.nysenate.gov/legislation/laws/CVS/209-A

73. **New York Civil Service Law § 3020-a -** Establishes disciplinary procedures for tenured educators. Tenured educators have the right to retain their positions and may only be terminated if there is "just cause" pursuant to Education Law §3020. *See* https://www.nysenate.gov/legislation/laws/EDN/3020-A

74. As a tenured educator, I am entitled to statutory and contractual protections of due process prior to my constructive firing. **New York State Education Law § 3020(1)** provides: "*No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section [3020]-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement.*" While "discipline" is not defined in the statute, section 3020–a (4)(a), states that placing an employee in an unpaid status can be considered a "penalty" or punitive in nature. *See* **Hickey v. New York City Dep't of Educ., 17 N.Y.3d 729, 731–32 (2011)**. Section 3020-a(4)(a) authorizes a hearing officer to impose as a penalty "a written reprimand, a fine, suspension ... without pay, or dismissal. The CBA supports this suggestion, noting that even disciplinary actions such as suspension are to be "with pay" until a hearing is conducted. *See* **3020-(a)(2)(b).**
https://casetext.com/statute/consolidated-laws-of-new-york/chapter-education/title-4-teachers-and-pupils/article-61-teachers-and-supervisory-and-administrative-staff/section-3020-a-disciplinary-procedures-and-penalties

75. **New York City Human Rights Law -** Protects individuals from discrimination because of their actual or perceived differences, including those based on race, color, creed, age, national origin, immigration or citizenship status, gender, sexual orientation, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, uniformed service, any lawful source of income, status as a victim of domestic violence or status as a victim of sex offenses or stalking. *See* https://www.nyc.gov/site/cchr/law/text-of-the-law.page

76. **New York State Education Law, Rules and Regulations -** Provides the legal framework for educational institutions in New York. *See*
https://codes.findlaw.com/ny/education-law/edn-sect-13/#:~:text=Training%20required%20by%20this%20section,group%2C%20religion%2C%20religious%20practice%2C

77. **The Health Insurance Portability and Accountability Act ("HIPAA")** - Establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as "protected health information"). *See*
https://www.cdc.gov/phlp/publications/topic/hipaa.html

78. **Collective Bargaining Agreement between the DOE and UFT -** Agreement made and entered into by and between the DOE and the School Social Workers and School Psychologists Chapter of the UFT.
**Collective Bargaining Agreement for Social Workers/School Psychologists 2009-2018-** *See*
https://www.uft.org/files/attachments/social_worker_school_psychologist_2009-2018.pdf
***UFT* Memorandum of Agreement 2018 - Successor Agreement to the 2009-2018 CBA -** *See*
https://www.uft.org/files/attachments/secure/moa-2018.pdf

**Plaintiff Exhausted Administrative Remedies**

79. I would like this Court to take judicial notice that **I exhausted administrative remedies**. **On November 29, 2021**, I requested that the UFT file a Special Grievance and/or bring a claim directly to SAMS on my behalf due to the improper implementation of the UFT Award [Moody **Ex. 39 of Charging Party's Rebuttal to UFT's Position Statement dated March 15, 2024**]. **On November 30, 2021**, I filed a Step 1 Grievance against the DOE for improper placement on LWOP. [**Moody Ex. 40 of Charging Party's Rebuttal to UFT's Position Statement**]. **On December 9, 2021**, my Step 1 Grievance was denied by the Principal of PS 95Q. [**Moody Ex. 43 of Charging Party's Rebuttal to UFT's Position Statement**]. **On December 9, 2021**, I appealed the denial of my Step 1 Grievance and sought a Step 2 Grievance. [**Moody Ex. 44 of Charging Party's Rebuttal to UFT's Position Statement**]. **On February 9, 2022,** I requested a 3020-a hearing to challenge my constructive termination. [**Moody Ex. 61 of Charging Party's Rebuttal to UFT's Position Statement**]. **On March 25, 2022,** I requested that the UFT seek reinstatement following Mayor Eric Adams' lifting of the vaccine mandate for athletes and entertainers. [**Moody Ex. 68 of Charging Party's Rebuttal to UFT's Position Statement**]. **On April 24, 2022,** I requested that the UFT take action to preserve my due process rights following allegations that DOE employees had used fake vaccine cards. [**Moody Ex. 72 of Charging Party's Rebuttal to UFT's Position Statement**]. **On April 25, 2022,** the UFT declined to pursue my Step 1 Grievance on LWOP beyond Step 1. [**Moody Ex. 73 of Charging Party's Rebuttal to UFT's Position Statement**]. **On June 30, 2022,** I requested that the UFT file a grievance on the expired UFT Award seeking reinstatement. [**Moody Ex. 85 of Charging Party's Rebuttal to UFT's Position Statement**]. **In October 2022,** I filed a Step 1 Grievance with the DOE for denial of per session work during the 2021-2022 School Year [**Moody Ex. 117 of Charging Party's Rebuttal to UFT's Position Statement**]. Upon denial of my Step 1 Grievance, I sought to advance it to Step 2. **On December 7, 2023,** the AdCom Committee declined to pursue my grievance to Step 2. [**Moody Ex. 118 of Charging Party's Rebuttal to UFT's Position Statement**]. ***See*** **link for Exhibits to Rebuttal to UFT's Position Statement**:
https://drive.google.com/file/d/1K7lI6iRu3p-E4zhW5pGTR2v9Mbk8MFrN/view?usp=sharing

**STATEMENT OF THE CASE AND UNDERLYING EVENTS**

80. I demonstrated procedural due process and other violations by pleading facts plausibly showing that I possess a protected liberty or property interest and that I was deprived of that interest without constitutionally sufficient process. I was not afforded administrative procedures that are constitutionally sufficient pre- and post-termination, as provided by the applicable federal, state and city statutes and regulations. The DOE and UFT should be held liable for the acts committed against me. Unfortunately, the EEOC failed to enforce compliance with employment discrimination laws on the part of the DOE and UFT.. Through this lawsuit, I am seeking justice. This action should proceed to adjudication on the merits.

**MAYOR BILL DE BLASIO'S ANNOUNCEMENT REQUIRING THAT PUBLIC EMPLOYEES BE VACCINATED AGAINST COVID-19**

81. **On July 26, 2021,** Mayor Bill de Blasio held a press conference regarding the COVID-19 pandemic. He announced that New York City will require all of its municipal workers to get coronavirus vaccines by mid-September or face weekly COVID-19 testing. *See*
https://www.kktv.com/2021/07/26/nyc-require-vaccines-or-weekly-testing-city-workers/

**The City Of New York Disregarded Governor Andrew Cuomo's Order Ending The COVID-19 Emergency**

82. **On June 24, 2021,** Governor Andrew Cuomo announced the ending of the state disaster emergency declared on March 7, 2020 to fight COVID-19. *See* https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-ending-covid-19-state-disaster-emergency-june-24#:~:text=GOVERNOR,%D8%A7%D8%B1%D8%AF%D9%88

**The City Of New York Imposed A COVID-19 Vaccine Policy For All Public Employees**

83. **On July 26, 2021,** without previous consultation or bargaining with the unions, Mayor Bill de Blasio publicly announced a vax-or-test policy for All City employees to avoid suspension without pay, in violation of the CBA. *See* https://www.nyc.gov/office-of-the-mayor/news/518-21/recovery-all-us-mayor-de-blasio-city-workforce-health-care-mandate.

84. **On July 27, 2021,** Health Commissioner Dave Chokshi addressed a letter to All City Employees regarding the vax-or-test policy announced by Mayor Bill de Blasio on July 26, 2021. [**Moody Ex. 4 of Charging Party's Rebuttal to UFT's Position Statement**]. It appears that this letter was not distributed to the City employees.

**The City Of New York's COVID-19 Policy For All Public Employees Was Flawed**

85. I have a good faith belief that Mayor Bill de Blaso's vax-or-test COVID-19 policy for All City employees announced on July 26, 2021 violated the CBA's as well as applicable federal, state and city laws. It was discriminatory, arbitrary, capricious and in bad faith. It was contractually flawed and contravened public policy and the law. Furthermore, the unilaterally imposed City's policy that would require public employees either to be vaccinated or be tested weekly for COVID-19 to avoid suspension without pay discriminated against certain people based on their religious beliefs, naturally acquired immunity, medical conditions, bodily autonomy, medical privacy, rights to informed consent and to refuse medical treatment.

**The City of New York Violated Its Duty To Bargain In Good Faith With The Unions Before Adopting the COVID-19 Policy For All Public Employees**

86. The City failed to bargain the vax-or-test vaccine policy for all public employees with the unions, forcing MLC and its constituent unions to challenge its constitutionality in Court.

87. **On August 3, 2021,** UFT President Michael Mulgrew held a Town Hall with the members regarding the City's announced COVID-19 vaccine policy. [**Moody Ex. 8 of Charging Party's Rebuttal to UFT's Position Statement**]. He stated that nobody had demanded mandating teacher vaccinations and that the union would defend the people's rights if they chose not to get the vaccine. He asserted that the union was not supporting vaccines but understands that the best way out of the pandemic was for more people to be vaccinated. "You can't, however, say people who aren't vaccinated shouldn't be able to work," he said. For people who are not vaccinated, testing is mandated. Mr. Mulgrew added that American Federation of Teachers President Randi Weingarten (former UFT President) said there should be no mandates and that vaccinations are subject to bargaining. It seems that Mr. Mulgrew was pushing union members to get the vaccine, but he did not give evidence how he would be representing members who did

not want to be vaccinated. He did not consult or survey the membership to gather their viewpoints, see what they thought and/or obtain feedback. I would like the EEOC to take judicial notice that the recording of the actual Town Hall is no longer available on the UFT website [**Moody Ex. 110 of Charging Party's Rebuttal to UFT's Position Statement**]. On August 3, 2021, the NYC Educators posted the transcript of the "UFT Town Hall August 3, 2021" on its website. [**Moody Ex. 8 of Charging Party's Rebuttal to UFT's Position Statement**].

88. **On August 12, 2021**, MLC Chair Harry Nespoli addressed a letter to City officials expressing severe concerns and great disappointment of the MLC union leaders on the lack of progress in arriving at a negotiated program to implement the City's vax-or-test COVID-19 policy without prior consultation or bargaining with the unions. [**Moody Ex. 5 of Charging Party's Rebuttal to UFT's Position Statement ]**.

89. **On August 17, 2021**, MLC Chair Harry Nespoli addressed another letter to City officials raising collective bargaining concerns on the vax-or-test COVID-19 policy for City workers, which was announced by Mayor Bill de Blasio without meeting with the unions. [**Moody Ex. 6 of Charging Party's Rebuttal to UFT's Position Statement**].

**The City of New York Breached Its Duty To Bargain In Good Faith With The Unions**

90. **On October 25, 2021**, MLC and some unions challenged the constitutionality of the City's COVID-19 vaccine mandate for public employees. In a decision rendered by the New York City Board of Collective Bargaining ("BCB") **on September 28, 2022** in the matter of **MLC, et al v. City of New York and NYC Department of Health and Mental Hygiene, Docket No. BCB-4458-21,** the BCB found that the City "breached its duty to bargain in good faith with the unions before adopting the COVID-19 policy", in violation of **NYCCBL § 12-306(a)(4)**. The BCB noted that when an employer violates its duty to bargain in good faith, there is also a **derivative violation of NYCCBL § 12-306(a)(1)**.

**New York City Was The Only Region In New York State That Imposed A COVID-19 Vaccine Mandate**

91. New York City was the only region in New York State that unilaterally imposed a COVID-19 vaccine mandate. MTA Workers were not required to be vaccinated although they work in the City. [**Moody Ex. 38 of Charging Party's Rebuttal to UFT's Position Statement**]. It happened despite the City recognizing that a testing regiment was a reasonable accommodation, causing no hardship or health risk. *See* Applying for a Reasonable Accommodation from the COVID-19 Vaccine Mandate (Revised 10/28/2021) Per DOHMH Commissioner.

**The New York City Department of Education Was The First City Agency to Impose a COVID-19 Vaccine Mandate**

92. The DOE was the only agency in New York City that initially imposed a COVID-19 vaccine mandate. Other City agencies required weekly testing in lieu of vaccines, allowing the employees who chose not to get vaccinated remain on payroll and earn a living. *See* https://commercialobserver.com/2021/08/new-york-city-vaccine-mandate-all-department-of-education-staff/.

93. According to the daily trends in the number of COVID-19 cases in the United States reported to the Centers for Disease Control and Prevention ("CDC"), there was no emergency at

the time Health Commissioner Dave Chokshi issued an Order mandating COVID-19 vaccines for DOE employees. [**Moody Ex. 7 of Charging Party's Rebuttal to UFT's Position Statement** ]. An analysis of the data shows that there was a significant drop in cases and deaths associated with COVID-19 from January 2020 through December 2021. *See*
https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page
https://rumble.com/v49siq3-using-their-data-to-prove-it-was-all-a-lie.html

**New York City Was The Only School District In New York State That Required A Vaccine Mandate**

94. New York City was the only school district in New York State that imposed a COVID-19 vaccine mandate. Other school districts only required weekly testing if the workers chose not to get vaccinated. *See* https://www.axios.com/2021/10/04/nyc-vaccine-mandate-school-employees

**THE HEALTH COMMISSIONER'S ORDER MANDATING COVID-19 VACCINES FOR DOE EMPLOYEES**

95. The Orders mandating COVID-19 vaccines for City employees were issued by Health Commissioner Dave Chokshi.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Issued**

96.. **On August 24, 2021,** Health Commissioner Dave Chokshi issued a Health Order that changed the "City's vax-or-test policy" announced by Mayor Bill de Blasio for All public employees to "vaccine only" for DOE personnel. [**Moody Ex. 3 of Charging Party's Rebuttal to UFT's Position Statement**]. This Health Order led to the creation of the UFT Award mandating vaccines for DOE employees. *See*
https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Rescinded by The City As It Did Not Provide For Reasonable Accommodations, Nor Did It Address Matters Of Due Process With Regard To Job And Benefit Protections**

97. The Health Commissioner Dave Chokshi's **August 24, 2021 Health Order** was deemed "legally defective" as it did not provide for accommodations and due process. [**Moody Ex. 3 of Charging Party's Rebuttal to UFT's Position Statement**]. Upon the City realizing that the Health Order was unlawful, it was overturned and amended. *See*
*https:*//www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.

98. **On September 15, 2021,** Health Commissioner Chokshi cured the error by rescinding and amending the August 24, 2021 Order clarifying that "6. *Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.*" *See* https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Deemed "Constitutionally Suspect" By The United States Court Of Appeals for the Second Circuit**

99. Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the September 10, 2021 UFT Award limited the exemptions to certain

religions, **on September 21 and October 27, 2021, approximately 15 DOE employees filed two separate lawsuits** against, *inter alia*, the DOE in the United States District Court for the Southern District of New York ("District Court"), but they were denied relief.

100. **On November 15, 2021, the Second Circuit Motions Panel determined that the UFT Award issued under the August 24, 2021 Health Order was "constitutionally suspect"** as the DOE employees who unsuccessfully sought religious exemptions pursuant to the UFT Award were not given broad consideration that adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law. Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the UFT Award limited the exemptions to certain religions, **the Second Circuit ordered that accommodations be considered for all sincerely held religious observances, practices and beliefs,** and the Plaintiffs were granted temporary interim relief until the matter is decided by the Merits Panel. The DOE agreed to extend this same relief to similarly situated UFT employees who were not named Plaintiffs. *See* **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al**, **Docket No. 21-2678-cv, 21-2711-cv., 19 F. 4th 152, at 162.**

**THE DOE AND UFT VIOLATED NYS LAWS AND THE COLLECTIVE BARGAINING AGREEMENT WHEN ENGAGING IN NEGOTIATION OVER THE COVID-19 VACCINE MANDATE FOR DOE EMPLOYEES**

101. Upon information and belief, the terms and conditions of employment are subject to mandatory collective bargaining between the City and unions pursuant to **New York Education Law §2590-g.** To create a condition of employment, the City has to negotiate with the unions pursuant to **New York Civil Service Law § 201.4. New York Civil Service Law § 209** (aka **Taylor Law)** governs the methods by which public employers and unions may resolve impasses in negotiations when the parties fail to achieve an agreement at least 120 days prior to the end of the fiscal year of the public employers. **New York Civil Service Law § 209.3.(f)** bars school districts from binding impasse remedies.

102. The unions have an obligation to protect the interests of all members equally when negotiating with the employers, but the UFT in particular fell short and caused disappointment for not protecting the constitutional and labor rights of all the members, as provided by the applicable state laws and the CBA. The UFT failed to sufficiently represent me and similarly situated employees who refused to receive the COVID-19 vaccines.

103. **On page 4 of its Position Statement**, the UFT contends that "*The UFT did not negotiate the terms of the Impact Bargaining Decision with the DOE. Rather, the terms of the Impact Bargaining Decision were set by Arbitrator Scheinman. See Exhibit "M" at p. 6 (noting that "it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand" and "[w]hile some of the language has been drafted, initially, by the parties in response to [Arbitrator Martin F. Scheinman's] rulings, in the end the language set forth, herein, is [Arbitrator Martin F. Scheinman's] alone.*" The UFT's statement is completely inaccurate. Pretending that the UFT had no responsibility over the UFT Award is disingenuous and outrageous. The union appears to evade responsibility and shift its decision-making authority to Arbitrator Martin Scheinman, the arbitrator who was appointed by PERB upon agreement of the parties to mediate the impasse on

the implementation of the vaccine mandate for DOE employees. Further, by its own cognizance, the UFT has admitted that the UFT Award is illegal and unenforceable. Assuming the UFT's statement is accurate, I respectfully ask the EEOC to officially include Arbitrator Martin Scheiman as a party to this Charge so he can be held responsible as well.

104. Alleging that the UFT had nothing to do with the Scheinman Award (as the UFT "suspiciously" refers to in its Position Statement), that it was not part of the negotiation or that "*The UFT did not negotiate the terms of he Impact Bargaining Decision*" makes no sense. If that is the case, why do the parties call the results of the Impact Bargaining "UFT Arbitration Award" or "UFT Award"? All DOE employees know the UFT bears responsibility and was involved since the beginning of the implementation of the vaccine mandate. Upon information and belief, **on September 1, 2021**, the UFT filed a Declaration of Impasse with PERB pursuant to **Civil Service Law § 209; on September 6, 2021, the parties agreed to move from mediation to arbitration. [Moody Ex. 12, page 4].** The parties had representatives at the meetings during the mediation and arbitration process. The union cannot now claim that it was not part of the negotiation. How many times is the union going to rewrite what it did?

105. **Pursuant to § 209-a.1.(d)**, it shall be an improper practice for a public employer or its agents deliberately to refuse to negotiate in good faith with the duly recognized or certified representatives of its public employees. *See* https://www.nysenate.gov/legislation/laws/CVS/209-A

106. I have no doubt that the **UFT derelicted its duty of fair representation by agreeing with the development and implementation of an Award that was not rationally based and infringed upon public policy and the law**. Contrary to the UFT's statement, the record is replete with concrete evidence showing that UFT representatives participated during the mediation and arbitration process. Just to quote some examples, the union agreed to grant Arbitrator Martin Scheinman the authority to render a final and binding determination on impact issues arising from a unilaterally imposed vaccine mandate via the UFT Award. The UFT agreed with the DOE on various terms and conditions contained in the UFT Award that violate the employees' constitutional and labor rights. The UFT failed to provide its members with ongoing and specific details of the mediation and arbitration process prior to the issuance of the UFT Award. The union failed to provide its members an opportunity to give feedback on the terms and conditions contained in the UFT Award prior and after its issuance. The UFT failed to offer its members an explanation of the terms and conditions contained in the UFT Award after it was issued and before employees were placed on LWOP). The union pressured unvaccinated employees to get inoculated. The UFT failed to challenge the UFT Award after its issuance pursuant to expedited arbitration by bridging a claim directly to SAMS or court action via Article 75. The UFT refused to initiate grievances on my behalf and those similarly situated employees who challenged DOE's act of placing them on LWOP and subsequently terminating them. The UFT failed to timely protect and enforce the employees' due process claims arising under Education Law § 3020-a.

107. **On page 12 of its Position Statement,** the UFT contends that "*Charging Party has not alleged or shown that the UFT deviated from its policies and procedures in handling her claims and has failed to allege or show that she was treated differently because of any alleged disability. Finally, Charging Party has presented no evidence to suggest that the UFT's actions were motivated by discriminatory animus based on any alleged disability or religious belief.*" The UFT's statement is frivolous. There is evidence on record that shows that the UFT pressured me

and similarly situated employees to get vaccinated regardless of my acquired natural immunity, religious beliefs, bodily autonomy, medical privacy, rights to informed consent and to refuse medical treatment. **[Moody Ex. 12 and 55 of Charging Party's Rebuttal to UFT's Position Statement].** *See* https://youtu.be/egdTHnfgNoc?si=r-W0chF5Xe5Ucwmq

108. As an employee organization, it is expected that the UFT treat and represent all members fairly and equally, but it has not happened in my case. I believe the UFT and its representatives failed to sufficiently represent its members who refused to receive the COVID-19 vaccine. The UFT showed disregard towards the unvaccinated members. It is unfortunate that the union did not take a stand and rallied in favor of the unvaccinated employees who were unlawfully placed on unpaid leave and terminated compared to the vaccinated ones. The union never objected to the DOE's undue pressure on its members to get vaccinated, but rather embraced and endorsed a model that treated unvaccinated members differently and worse than the vaccinated ones. The union encouraged unvaccinated employees to get inoculated while advocating for the vaccinated ones. To my knowledge, the UFT did not even make any statement expressing heartbroken and sympathetic feelings for the unvaccinated workers. However, it expressed outrage and fervently advocated for the approximately 82 educators who allegedly used fraudulent vaccine cards in order to keep their jobs. [**Moody Ex. 72, 87, 93 and 112 of Charging Party's Rebuttal to UFT's Position Statement**]. The UFT failed to take legal action when Mayor Eric Adams lifted the vaccine mandate for elite athletes and performers, the private sector and after school activities. **[Moody Ex. 68, 83, 109 and 115 of Charging Party's Rebuttal to UFT's Position Statement]**. The UFT failed to take legal action when the vaccine mandate was declared unconstitutional by New York State Supreme Courts. The UFT failed to take legal action when the UFT Award expired on June 30, 2022. [**Moody Ex. 85 of Charging Party's Rebuttal to UFT's Position Statement].** To add insult to injury, the UFT and its representatives are known for taking stances in favor of causes that are non-union related. For instance, the UFT launched fundraising campaigns to help the survivors of the Bronx fire and the Ukrainian teachers on January 12, 2022 and April 8, 2022 respectively. [**Moody Ex. 57 and 69 of Charging Party's Rebuttal to UFT's Position Statement]. On May 25, 2022** the Delegate Assembly overwhelmingly approved resolutions on issues that are not important to all members but failed to discuss the injustices that have been perpetrated against the unvaccinated members. [**Moody Ex. 90 of Charging Party's Rebuttal to UFT's Position Statement].** The UFT expressed outrage when the Supreme Court rendered a decision on Roe v. Wade, but failed to embrace the unvaccinated's right to bodily autonomy. [**Moody Ex. 84 of Charging Party's Rebuttal to UFT's Position Statement**]. The UFT endorsed candidates who were in support of the vaccine mandate. [**Moody Ex. 82 and 100 of Charging Party's Rebuttal to UFT's Position Statement].** In addition, there was a heavy display of banners endorsing and pressing school staff to get vaccinated all over 1,800+ schools citywide, but the UFT did not object to the DOE's coercive tactics to get vaccinated. [**Moody Ex. 106 and 109 of Charging Party's Rebuttal to UFT's Position Statement**]. UFT members were exposed for months to this messaging that implicitly communicated that vaccinated employees were superior to the unvaccinated ones. The UFT was aware of this discriminatory messaging towards the unvaccinated members that made them feel targeted and judged, and yet it was in tacit agreement with the DOE and did nothing to stop it. Such differential treatment practices are despicable, unacceptable and punishable under the law.

**The DOE And UFT Overstepped MLC When Engaging In Negotiations Over The Implementation Of The COVID-19 Vaccine Mandate for DOE Employees, In Violation Of The Terms And Conditions Of Employment**

109. **In late August of 2021**, the UFT undermined MLC and its constituent unions and unilaterally entered into negotiations with the DOE over the implementation of the vaccine mandate. This happened while MLC leaders and City officials were arriving at a collaboratively negotiated program to implement the vax-or-test policy for All City employees announced by Mayor Bill de Blasio on July 26, 2021, a vote from the full MLC membership was scheduled for the following week, and a Court hearing was set for September 22, 2021. [**Moody Ex. 10 and 11 of Charging Party's Rebuttal to UFT's Position Statement**].

110. **The UFT's allegation on page 4 of its Position Statement** that "*2 The UFT did not negotiate the terms of the Impact Bargaining Decision with the DOE. Rather, the terms of the Impact Bargaining Decision were set by Arbitrator Scheinman*" is contradictory to Mr. Mulgrew's statements and messages he shared with the union members during Town Halls, public appearances and other types of correspondence. [**Moody Ex. 8, 9, 10, 13 and 14 of Charging Party's Rebuttal to UFT's Position Statement**].

**The UFT Derelicted Its Duty Of Fair Representation When Engaging In Bargaining With The DOE Over The COVID-19 Vaccine Mandate**

111. Considering that the DOE and UFT did not reach an agreement to address the impact of the August 24, 2021 Health Order mandating vaccines for DOE employees, the parties sought intervention from PERB to resolve the dispute. [**Moody Ex. 1 and 10 of Charging Party's Rebuttal to UFT's Position Statement**].

**The UFT Was An Integral Party In Creating The UFT Award**

112. **On page 4 of its Position Statement**, the UFT alleges that it did not negotiate the UFT Arbitration Award that mandated COVID-19 vaccines for DOE employees. Such a claim is not credible. There is sufficient evidence on record proving that the UTF was integral in creating the UFT Award. [**Moody Ex. 1, 8, 10 and 11 of Charging Party's Rebuttal to UFT's Position Statement**].

113. **On September 1, 2021**, the UFT filed a Declaration of Impasse with PERB pursuant to **Civil Service Law § 209,** arguing that the vaccine mandate failed to provide for medical or religious exemptions or accommodations. PERB appointed SAMS to mediate the impact of the vaccine mandate. Martin Scheinman would serve as the mediator. [**Moody Ex. 1, 9 and 10 of Charging Party's Rebuttal to UFT's Position Statement**].

114. During a **Town Hall held on September 2, 2021**, Mr. Mulgrew condemned Mayor Bill de Blasio's decision by stating "*What city did was unacceptable and quite disgusting... This is an uphill battle as the established law is settled on this but mayor has overstepped what he can do... We will challenge with the MLC but impact bargaining will probably go faster.*" [**Moody Ex. 11 and 110 of Charging Party's Rebuttal to UFT's Position Statement**].

115. **On September 2nd, 3rd, 4th and 5th of 2021**, mediation sessions between the parties and the arbitrator took place, but they failed to resolve the dispute. [**Moody Ex. 1**]. **On**

**September 6, 2021, the parties agreed to move from mediation to arbitration instead of referring the case to the Fact-Finding Board for resolution of the dispute**, as required by Civil Service Law § 209.3. *See* https://codes.findlaw.com/ny/civil-service-law/cvs-sect-209/.

116. **On September 10, 2021, the date the UFT Award was issued,** Mr. Mulgrew sent an email to the members outlining the terms and process to request medical and religious exemptions or accommodations, which reads in part: "*The New York City Department of Health ordered that all Department of Education staff must be vaccinated. After a Municipal Labor Committee lawsuit joined by the UFT failed to stop the mandate, the UFT filed for impact bargaining. The resulting arbitration decision modifies the CBA..."Appeals of religious exemption denials will be heard by the same independent arbitrators ruling on medical exemption appeals. During the appeal process, the member will be temporarily granted the exemption and kept on payroll.*" [**Moody Ex. 12 of Charging Party's Rebuttal to UFT's Position Statement**].

117. **The UFT was derelict in its duty of fair representation by not engaging and having the employees participate** directly in the mediation and arbitration process nor personally serving them with a notice of intention to arbitrate. In addition, the results of the arbitration were not presented to the union members for approval and ratification, which raises concerns about its legality and enforceability. Furthermore, the UFT derelicted its duty of fair representation by agreeing to the provisions of the UFT Award that was created under an "constitutionally suspect" August 24, 2021 Health Order that violated the employees' constitutional and labor rights.

**The DOE And UFT Failed To Address Natural Immunity At The Bargaining Table**

118. **Coronavirus Disease (COVID-19) is a health condition as defined by the ADA and CDC.** There is available data and scientific research that support natural immunity. In 2004, Dr. Anthony Fauci (Director of the National Institute of Allergies and Infectious Diseases and Chief Medical Advisor to the President) was videotaped talking about the strength of natural immunity to flu. [**Moody Ex. 96 of Charging Party's Rebuttal to UFT's Position Statement**]. *See*
https://youtu.be/h6O1TLf5JlQ
https://www.deseret.com/coronavirus/2021/9/17/22673381/dr-fauci-natural-immunity-covid-19-vaccine

119. The UFT failed to represent the employees equally by not pushing hard and bringing the issue of natural immunity to the bargaining table for consideration and decision-making.

120. **Before the UFT Award was issued**, there were employees who expressed concerns about acquired natural immunity and asked the UFT for intervention. As it pertains to my case, **on August 28, 2021 and September 15, 2021**, I sent emails to Mr. Mulgrew asking for the union's position on natural immunity. [**Moody Ex. 9 of Charging Party's Rebuttal to UFT's Position Statement**]. **On September 2, 2021**, during a Town Hall, a member asked Mr. Mulgrew the following question: "*As someone who has had COVID and natural immunity has shown to be a better protector than the vaccine, why should I be forced to get a vaccine?*" [**Moody Ex. 11 of Charging Party's Rebuttal to UFT's Position Statement** ].

121. **After the UFT Award was issued**, various unvaccinated employees like me attempted to seek exemptions or accommodations under the grounds of natural immunity, but they were not allowed to apply, their requests were denied, approved for a few weeks or not addressed at all. [**Moody Ex. 71, 80, 102 and 107 of Charging Party's Rebuttal to UFT's Position Statement**].

Given these circumstances it is fair to conclude that I and similarly situated employees were discriminated against because of our perceived disability ("COVID-19").

**THE UFT AWARD MANDATING COVID-19 VACCINES FOR DOE EMPLOYEES**

122. Upon information and belief, the terms and conditions of employment are subject to mandatory collective bargaining between the City and unions pursuant to **New York Education Law §2590-g**. To create a condition of employment, the City has to negotiate with the unions pursuant to **New York Civil Service Law § 201.4. New York Civil Service Law § 209** (aka **Taylor Law**) governs the methods by which public employers and unions may resolve impasses in negotiations when the parties fail to achieve an agreement at least 120 days prior to the end of the fiscal year of the public employers. **New York Civil Service Law § 209.3.(f)** bars school districts from binding impasse remedies.

123. **Any change in the "terms and condition of employment" requires good-faith bargaining**, as per the contracts between the City and unions. Pursuant to Education Law §2590-g(14), the terms and conditions of employment are subject to mandatory collective bargaining. **New York Civil Service Law § 209.3(f)** bars school districts from binding impasse remedies. The UFT and DOE never consulted with the MLC and union members about using the COVID-19 vaccine as a "job requirement" or "condition of employment" before the mandate was unilaterally imposed by Health Commissioner Dave Chokshi and Mayor Bill de Blasio. **Further, the term "COVID-19 vaccines" was not written in the DOE-UFT Contract** before or after the COVID-19 pandemic evolved in 2019 and the mandate was issued.

**The UFT Award For The 2021-2022 School Year Was Issued**

124. The vaccine mandate for DOE employees was implemented as a result of the UFT Award. *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf

125. **On September 10, 2021, Arbitrator Martin Scheinman issued the UFT Award for the 2021-2022 school year that set forth a two-stage process** for reviewing and making determinations on the employees' requests for medical and religious exemptions or accommodations. It also set four (4) major mileposts for employees who did not comply with the vaccination mandate or receive an exemption. **At the first stage, a determination would be made by the DOE as an employer. At the second level of review, employees denied at the first stage could appeal to an independent arbitrator appointed by SAMS. The procedures provided no options for appeal beyond SAMS level,** which raises conflict of interest concerns. **On page 13 of the UFT Award,** Arbitrator Scheinman wrote: "*The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reasons to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.*" [**Moody Ex. 12**].

126. It is inconceivable and unacceptable that **the UFT allowed the DOE to violate basic principles of law**, as provided in the UFT Award. For instance, Arbitrator Martin Scheinman stipulated that a panel of arbitrators identified by his company SAMS had the final say on the employees' appeals for medical and religious exemptions or accommodations; that factual hearings shall take place, but that neither party shall be required to be represented by an attorney at the hearing; that cross-examination shall not be allowed; that appeal decisions shall be

expedited without full opinion, and final and binding; and that the DOE shall cover all arbitration costs from SAMS under this process.. [Moody Ex. 1]. This is a mockery and conflict of interest!

**The UFT Award Is Plagued With Procedural Errors and Legal Flaws**

127. I believe the UFT Award was developed and implemented arbitrarily, capriciously and in bad faith, in contravention of New York Civil Service Law § 209.3(f) because it was a binding arbitration award not sanctioned by the statutes in school district impasse negotiations. Just to quote some irregularities: **The UFT Award was not signed by the parties**. It only has the signature of the arbitrator. **The UFT Award discriminates and retaliates against certain employees. The UFT Award excludes per diem employees** who work less than twenty (20) hours per week from applying for medical and religious exemptions or accommodations although they pay their union dues. **The UFT Award excludes employees who have no objections** as it only provides exemptions for those employees with medical and religious exceptions, and it places everyone else in unpaid status without an opportunity to challenge the decision or be heard at all. **The UFT Award violates** the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, New York State Constitution, New York State Human Rights Law, New York State Education Law, New York State Public Health Law, New York State Civil Service Law, New York City Human Rights Law and the DOE-UFT Contract. The UFT Award tramples upon the Constitutional freedom of religion granted by the First Amendment as it requires that religious exemptions be documented in writing by a religious official, that requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccines, and that requests shall be only considered for recognized and established religious organizations such as Christian Scientists. The First Amendment says that "*everyone in the United States has the right to practice his or her own religion, or no religion at all.*"

128. **The UFT Award was issued on September 10, 2021 under a "constitutionally and contractually suspect" Health Order dated August 24, 2021** that was rescinded and amended on September 15 and 28 of 2021, but the UFT Award was not amended to reflect the changes stipulated in the ensuing Amended Health Orders, requiring vacatur. *See*
*h*ttps://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf.
https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf

**The UFT Award Was Not Approved And Ratified By The Union Membership**

129. In my pleadings, I have asserted claims against the UFT for breach of the duty of fair representation as its actions were arbitrary, capricious, discriminatory and undertaken in bad faith. Although **New York Education Law § 3020(4)(a)** authorizes the DOE and UFT to enter into a collective bargaining agreement, the result of collective bargaining and impasse arbitration (UFT Award) was not presented to the union membership for approval and ratification, as required by the CBA. **The UFT offered misleading guidance and failed to conduct meetings immediately following the issuance of the UFT Award** for purposes of explaining to me and other similarly affected employees the terms contained in the UFT Award. **Sending an email attaching the UFT Award was not sufficient**, especially taking into consideration that sometimes emails go straight to the spam rather than to the recipient's inbox.

130. **My claims about the legality and enforceability of the UFT Award, as well as for breach of duty of fair representation were validated by UFT Respondents** as they attempted to mislead and persuaded the Queens Supreme Court to dismiss my Order to Show Cause with a Temporary Restraining Order in Special Proceeding dated October 26, 2022 ("Order to Show Cause"). **On pages 10 of their Affirmation In Support of Cross-Motion to Dismiss dated November 13, 2022, UFT Respondents asked that,** according with the Martin rule, this action is deficient as a matter of law and should be dismissed against them because pursuant to longstanding law in New York State, **the Petition fails to allege that all members of this union approved and ratified the complained of actions:** "***50.*** *The New York Court of Appeals has made clear that an unincorporated organization cannot be sued unless it is alleged and proven that each member of the organization ratified the specific acts in question. See Martin v. Curran, 303 N.Y. 276 (1952). The Court of Appeals re-affirmed this well settled interpretation of the New York General Associations Law and common law in a breach of the duty of fair representation case in Palladino v. CNY Centro, Inc., 23 N.Y.3d 140 (2014). In Palladino, the Court affirmed the decision of the Appellate Division of the Supreme Court in the Fourth Judicial Department to dismiss the union member's claim against his union on the grounds that he had failed to prove that each of the union's members had "authorized or ratified the alleged wrongful conduct", as required by Martin, supra. Palladino, 23 N.Y.3d at 147.,,* ***51.*** *Plaintiff has failed to allege and cannot allege that each and every one of the UFT's approximately 183,000 members authorized or approved of the conduct she is challenging....* ***53.*** *Further, a cause of action for breach of the duty of fair representation must be predicated upon actions which are arbitrary, discriminatory, or undertaken in bad faith.* ***Ahrens v. New York State Pub. Employees Fed'n., 203 A.D.2d 796 (3d Dep't 1994).***" **A copy of the UFT's Cross-Motion to Dismiss with Exhibits is collectively annexed as Exhibit "D" to the UFT's Position Statement dated February 9, 2024.** Accordingly, the UFT is illegal and unenforceable.

**The UFT Award Became The Basis For Similar Awards And Agreements For Unions**

131. Upon information and belief, **the DOE and UFT violated New York Civil Service Law § 209.3.(f) by agreeing to convert the mediation into an illegal binding arbitration instead of referring the case to the Fact-Finding Board** for resolution of the dispute over the implementation of the vaccine mandate, resulting in the UFT Award. By this action, the UFT enabled the imposition of COVID-19 vaccines upon All City Employees since **the UFT Award became the basis for similar awards and agreements with other unions such as the CSA Award and the DC 37 Agreement.** A declaration vacating the UFT Award is necessary to correct the adverse employment actions against public employees.

**The UFT Award Was Successfully Challenged On Constitutional Grounds**

132. **On September 21 and October 27, 2021,** DOE employees filed two separate lawsuits against, *inter alia*, the DOE in the United States District Court for the Southern District of New York challenging the denial of their request for a religious accommodation under the process outlined in the UFT Award alleging that their First Amendment rights had been violated. **On October 12, 2021,** the District Court denied the *Kane* Plaintiffs' request for a preliminary injunction. **On October 28, 2021,** the District Court denied a similar request for a preliminary injunction by the Plaintiffs in *Keil*.

133. **On October 25 and 28, 2021**, Plaintiffs appealed the District Court's denial of their requests for a preliminary injunction to the United States Court of Appeals for the Second Circuit and requested an emergency injunction pending appeal. A Second Circuit Motions Panel heard oral argument **on November 10, 2021**, during which the City conceded that the Accommodation Standards in the Scheinman Award were "constitutionally suspect." The Motions Panel then solicited supplemental letter briefing. Each party attached to its letter a proposed order for relief pending appeal. **On November 15, 2021**, the Second Circuit Motions Panel issued an Order largely tracking the City's proposed order and referring the matter to a Second Circuit Merits Panel. The Motions Panel's Order provided that pending further order by the Merits Panel, Plaintiffs shall receive fresh consideration of their requests for a religious accommodation. The Order sets forth a process pursuant to which Plaintiffs' requests will be promptly adjudicated by a Central Citywide Panel, which will adhere to the standards of, *inter alia*, Title VII of the Civil Rights Act of 1964 rather than the challenged criteria set forth in the Scheinman Award. The Motions Panel's Order also stayed the deadline for Plaintiffs to opt into the extended leave program with any required waiver. It also provided that if a Plaintiff's request for a religious accommodation is granted by the Central Citywide Panel, the Plaintiff will receive backpay running from the date the Plaintiff was placed on LWOP. **On November 22, 2021**, oral argument was heard. **On November 28, 2021**, the Second Circuit issued a decision vacating the District Court's decision denying Plaintiffs' preliminary injunctive relief. [**Moody Ex. 35 of Charging Party's Rebuttal to UFT's Position Statement**]. In its decision, the Second Circuit found that the Plaintiffs had successfully demonstrated a likelihood of success on their First Amendment constitutional claims challenging the Accommodation Standards set forth in the Scheinman Award. As such, the Second Circuit left in place all interim relief ordered by the Motions Panel, thus enjoining, *inter alia*, the DOE from terminating Plaintiffs or requiring them to opt into the extended leave program while they are afforded the opportunity to have their religious accommodation requests reconsidered. As noted in the Second Circuit's decision, the DOE agreed to extend this same relief to similarly situated UFT unit employees who were not named Plaintiffs, thus affording them the ability to also make a religious exemption application request to the Central Citywide Panel for "fresh consideration." At the conclusion of its decision, the Second Circuit remanded the case to the District Court for further proceedings consistent with its opinion. *See* **Kane v de Blasio, 21-cv-7863, and Keil v. de Blasio,** 21-cv-8773, 19 F. 4th 152 at 162, 170, 172-173, (2d Cir 2021). The District Court has not yet ruled on the merits.

134 Pursuant to the Second Circuit's November 15, 2021 decision, the Citywide Panel consisted of representatives of the Department of Citywide Administrative Services ("DCAS"), the New York City Commission on Human Rights and the Office of the Corporation Counsel. The Panel did not rely on the previously challenged UFT Award criteria; its decisions were instead governed by the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. *See* **Kane v De Blasio and Keil v De Blasio, 19 F. 4th 152, pages 170 and 172-173 .of Charging Party's Rebuttal to UFT's Position Statement**

**Charging Party Challenged The UFT Award**

135. **I challenged the UFT Award soon after it was issued.** I questioned the procedure for medical and religious exemptions or accommodations. I alerted the UFT and DOE about the

irregularities of the process established by the UFT Award to apply and appeal the denials. I also requested that corrective actions be taken. **On October 12, 2021,** I sent the following email to Ellie Engler (Executive Assistant to the President) and other UFT officials: "*Based on the medical information and arguments I have submitted in support of my application for a Medical Exemption, I insist in challenging the legality of the DOE-UFT Agreement reportedly reached on September 10, 2021 via an Arbitrator. I believe the Arbitration proceeding is faulty, requiring vacatur. It is my impression that the DOE and UFT did not act in good faith by excluding Natural Immunity as a ground for exemption, in disregard of the available data and scientific studies showing that Natural Immunity is fundamental in achieving herd immunity for COVID-19. With all due respect, I feel that the UFT failed to fairly represent the members, specifically the ones who have Natural Immunity, like in my case. Please be reminded that I brought this issue to the attention of the UFT on August 28, 2021 via email, before the DOE-UFT Agreement was reached and the COVID-19 Vaccine Mandate took effect. Thus, I am seeking remedy.*" **[Moody Ex. 55 of Charging Party's Rebuttal to UFT's Position Statement]. On October 29, 2021,** I sent an email to DOE Chancellor Meisha Porter that in part reads: "*Based on the medical information and arguments I have submitted to the DOE and UFT in support of my application for a Medical Exemption, I would like to challenge the legality of the DOE-UFT Agreement reportedly reached on September 10, 2021 via an Arbitrator. I believe the Arbitration proceeding is faulty, and it needs to be vacated.*" **[Moody Ex. 34 of Charging Party's Rebuttal to UFT's Position Statement].**

**The UFT Award Was Not Extended By The Parties After Its Expiration**

136. The Impact Bargaining was not expected to last in perpetuity. **The Scheinman Award expired on June 30, 2022. On page 7 of the UFT Award,** Arbitrator Martin Scheinman wrote: "*This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the parties.*" **[Moody Ex. 1]. Considering that the UFT Award was not extended by the parties, All DOE employees should have been reinstated effective July 1, 2022** with backpay and benefits since. Remedy on the part of this Court is warranted.

**The UFT Failed To Challenge The UFT Award**

137. There is undisputed evidence demonstrating the UFT failed to fully inform employees about the terms and conditions related to the UFT Award, as well as to how to challenge its "constitutional imperfections" despite the outcry for help on the part of DOE employees like me..

138. After the Second Circuit's decision was issued on November 15, 2021 concerning the unconstitutional nature of the Accommodation Standards contained in the UFT Award, and it was made clear that, in addition to Plaintiffs, the DOE was committed to allowing all other affected employees the opportunity to submit a new religious exemption applications to the Central Citywide Panel for a fresh review, the constitutional imperfections contained in the UFT Award were not corrected. **The UFT also failed to demand that the UFT Award be amended** to reflect those changes on at least religious grounds. In addition, the UFT failed to advise the employees to apply or reapply for a religious exemption or accommodation.

139. Following the Second Circuit's November 15, 2021 decision, **the UFT did not challenge the UFT Award via Article 75. The UFT also failed to bring a claim directly to SAMS** for

expedited review upon the employees denouncing the irregularities of the Accommodation Standards to request exemptions or accommodations, as provided on page 13 of the Scheiman Award. **The UFT failed to file legal action upon the expiration of the UFT Award on June 30, 2022.** On page 7 of the UFT Award, the arbitrator wrote: *"This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the parties."* On September 12, 2021, Mr. Mulgrew sent an email to the members that in part reads: "*This agreement is in effect for this school year only. Any disputes will be resolved through the union's operational issues process except for those involving money, which will be handled through the regular grievance process.*" On June 30, 2022, I sent an email to Mr. Mulgrew asking him to file a grievance on the expired UFT Award. **[Moody Ex. 12]**. The UFT's actions were irrational, capricious, arbitrary and in bad faith, which constitute a flagrant dereliction of duty of fair representation.

**THE ARBITRATOR DID NOT HAVE STATUTORY AND CONTRACTUAL AUTHORITY TO ISSUE AN UFT AWARD THAT VIOLATED THE EMPLOYEES' CONSTITUTIONAL AND LABOR RIGHTS**

140. Upon information and belief, Arbitrator Schienman did not have the power to issue an UFT Award that violates the constitutional and labor rights of the DOE employees.

**The Arbitrator Exceeded His Authority By Not Providing Exemptions And Due Process For The Employees**

141. The due process procedures guaranteed by **New York Education Law §§ 3020 & 3020-a are curtailed by the UFT Award. Article 22 of the CBA (c)** states: "*[An] arbitrator shall limit his decision strictly to the application and interpretation to the provisions of this Agreement and he shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law.*." State education laws demonstrate a desire to protect tenured teachers from being dismissed without a hearing once their competency has been demonstrated. *See* **Abramovich v Board of Education, 1978, 62 AD2d 252 [1978]**.

142. **The UFT Award mandating COVID-19 vaccines was irrational, arbitrary and capricious** because it did not provide due process for the employees before separation, It also allowed the employees to file a form created by the DOE which includes a waiver of their rights to challenge their alleged "voluntary resignation." [**Moody Ex. 12, page 17**]. Arbitrator Martin Scheinman made an error of law and acted against public policy by failing to guarantee the employees' due process rights. State education laws and the CBA prevent such an order that affects teachers' rights and prevents the UFT from bargaining away employees' rights without due process hearings to defend themselves pursuant to **New York Education Law § 3020**.

143. In addition to state law violations, Arbitrator Martin Scheinman trampled upon federal laws by excluding per diem educators and members who have no objections. Specifically, he violated the Due Process and Equal Protection Clauses of the **14th Amendment to the United States Constitution, Section 1**, which states: "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any*

*person within its jurisdiction the equal protection of the laws.*" Moreover, **the UFT Award was issued pursuant to a "constitutionally suspect" Health Order** that was later repealed, but Arbitrator Martin Scheinman and the UFT made no effort to amend the UFT Arbitration Award.

144. Arbitrator Martin Scheiman also exceeded his authority by not permitting employees to enter the school buildings, preventing them from performing their job, withholding their pay and allowing the DOE to unilaterally fire them without following the necessary procedure. **New York Education Law § 3020** provides in relevant part as follows: "*No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment...*"

**The Arbitrator Had No Power To Create A Condition Or Qualification Of Employment**

145. In their submissions to different legal forums, the DOE and UFT have alleged that **Education Law § 3020-a** does not apply to unvaccinated employees because the Health Order mandating COVID-19 vaccines and subsequent UFT Award created an employment qualification to protect the public, not a disciplinary action. I strongly disagree. The public policy argument is incorrect. Regarding Article 22 of the CBA, the United State District Court for the Southern District of New York has held that "§ 3020(4)(a) authorizes the DOE and the UFT to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a" *See* **Adams v. N.Y State Educ. Dept, No. 08 Civ. 5996 [VM] [AJP], 2010 U.S. Dist. LEXIS 15635 [SDNY 2008]; Educ. Law § 3020 [4][a])**.

146. Arbitrator Martin Scheinman made an error of law when he issued the UFT Award as lacked authority to change the terms and conditions of employment for DOE employees. He exceeded his power by making an award that is "explicitly forbade" by state laws and the CBA because it apparently created an employment qualification that changed the terms of the CBA by imposing COVID-19 vaccines, a condition of employment that was not a permissible modification of the CBA since it was not agreed upon and ratified by the union membership. The term "qualification of employment" cannot be found in the UFT Award or Notice of LWOP or DOE-UFT Contract. COVID-19 vaccine was not required when I was hired.

**The Arbitrator Was Not A Neutral Party**

147. The UFT Award raises concerns of conflict of interest, ethics, impartiality and transparency between the arbitrator and City officials. Arbitrator Martin Scheinman has fundraised for Mayor de Balsio, as per an invite dated **October 3, 2013. [Moody Ex. 2 of Charging Party's Rebuttal to UFT's Position Statement]**.

148. There are allegations of ethics and conspiracy between Health Commissioner Chokshi and Arbitrator Martin Scheinman regarding COVID-19 vaccines, fetal cells and religious exemptions. **On September 21, 2021**, Health Commissioner David Chokshi addressed a letter to Arbitrator Martin Scheinman expressing concerns about the use of fetal cells in the production of the COVID-19 vaccine. **[Moody Ex. 98 of Charging Party's Rebuttal to UFT's Position Statement].**

149. An inference of conflict of interest and uncommon ties can be drawn among the government, big pharma and labor unions' investments in pharmaceutical companies that have developed and distributed the COVID-19 vaccines such as Merck, Johnson & Johnson, Moderna and Pfizer. There are reports alleging that the Teachers' unions may be profiting from big pharma at the expense of their members. [**Moody Ex. 95 of Charging Party's Rebuttal to UFT's Position Statement**]. Furthermore, it is documented through multiple media outlets that the Teachers' union has influenced the CDC and pushed vaccination for DOE staff. *See*

- https://artvoice.com/2019/06/10/nys-teachers-pension-fund-tied-to-vaccine-manufacturers/
- https://twitter.com/FoxNews/status/1509133335901007876?ref_src=twsrc%5Etfw
- https://www.edweek.org/policy-politics/lawmakers-press-cdc-about-teachers-union-influence-on-school-reopening-guidance/2021/05
- https://www.youtube.com/watch?v=hDLZ9YDjCSg

## PROCEDURES FOR APPLYING FOR EXEMPTIONS/ACCOMMODATIONS TO THE VACCINE MANDATE AND APPEALING THE DENIALS

150. The procedures for applying for exemptions or accommodations and appealing the denials are outlined on **pages 6-13 of the UFT Award**. Sections A, B, C, D and E address medical and religious requests. Sections F, G, H, I, J, K and L deal with appeals.

151. Pursuant to the terms of the UFT Award, an initial determination of eligibility for a medical or religious exemption or accommodation was to be made in writing, and in the event of a denial, the denial was to include a reason for the denial. [**Moody Ex. 12, page 10**]. An appeal of a denial of eligibility for a medical or religious exemption or accommodation under the criteria of the UFT Award needed to be made in SOLAS to the DOE within one (1) school day of the initial eligibility determination. [**Moody Ex. 12, page 10**]. The appeal was to be heard by a Panel of Arbitrators appointed by SAMS, who were to issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. [**Moody Ex. 12, page 11**]. If the Panel Arbitrator requested a factual hearing, at the hearing the DOE employee requesting the exemption or accommodation could elect to be represented by a union representative. [**Moody Ex. 12, page 11**]. Appeal decisions were to be issued by the Panel Arbitrator. All appeal decisions were to be expedited without full opinion, and final and binding. [**Moody Ex. 12, page 11**]. The exemption or accommodation process was deemed complete and final upon the issuance of an appeal decision. [**Moody Ex. 12, page 13**].

### The Process To Request Exemptions And Accommodations To The Vaccine Mandate Was A Sham

152. Without support for their positions at all, the City and DOE have argued that employees were granted due process, relying heavily on the argument that there was a procedure to seek exemptions or accommodations to the vaccine mandate. Nevertheless, they have ignored that the process was a sham and a travesty of justice, as it will be further explained below.

### The Process To Apply For Medical and Religious Exemptions Or Accommodations Was Unlawful, Promoted Differential Treatment And Violated Due Process

153. According to the United States Constitution, the government has an obligation to treat all citizens equally, as well as to guarantee due process when someone is denied "life, liberty, or

property." On the other hand, the unions have an obligation to protect the rights of the employees. The established two-stage process for employees who applied for medical and religious exemptions or accommodations, as well as for those who did not apply for various reasons failed to meet the minimum standards of law.

154. **The UFT permitted the DOE to implement a tainted process for the requests of exemptions or accommodations** that allowed my placement on unpaid leave and subsequent termination while a decision on my requests for a medical exemption was pending. The UFT did not demand that the DOE process my requests for a religious exemption and to work remotely. When I requested a 3020-a hearing, the UFT failed to demand that the DOE process my request in a timely manner. **I was denied due process pre- and post-termination,** in contravention of the law..

155. Upon information and belief, **per diem, untenured and employees with no objections** were also subject to disparate treatment by not allowing them to apply for medical and religious exemptions or accommodations despite being unionized, being one of those pedagogues Ms. Maria Abicca. [**Moody Ex. 80 of Charging Party's Rebuttal to UFT's Position Statement**]. Another group that was subject to differential treatment is the one of the untenured educators as they were not entitled to a 3020-a hearing. Employees with no objections to the vaccine mandate were denied their right to be heard because the UFT Award and Mayor Bill de Blasio established a process that failed to provide them with options to present their reasoning.

**The Process To Appeal The Denials Of Religious And Medical Exemptions Or Accommodations Was Unreasonable**

156. A robust process for appeals was not made available to me and similarly situated employees. **I was not provided with specific instructions on how to appeal the denials and SOLAS was defective.** My requests were denied without a hearing conducted by an Independent Arbitrator appointed by SAMS and/or the Central Citywide Panel. **The decisions denying requests were general statements such as "Your application has failed to meet the criteria for a religious based accommodation,"** without taking into consideration the particularities of each case, as per the determinations shared by other employees. [**Moody Ex. 67 of Charging Party's Rebuttal to UFT's Position Statement**].

157 I would like to highlight the case of **Home Instruction Teacher Elizabeth Loiacono.** The Supreme Court of the State of New York ruled in her favor as she sought to annul DOE's determination denying her religious exemption. [**Moody Ex. 88 of Charging Party's Rebuttal to UFT's Position Statement**]. The Court found that Ms. Loiacono was entitled to a religious exemption from the COVID-19 vaccine mandate based on the particularities of her case. She was reinstated with backpay and other benefits. *See* **Elizabeth Loiacono v. The Board of Education of the City of New York, et al. Index No. 722995/2022, NYSCEF Doc. # 2, Ex. 55, 1**.

**The Allotted Time To Apply For Medical And Religious Exemptions Or Accommodations And To Appeal The Denials Was Unreasonable**

158. No ample notice and time were provided to notify DOE employees about the vaccine mandate, as well as to process applications and appeals on their requests for exemptions or accommodations. According to the UFT Award, exemptions or accommodation requests were

due on September 20, 2021. The DOE was required to make a decision on all of the requests on September 23, 2021 and any appeals of those denials were to be decided by September 25, 2021. [**Moody Ex. 12**]. **Fifteen (15) days from the issuance of the UFT Award,** notification of the vaccine mandate to the employees, filing of their requests and issuance of appeal determinations was insufficient to meet the constitutional minimum of due process of law. Given this strict timeline, unvaccinated employees were not given enough time to gather the required documentation and were not afforded the opportunity to be heard at a meaningful time and in a meaningful manner by qualified personnel. Pursuant to federal, state and city laws, it is common practice to require that a demand or service of a written notice be given at least seven (7) days before any proceeding is initiated against any individual, unless there is a waiver, consent or written agreement which indicates otherwise.

159. **The UFT failed to bring a claim before SAMS or court of law on the grounds of the strict timelines,** an indicator that the Scheinman Award was not being implemented in good faith. The UFT allowed the DOE to unlawfully place me on unpaid leave and terminated me without due process; declined to pursue my Step 1 Grievance on LWOP to the Chancellor level; failed to file an Article 75 proceeding in state court to compel compliance with the UFT Award; and failed to file a grievance on the expired UFT Award, among other neglectful actions.

**STATEMENT OF THE CASE AND REBUTTAL OF THE DOE'S AND UFT'S POSITION STATEMENTS**

160. The DOE's and UFT's Position Statements are misleading. The record does not support many of their allegations against me and similarly situated employees.

**Plaintiff Was Coerced To Get Inoculated With COVID-19 Vaccines**

161. **Pursuant to New York Civil Service Law § 209-a.2(a),** it is an improper practice for an employee organization to interfere with, restrain or coerce public employees in the exercise of rights granted in section two hundred two, or to cause, or attempt to cause, a public employer to do so. *See* https://www.nysenate.gov/legislation/laws/CVS/209-A

162. There is ample evidence in the form of emails and letters showing that the UFT and DOE coerced me to get inoculated in disregard of my religious beliefs, natural immunity, bodily autonomy, medical privacy, rights to informed consent and to decline medical treatment. *See*

- https://www.youtube.com/watch?v=8tQgtXctNto..
- https://www.pbs.org/newshour/health/covid-vaccine-mandate-takes-effect-for-new-york-city-teachers-and-staff

163. For instance, **on September 27, 2021**, Mr. Mulgrew sent me an email asking that I be vaccinated. [**Moody Ex. 22 of Charging Party's Rebuttal to UFT's Position Statement. On September 28, 2021**]. Ms. Engler sent me the following email: "*... I wanted to make sure you understand the consequences for not getting the vaccine. While I understand you believe that you have natural immunity to Covid, you MUST GET THE VACCINE by Friday. Otherwise you will not be allowed to go into work on Monday.*" **On October 13, 2021,** Ms. Engler sent me the following email: "*I have been responding to you since Sept. 16, when you first wrote to President Mulgrew. We have had dozens of emails back and forth. THE CITY mandated that all DOE must have the vaccine. You requested an exemption, you were denied and you appealed. Your appeal was denied.*" [**Moody Ex. 55 of Charging Party's Rebuttal to UFT's Position Statement**]. **On**

**November 30, 2021**, I sent a letter to Chancellor Porter expressing my concerns about the use of coercive tactics to force vaccination, among other issues, but no corrective action was taken. **[Moody Ex.41 and 56 of Charging Party's Rebuttal to UFT's Position Statement]**.

164. At a news conference held **on December 16, 2021, Mayor Bill de Blasio said that the best way to coerce City employees** to cooperate with the COVID-19 vaccination for employment purposes **was to make them choose between their livelihoods and their beliefs**. *See* https://www.youtube.com/watch?v=8tQgtXctNto

165. **Mayor Bill de Blasio's coercive tactics, authoritarian approach and discriminatory treatment towards the unvaccinated are reprehensible and criminal**. Mayor Bill de Blasio's derogatory statements and actions discouraged employees from applying by the initial deadline as they felt they could not meet the established criteria, particularly the ones who were seeking a religious exemption. Asking employees to compromise their personal beliefs for something that affects job security shows how unethical and out of touch the City leadership is, including but not limited to political leaders and health bureaucrats. The underhanded methods used by the City and DOE to restrict future employment opportunities for members who did not want to compromise their beliefs or have medical conditions clearly shows how important bodily autonomy, medical privacy, informed consent and right to refuse medical treatment are for the people.

166. **The application process is described on pages 7-10 of the UFT Award**. As per the instructions **on page 7 of the UFT Award**, "*Any requests to be considered as part of this process must be submitted via the SOLAS system*" in order to be processed by the DOE. *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

**PLAINTIFF'S REQUEST FOR A MEDICAL EXEMPTION**

167. After legal challenges by MLC and its constituent unions, the City was forced to carve out exemptions for medical and religious reasons. Thus, I applied for medical and religious exemptions.

**Plaintiff Applied For A Medical Exemption**

168. **On September 23, 2021,** I applied for a medical exemption under the grounds of natural immunity in SOLAS, as instructed by DOE and UFT officials. **[Moody Ex. 17 of Charging Party's Rebuttal to UFT's Position Statement]. On September 24, 2021,** HR Connect/Medical, Leaves, and Records Administration ("HR Connect") **denied my request** alleging that "*Antibodies alone are not a reason not to get the vaccine.*" **[Moody Ex. 20 of Charging Party's Rebuttal to UFT's Position Statement].**

**Plaintiff's Medical Exemption Application - Determination Was Legally Deficient**

169. The COVID-19 Medical Exemption Application - Determination denying my application for a medical exemption was deficient as to notification and authentication. **The determination did not have the names/signatures and credentials of the person(s) who made the decision, and it did not provide information about appeal as a matter of right**. It was not supported by scientific data and conclusions of law. It only said "*Your application was reviewed in accordance*

*with applicable City, State, and Federal laws.*" **[Moody Ex. 20 and 24 of Charging Party's Rebuttal to UFT's Position Statement]**.

**SOLAS Was Defective As It Did Not Have An Option To Appeal Under The Drop-Down Menu**

170. According to the instructions **on page 10 of the UFT Award**, "*If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination.*" *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf. However, SOLAS did not have an option to appeal under the drop-down menu. [**Moody Ex. 13**].

**Plaintiff Brought The Issue Of SOLAS To The UFT And DOE In A Timely Manner**

171. **On October 3, 2021**, I sent an email to Ms, Engler and others: "Please be advised that on October 1, 2021, in *the morning, I submitted a statement requesting an appeal via SOLAS. I had to do that because the Website does not have an option to file an appeal but to submit a new application. I checked my emails before I left the school building on that date, but I did not see a response. It appears that on October 2, 2021, the DOE issued a determination on my request for an appeal by denying my COVID-19 Vaccine Medical Exemption Application for the following reason.*" **On October 6, 2021**, I sent another email to UFT officials, which in part reads: "*... Attached please find a copy of the letter that I addressed to HR Connect on October 6, 2021. I am not including the Notice of Leave Without Pay issued on October 2, 2021 and the result of the COVID-19 test dated October 5, 2021 because I had already submitted those documents to you on October 3rd and October 5th. I submitted my letter and attachments via SOLAS. There was no option for appeal so I uploaded the documents under the category of New Application.*" **[Moody Ex. 55 of Charging Party's Rebuttal to UFT's Position Statement]**. **On October 29, 2021**, I sent an email to Chancellor Meisha Porter, which in part reads: "*Please be advised that I have no access to my DOE email account. Therefore, I am sending this correspondence via my personal email. I am looking forward to an expeditious resolution to this matter. Thank you for your time and consideration.*" **[Moody Ex. 34 of Charging Party's Rebuttal to UFT's Position Statement]**.

172. Upon information and belief, **the DOE failed to update the SOLAS system** to include the appeal option and/or provide the employees with guidance on how to proceed in lieu of the deficiencies in the drop-down menu despite timely notification. Other employees were unable to appeal the denials of their requests for exemptions or accommodations because SOLAS was defective. **[Moody Ex. 80 and 102 of Charging Party's Rebuttal to UFT's Position Statement]**. They should not be penalized for the DOE's failures to act.

**Plaintiff Appealed The Denial Of My Requests For A Medical Exemption**

173. **The appeal process is described on pages 10-13 of the UFT Award. [Moody Ex. 12]**. According to **page 11, Section I of the UFT Award**: "*While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below.*" *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

174. Following the denial of my initial application for a medical exemption, I submitted other

requests that were meant to be appeals, but they were processed as "New Applications." **On September 27, 2021, October 1, 2021 and October 6, 2021, I appealed the denials** of my applications for a medical exemption by uploading letters under "New Application" because there was no option to appeal under the drop-down menu in SOLAS. [**Moody Ex. 23 and 29 of Charging Party's Rebuttal to UFT's Position Statement**].

175. **On September 27, 2021,** I sent the following email to Ms. Engler: "*I am kindly requesting that you forward my letter to HR Connect and/or the DOE on my behalf since I have not been provided with the contact information to file my appeal. A copy of this letter is to be given to Mr. Michael Mulgrew.*" **On September 28, 2021**, I sent the following email to Ms. Engler and other UFT officials: "*Can you please provide with eye contact information or link so I can file my appeal, as stressed in my letter addressed to HR Connect on September 27, 2021?*" [**Moody Ex. 55 of Charging Party's Rebuttal to UFT's Position Statement**]. **On September 30, 2021,** HR Connect denied my appeal/application alleging that "*Post-COVID condition is not sufficient (e.g. outside isolation period).*" [**Moody Ex. 25 of Charging Party's Rebuttal to UFT's Position Statement**]. **On October 1, 2021**, I appealed/applied for a medical exemption again. **On October 3, 2021**, HR Connect denied my appeal/application for the following reason: "*Defer to ODA.*" [**Moody Ex. 28 of Charging Party's Rebuttal to UFT's Position Statement**]. **On October 6, 2021,** I addressed a letter to HR Connect about my placement on LWOP and applications/appeals for a medical exemption. I asked that the DOE make accommodations for me to work remotely pending a decision on my applications/appeals. [**Moody Ex. 29 and 30 of Charging Party's Rebuttal to UFT's Position Statement**]. **On October 13, 2021**, HR Connect denied my application/appeal for a medical exemption alleging "*Insufficient medical documentation to determine if there is valid reason to defer or delay vaccination.*" [**Moody Ex. 32 of Charging Party's Rebuttal to UFT's Position Statement**].

176. **The denial of my requests for a medical exemption was arbitrary, capricious and an abuse of discretion**. The DOE did not follow their own internal procedures for the processing of my requests whereas the UFT failed to demand compliance. **All requests were denied without a hearing, and I was not engaged in cooperative dialogue.** At some point, the DOE incorrectly claimed that my application for a medical exemption was late. However, **all my applications/appeals were processed and denied for reasons other than lateness**. The DOE and UFT ignored the fact that the deadline to "*require that any proof of vaccination previously required to be provided by September 27, 2021, now be provided no later than October 1, 2021,*" as per the **Amended Health Order issued on September 28, 2021.**

**Plaintiff Did Not Receive An Appeal Determination Issued By The Panel Of Arbitrators And/Or Central Citywide Appeals Panel**

177. According to **page 13 of the UFT Award**, the process for review and determination of requests for medical and religious exemptions to the vaccination policy shall be deemed complete and final upon the issuance of an appeal decision by the Panel of Independent Arbitrators appointed by SAMS. *See*
https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

178. **On October 13, 2021,** HR Connect issued a final decision on my request for a medical

exemption. [**Moody Ex. 32 of Charging Party's Rebuttal to UFT's Position Statement**]. **The decision was not rendered by the Panel of Arbitrators appointed by SAMS and/or the Central Citywide Appeals Panel** established following the decision of the Court of Appeals for the Second Circuit issued on November 15, 2021. **The final determination was issued by HR Connect at the DOE level.** My requests for the DOE to allow me to examine the documentation that was used as part of the application/appeal process and for a factual hearing were ignored. **I was not contacted by any member of HR Connect, Panel of Arbitrators or Central Citywide Appeals Panel** assigned to hear my appeals to request that I submit additional documentation. It appears that they did not request information from the City and/or DOE Doctors either, as provided **on page 11 of the UFT Award**: "*While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll.*" However, **in no event the individual shall be required/permitted to enter a school building while unvaccinated**, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. **I should have remained on payroll pending a decision on my applications/appeals.**

**Plaintiff Was Not Engaged In Cooperative Dialogue As Required By The EEO**

179. The DOE violated the City's Equal Employment Opportunity Policy ("EEO Policy") that requires that an agency engage in cooperative dialogue with the employees who request exemptions or accommodations. According to this policy, an agency's EEO Officer and/or Disability Rights Coordinator evaluates the request and engages the employee in cooperative dialogue to assess the employee's accommodation needs and explore ways to meet those needs in a way that does not cause an undue hardship for the agency. The agency's EEO Office must notify the employee within thirty (30) days of the conclusion if the request was granted or denied. *See* https://www.civilservicetechnicalguild.org/file/11114/download?token=ryghCCHY.

180. In his Affirmation in Opposition of Plaintiffs' Application for a Preliminary Injunction in the case **MLC, et al v. City of New York, et al** regarding the COVID-19 vaccine mandate and the process for applying for medical and religious exemptions for all City agencies and employees dated **February 9, 2022, Eric Eichholtz** (Chief Assistant Corporation Counsel for Employment Policy) **acknowledged that the City has an obligation to provide reasonable accommodations** to qualified employees with disabilities and those whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless to do so would cause undue hardship or prevent a direct threat. [**Moody Ex. 62 of Charging Party's Rebuttal to UFT's Position Statement**]. **I was not engaged in cooperative dialogue, in contravention of the City's EEO Policy**.

**The DOE Blocked Plaintiff's Email Account While I Was Placed On LWOP**

181. **On October 15, 2021, the DOE blocked my email account** without notification. On the same date, I sent the following email to Ms. Engler and other UFT officials: "*Please be informed that I do not have access to my DOE emails. Earlier this morning (October 15, 2021), I called the IT Department and spoke with Mr. Remy. He told me that it appears that access to my account has been blocked.*" [**Moody Ex. 33 of Charging Party's Rebuttal to UFT's Position**

**Statement**]. **On October 29, 2021**, I sent an email to Chancellor Meisha Porter, which in part reads: "*Please be advised that I have no access to my DOE email account. Therefore, I am sending this correspondence via my personal email. I am looking forward to an expeditious resolution to this matter. Thank you for your time and consideration.*" [**Moody Ex. 34 and 56 of Charging Party's Rebuttal to UFT's Position Statement**]. **On November 19, 2021**, I addressed a letter to Chancellor Meisha Porter, which in part reads: "*Please note that I have been unable to access my DOE email account since October 15, 2021. Therefore, I am sending this correspondence via my personal email instead of SOLAS.*" [**Moody Ex. 36 of Charging Party's Rebuttal to UFT's Position Statement**].]. **On November 21, 2021,** I sent a letter to Chancellor Meisha Porter, which in part reads: "*Please be advised that I have been unable to access my DOE email account since October 15, 2021. Therefore, I am sending this correspondence via my personal email instead of SOLAS.*" [**Moody Ex. 37 of Charging Party's Rebuttal to UFT's Position Statement**].

182. **My DOE email account was not restored despite timely notification to the UFT and DOE**. I was not served with a Final Notice of LWOP and/or Employment Termination Notice.

## PLAINTIFF'S REQUEST FOR A RELIGIOUS EXEMPTION

183. **Arbitrator Martin Scheinman and Mayor Bill de Blasio marginalized and discriminated against the religious beliefs** of employees who have religious objections to the vaccine mandate by establishing that requests be documented in writing by a religious official and that requests only be considered for certain religions. [**Moody Ex. 1, 21**].

### The Established Standards To Apply For Religious Exemptions Or Accommodations Pursuant To The UFT Award Were Discriminatory

184. **On page 9 of the UFT Award**, Arbirator Martin Scheinman stipulated that "*Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source) or where the objection is personal, political, or philosophical in nature. Exemptions requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).*" *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

185. **On September 24, 2021**, Mayor Bill de Blasio "*imposed a strict policy on DOE employees who must show proof of at least one dose of a COVID19 vaccine by the end of Monday, September 27th. After legal challenges by unions representing DOE workers, the city was forced to carve out exemptions for medical or religious reasons. De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science and Jehovah's Witnesses, that have a history on this, of a religious opposition.*" *See* https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees.

186. As a **Catholic, I was not eligible to apply for a religious exemption in the beginning** as I did not meet the criteria established by Arbitrator Martin Scheinman and Mayor Bill de Blasio. [**Moody Ex. 1, 21**]. It was until the Second Circuit rendered a decision in the **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al** on

November 15, 2021, following a successful challenge of the UFT Award on constitutional grounds, that employees like me felt encouraged to apply for a religious exemption.

187. **On November 15, 2021**, the New York City Commission on Human Rights ("NYCCHR") issued Guidelines regarding COVID-19 accommodations: "*Employees who are seeking reasonable accommodations because of their religious beliefs should not be required to submit supporting documentation unless their employer has an objective basis to question the sincerity of the religious basis for the employee's inability to show proof of vaccination. However, employees may be asked to explain the religious nature of their belief. Note that the NYCHRL protects not only employees who belong to organized religions, such as Buddhism, Christianity, Hinduism, Islam, and Judaism, but also employees who have religious, ethical, or moral beliefs that are sincerely held with the strength of religious views.*" *See*
https://www.pbwt.com/ryan-j-kurtz/publications/eeoc-updates-workplace-guidance-on-covid-19-testing

188. **On December 13, 2921,** Health Commissioner Dave Chokshi issued an Order whereby victims of domestic violence, sex offenses or stalking qualify for accommodations. *See*
https://www.jacksonlewis.com/sites/default/files/docs/NYC-Guidance-vaccination-workplace-accommodations.pdf

189. **On December 15, 2021,** the NYCCHR issued regulations referenced as Guidance for Employers on Equitable Implementation of COVID-19 Vaccine Requirements prohibiting discrimination, granting reasonable accommodations and prohibiting retaliation on the grounds of disability, pregnancy, childbirth, lactation, religious beliefs or observances, or status as a victim of domestic violence, stalking, or sex offenses. [**Moody Ex. 46 of Charging Party's Rebuttal to UFT's Position Statement**]. *See*
https://www.nyc.gov/assets/cchr/downloads/pdf/publications/Vax-Employment-Guidance.pdf

190. **On December 20, 2021,** the NYCCHR issued regulations referenced as "Guidance on Accommodations for Workers." **[Moody Ex. 47 of Charging Party's Rebuttal to UFT's Position Statement]**.

**Plaintiff Applied For A Religious Exemption**

191. **On November 19, 2021,** I addressed a letter to Chancellor Meisha Porter informing her about my intention to apply for a religious exemption. **[Moody Ex. 34 of Charging Party's Rebuttal to UFT's Position Statement]. On November 21, 2021**, I applied for a religious exemption by sending a letter to Chancellor Meisha Porter and other DOE and UFT officials. I stated that **I was unable to file my application via SOLAS because my DOE email account was blocked on October 15, 2021**. **[Moody Ex. 14]**.

192. **On page 6 of its Position Statement, the UFT misled the EEOC by claiming that my application for a religious exemption was not properly filed since I failed to submit them on time and via the SOLAS system**, which I dispute. What the union failed to say is that I was not eligible to apply for a religious exemption before the initial deadline because I did not meet the criteria established by the UFT Award and Mayor Bill de Blasio. Following the Second Circuit's November 15, 2021 decision, the DOE agreed to extend this same relief to similarly situated DOE employees who were not named Plaintiffs, thus affording them the ability to also make a religious exemption application request to the Central Citywide Panel for "fresh consideration." *See* **Kane v de Blasio, 21-cv-7863, and Keil v. de Blasio, 21-cv-8773, 19 F. 4th 152 at 162, 170,**

<u>**172-173, (2d Cir 2021)**</u>. I was unable to submit my application in SOLAS because the DOE blocked my email account on October 15, 2021 and did not restore it. [**Moody Ex. 14**].

**Plaintiff's Application For A Religious Exemption Was Not Processed**

193. As per the instructions **on page 10-11 of the UFT Award,** "*The determination of eligibility for an exemption or accommodation shall be expedited and in writing.*" [**Moody Ex. 12**]. However, **I did not receive a decision from HR Connect, the Panel of Arbitrators and/or Central Citywide Appeals Panel** despite my numerous outreach to the DOE and UFT.

194. **On page 8 of its Affirmation in Support of Respondent's Motion to Dismiss dated March 21, 2022, the UFT acknowledged that the DOE never responded to my application for a religious exemption** to the vaccine mandate. [**UFT's Position Statement, Exhibit "B"**]. I should have remained on payroll as my application was assumed to be granted, as per the provisions **on page 11 of the UFT Award**: "*While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below.*"

**PLAINTIFF'S REQUEST FOR AN ACCOMMODATION TO WORK REMOTELY**

195. **As a school-based Social Worker,** I was involved in the process of evaluating and making placement recommendations for children who have special needs or disabilities and require special education services. I mostly worked with the parents/guardians of those children. Thus, my **position does not absolutely require close contact with the population I work with.**

196. The Special Education Standard Operating Procedures Manual ("SOPM") is a "living" resource that provides the schools and personnel with the procedural framework necessary to develop supportive, inclusive education programs citywide, based on each student's individual needs. It is updated on an ongoing basis to remain current and comprehensive at all times. <u>*See*</u> https://infohub.nyced.org/docs/default-source/default-document-library/specialeducationstandardoperatingproceduresmanualmarch.pdf?sfvrsn=4cdb05a0_2

197. **In mid-late September 2021,** the DOE issued a Special Education Guidance for the 2021-22 School Year outlining policies and best practices when holding **remote meetings** such as Social Histories, Social History Updates, Individualized Education Programs, Manifestation Determination Reviews, Behavior Intervention Plans, Suspension Plans, Initial Referrals, Requests for Initial Referrals, Reevaluations and Mandated Three-Year Reviews. [**Moody Ex. 16 of Charging Party's Rebuttal to UFT's Position Statement**]. <u>*See*</u> https://www.uft.org/teaching/students-disabilities/special-education-guidance-2021-22-school-year.

198. **On September 24, 2021,** following the DOE's issuance of the Special Education Guidance for the 2021-22 School Year, Ms. Andrea Bishop (Administrator of Special Education, Queens South DOE Borough Citywide Offices) sent an email to the pertinent staff providing guidance on special education meetings. **Ms. Bishop confirmed that special education meetings with parents/guardians should continue to be held remotely,** by phone or using a DOE-approved virtual-conferencing platform. [**Moody Ex. 15**].

199. **On September 23, 2021, the DOE and UFT signed a Memorandum of Agreement** ("MOA") modifying the collective bargaining agreement with regard to the Teachers of the Homebound (previously referred as Home Instruction). [**Moody Ex. 15 of Charging Party's**

**Rebuttal to UFT's Position Statement**]. This agreement was reached because as a result of the continuing impact of COVID-19, the DOHMH had determined that certain groups of students would qualify for medically necessary instruction outside of the school building. Students under suspension should also be eligible for Home Instruction.

200. I would like the EEOC to take judicial notice that **the MOA issued on September 23, 2021 is enforceable as it was signed by representatives of both parties whereas the UFT Award issued on September 10, 2021 was only signed by Arbitrator Martin Scheinman,** which raises concerns about its legality and enforceability.

201. **On page 8 of its Position Statement**, the UFT alluded that Arbitrator Martin Scheinman had the authority to issue the Impact Bargaining Decision that mandated COVID-19 vaccines for DOE employees, without negotiating with the union. Here, it appears that the UFT shifted the responsibility of changing the terms and conditions of employment solely to the arbitrator by making sure that the UFT Award was not signed by the parties. Ironic!

**Plaintiff Worked In Person During The 2020-2021 School Year**

202. I would like the EEOC to take judicial notice that **during the 2020-2021 school year**, before the COVID-19 vaccines were developed and without appropriate PPE, **I worked in-person although I was given the opportunity to work remotely**. I was physically in the school buildings, but I worked virtually as I was not allowed to have vis-a-vis contact with the students and their parents/guardians, as per an agreement reached between the DOE and UFT. [**Moody Ex. 16**]. I did not pose a health risk despite being unvaccinated.

**Plaintiff Requested To Work Remotely**

203. **On October 6, 2021,** I requested via HR Connect that the DOE make accommodations for me to work remotely pending a decision on my applications/appeals for a medical exemption. [**Moody Ex. 29 of Charging Party's Rebuttal to UFT's Position Statement**]. **On December 2 and 9 of 2021**, I asked Principal Kim Hill to consider my request for virtual work. [**Moody Ex. 42 and 44 of Charging Party's Rebuttal to UFT's Position Statement**]. I simply requested that the DOE allow me to continue working remotely or engage in weekly testing if I must enter the building, until such time that a final decision on my requests for medical and religious exemptions were rendered.

**Plaintiff's Request For An Accommodation To Work Remotely Was Not Processed**

204. **My request for virtual work was not honored.** I did not receive a response from the DOE or UFT despite following up on my request on numerous occasions. **There was no undue hardship on the part of my employer.** The DOE could have arranged for me to work remotely and/or in-person with accommodations, especially taking into consideration that my position does not absolutely require close contact with the students and their parents/guardians, and that I worked the previous year in-person without being COVID-19 vaccines.

**Other City Employees Were Granted Accommodations To Work Remotely**

205. I was treated differently compared to other City employees as it pertained to my request for an accommodation to work remotely. Prior to the implementation of the vaccine mandate, I

worked in person. Upon information and belief, some employees were granted virtual work although their positions required face-to-face contact with the people they were working with.

206. **In earlyApril 2022, Mayor Eric Adams** (who is a City employee) **contracted COVID-19. He reportedly granted himself an accommodation to work remotely**, without following the protocol required for All City employees. *See* https://www.npr.org/2022/04/10/1091944429/nyc-mayor-eric-adams-covid-test

207. **On April 10, 2022**, Mayor Eric Adans posted the following message on his Twitter account: "*I've tested positive for #COVID19 and am following my doctors orders by isolating. Thankfully, I'm vaccinated and boosted so symptoms are minimal. I'll work remotely and I know we've got the best team in the country at work at City Hall. We'll continue to #GetStuffDone._7:34 PM · Apr 10, 2022.*" *See* https://www.nytimes.com/2022/04/10/nyregion/eric-adams-covid-positive.html

208. **On April 11, 2022**, I sent Mayor Eric Adams an email requesting information about the process by which he was granted elite accommodation in an expeditious manner. [**Moody Ex. 70 of Charging Party's Rebuttal to UFT's Position Statement**]. The City has procrastinated with my request. **On January 30, 2024**, I received an email from The Mayor's Office extending the time to respond to my FOIL-2022-002-00804 to April 23, 2024, to wit, I opposed via email, **On April 25, 2024,** The Mayor's Office sent me an email stating that it has extended the time to respond to my FOIL request FOIL-2022-002-00804 to July 19, 2024, to wit, I opposed. **I infer concealment of evidence to obstruct justice.**

209. There were other **DOE employees whose requests for accommodations to work virtually were granted**. I worked with some of them at the same schools. [**Moody Ex. 71 of Charging Party's Rebuttal to UFT's Position Statement**].

**Plaintiff Voluntarily Submitted Weekly COVID-19 Tests While I Was On LWOP**

210. **After I was placed on LWOP and up until January 4, 2022**, I voluntarily submitted the results of my negative COVID-19 tests every week, and I had no problem continuing to be tested. [**Moody Ex. 18 of Charging Party's Rebuttal to UFT's Position Statement**].

211. **On January 12, 2022**, I sent an email to DOE and UFT officials to inform them that I would no longer take weekly COVID-19 tests due to national shortage. [**Moody Ex. 55 and 56 of Charging Party's Rebuttal to UFT's Position Statement**]. *See* https://www.reuters.com/world/us/us-households-can-order-4-free-covid-19-tests-starting-jan-19-white-house-2022-01-14/.

**PLAINTIFF REACHED OUT TO THE DOE CHANCELLOR FOR ASSISTANCE REGARDING THE REQUESTS FOR MEDICAL AND RELIGIOUS EXEMPTIONS, PLACEMENT ON LWOP AND REQUEST TO WORK REMOTELY**

212. Following the denial of my request for a medical exemption, placement on LWOP and the non-processing of my request to work remotely, I reached out to Chancellor Meisha Porter.

213. **On October 29, 2021,** I sent an email to Chancellor Meisha Porter and other DOE-UFT officials, which in part reads: "*On September 23, 2021, I applied for a Medical Exemption under*

*the grounds of Natural Immunity. My request was denied on September 24, 2021 alleging that "Antibodies alone are not a reason not to get the vaccine." On September 28, 2021, I filed an appeal. It was denied on September 30, 2021... On October 2, 2021, I was issued a Notice of Leave Without Pay (LWOP). Your illegal decision is denying me the most fundamental constitutional right of all - that to life itself. I insist, I did not apply for a LWOP.... I have not quit. I will not be resigning or retiring. The DOE has constructively discharged me. I will not be signing your waiver of my right to sue to get the benefits that you have abruptly taken away from me. I am ready, willing and able to return to my position as a Bilingual School Social Worker. Without income, I cannot pay my bills and satisfy my other needs... Upon information and belief, members of Congress, United States Postal Service employees and illegal migrants coming through the Southern Border, among others, are not required to get tested or take the COVID-19 vaccine. Nevertheless, the DOE is imposing that I get inoculated although I have Natural Immunity. Considering that the individuals in question are not mandated to get vaccinated, I have a good faith belief that the DOE's decision against me is discriminatory and constitutes a blatant violation of the Due Process and Equal Protection Clauses of the XIV Amendment to the Constitution, the Civil Rights Act of 1964, the Rules of Practice and Procedure of the Equal Employment Opportunity Commission (EEOC), as well as other relevant statutes-regulations.;;; I believe that people who have contracted COVID-19 are being discriminated against whereas vaccine mandates are being politicized!* **[Moody Ex. 34 of Charging Party's Rebuttal to UFT's Position Statement]. On November 19 and 21 of 2021,** I sent Chancellor Meisha Porter follow up letters and emails. **[Moody Ex. 36 and 37 of Charging Party's Rebuttal to UFT's Position Statement]. On November 30, 2021,** I addressed another letter to Chancellor Meisha Porter informing her that I had not been served with a Final Notice of LWOP. **[Moody Ex. 41 of Charging Party's Rebuttal to UFT's Position Statement].** I did not receive a response.

**PLAINTIFF WAS UNLAWFULLY PLACED ON LWOP**

214. **The process for placement on unpaid leave of unvaccinated employees is described on pages 11-17 of the UFT Award.** As per the terms of the UFT Award, effective September 28, 2021 through November 30, 2021, any unvaccinated DOE employee who had not requested an exemption or who had requested one and had been denied, was to be placed on leave by the DOE, which leave could not be considered disciplinary for any purpose. **[Moody Ex. 12]**.

**Plaintiff Was Placed On LOWP While Awaiting A Decision On My Request For A Medical Exemption**

215. **The DOE did not adhere to the provisions of the UFT Award** when processing my requests for medical and religious exemptions but rather placed me on LWOP while I was awaiting a decision on my requests. **As per the standards provided on page 11 of the UFT Award,** "*While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll.*." See
https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

216. **On October 2, 2021, the DOE issued a Notice of Placement on LWOP** for non-compliance with the vaccine mandate. I was prohibited from gainful employment while on unpaid leave. In order to extend this leave and continue to receive the commensurate benefits, I was required to file a form created by the DOE, which includes a waiver of my rights to

challenge the involuntary resignation through a contractual or statutory disciplinary process. I shall not be eligible for unemployment insurance benefits. [**Moody Ex. 17**]. I was denied the ability to apply for per session activities. [**Moody Ex. 117 and 118 of Charging Party's Rebuttal to UFT's Position Statement**]. **On October 13, 2021,** HR Connect issued its final determination on my request for a medical exemption. [**Moody Ex. 32 of Charging Party's Rebuttal to UFT's Position Statement**]. I should have remained on payroll at least until a final decision on my request for a medical exemption was made by the Panel of Arbitrators or Central Citywide Appeals Panel. Upon information and belief, hundreds of similarly situated employees did not receive a final decision before they were placed on LWOP/or terminated. [**Moody Ex. 67 of Charging Party's Rebuttal to UFT's Position Statement**].

**Plaintiff Challenged The Placement On LWOP**

217. **On October 6, 2021,** I began challenging my placement on LWOP by writing a letter to HR Connect. [**Moody Ex. 29 of Charging Party's Rebuttal to UFT's Position Statement**]. Thereafter, I reached out to UFT President Michael Mulgrew, Principal of PS 95Q Kim Hill, Principal of IS 238Q Peter Leddy, District 29 Superintendent Beverly Mitchell, Chancellor Meisha Porter, Mayor Eric Adams and City Council, to no success.

**Plaintiff Was Not Served With A Final Notice Of Placement On LWOP**

218. **On November 30, 2021**, upon learning through colleagues that the DOE had emailed a Final Notice of Placement on Leave Without Pay to the unvaccinated employees, I sent a letter to Chancellor Meisha Porter to inform her that I had not been served with such a document. I forwarded my letter via my personal email because the DOE had blocked my account on October 15, 2021 and had not restored it. [**Moody Ex. 18**]. I did not receive a response.

**Plaintiff Filed A Step 1 Grievance Against The DOE For Improper Placement On LWOP**

219. Pursuant to the CBA, every UFT represented employee has the right to file a step 1 grievance. However, the union, not the employee, files the step 2 grievance with the Chancellor and the union, not the employee, files salary and leave grievances with the Executive Director of Human Resources. *See* https://www.uft.org/your-rights/contracts/doe-and-city-contracts-printable-versions

220. **Article Ten of the DOE-UFT Contract for School Psychologists and Social Workers** deals with Leaves of Absence Without Pay. Pursuant to Section E of Article Ten, LWOP should be granted upon application. *See* https://www.uft.org/doe-and-city-contracts-printable-versions.

221. As a tenured educator, I am entitled to statutory and contractual protections of due process prior to my constructive firing. **New York Education Law § 3020(1) provides**: "*No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section [3020]-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement.*"

222. Considering that the UFT declined to file a Special Grievance with the DOE and/or a Claim before SAMS for expedited resolution, **on November 30, 2021, I filed a Step 1 Grievance** with the Principal of PS 95Q to challenge my placement on LWOP. [**Moody Ex. 40**

**of Charging Party's Rebuttal to UFT's Position Statement]. On December 9, 2021,** Principal Kim Hill denied my Step 1 Grievance. [**Moody Ex. 43 of Charging Party's Rebuttal to UFT's Position Statement**].

**Plaintiff Requested That The UFT File A Step 2 Grievance For Improper Placement On LWOP**

223. **On December 9, 2021,** I attempted to pursue Step 2 of the Grievance process by appealing the denial of my Step 1 Grievance to the UFT Grievance Committee. **[Moody Ex. 44 and 45 of Charging Party's Rebuttal to UFT's Position Statement]. On December 22, 2021,** my appeal was denied by the Grievance Committee. [**Moody Ex. 48 of Charging Party's Rebuttal to UFT's Position Statement**]. **On December 24, 2021,** I appealed the denial by the Grievance Committee not to take my case forward to Step 2 Grievance, but it was again denied by the Grievance Department. **[Moody Ex. 49 of Charging Party's Rebuttal to UFT's Position Statement]. On December 30, 2021,** I appealed the Grievance Department's decision not to proceed to Step 2 to the Ad Com Grievance Committee. [**Moody Ex. 50, 51, 52, 53 and 54 of Charging Party's Rebuttal to UFT's Position Statement**]. **On April 4, 2022,** my appeal was heard by the Ad Com Committee. [**Moody Ex. 64 and 65 of Charging Party's Rebuttal to UFT's Position Statement**]. In a decision rendered **on April 25, 2022, the Ad Com Grievance Appeal Committee declined to pursue my Step 2 Grievance to the Chancellor's level.** It was a final decision. [**Moody Ex. 73 of Charging Party's Rebuttal to UFT's Position Statement**]. **On April 28, 2022,** I sent an email to UFT officials expressing my disagreement with the Ad Com Grievance Committee's decision and asked for reconsideration, to no success.

**PLAINTIFF REQUESTED THAT THE UFT FILE GRIEVANCES WITH THE DOE AND SAMS FOR IMPROPER PLACEMENT ON LWOP**

224. **Pursuant to Civil Service Law § 209-a.2(c),** it is an improper practice for an employee organization to breach its duty of fair representation. ***See*** https://www.nysenate.gov/legislation/laws/CVS/209-A

225. PERB has held that an employee organization has no duty to process every grievance or to take every grievance to arbitration. However, a union refusing to process a grievance must communicate its decision to the grievant and provide an explanation for its decision, in response to a unit member's request, Further, an employee organization has an obligation to respond to reasonable inquiries from its members, and an employee organization satisfies that aspect of its duty of fair representation when it responds in a prompt and reasonable manner to such inquiries. ***See*** https://www.nysenate.gov/legislation/laws/CVS/209-A

226. A review of the history of this case shows that I have set forth facts and submitted evidence which would establish that **the UFT's declination to process grievances through the ladder to arbitration on my behalf was arbitrary, discriminatory and in bad faith,** requiring remedy pending the adjudication of this Charge. **On September 1, 2022,** I asked EEOC Investigator to seek preliminary injunctive relief pending a decision on the investigation of my Charge. [**Moody Ex. 111 of Charging Party's Rebuttal to UFT's Position Statement**].

**The UFT Failed To Advance Plaintiff's Grievances On LWOP To Arbitration**

227. In my pleadings, I have set forth facts and offered sufficient evidence in support of my claims that many of the grievances to challenge my unlawful placement on LWOP and subsequent termination were not heard and/or redressed.

228. The UFT breached its duty of fair representation by refusing to initiate some Step 1 grievances, declining to pursue Step 2 grievances, refusing to file Special Grievances on my behalf and other similarly situated employees, offering misleading guidance, and either not offering or offering unacceptable denial reasons. Many of my requests for help were not answered by the UFT. I asked the UFT to conduct hearings or meetings with me pre- and post-termination, but many of my requests fell on deaf ears.

**Plaintiff Requested That The UFT Bring A Claim Before SAMS And File A Special Grievance With The DOE For Improper Placement On LWOP**

229. Out of frustration with the denials of my applications/appeals for a medical exemption, placement on LWOP and the non-processing of my application for a religious exemption, I requested intervention from the UFT, as per the standards and requirements **on page 13 of the UFT Award**, which establishes that "*Should either party have reason to believe that the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.*" [**Moody Ex. 12**].

230. **On November 29, 2021**, I sent an email to Mr. Mulgrew. **I asked that the UFT bring a claim directly to SAMS for expedited resolution** as the UFT Award was not being implemented in good faith. **I also requested that the UFT file a Special Grievance with the Chancellor** on the grounds of DOE-UFT Contract violations for improper placement on LWOP. [**Moody Ex. 39 of Charging Party's Rebuttal to UFT's Position Statement**]. **On November 30, 2021**, UFT Counsel Beth Norton denied my requests alleging that the DOE was not processing applications that came in after October 4, 2021, clarifying that the UFT was not in agreement. **The UFT derelicted its duty of fair representation by not honoring and processing my grievance requests**, given the fact that the DOE did not adhere to the terms and provisions of the UFT Award and CBA.

231. To add insult to injury, **the UFT failed to seek relief via an Article 75** proceeding in state court to compel compliance. Upon information and belief, **under CPLR § 7511(b)(1)(iii), an arbitration award shall be vacated on the application of a party who participated in the arbitration** if the rights of that party were prejudiced by an arbitrator making the award. *See* https://www.nysenate.gov/legislation/laws/CVP/A75. Filing an Article 75 would have set aside the UFT Award as it is irrational, violative of public policy and exceeds a limitation on the arbitrator's power.

**DOE Employees Placed On LWOP Requested That Their Unions File Individual And Group Grievances On Their Behalf**

232. In addition to my requests to file an individual Special Grievance with the DOE and/or a Claim before SAMS, I joined a group of employees who requested that their unions bring a claim before SAMS and/or file a Special Grievance with the Chancellor on their behalf.

233. **In December 2021**, employees who had been placed on LWOP challenged the procedures used to implement the UFT Award. **The group Educators for Freedom**, to which I belong to, conducted a survey of employees who wanted to file individual and/or join a **Group Grievance** on the denials of their requests for exemptions or accommodations and improper placement on LWOP.

234. The following are excerpts of the **Individual Grievance Template** email that was sent to the unions by the employees on or before December 12, 2021: "*I filed a grievance because I have been discriminated against by the DOE because of my religious beliefs and vaccine status. It is a violation of Article 2 in the teachers' contract. My religious exemption was denied wrongfully by the DOE and I have been placed on unpaid leave unjustly. My religious exemption was reviewed based on the criteria listed in Section I.C in the arbitration agreement...The remedy I am seeking is to be immediately removed from unpaid leave status and restored to paid status. I am to be made whole in all ways. Please kindly process my grievance in an expedited manner to avoid further harm and injuries*."

235. **Educators for Freedom** created a **Teacher Group Grievance Email Template** and a **Participating Grievant Form** on Google. Each participant needed to fill out the right survey according to his/her title by 12:00 PM on **December 12, 2021.** The employees also selected a **Lead Grievant** per discipline to facilitate the grievance process. Employees asked their unions to initiate each group grievance. Below are links for six **Group Grievance Participant Surveys**:

1. Teachers Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLSe707srQqnrJ6si_rjqlU-0ZxjEXnk4BKffomcsgUPAxZ5-iA/viewform?usp=sf_link
2. Secretaries Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLSeWvVDRiKUmczL4-FBzeK3vuimHznz0p-gJ9CVt15lj90KjCw/viewform? usp=sf_link
3. Social Workers/Psychologists Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLScDYiEY537w6ouVJUufMP_136cl9bKDblGEwBMKa0C1hItnyw/viewform? usp=sf_link
4. Nurses/Therapists (OT/PT) Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLScxCcNc5dCG8Z5_vmjFGLbp2FE87a4mJTalCe5cbdxSFpa2IQ/viewform? usp=sf_link
5. Guidance Counselors Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLScxW2UMZWu8D1ywTLjRj8Oh9b3vln-Yox6LDnkyixFjEIOisA/viewform? usp=sf_link
6. Paraprofessionals Group Grievance Participant Survey
https://docs.google.com/forms/d/e/1FAIpQLSfvVzM0Ny2MYqygUMERZR9s4iTNZI23MyeBILr7a6J9igky6A/viewform? usp=sf_link

236. **The procedures used to review the requests for religious and medical exemptions or accommodations were inadequate**. The fact that the unions declined to process the Individual and Group Grievances before SAMS and/or the DOE, as well as to file an Article 75 Proceeding in state court is a dereliction of duty of fair representation.

**Plaintiff Filed A Per Session Grievance**

237. **On November 1, 2022,** I filed a Step 1 Grievance against the DOE for denial of per session work during the 2021-2022 School Year. In December 2022, it was denied by the UFT's

Grievance Committee. I sought to advance to Step 2 on appeal. **On December 7, 2023**, the AdCom Committee declined to advance my grievance to Step 2 alleging that it could not be successfully pursued to Step 2. **[Moody Ex. 117 and 118 of Charging Party's Rebuttal to UFT's Position Statement]**. I requested reconsideration.

**PLAINTIFF WAS UNLAWFULLY TERMINATED**

238. Respondents violated federal, state and city laws, as well as the DOE-UFT Contract by separating me from my job without just cause and due process.

**Plaintiff Was Discriminated And Retaliated Against For Non-Compliance With The Vaccine Mandate And Engaging In A "Protected Activity"**

239. **I disagree with the DOE's and UFT's contentions in their Position Statements that I was not subject to discrimination and unlawful retaliation** – rather, I was subjected to the consequences of the Impact Bargaining Decision when I refused to comply with my employer's vaccine mandate.

240. I assert that **the DOE and UFT discriminated against me on the basis of vaccination status, disability, religion and in retaliation** for non-compliance with the vaccine mandate. As a **Catholic**, I was excluded from applying for a religious exemption under the standards established by Arbitrator Martin Scheinman and Mayor Bill de Blasio.. I was denied a medical exemption based on my acquired natural immunity without a hearing.

241. **I assert a retaliation claim as I was engaged in a "protected activity"** arising from the vaccine mandate, an adverse employment decision took place, and there was a link between the protected activity and the adverse employment decision. I was retaliated against for asserting my EEO rights to be free from employment discrimination based on my religious beliefs, acquired natural immunity, bodily autonomy, medical privacy, rights to informed consent and to refuse medical treatment. I was harassed and coerced to get inoculated with COVID-19 vaccines. I was vilified and humiliated. I was unlawfully placed on unpaid leave and constructively terminated. I complained to UFT and DOE officials about the process to request and appeal exemptions or accommodations and filed grievances, but I was unsuccessful.

**The DOE Reportedly Issued A Non-Personalized Employment Termination Notice To Employees Placed On LWOP**

242. **On January 31, 2022, the DOE allegedly sent a Non-Personalized Employment Termination Notice to the emp**loyees stating that they would be terminated on February 11, 2022. The email/notice was not addressed to any employee in particular, and it was sent via email. [**Moody Ex. 19**]. Under these circumstances, I have not been officially terminated. **I did not receive the email as the DOE blocked my account on October 15, 2021. [Moody Ex. 14]**

243. **On February 4, 2022,** I learned about the alleged Employment Termination Notice as the UFT sent me an email informing me that the unvaccinated employees were to be terminated on February 11, 2022. [**Moody Ex. 59 of Charging Party's Rebuttal to UFT's Position Statement**]. The UFT recommended that I file a 3020-a hearing if I believe I had received that email in error. The UFT attached a form for me to fill out explaining why I believe I should not be fired, *See* https://uft.wufoo.com/forms/rtxxas91boahsz.

244. Upon information and belief, **emailing a non-personalized Employment Termination Notice to an employee is not proper service** pursuant to applicable federal, state and city laws. The EEOC should direct that I be reinstated with backpay and other benefits since I have not been properly served. Under these circumstances.

245. **On February 9, 2022,** I sent an email to General Counsel B. Norton, which in part reads: "*Thank you for responding to the email I sent to Mr. Michael Mulgrew on February 8, 2022 ....I will be allegedly terminated on February 11, 2022 without cause and due process. What am I being charged with? I have not received a termination letter and/or a charge packet. I will complete the paperwork appropriate for my title and tenure status to challenge the termination, as recommended by the UFT. I strongly object to any waiver of my rights under federal, state and city laws. I reserve my right to grieve, appeal and be served with 3030-a charges that will allow me to know what I am being charged with. I am entitled to a probable cause hearing.... I am requesting that I be put back on payroll pending a decision on my grievances-hearings...!*" **[Moody Ex. 59 of Charging Party's Rebuttal to UFT's Position Statement].**

**Plaintiff Was Not Served With An Employment Termination Notice, Charge And/Or Notice Of Determination Of Probable Cause**

246. **On February 11, 2022,** I was allegedly terminated from my employment for non-compliance with the vaccine mandate without notice. **[Moody Ex. 58 and 59 of Charging Party's Rebuttal to UFT's Position Statement]**. I was not served.

247. **As a tenured pedagogue,** I enjoy the protections of New York Education Law § 3020-a. **As such, I must be afforded procedural due process** before I am dismissed from employment, which provides for notice of non-compliance and an opportunity to respond and refute the allegation(s). **There are several documents that need to be served upon the employee and/or designated attorney as part of this process**: Notice of Determination of Probable Cause on Education Law §3020-a or §3020-b Charges; Hearing Request/Waiver Form and Affidavit of Service of the Charges; Education Law §3020-a or §3020-b Charge Transmittal; Notice of Need For a Hearing on Education Law §3020-a or §3020-b Charge; Rights of Tenured Educators. *See* http://www.nysed.gov/educator-integrity/teacher-tenure-hearings-3020a. I was not served with any of these documents, warranting immediate reinstatement.

**The UFT Colluded And Breached Its Duty Of Fair Representation By Allowing The DOE To Unlawfully Place On LWOP And Terminate Plaintiff Without Due Process**

248. I have a good faith belief that the UFT breached its duty to represent me fairly by colluding with the DOE and Arbitrator Martin Scheinman to violate my constitutional and labor rights. The DOE and UFT breached their own rules and procedures since I was not served with a Notice of Determination of Probable Cause on New York Education Law §3020-a or §3020-b Charges before the alleged adverse employment action took place. The UFT failed to advance my grievances beyond Step 1.

249. The UFT breached its duty of fair representation by agreeing with the DOE on various unfair terms of employment in the UFT Award, being one of them its failure to enforce certain statutory and contractual rights, including those arising under Education Law § 3020-a. **I**

**challenged my placement on LWOP and termination** by reaching out to City, DOE and UFT officials including but not limited to Chancellor Meisha Porter, Principal Kim Hill, District 29 Superintendent Beverly Mitchell, UFT President Michael Mulgrew and Mayor Eric Adams, but to no avail..

**PLAINTIFF REQUESTED A 3020-A HEARING FOR UNLAWFUL TERMINATION**

250. There is no factual dispute that I was removed during a term of employment without due process, in contravention of state education laws and the CBA. I was not provided with notice, a written statement specifying the charges in detail, an opportunity to be heard and the many of the other procedural requirements of New York Education Law § 3020-a prior- or post-termination.

251. **On page 13 of the UFT Award,** Arbitrator Martin Sheinman states that employees who have been denied a request for an exemption or upon denial of an appeal may be unilaterally placed on leave without pay by the DOE, and that "*such leave shall not be considered a disciplinary action for any purpose*," thereby obviating the need for the DOE to follow the procedures set forth in New York Education Law § 3020-a, which are reserved for issues involving employee job performance, misconduct or competency. [**Moody Ex. 12**]. I disagree.

**COVID-19 Vaccines Cannot Be A " Qualification of Employment"**

252. **I disagree with the UFT's contention on page 6 of its Position Statement** that "*the Vaccine Mandate was a condition of employment and termination on that basis was non-disciplinary.*" **The UFT Award is devoid of the phrase "qualification of employment."**

253. Arbitrator Martin Scheinman's vaccine mandate did not create a condition or qualification of employment as **the UFT Award was not the result of a legally binding arbitration** pursuant to state laws and the CBA. It was a contractual violation. The UFT Award was not developed with the input of the employees and ratified by the approximately 183,000 union members, as **acknowledged by UFT Respondents in their Affirmation in Support of Cross-Motion to Dismiss dated November 13, 2022**: "**51**. *Plaintiff has failed to allege and cannot allege that each and every one of the UFT's approximately 183,000 members authorized or approved of the conduct she is challenging.*" [**UFT's Position Statement, Ex. "D", page 10**].

**Plaintiff Was Terminated For "Incompetence" As Per The UFT**

254. **In its position Statement, the UFT alleges that a 3020-a hearing was not required** because the vaccine mandate itself is a qualification of employment, and that qualifications of employment are not adversary or disciplinary in nature. The union's statement is misleading.

255. Regarding the procedures set forth in New York Education Law § 3020-a that are reserved for **issues involving employee job performance or competency, in their Affirmation in Support of Cross-Motion to Dismiss dated November 13, 2022, UFT Respondents implied that that I was terminated for incompetence**: "*56... Petitioner alleges that UFT Respondents encouraged Department of Education employees to get vaccinated. As this was legally required and Department of Education employees such as might be deemed unqualified and insubordinate if they did not obey, the alleged conduct by the UFT cannot even be said to be inaccurate, incorrect, or wrong.*" [**UFT's Position Statement, Ex. "D", page 11**]. Assuming

that the DOE determined that I was unqualified for the job, I was entitled to a hearing. **"incompetence" is a charge that requires a 3020-a hearing** before dismissal. *See* https://www.nysed.gov/educator-integrity/teacher-tenure-hearings-3020a (Charge Transmittal Form).

**Plaintiff Was Terminated For "Insubordination" As Per The UFT**

256. I dispute the **UFT's contention on page 6 of its Position Statement** that I was not entitled to a 3020-a hearing because New York Education Law § 3020-a applies only to disciplinary matters.

257. An exhaustive review of the record shows that **my placement on LWOP and constructive termination were disciplinary actions** that require a 3020-a hearing, as validated by UFT Respondents in their **Affirmation in Support of Cross-Motion to Dismiss dated November 13, 2022**: **"56."** *Here, Petitioner alleges that UFT Respondents encouraged Department of Education employees to get vaccinated. As this was legally required and Department of Education employees such as might be deemed unqualified and insubordinate if they did not obey, the alleged conduct by the UFT cannot even be said to be inaccurate, incorrect, or wrong.*" [**UFT's Position Statement, Ex. "D", page 11**]. Here, the "disciplinary action" is the DOE's illegal removal of a tenured educator from the payroll, denial of per session activities and other punitive actions without following any of the procedures required under New York Civil Service Laws, New York Education Law 3020 and the CBA, among others. I have set out a proper cause of action against Respondents because **"insubordination" is a disciplinary charge that requires a 3020-a hearing** before separation from employment pursuant to **Education Law §3020-a** . *See* https://www.nysed.gov/educator-integrity/teacher-tenure-hearings-3020a (Charge Transmittal Form).

258 I would like the EEOC to take judicial notice that there were other similarly situated employees who have been denied a 3020-a hearing. Based on documentation in the record, the DOE concealed the truth and misled the New York State Department of Labor ("NYSDOL") by claiming that DOE employees were separated from employment because of misconduct, resignation and/or quitting, and for these reasons they were denied unemployment insurance benefits. [**Moody Ex. 66 of Charging Party's Rebuttal to UFT's Position Statement**]. To add insult to injury, they were not afforded a 3020-a hearing before they were unlawfully placed on unpaid leave or terminated, warranting remedy although the DOE was cognizant that they had been dismissed on misconduct grounds. They should be reinstated with back pay and other benefits.

**Plaintiff Requested A 3020-a Due Process Hearing**

259. DOE employees bound by the CBA and subject to disciplinary action are granted the procedural due process outlined in New York Education Law § 3020-a, which includes notice and an adversarial hearing. The touchstones of procedural due process are notice and an opportunity to be heard. *See* **Matter of Prue v. Hunt, 78 NY2d 364 [1991]; Matter of Toolasprashad v. Kelly, 80 AD3d 530 [1st Dept 2011]**.

260. Article Fifteen of the DOE-UFT Contract for School Psychologists and Social Workers addresses Due Process and Review Procedures under Section 3020-a. It states that tenured pedagogues facing disciplinary charges are entitled to a 3020-a hearing before being dismissed

from employment, which provides for notice of non-compliance and an opportunity to respond and refute the allegation(s). *See* https://www.uft.org/doe-and-city-contracts-printable-versions.

261. **On February 9, 2022**, I requested a 3020-a hearing to challenge my alleged termination [**Moody Ex. 20**]. **On February 11, 2022,** I submitted an Addendum to my Request for 3020-a Hearing by sending an email to DOE and UFT officials. I also included the New York State Education Department ("NYSED"). [**Moody Ex. 59 of Charging Party's Rebuttal to UFT's Position Statement**].

**Plaintiff's Request For A 3020-A Hearing Was Not Processed**

262. I was denied a 3020-a hearing prior to and after constructive firing. My request for a 3020-a hearing was not processed. **Pursuant to Education Law § 3020-a, the 3020-a hearing should be completed within two months.** *See* https://www.nysenate.gov/legislation/laws/CVS/209-A.

283. Respondents have defaulted. Two (2) years have passed from the time I submitted my request, and **a 3020-a hearing has not been scheduled** by the DOE; UFT and/or the NYSED.

264. To add insult to injury, the UFT failed to demand that the DOE comply with the terms and guarantees provided within the DOE-UFT Contract and New York Education Law § 3020-a. On September 1, 2021, I sought injunctive relief from the EEOC, but my request was not granted. [**Moody Ex. 111 of Charging Party's Rebuttal to UFT's Position Statement**]. I should be immediately reinstated with back pay and other benefits. Therefore, **I am respectfully requesting that this Court grant me injunctive relief pending the adjudication of this action, to avert further harm.**

265. Upon information and belief, other employees affiliated with the DOE, CSA and DC 37 submitted their requests for a 3020-a hearing, and they have not been processed, requiring relief.

**PLAINTIFF REQUESTED THAT THE UFT FILE A GRIEVANCE UPON THE EXPIRATION OF THE UFT AWARD**

266. I have a good faith belief that the UFT breached its duty of fair representation by allowing the DOE to unilaterally place me on LWOP and terminate me without due process.

287. **On June 30, 2022, the UFT Award expired as it was not extended by the parties.** On the same date, I sent an email to Michael Mulgrew and asked that the UFT file a grievance to demand reinstatement to my position. **On July 11, 2022,** David Campbell responded to my June 30th email. He acknowledged that the UFT had expired, but the union declined to pursue my grievance. He wrote: "*The Scheinman arbitration award applies to the 2021-22 school year. As we have stated, the process determined by the arbitrator in that decision cannot be grieved. That is still true today. The DoE has yet to issue it's policy regarding the vaccine mandate or possible accommodations for the 2022-23 school year. The UFT is continuing to challenge the DoE's decision to remove employees from payroll without due process through the courts.*" **On July 13, 2022,** I responded to Mr. Campbell's email expressing my disagreement with the UFT's decision not to file a grievance. Once again, the union failed to act. **Moody 85 of Charging Party's Rebuttal to UFT's Position Statement].**

**THE UFT BREACHED ITS DUTY OF FAIR REPRESENTATION BY FAILING TO PURSUE PLAINTIFF'S GRIEVANCE REQUESTS**

268. Upon information and belief, an employee organization is not obligated generally under Education Law § 3020-a to pursue remedies at law on behalf of a unit member, regardless of the merit of the underlying claim, unless it has successfully pursued similar claims on behalf of other unit members, and it can be shown that the employee organization is discriminating against the charging party in not providing the requested representation. This legal standard has been extended to actions arising under CPLR Section 75.

269. As a member, I asked UFT Respondents for intervention to correct the wrong, but they were derelict in their duty of fair representation as they somehow prevented me from utilizing the CBA grievance procedure to seek appropriate remedy prior to filing this Charge. The UFT also failed to act when I sought relief for similarly situated employees.

**PLAINTIFF REQUESTED THAT THE UFT FILE AN EMERGENCY MOTION WITH THE COURT FOR AN INJUNCTION TO STOP THE WRONGFUL TERMINATION OF UNVACCINATED EMPLOYEES**

270. **On February 8, 2022**, upon learning that the unvaccinated employees had been threatened with termination, I sent an email to Mr. Mulgrew and other UFT officials and asked that the union file an Emergency Motion with the Court for an Injunction to stop the firing. On the same date, Ms. Norton responded to my email: "*The UFT is taking legal action. In the interim you should complete the paperwork appropriate for your title and tenure status to challenge the termination. If you are a tenured pedagogue, that means requesting a 3020-a hearing. For other titles it may mean filing a discontinuance appeal with your borough office or a termination grievance with the grievance department. Please let me know if you have any questions.*" [**Moody Ex. 60 of Charging Party's Rebuttal to UFT's Position Statement**].

**PLAINTIFF REQUESTED THAT THE UFT TAKE LEGAL ACTION ON BEHALF OF THE FIRED EMPLOYEES AMID MAYOR ERIC ADAMS' EXECUTIVE ORDER LIFTING THE VACCINE MANDATE FOR ATHLETES AND PERFORMERS**

271. **On March 24, 2022,** Mayor Eric Adams issued Executive Order 62 lifting the vaccine mandates and granting exemptions for influential people such as athletes and performers. *See* https://www1.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62#:~:text=a.,has%received%20a%reasonable%accommodation.

272. **On March 25, 2022,** I sent an email to Mr. Mulgrew and other UFT officials regarding Executive Order 62 issued by Mayor Adams on March 24, 2022. I denounced the City's double standard employment practices in favor of the elites. I requested that the UFT take action and demanded equal treatment for the public employees to get their jobs back. [**Moody Ex. 69 of Charging Party's Rebuttal to UFT's Position Statement**].

**PLAINTIFF REQUESTED THAT THE UFT TAKE LEGAL ACTION DEMANDING DUE PROCESS FOR THE FIRED EMPLOYEES AMID THE UFT FILING A LAWSUIT**

273. There is evidence that a union treated similarly situated members differently and in bad faith. In light of the factual and legal landscape, one of the UFT's actions that was arbitrary,

unreasonable, irrational, dishonest, discriminatory and improperly motivated has to do with DOE employees who allegedly used fraudulent COVID-19 vaccine cards to keep their jobs.

274. **In late April 2022**, it was reported that dozens of DOE employees were being investigated for using fraudulent COVID-19 vaccine cards to continue working. *See* https://www.ny1.com/nyc/all-boroughs/news/2022/04/22/doe-employees-fake-covid-vaccine-cards.

275. The UFT vigorously advocated and took legal action on their behalf so they would not be placed on unpaid leave effective April 25, 2022 and/or terminated for failing to comply with the vaccine mandate, alleging that they are entitled to due process. *See* https://nypost.com/2022/04/22/united-federation-of-teachers-intends-to-sue-nyc-doe/ .

276. **On April 24, 2022,** I sent an email to high-ranking UFT officials requesting that the union guarantee equal treatment to all employees regardless of their vaccination status. On the same date, Michael Sill responded to my email. He stated that the union had filed an action in court to preserve due process rights for all of those who were terminated. [**Moody Ex. 72 and 86 of Charging Party's Rebuttal to UFT's Position Statement**].

277. **In a June 27, 2022 decision,** Arbitrator Martin Scheinman (the same arbitrator who issued the UFT Award that placed me on LWOP and denied me due process) determined that the DOE did not have the right to place educators accused of submitting fake COVID-19 vaccination cards on unpaid leave without affording them due process, a finding the City then unsuccessfully appealed in state court. Following Arbitrator Martin Scheinman's finding, he called the UFT and DOE to create an appeals process for the accused employees. *See* https://www.thechiefleader.com/stories/educators-suspended-for-phony-vax-cards-entitled-to-appeals-arbitrator-rule,45482https://www.nydailynews.com/2022/07/06/nyc-education-dept-staffers-accused-of-using-fake-vaccine-cards-must-have-disciplinary-hearings/

278. The employees who allegedly submitted fake vaccine cards were reinstated with backpay whereas the honest ones like me who did not comply with the vaccine mandate were deprived of their salaries and benefits. The UFT failed to deliver equal treatment under the law to all members. The union's action demonstrates a clear dereliction of duty of fair representation.

## PLAINTIFF REQUESTED THAT THE UFT FILE AN EMERGENCY MOTION WITH THE COURT FOR AN INJUNCTION TO STOP THE UNLAWFUL TERMINATION OF UNVACCINATED EMPLOYEES

279. **On February 8, 2022,** upon learning that the unvaccinated employees had been threatened with termination, I sent an email to Mr. Mulgrew and other UFT officials and asked that the union file an Emergency Motion with the Court for an Injunction to stop the firing. On the same date, Ms. Norton responded to my email. She wrote: "*The UFT is taking legal action. In the interim you should complete the paperwork appropriate for your title and tenure status to challenge the termination. If you are a tenured pedagogue, that means requesting a 3020-a hearing. For other titles it may mean filing a discontinuance appeal with your borough office or a termination grievance with the grievance department. Please let me know if you have any questions.*" **[Moody Ex. 59 of Charging Party's Rebuttal to UFT's Position Statement**].

**PLAINTIFF REQUESTED THAT THE UFT INVESTIGATE THE PLACEMENT OF A "PROBLEM CODE" IN MY PERSONNEL FILE**

280. There is a lack of transparency on the part of the DOE regarding the maintenance of personnel files. Reportedly, the DOE altered the personnel files of unvaccinated employees, *See* https://www.foxnews.com/media/fingerprints-unvaccinated-nyc-teachers-reportedly-sent-fbi-problem-codes-invasion-privacy

281. The **Problen Code** is supposedly an unlawful flag on an employee's fingerprints for alleged misconduct and criminal behaviors such as rape, robbery, verbal abuse, corporal punishment and substance abuse, resulting in ineligibility for employment with the DOE. *See* https://parentadvocates.org/nicecontent/dsp_printable.cfm?articleID=8884#:~:text=The%20New%20York%20City%20Department,any%20reason%20or%20no%20reason.

282. **On October 14, 2021**, while attending a per session grievance conference, I was informed by DOE representatives that I had a **pending case with the Office of Personnel Investigations** ("OPI"), to wit, I was not aware of. I requested an explanation as to the reasons for the alleged involvement of OPI. On that date, I sent an email to Mr. Gene Mann (UFT Representative) asking that the UFT investigate the incident with OPI. [**Moody Ex. 31 of Charging Party's Rebuttal to UFT's Position Statement**].

283. **In February 2022**, I learned through colleagues that the PR code had been added to employees who were placed on LWOP and/or terminated for non-compliance with the COVID-19 vaccine mandate. It was placed in their Payroll Portal the day they went on the leave by the DOE central offices. They employees learned about the situation after noticing that in the Payroll Portal under their Salary History information there was the word "Problem" and next to it were the letters "PR." After reaching out to DOE and UFT officials to find out about the meaning, they were told that "PR" is equivalent to problem code.

284. **On May 23, 2022,** I sent a follow up email to Mr. Mann to inquire about the status of my request for an investigation of the OPI cae because I had not received a response from the UFT. I included Ms. *Amy Arundell, Mr. Michael Mulgrew, Ms. Beth Norton and Mr. David Campbell as recipients of this email.*" The UFT and its representatives were derelict in their duty of fair representation for failing to investigate the PR code when brought to their attention.

285. Other employees have shared and authorized me to use the documents they have exchanged with the DOE and UFT regarding the PR Code on their personnel files. [**Moody Ex. 78, 79, 108 and 119 of Charging Party's Rebuttal to UFT's Position Statement**].

**PLAINTIFF REQUESTED THAT THE UFT TAKE A STANCE ON BEHALF OF THE FIRED EMPLOYEES FOLLOWING THE NYS SUPREME COURT'S DECISION ON UNCONSTITUTIONAL VACCINE MANDATE**

286. **On October 24, 2022,** in the case ***George Garvey, et al v. City of New York, et al, Index No. 85163/2022,*** New York State Judge Ralph Porzio ordered the reinstatement with backpay of 16 fired Sanitation workers who did not comply with vaccine mandate. Judge Porzio found that the Health Commissioner's Order requiring vaccination of City workers violated the New York

Constitution's separation of powers doctrine, was arbitrary and capricious and violated the fired workers' equal protection and due process rights. To add insult to injury, the City appealed the Court's decision and has refused to reinstate the fired employees.

287. **October 25, 2022,** I sent the following email to Michael Mulgrew and other UFT-DOE officials: "*As you may know, on October 24, 2022, the New York State Supreme Court in Richmond County issued a decision in favor of unvaccinated Sanitation workers who sued the City of New York, the NYC Department of Health and Mental Hygiene, the NYC Sanitation Department, Eric Adams and David Chokshi. He ruled that the vaccine mandate is unconstitutional, capricious and arbitrary. (See attached Court's Decision and Order). At this point, I would like to know what is the UFT's stance regarding this ruling and what steps we must follow. I am looking forward to hearing from you at your earliest convenience. I would greatly appreciate acknowledgement that you have received this email and its attachment.*" On the same date, Ms. Norton responded to my email: "*The city has noticed its intent to appeal that decision and invoked the automatic stay, meaning the decision does not get implemented pending the appeal. No city employees are being returned to service at this moment. In addition, last week the MLC, including the UFT, filed a similar lawsuit. We are awaiting the assignment of a judge on that matter. Finally, last spring the MLC, including the UFT, filed a lawsuit challenging the terminations for failure to comply with the health order, asserting that employees are entitled to due process. The City moved to dismiss that lawsuit and we are awaiting the judge's decision on that motion. As we have more information on any of these lawsuits we will share that information with members.*" Mayor Eric Adams should be held accountable for capriciously defying the Court Orders.

**Court Decisions Declaring the Vaccine Mandate Unlawful And Ruling In Favor Of Unvaccinated Workers Nationwide**

288. I would like the EEOC to take judicial notice that the vaccine mandates have been deemed unconstitutional in some jurisdictions in the United States of America.

289. **July 27, 2022,** an Ohio federal judge blocked the Biden administration from enforcing the COVID-19 requirement nationwide. Judge Maurice Rose issued a National Preliminary Injunction prohibiting the air force, space force and air national guard from penalizing service members that refused COVID-19 vaccines for religious reasons. [**Moody Ex. 91 of Charging Party's Rebuttal to UFT's Position Statement**]. *See* https://www.fox19.com/2022/07/28/cincinnati-federal-judge-stops-air-force-air-national-guard-globally-discharging-religious-vaccine-refusers/

290. **On August 25, 2022,** a Washington DC Superior Court Judge ruled that vaccine mandate for government workers is unlawful. [**Moody Ex. 99 of Charging Party's Rebuttal to UFT's Position Statement**]. He ruled that the vaccination mandate Mayor Muriel Bowser imposed on City government workers was unlawful in response to opposition from the D.C. Police Union. The order from Judge Maurice Ross came in response to a lawsuit filed by the D.C. Police Union and other police groups that opposed the mandate. *See* https://www.washingtonpost.com/dc-md-va/2022/08/25/dc-coronavirus-vaccine-mandate-workers/

291. **On October 24, 2022,** New York State Judge Ralph Porzio ordered the reinstatement with backpay of 16 fired Sanitation workers who did not comply with the vaccine mandate, as aforementioned. *See* https://law.justia.com/cases/new-york/other-courts/2022/2022-ny-slip-op-22335.html

292. **On January 13, 2023,** New York State Supreme Court Judge Gerard Neri invalidated the New York State COVID-19 Vaccine Mandate continuously requiring health care workers to be fully vaccinated against COVID-19. *See* Healthcare Law Alert: New York State Supreme Court Judge Invalidates COVID-19 Vaccine Mandate.

293. **On March 11, 2024**, a Los Angeles County Superior Court Judge ruled in favor of former LAPD officers and firefighters who challenged their terminations for infringing upon their due process rights related to City's COVID-19 vaccine requirement They are entitled to reinstatement with backpay. *See* https://apbweb.com/2024/03/court-rules-in-favor-of-l-a-s-covid-19-vaccination-mandate-ex-lapd-officers-entitled-to-back-pay/

**Court Decisions Rendered In Favor Of Unvaccinated Workers In New York City**

294. There are **cases similar to mine that have been decided in favor of unvaccinated City employees** after the denial of their religious exemptions to the vaccine mandate. The Courts reversed the denials of their religious exemptions and granted them reinstatement with back pay, costs and disbursements. [**Moody Ex. 35, 88, 99 and 113 of Charging Party's Rebuttal to UFT's Position Statement**].

295. Some of the cases are: **Loiacono v. The Board of Education of the City of New York, et al**, Index No. 154875/2022, NYSCEF Doc. # 46; **Matthew Maxwell v. New York City Police Department, et al**, Index No. 719355/2022, NYSCEF Doc. # 36; **Andrew Schiefer v. The Board of Education of the City of New York, et al**, Index No. 155983/2022, NYSCEF Doc. # 51; **Frank Schimenti v. City of New York, et al,** Index No. 85075/2022, Doc. # 80; **Carlos Cano v. The City of New York, et al,** Index No. 156355/2022, NYSCEF Doc. # 39; **George Garvey, et al v. The City of New York, et al,** Index No. 85163/2022, NYSCEF Doc. # 38; **Morgan Sprague v. New York City Police Department, et al,** Index No. 718618/2022, NYSCEF Doc. # 17; **Andre Perez v. New York City Police Department, et al,** Index No. 718825/2022, NYSCEF Doc. # 18; **Gregg Roberts v. New York City Police Department, et al,** Index No. 157372/2022, NYSCEF Doc. # 30; **Brian Finely v. The City of New York, et al,** Index No. 717617/2022, NYSCEF Doc. # 20; **Alexander DeLetto v. Eric Adams, et al,** Index No. 156459/2022, NYSCEF Doc. # 10; **John Verrilli v. City of New York, et. al,** Index No. 157088/2022, NYSCEF Doc. # 17; **Christopher Anderson v. Eric Adams, et al,** Index No. 156824/2022, NYSCEF Doc. # 15; **Kyle Sutliff v. Eric Adams, et al,** Index No. 156891/2022, NYSCEF Doc. # 12; **Police Benevolent Association of The City of New York, Inc, et al v. City of New York, et al,** Index No. 151531/2022, NYSCEF Doc. # 88.

**PLAINTIFF REQUESTED THAT THE UFT STAND UP ON BEHALF OF THE FIRED EMPLOYEES ON THE FIRST ANNIVERSARY OF THE VACCINE MANDATE**

296. **On August 24, 2022,** I sent the following email to Mr. Mulgrew and other UFT officials asking for help for the unvaccinated on the first anniversary. [**Moody Ex. 101 of Charging Party's Rebuttal to UFT's Position Statement**]. It reads: "*Today (August 24, 2022) marks a*

*year that former Health Commissioner Dave Chokshi, under the directives of former Mayor Bill de Blasio, issued the Order mandating COVID-19 vaccines for DOE employees. On October 4, 2021, the date that educators were put on involuntary leave without pay for non-compliance with the unconstitutional vaccine mandate, the UFT and its representatives did not put up a fight for the unvaccinated workers but rather voiced their unconditional support for the vaccines and achieving a 100% compliance. As you may recall, at a press conference held on October 4, 2021 you stated that you were happy about 97% of the staff being vaccinated, but that you wish it was 100%. You went on to say: "I HAVE TO FOCUS MORE ON THE PEOPLE WHO ARE VACCINATED." (See link below to the press conference)* *https://www.youtube.com/watch?v=MRMqVrmmnUE*

297 *Unvaccinated individuals in New York City continue to be harmed by the unconstitutional COVID-19 vaccine mandate, which is not being enforced in the private sector and some City agencies. They have been vilified, punished and marginalized from society. Claims that "unvaccinated people are virus super-spreaders" are pretextual and have been debunked. Recent information from the CDC shows that there are no differentiations between a person's vaccination status since breakthrough infections can occur even in the vaccinated. The reality is that a person's vaccination status does not stop the spread of COVID-19; while it may lower the effects of the virus, it does not significantly stop the spread of the illness. An analysis of the current data shows that there is a significant drop in cases and deaths associated with COVID-19 since January 2020 through August 11, 2022; the highest spike being in January of 2022. The need for emergency status has passed and there is no urgent need for greater vaccination coverage. (See link about vaccinated getting reinfected)* *https://www.youtube.com/watch?v=M7ka2eUwwWc*

298. *I believe the UFT has shown disregard towards the unvaccinated members by not advocating on their behalf. Instead, it has encouraged that they get vaccinated regardless of their sincerely held religious beliefs, medical conditions, bodily autonomy, natural immunity, medical privacy and informed consent rights. To my knowledge, the UFT has not made any statement expressing heartbroken and sympathetic feelings for the unvaccinated, but it has expressed outrage and fervently advocated for the approximately 82 educators who have allegedly used fraudulent vaccine cards in order to keep their jobs. Such differential treatment practices are despicable and unacceptable! The UFT and its representatives are known for taking stances in favor of causes that are non-union related. For instance, the UFT launched fundraising campaigns to help the victims of the Bronx fire and the Ukrainian teachers on January 12, 2022 and April 8, 2022 respectively. On May 25, 2022 the Delegate Assembly overwhelmingly approved resolutions on issues that are not important to all members but failed to discuss the injustices that have been perpetrated against the unvaccinated members. On June 2, 2022, the UFT joined the End Gun Violence campaign and was out in force at the June 11 March for Our Lives rally to make the educators' voices heard following the mass shootings in Buffalo and Uvalde. On June 25, 2022, the UFT issued a statement on Roe v. Wade expressing outrage and condemning the United States Supreme Court's decision on abortion. When is the UFT going to take a stand and rally in favor of the unvaccinated members who have been unlawfully placed on unpaid leave and/or terminated from their employment? As an employee organization, it is expected that the UFT treats and represents all members fairly and equally. On several occasions, I have asked the UFT to help the unvaccinated, but my requests have fallen on deaf ears. Therefore, I am reaching out to you again requesting that the UFT take action to*

*correct the wrongdoings so the unvaccinated employees can be reinstated and compensated. It would be a great endeavor for the UFT to accomplish in honor of the unvaccinated on their first anniversary standing up against tyranny and in pursuit of freedom. In God I trust! Your prompt response will be greatly appreciated.*" **[Moody Ex. 101 of Charging Party's Rebuttal to UFT's Position Statement]**.

**PLAINTIFF REQUESTED THAT THE UFT ADVOCATE ON BEHALF OF THE FIRED EMPLOYEES AMID CDC'S NEW GUIDELINES LIFTING THE COVID-19 RESTRICTIONS**

299. **On August 17, 2022,** I sent an email to Mr. Mulgrew and other DOE-UFT officials regarding the new CDC guidelines and other states lifting the COVID-19 restrictions. I asked what steps and actions the UFT had undertaken and/or was pursuing to demand that the DOE reinstate and compensate all honest unvaccinated employees who had been placed on involuntary unpaid leave and terminated. The email reads in part: "*As you may know, the Center for Disease Control (CDC) relaxed its guidelines for COVID-19 on August 11, 2022. Please see link below:* https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html. *Following recent updates to COVID-19 guidelines from the CDC, on August 15, 2022, New Jersey Governor Phil Murphy signed an Executive Order lifting COVID-19 restrictions for school districts, child care settings...Based on what has transpired, it is obvious that the narrative of the political leaders and health bureaucrats about "COVID-19 being the pandemic of the unvaccinated" and "the unvaccinated being the super spreaders" continues to be debunked. The COVID-19 vaccine mandates are no longer sustainable! I am looking forward to hearing from you at your earliest convenience.*"

300. **On August 27, 2022,** Ms. Norton sent me the following email in response: "*The vaccine mandate will remain in effect for the 2022-23 school year. With regard to those teachers who were terminated for not complying with the health order, as you are aware, we have filed a lawsuit to protect their due process rights. The city has moved to dismiss the lawsuit. We are awaiting the judge's determination. When we have a decision we will share it with membership.*"

301. **On August 28, 2022,** I responded to Ms. Norton's email: "*With all due respect, your response to my email below is misleading and deceiving...Given the above circumstances, I have a good faith belief that the Union has acted capriciously, discriminatorily and in bad faith. The UFT has colluded with the DOE and derelicted its duty of fair representation by agreeing to the conditions of the UFT Award that violate constitutional and labor laws such as allowing the DOE to unilaterally separate employees without due process, as well as coercing the unvaccinated employees to get the jab regardless of their sincerely held religious beliefs, medical conditions, natural immunity, bodily autonomy and privacy rights. Justice for the unvaccinated has not been served and relief is warranted. In God I trust!*"

**PLAINTIFF'S OUTREACH TO THE UFT SEEKING SUPPORT FOR THE UNVACCINATED EMPLOYEES AS OPPOSED TO ADVOCATING FOR NON-UNION RELATED CAUSES**

302. Unions are known for engaging and supporting causes that do not benefit the members directly. The UFT continues to take positions and endorse contentious causes that affect the

community but are not necessarily union issues. It has failed to take a strong stance or release a statement in support of the unvaccinated employees. Under the Equal Protection Clause of the Fourteenth Amendment, differential treatment between the vaccinated and unvaccinated members is wrong and illegal. I asked the UFT to advocate on behalf of the unvaccinated employees who have been placed on LWOP and/or terminated, but my requests fell on deaf ears.

303. **On January 12, 2022**, Mr. Mulgrew sent me a letter via email referenced "Post-Event Thank you – UFT's telephone town hall on Wednesday, Jan, 12, 2022" thanking me for participating in the UFT's telephone Town Hall held on that date. In his letter, vaccination was encouraged but the issue of the unvaccinated members was not discussed although the UFT was aware of our personal struggles and constitutional and labor rights violations by the DOE. An announcement titled "**Help survivors of the Bronx fire**" with instructions to donate to the UFT Disaster Relief Fund was included in the email. [**Moody Ex. 57 of Charging Party's Rebuttal to UFT's Position Statement**].

304. **On February 5, 2022,** I sent an email to Mr. Mulgrew regarding the UFT's telephone Town Hall held on January 12, 2022. I denounced the UFTs failure to address the issue of the unvaccinated employees who had been placed on LWOP. I also asked for UFT intervention and advocacy on behalf of the unvaccinated members.

305. **On April 8, 2022**, the UFT sent me an email referenced "UFT Update: News and Information for NYC Educators" providing updated COVID-19 information and asking for aid to Educators from Ukraine. I was asked to send aid to fellow educators in Ukraine during that humanitarian crisis by giving to Education International through the UFT Disaster Relief Fund. [**Moody Ex. 69 of Charging Party's Rebuttal to UFT's Position Statement**].

306. **On April 9, 2022**, I responded to Mr. Mulgrew's email. I asked that the UFT help the unvaccinated DOE employees whose livelihoods and professional careers had been destroyed by the DOE's adverse employment actions. [**Moody Ex. 69 of Charging Party's Rebuttal to UFT's Position Statement**].

307. **On June 2, 2022**, Mr. Mulgrew sent me an email regarding the UFT launching an End Gun Violence campaign. The email reads in part: "*We will be out in force at the June 11 March for Our Lives rally to make our voices heard. The recent mass shootings in Buffalo and Uvalde have left us heartbroken and angry all over again. As educators, we've been here too many times before: mourning for the victims, grappling with what to say to our students in the wake of a terrible tragedy and facing our own fears about safety in our schools and our streets.*" **On June 3, 2022**, I sent the following email to UFT officials in response to the End Gun Violence posting: "*Dear Mr. Mulgrew: When is the UFT going to take a stand in favor of the unvaccinated employees who have been unlawfully placed on unpaid leave and terminated from their employment? Is the UFT planning to rally on their behalf so their voices can be heard?*" [**Moody Ex. 81 of Charging Party's Rebuttal to UFT's Position Statement**].

308. **On June 19, 2022,** after the UFT released a list of political endorsements, I sent the following email to Mr. Mulgrew and other UFT officials: "*According to a recent email sent to UFT members, the NYSUT has endorsed Democrat candidates who are running for office in New York State in the 2022 elections without polling the membership beforehand. Please see link:*

*https://www.uft.org/get-involved/uft-political-action/political-endorsements*. **[Moody Ex. 82 and 100 of Charging Party's Rebuttal to UFT's Position Statement]**.

309. *It is unfortunate that the UFT is backing political candidates who have shown support for the unconstitutional COVID-19 vaccine mandates that have destroyed the livelihoods and professional careers of the honest unvaccinated employees…As a matter of fairness and respect, the UFT should stop the practice of engaging in political campaigns and must focus instead on causes that benefit all members, whether vaccinated or unvaccinated. They should not endorse candidate Upon information and belief, this is not the first time that UFT members express concerns about the political endorsement of candidates without consulting with the membership. Please see link below:*
*http://iceuftblog.blogspot.com/2008/06/uft-political-endorsements-becoming.html?m=1*

310. *After discussing this important issue with fellow union members, I am suggesting that the UFT convene a meeting with the participation of the entire membership to address the political endorsement of candidates from now on.*"

311. **On June 24, 2022**, the UFT posted a statement on its Facebook and Instagram pages after the United States Supreme Court released its final decision in Dobbs v. Jackson Women's Health Organization. **[Moody Ex. 84 of Charging Party's Rebuttal to UFT's Position Statement]**. It reads: "*Our history as union members reminds us that we must continually fight to protect the rights we deserve. We are outraged at the U.S. Supreme Court's decision to overturn Roe v. Wade. We as Americans should have the freedom and power to make our own decisions about our bodies and our lives. We must fight for legislation to protect safe and legal access to abortion in all 50 states.*" *See*
https://www.facebook.com/uftny/posts/pfbid0FY5J5wVTQd9pUTqHVgkbZctGX9AN9c8tKw66r9ruKkfdjhzZqr7VXCHtU5czZXMHl?comment_id=729136288171413&notif_id=1656711790279657&notif_t=feed_comment_reply&ref=noti.

312. **On June 25, 2022,** I sent an email to Mr. Mulgrew and other UFT officials regarding the UFT's statement posted on its social media. [**Moody Ex. 84 of Charging Party's Rebuttal to UFT's Position Statement**]. I wrote: "*I believe the Court's ruling has been misconstrued by many people and misinformation has been spread through different media outlets. It is my understanding that the Court's decision makes the case for the lives of the unborn babies by returning this issue to the individual states. Those who want abortion still have a choice and will be able to get them, legally and safely. Thus, all 50 states are now free to make their own abortion laws so untold numbers of vulnerable lives will be saved, all of them who would have a place in this world and contribute to society."… I would like to reflect on President Ronald Reagan's quote: "I've noticed that everyone who is for abortion has already been born." I hope the pro-abortion advocates reflect on President Reagan's quote as well. Would they be alive had their mothers aborted them*?" **The UFT was "OUTRAGED"** that Roe v. Wade was overturned on June 14, 2022, but there was no such outrage on August 24, 2021 when Health Commissioner Chokshi and Mayor Bill de Blasio mandated the vaccines for DOE personnel.

313. **On July 21, 2022,** I sent an email to Mr. Mulgrew and other UFT officials denouncing the May 25, 2022 Delegate Assembly's overwhelmingly approval of resolutions in support of issues that are not important to all members but failing to address the concerns of the

unvaccinated employees. I requested fair union representation regardless of vaccination status. [**Moody Ex. 90 of Charging Party's Rebuttal to UFT's Position Statement**].

314. **On August 23, 2022,** I sent an email to Mr. Andrew Pallotta regarding the NYSUT's political endorsements. [**Moody Ex. 100of Charging Party's Rebuttal to UFT's Position Statement**]. It reads: *"According to the email you sent me on August 23, 2022 at 7:16 AM, the NYSUT has endorsed Democrat candidates who are running for office in New York State in the 2022 elections without polling the membership beforehand. (Please see your email below)*

315. *Upon information and belief, the main role of the unions is to negotiate with companies, corporations and other organizations contracts on behalf of their members to improve their working conditions, wages and benefits. It is unfortunate that the NYSUT is backing political candidates who have shown support for the unconstitutional COVID-19 vaccine mandates that have destroyed the livelihoods and professional careers of the unvaccinated employees who have been discriminated against because of their sincerely held religious beliefs, medical conditions, natural immunity, bodily autonomy and privacy rights.*

316. *The NYSUT should not pressure or coerce the members to vote for one particular party. As you know, the NYSUT is comprised of members who identify themselves with different political parties. It is unfair that the Teachers' Unions continue to discriminate against the members who do not sympathize or support your selected Democrat party candidates and their liberal/radical left agendas. As a matter of fairness and respect, the NYSUT should stop the practice of engaging in political campaigns and must focus instead on causes that benefit all members, whether vaccinated or unvaccinated.*

317. *Upon information and belief, this is not the first time that NYSUT members express concerns about the political endorsement of candidates without consulting with the membership. Please see link below:* http://iceuftblog.blogspot.com/2008/06/uft-political-endorsements-becoming.html?m=1

318. *After discussing this important issue with fellow union members, I am suggesting that the NYSUT convene a meeting with the participation of the entire membership to address the political endorsement of candidates from now on. I am looking forward to your response at your earliest convenience.*" UFT officials were included as recipients of this email.

## THE POLITICIZATION OF THE COVID-19 PANDEMIC AND MARGINALIZATION OF THE UNVACCINATED

319. There is evidence showing that we have been misled by health authorities, the mainstream media and politicians worldwide when it comes to the handling of the COVID-19 pandemic. Claims that "unvaccinated people are virus super-spreaders" are pretextual and have been debunked. Scientific research and existing data from the CDC show that there are no differentiations between a person's vaccination status since breakthrough infections can occur even in the vaccinated. The reality is that a person's vaccination status does not stop the spread of COVID-19; while it may lower the effects of the virus, it does not significantly stop the spread of the illness. See https://www.youtube.com/watch?v=M7ka2eUwwWc. Studies have revealed adverse events following COVID-19 vaccination as fully vaccinated and boosted people have contracted COVID-19, many have died and others have suffered side effects or permanent injuries. [**Moody Ex. 97 and 109 of Charging Party's Rebuttal to UFT's Position Statement**].

320. **On August 11, 2021**, the CDC provided new guidance to help the public better protect themselves and understand their risk. However, the UFT has not shown support for the unvaccinated members but has fervently advocated for the educators who allegedly used fake vax cards.

321. **On August 17, 2022**, CDC Director Rochelle Walensky made a remarkable acknowledgment of her agency's failures during the COVID-19 pandemic as she delivered a message. She addressed staff about the plan to overhaul the agency, following an internal review which found that the CDC's handling of the COVID-19 pandemic fell short of the crisis. *See* https://digital.abcaudio.com/news/cdc-director-acknowledges-mistakes-staff-internal-message

**THE CITY, DOE, DOHMH, OLR AND UFT FAILED TO COMPLY WITH PLAINTIFF'S FOIL-FOIA REQUESTS**

322. In an attempt to obtain tangible evidence, I sought the production of official records from the City of New York, NYC DOE, DOHMH, Office of Labor Relations ("OLR") and UFT. I asked for the production of discovery materials stemming from the COVID-19 vaccine mandate. I filed **FOIL-FOIA Requests on February 20, 2022, May 14, 2022, September 25, 2022, September 26, 2022 and October 3, 2022. [Moody Ex. 63, 74, 76, 77, 89, 103, 105, 113 and 114 of Charging Party's Rebuttal to UFT's Position Statement**].

323. I have been denied full access to the requested records. The DOE and OLR are the only agencies that partially responded to my requests. The other agencies have been non-compliant. It appears that Respondents are deliberately withholding information that might be incriminatory.

**THE CITY FAILED TO COMPLY WITH PLAINTIFF'S NOTICES OF CLAIM**

324. **On May 5, 2022,** I filed Notices of Claim and demand against the City of New York, DOE, DOHMH, School District 29, Eric Adams, Bill de Blasio, David Banks, Meisha Porter, Ashwin Vasan, Dave Chokshi and Beverly Mitchell with the Comptroller of the City of New York, as required by New York State law for their willful actions. *See* https://codes.findlaw.com/ny/general-municipal-law/gmu-sect-50-h/.

325. The Notices of Claim were served via certified mail. **[Moody Ex. 75 of Charging Party's Rebuttal to UFT's Position Statement].** The City has **90 days** from receiving the Notice of Claim to hold a 50-H hearing, regardless of whether a lawsuit has been filed yet. Twenty two (22) months have passed, and I have not received an acknowledgment. **A 50-H Examination of Claims hearing has not been scheduled**, requiring sanctions.

**CONCLUSION**

326. Based on the totality of the facts as presented, I have viable discrimination and retaliation claims that should proceed to adjudication on the merits. I seek orders directing the EEOC to investigate my Charge of Discfrimination against the DOE and UFT; direction that the DOE reinstate me to my position I previously held with backpay and benefits; declaring that I am a victim of disparate treatment as I was treated differently than the vaccinated employees; declaring that I was unlawfully placed on leave without pay and subsequently terminated;

declaring that the DOE failed to serve me with a Final Notice of Placement on Leave Without Pay, Charge, Notice of Determination of Probable Cause and/or Notice of Employment Termination prior to my forced separation from my job; declaring that the DOE and UFT acted in derogation of Education Law §§ 3020 and 3020-a and denied me due process of law; declaring that the Health Order mandating COVID-19 vaccines for DOE employees is unconstitutional; declaring that the DOE failed to process my request for a religious exemption; declaring that the City derelicted its duty to negotiate with the unions in good faith; declaring that the UFT derelicted its duty of fair representation by not pursuing my Step 2 grievance on my placement on leave without pay and failing to file other grievances; declaring that the DOE violated the City's EEO Policy; declaring that the Respondents failed to produce official records; declaring that the Respondents violated Education Law § 3020; declaring that Respondents failed to process my request for a 3020-a Hearing; annulling the Respondents' determination which placed me on Leave Without Pay; declaring that the UFT Award was not enforceable after its expiration on June 30, 2022; declaring that Arbitrator Martin Scheinman had no statutory and contractual authority to impose COVID-vaccines as a requirement or condition of employment; declaring that Arbitrator Martin Scheinman was not a neutral party; declaring that the Respondents did not comply with the provisions in the UFT Award when processing requests for medical and religous exemptions or accommodations; declaring that the Respondents failed to serve me with pre- and post-termination notices.

327. For the foregoing reasons, I pray and respectfully request that this Court intervene upon full consideration of my claims, material facts and convincing evidence (including various emails and reports) incorporated into the record so a judgment can be entered in my favor. It is necessary to take action to right the wrong that was done against me and similarly situated employees, and that I have such other and further relief as this Court may deem just and proper. I am to be made whole in all ways. I will continue to suffer irreparable harm if relief is not granted. I am seeking "equal access to justice." In God I Trust!

Respectfully submitted by:

Aura Moody

Aura Moody

**Dated**: Queens, New York, April 30, 2024

**Attachments**: Moody Ex. **1 - 21**