**UNITED DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AURA MOODY, | Case 1:24-cv-03320 (RA)(KHP) |
| Plaintiff, | |
| v. | **AFFIRMATION IN OPPOSITION** |
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al*. | |
| Defendants. | |

I, Aura Moody, plaintiff pro se, **OPPOSE** defendants' Notice of Motion to Dismiss and Memorandum of Law in Support; being duly sworn, deposed and say:

### STATEMENT REGARDING EEOC

For many employees like the Plaintiff, the EEOC is our last hope to get justice. In a situation such as the involuntary placement on leave without pay and subsequent termination under a local government, such as has occurred in the City of New York, and the City government's unwillingness to mete out justice, has been and continues to be disheartening and cruel. The same is true for the New York State government, that continues to support the mass terminations of workers in NYC and NYS that occurred under the NYC Covid-19 vaccine mandate.

Given that both city and state governments were complicit in the unlawful terminations, the last resort would be the federal government, in this case the EEOC. If the EEOC is saying that it cannot aid NYC workers, and that only federal workers can appeal, then that would be **unequal treatment under the law**. That would mean that the EEOC, knowing that the NYC and NYS governments are failing the unvaccinated workers of NYC, is choosing to not stop NYC's unconstitutional and labor rights violations. Plaintiff is seeking equal access to justice. In God She Trusts!

### PRELIMINARY STATEMENT

1.      EEOC showed bias towards Plaintiff by refusing to pursue charges regarding her complaint on the grounds of natural immunity, religious employment discrimination and retaliation with

evidence (see Complaint) against the New York City Department of Education (hereafter known as DOE) and the United Federation of Teachers (UFT). Although Plaintiff filed charges against both her employer and union (see Exhibits 1 of the Complaint), the EEOC initially proceeded to only investigate her charge against the DOE in March 2021 **(see Exhibit 1)**.

2.      It wasn't until Plaintiff reached out to the Office of Field Programs/Field Management Program (OFPFMP) in November 2023, that the EEOC proceeded to investigate her charge against the UFT (**see Exhibits 1, 2 and 3**).

3.      The Equal Employment Opportunity Commission (EEOC) has a long history of pursuing charges regarding complaints of religious employment discrimination, such as in an EEOC Religious Discrimination Lawsuit in September 2023 against United Healthcare Services, Inc. for violation of Title VII of the Civil Rights Act of 1964 after it denied an employee's request for a religious exemption from the company's COVID-19 vaccine requirement, **see EEOC v. United Healthcare Services, Inc**., Case No. 2:23-cv-03010-MHW-KAJ **(see Exhibit 12)**; and in an EEOC Religious Discrimination Lawsuit in July 2024 against nationwide retailer Hank's Furniture resulting in a $110,000 fine for violating the Title VII prohibition on religious discrimination after it denied an employee's request for a religious exemption from the company's COVID-19 vaccine requirement, **see EEOC v. Hanks Furniture, Inc**., Case No. 3:23-cv-24533 (**see Exhibit 14**).

4.      EEOC failed to apply the same standards used for religious discrimination in similar Circumstances **(see Exhibits 12 and 14)**.

5.      The denial of Plaintiff's request for a religious exemption constitutes a breach of contract by the DOE and UFT. Plaintiff was a union employee and as such, was subject to collective bargaining agreements between the DOE and UFT (**see Exhibit 13**).

6.      As a Bilingual School Social Worker, Plaintiff performed her job entirely remotely since

the 2020-2021 School Year (see Exhibit 10 and 24). Plaintiff's job duties did not require her to enter the school building or meet face-to-face with students or their parents/guardians (**see Exhibit 11**). There was no undue hardship on the part of the DOE (**see Exhibits 15, 16 and 17**).

7.     Pursuant to local, state and federal law, the City, as an employer, has an obligation to provide reasonable accommodations to employees, unless to do so would cause undue hardship (**see Exhibit 15**).

8.     Plaintiff requested an accommodation to work remotely as a remedy for not receiving the COVID-19 vaccine, as working remotely is a longstanding benefit resulting from a collective bargaining agreement between the DOE and UFT (**see Exhibit 6**). Remote work is routinely authorized by the DOE for UFT employees, yet Plaintiff's request was not even processed, in retaliation for non-compliance regarding the unconstitutional COVID-19 vaccine mandate (**see Exhibit 24**)

9.     Plaintiff filed an EEOC complaint in NYC where she resides, where Defendants DOE and UFT reside, where she works and is employed, and for reasons not explained or justified to Plaintiff, with the only possible reason being to seriously delay any EEOC investigation of Plaintiff's complaint of employment discrimination and retaliation, her EEOC complaint was transferred from the New York District Office to the Miami District Office, and then transferred to the San Juan Local Office in the country of Puerto Rico (**see Complaint Exhibits 1, 2 and 3**).

10.    Defendant Luis Calzada, EEOC Investigator from the San Juan Local Office, regarding Plaintiff's charge of employment discrimination against the DOE, which was never investigated by the New York District Office, apparently recommended that her charge be dismissed without thorough investigation due to their "limited resources" while writing "you could not safely perform the essential functions of a teacher while unvaccinated" (**see Complaint Exhibit 4**) not knowing

that:

•     Mr. Calzada never contacted the Plaintiff prior to rendering his decision,

•     Mr. Calzada did not investigate Plaintiff's charge against the UFT,

•     Mr. Calzada refused to analyze and interpret Plaintiff's evidence, which included more than 100 exhibits which debunked the DOE's position statement,

•     Mr. Calzada never presented to Plaintiff a position statement from the UFT,

•     Mr. Calzada never presented any evidence from the DOE and UFT,

•     Mr. Calzada failed to secure a rebuttal of the UFT's position statement from Plaintiff, if there was any,

•     Mr. Calzada claimed Plaintiff is a teacher, yet she is a Social Worker,

•     Mr. Calzada never demanded evidence from the DOE and UFT to substantiate the claims that Plaintiff could "not safely perform the essential functions of a teacher while unvaccinated",

•     Mr. Calzada did not realize that Plaintiff had not been served with a final notice of leave without pay or termination notice, which are required prior to separation,

•     Mr. Calzada did not take into consideration that Plaintiff was placed on leave without pay while awaiting a decision on her requests for medical and religious exemptions,

•     Mr. Calzada did not take into consideration that the DOE blocked Plaintiff's email account on October 15, 2021, while she was on unpaid leave (**see Exhibit 26**),

•     Mr. Calzada failed to recognize DOE has allowed its employees to work remotely for decades as part of a longstanding collective bargaining agreement.

11.     The only action Defendant Luis Cazada should have taken is to properly transfer Plaintiff's complaint to EEOC New York District Office for investigation.

12.     Based on the wrong EEOC Office being assigned her complaint, an Office in another country which has "limited resources", may not be aware that DOE employees are granted the right to work remotely and is not even aware that Plaintiff is not a teacher.

13.     Plaintiff emailed and called Defendant William Sanchez, Director of San Juan Local

Office, and requested reconsideration, which he denied, without admitting that her complaint was improperly transferred to a Local Office in San Juan, Puerto Rico (**see Exhibit 1**).

14.     Plaintiff emailed and called the EEOC National Office hotline on November 17, 2023, requesting reconsideration and an investigation and was issued incident #231117-000150 (**see Exhibit 1**).

15.     Plaintiff emailed and called Gwendolyn Hoy in the New York EEOC Office, and she told her that the investigator in her case (Defendant) Luis Calzada from San Juan Local Office. never contacted Plaintiff (**see Exhibit 1**).

16.     Plaintiff called the EEOC National Office in Washington, DC and spoke to Mercedes Casasola, who told Plaintiff that she was going to speak to a supervisor. Ms. Casasola later stated to Plaintiff that the New York EEOC Office was directed to reopen her charges (**see Exhibit 1**).

17.     New York Office EEOC Investigator Madeline McGrath was assigned Plaintiff's charges, and she only investigated Plaintiff's charge against the UFT, and dismissed Plaintiff's case, without admitting that her complaint was improperly transferred to a Local Office in San Juan, Puerto Rico (**see Complaint, Exhibit 11**).

18.     Plaintiff then emailed and called Defendant Alexander Aldeshanko, Supervisory Investigator in the New York EEOC Office, requesting reconsideration and an investigation of the EEOC personnel who mishandled her case. Mr. Aldeshanko denied without admitting that her complaint was improperly transferred to a Local Office in San Juan, Puerto Rico (**see Exhibit 3**).

19.     Plaintiff requested from Defendant Alexander Aldeshanko an appeal and an investigation of the process, and he denied both (**see Exhibit 3**).

20.     Defendant Alexander Aldeshanko told Plaintiff personally and also put in writing that the EEOC only has an appeal procedure for federal employees, which is not equitable and must be

changed (**see Exhibit 3**).

21.     EEOC failed to initially pursue Plaintiff's charge against the UFT entirely and refused to include Plaintiff's charge of age discrimination against both DOE and UFT.

22.     Plaintiff faxed and emailed a Notice of Appeal/Petition-Complainant to the EEOC National Office, and Plaintiff has never received a reply (**see Exhibit 4**).

<div align="center">

**PROCEDURAL BACKGROUND**

</div>

23.     The policy requiring that all City workers and contractors show one time proof of vaccination or a negative COVID-19 test once every seven day (City's vax-or-test were issued by the Commissioner of the New York City Department of Health and Mental Hygiene (DOHMH) Dave Chokshi on July 27, 2021 (**see Exhibit 18**).

24.     On August 24, 2021, Health Commissioner Dave Chokshi issued a Health Order that changed the "City's vax-or-test policy" announced by Mayor Bill de Blasio for all public employees to a "vaccine only" for DOE personnel (see Exhibit 19). This happened while the Municipal Labor /committee and its constituent unions were negotiating the implementation of the vax-or-test policy for all City employees (**see Exhibits 19 and 21**).

25.     **The Health Commissioner Dave Chokshi's August 24, 2021 Health Order was deemed "legally defective"** as it did not provide for accommodations and due process. (**see Complaint; Charging Party's Rebuttals to UFT and DOE's Position Statements**).

26.     The August 24, 2021 Health Order also did not provide for exemptions or accommodations, and the UFT Award limited the exemptions to certain religions (**see Exhibit 19**).

27.     The August 24, 2021 Health Order led to the creation of the UFT Award on September 10, 2021 mandating COVID-19 vaccines for DOE employees and contractors (**see Complaint, Exhibit 1**).

28.    **This Health Order mandating COVID-19 vaccines for DOE employees was rescinded by NYC on September 15, 2021**, as it did not provide for reasonable accommodations, nor did it address matters of due process with regard to job and benefit protections (**see Exhibit 20**).

29.    **On September 15, 2021**, **Health Commissioner Chokshi cured the error by rescinding and amending the August 24, 2021 Order** clarifying that "6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."  (**see Exhibit 20**). However, **the UFT Award was not amended to reflect those changes**.

30.    Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the September 10, 2021 UFT Award limited the exemptions to certain religions, on September 21 and October 27, 2021, approximately 15 DOE employees filed two separate lawsuits against, inter alia, the DOE in the United States District Court for the Southern District of New York, but they were denied relief.

31.    On November 15, 2021 , the Second Circuit Motions Panel determined that the UFT Award issued under the August 24, 2021 Health Order was "constitutionally suspect " as the DOE employees who unsuccessfully sought religious exemptions pursuant to the UFT Award were not given broad consideration that adheres to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law.

32.    The Second Circuit ordered accommodations be considered for all sincerely held religious observances, practices and beliefs, and the Plaintiffs were granted temporary interim relief until the matter is decided by the Merits Panel.

33.    The DOE agreed to extend this same relief to similarly situated DOEE employees who were not named Plaintiffs, **see Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et a**l , Docket No. 21-2678-cv, 21-2711-cv., 19 F. 4th 152, at 162.

**OPENING STATEMENT**

34.    The Plaintiff's complaint stems from being unlawfully placed on leave without pay and subsequently terminated by the DOE for non-compliance with the unconstitutional COVID-19 vaccine mandate, a vaccine which has now been demonstrated to not be safe and effective, to not stop transmission, and to not prevent reinfection of COVID-19 **(see Exhibits 27 and 28)**. Plaintiff was not served with a final notice of placement on leave without pay, charge or termination notice (**see Exhibit 29**).

35.    The Health Commissioner issued an order requiring DOE employees and contractors to provide proof of vaccination for the 2021-22 School Year.

36.    Following the announced vaccine mandate for DOE employees, the UFT, the bargaining unit for teachers and other DOE employees, filed a Declaration of Impasse with the Public Employment Relations Board (PERB). After days of discussions, an independent labor mediator appointed by PERB issued a decision establishing (1) a process for DOE employees to request exemptions and accommodations through SOLAS…; (2) DOE's authority to place unvaccinated employees who did not have exemptions on LWOP; (3) options for employees to sign a waiver and separate from service with certain benefits, or extend their LWOP; and (4) DOE's authority to unilaterally separate from service employees who failed to comply with the vaccination mandate (**see Complaint Exhibit 1**).

37.    This "independent labor mediator" in 2021 was Martin Scheinman, but his lack of independence is belied by a 2013 campaign fundraiser invitation which states:

> "Laurie & Marty Scheinman…cordially invite you to an event in support of Bill de Blasio Democratic Candidate for Mayor of NYC Thursday, October 3, 2013 6:30pm-8:30pm Scheinman Residence 225 Fifth Avenue, Apt 2J, New York, NY"

38.    This invitation from the future mediator was sent to big donors in support of then Mayoral

candidate Bill de Blasio, who later created an unconstitutional COVID-19 vaccine mandate on the Plaintiff and tens of thousands of other employees of NYC (**see Exhibit 30**).

39.    The UFT Award which included the COVID-19 mandate was not signed by either the UFT and the DOE. It was only signed by Arbitrator Martin Scheinman, which renders it unenforceable. Furthermore, the UFT Award was not ratified by the union membership.

40.    The City of New York fired its union employees, including the Plaintiff and her fellow teachers, healthcare workers, paramedics, firefighters, police officers, sanitation workers, among others, for properly refusing a COVID-19 vaccine mandate for a vaccine, which at that time, had only been granted an Emergency Use Authorization (EUA) by the FDA, knowing a mandate for an EUA vaccine is unconstitutional and therefore unenforceable, in addition to knowing this EUA vaccine does not prevent transmission, also making this vaccine mandate unconstitutional and therefore unenforceable. Plaintiff also has natural immunity.

41.    Senior Pfizer executive Janine Small admitted this EUA vaccine did not stop transmission when she testified before the European Union Parliament on October 10, 2022. Dutch MEP Rob Roos asked Janine Small, "Was the Pfizer Covid vaccine tested on stopping the transmission of the virus before it entered the market? If not, please say it clearly. If yes, are you willing to share the data with this committee? And I really want a straight answer, yes or no, and I'm looking forward to it."

42.    Janine Small replied, "Regarding the question around, um, did we know about stopping the immunization before it entered the market? No.", **see News.Com.Au article** 'Pfizer did not know whether Covid vaccine stopped transmission before rollout, executive admits' by Frank Chung on October 13, 2022.

43.    The person who played a major role in crafting the aforementioned city's vaccine order,

Dr. Jay K. Varma, who was City Hall's Senior Health Adviser and NYC COVID Czar under then-Mayor de Blasio (de Blasio was Mayor 2014-2021).

44.    NYC COVID-19 Czar Jay K. Varma boasted about harassing people into submission over the vaccine mandate, **see NY Post article** "Ex-NYC COVID czar fired from job after copping to drug-fueled sex parties during pandemic" dated September 23, 2024 written by Aneeta Bhole.

45.    Dr. Jay K. Varma recently acknowledged that he attended sex and dance parties during the peak of the COVID-19 pandemic, openly disregarding all COVID policies and mandates without repercussion, **The Hill article** "Former NYC COVID-19 czar admits attending sex, dance parties amid pandemic social distancing" by Lauren Irwin - 09/20/24, and The Hill article "De Blasio 'shocked' by report on COVID czar partying during lockdowns" by Filip Timotija – 09/20/24.

46.    NYC Department of Education employees, on the other hand, who did not provide proof of vaccination for the 2021-22 school year due to religious or medical objections, suffered severe repercussions, such as the Plaintiff who was unlawfully placed on leave without pay, and finally was terminated, without even being served with a final notice of leave without pay, a charge or a termination notice (**see Exhibits 25, 29 and 31**).

47.    The article written by Lauren Irwin states "Varma was part of crafting the city's vaccine policies…"

48.    The article written by Filip Timotija states "Former New York City Mayor Bill de Blasio said he was shocked…I had no knowledge of it…I find it disgusting and unacceptable."

49.    Dismissal of this complaint is not appropriate, as the corruption surrounding NYC COVID-19 Czar Jay K. Varma, who played a major role in crafting the COVID-19 vaccine mandate is novel and worthy of further judicial review.
https://www.cbsnews.com/newyork/news/dr-jay-varma-nyc-health-advisor-sex-parties-pandemic/ https://rss.com/podcasts/louder-with-crowder/1664807/

50.     Defendant UFT abdicated its duty of fair representation to its members by agreeing to the implementation of the unenforceable UFT Award because the UFT and DOE did not sign it, and by not assisting its members, including the Plaintiff, in the filing of exemptions; pursuing a claim before SAMS for improper implementation as per the UFT Award; advancing a Step 2 Grievance for improper placement on leave without pay, filing a Special Grievance upon the expiration of the UFT Award or filing an Article 75 (**see Exhibits 5, 6, 7, 8, 9, 30, 31, 36 and 37**).

51.     Further complicating the religious exemptions processes were some people were granted religious exemptions while most were not, leading to the charge by many DOE members that some religions were favored over other religions, which is discriminatory and unconstitutional **(see Exhibit 32**), Gothamist article "City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees" by Sophia Chang and Jessica Gould – September 24, 2021 where former NYC Mayor De Blasio is quoted: "De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science and Jehovah's Witnesses…" (**see Exhibit 33**).

52.     Defendant DOE also retaliated against unvaccinated DOE personnel like Plaintiff by placing a "scarlet letter" known as a "Problem Code" in their files, without their consent or knowledge in violation of UFT collective bargaining agreements (**see Exhibit 34**). This code unjustly prevented educators from finding employment, even outside of New York City.

53.     In 2023, Congressman Nick Langworthy sent a letter to Chancellor David Banks asking for explanations as to why teachers were unjustly punished. The letter was signed by nine New York congressional representatives (**see Exhibit 35**). No official from New York City has ever responded. No one from the Mayor Adams administration has even attempted to give an explanation whatsoever. And the man who headed NYC Schools, David Banks, who recently retired, is now facing allegations that he gave Eric Adam's girlfriend a promotion for a no-show

job worth over $221,000 a year.

54.    NYC Council's Common Sense Caucus has recently called for all fired unvaccinated NYC workers to be reinstated to their original positions due to recent revelations, but Mayor Adams has publicly refused to pay any attention to any evidence offered to him.

55.    With the recent exposure of the many lies told by former NYC COVID-19 Czar Dr. Jay Varma, it has been revealed the original architect of NYC's vaccine mandates was a complete fraud. Undercover video has revealed that Dr. Varma was 100% aware that vaccine mandates were completely unnecessary due to natural immunity. Plaintiff has natural immunity (**see Exhibit 5**).

56.    Using the fruit from the poisonous tree doctrine, if the evidential "tree" is tainted, so is its "fruit", and the evidential tree the Defendants are using, NYC COVID-19 Czar Dr. Jay K. Varma, who boasted about harassing people into submission over the vaccine mandate is surely tainted, which makes the denial of the Defendants' motion to dismiss improper.

## LEGAL STANDARD

57.    Federal Rule of Civil Procedure 12(b)(1) the plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." **Giamatteo v. Newton**, 452 F. App'x. 24, 27 (2d Cir. 2011). The plaintiff has easily met this burden.

58.    Federal Rule of Civil Procedure 12(b)(6) states a complaint must contain "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009).

59.    This complaint, with numerous documentary evidence, contains enough facts to state a claim of relief that is plausible on its face.

## DEFENDANTS' ARGUMENTS

60.    ARGUMENT I : Plaintiff's employment discrimination claims should be dismissed. Defendants argue EEOC has sovereign immunity and also argue discrimination claims filed against individuals should be dismissed because "Title VII, ADEA, the RA nor the ADA provide for individual liability."

61.    In other words, agencies and individuals named in the complaint claim cannot be held accountable in the U.S. District Court. Plaintiff disagrees with this assessment. No individual is unaccountable and above the law.

62.    The EEOC chose not to pursue Plaintiff's valid charge although it has pursued similar Charges of Discrimination against employers in other states in the same time period (**see Exhibits 12, 13 and 14**).

63.    ARGUMENT II : Plaintiff's Section 1981 claims should be dismissed. Defendants claim EEOC and federal officers have "immunity" from § 1981 violations. Plaintiff also disagrees with this assessment. No defendant is immune from civil rights violations. demonstrated that she is a member of a protected class in her complaint, a claim not investigated by the EEOC.

64.    The EEOC failed to apply the same standards of review as in other jurisdictions such as the review of the Teleworker who was denied a religious exemption to the COVID-19 vaccine requirement by United Healthcare Services in Ohio (see ¶3).

65.    ARGUMENT III : Plaintiff fails to state a claim under Bivens. Defendants claim plaintiff "has not sufficiently alleged the personal involvement of any of the individual EEOC investigators in the alleged constitutional violation."

66.    Plaintiff has sufficiently alleged the personal involvement of all individual EEOC investigators and supervisors, as described in her complaint and other supporting documents.

Plaintiff spoke with EEOC investigators and supervisors, Plaintiff emailed EEOC investigators and supervisors and they returned her emails. Plaintiff provided EEOC investigators and supervisors with monumental evidence of employment discrimination, and EEOC investigators and supervisors refused to handle her charge and denied her appeals (**see Complaint and other supportive evidence in the record).**

67.     ARGUMENT IV : Plaintiff's HIPAA claims should be dismissed. Defendants claim DOE and UFT coercing her into COVID-19 vaccination is not a violation of her medical privacy. Plaintiff disagrees and has fully explained this claim in her complaint and other supporting documents.

68.     ARGUMENT V : Plaintiff's contract claims should be dismissed. Defendants claim that Plaintiff was not "in privity of contract with any of the Defendants" while disregarding the fact that she was a member of a union and therefore personally subject to collective bargaining contracts and agreements between the UFT and DOE.

69.     The EEOC failed to demand that the DOE and UFT comply with the legal standards and employer liability applicable to employment discrimination and retaliation claims under the federal and state laws enforced by the EEOC.

70.     ARGUMENT VI : Plaintiff's claims under State and Local law should be dismissed. Defendants claim immunity for EEOC regarding discrimination claims. Plaintiff disagrees with this assessment. No Defendant is immune from civil rights violations. Defendants also claim no individual Defendants actually participated in the conduct giving rise to a discrimination claim. Plaintiff disagrees and has demonstrated the defendants' participation in her complaint.

## CONCLUSION

71.     Plaintiff believes that the EEOC was biased and discriminated against her, requiring remedy. Please refer to Plaintiff's EEOC Charge of Discrimination, the DOE's Position Statement, Charging Party's Rebuttal to the DOE's Position Statement, Charging Party's Rebuttal of the UFT's Position Statement, Right to Sue Letters and other relevant evidence that have been previously submitted.

72.     The EEOC failed to apply the same standards used for religious and age discrimination in similar cases.

73.     The EEOC's actions against Plaintiff are clear violations of her constitutional and labor rights, resulting in a miscarriage of justice that needs to be corrected by this Court.

74.     Plaintiff has demonstrated subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and has stated a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

75.     For the reasons detailed above, denial of the Defendants' Motion to Dismiss is appropriate, as a matter of law, because the causes of action in the complaint are unequivocally and sufficiently pleaded and assert viable and legally cognizable claims.

76.     In response, the Defendants lack any meaningful rebuttal - particularly at this pre-discovery stage when the Plaintiff's allegations must be accepted as true and afforded every possible favorable inference.

77.     While the Defendants attempt to argue the equities, those arguments are premature, irrelevant and factually incorrect - further illustrating that dismissal is unwarranted, particularly when material issues of fact remain in dispute.

78.    After accepting the complaint's allegations as true, and affording the Plaintiff every possible favorable inference, the Defendants' conclusory claim that the Plaintiff lacks any cause of action falls woefully short.

79.    The Plaintiff has properly demonstrated subject matter jurisdiction and has stated several proper claims, and therefore requests this Court deny the Defendants' Motion to Dismiss.

**Dated**:  Queens County, NY

      November 25, 2024

_____
Aura Moody
112-26 197 Street
Saint Albans, NY 11412
quinonesmoody@aol.com
(347) 248-5208

cc: via email

DANIELLE J. MARRYSHOW
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2689
danielle.marryshow@usdoj.gov
Attorney for the Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

AURA MOODY,                                    Case 1:2024-cv-03320 (RA)(KHP)
                        Plaintiff,
v.                                             **AFFIRMATION OF SERVIC**E

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et al.                 Hon. Katharine H. Parker
                        Defendants.
_____

I, Aura Moody, declare under penalty of perjury that I served a copy of the attached

AFFIRMATION IN OPPOSITION with exhibits by emailing a true copy of

same to the following person on November 25, 2024:

Danielle J. Marryshow
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Phone: (212) 637-2689
danielle.marryshow@usdoj.gov
Attorney for the defendants

**Dated:** Queens County, NY
        November 25, 2024

A facsimile or electronic signature on this document  shall have the same effect as an original
signature.

Aura Moody
112-26 197 Street
Saint Albans, NY 11412
 quinonesmoody@aol.com
 (347) 248-5208

## LIST OF EXHIBITS

**Moody Ex. 1** - EEOC Incident No. 230928-000254 Requesting Reconsideration, EEOC Charge No. 520-2022-01233

**Moody Ex. 2** - EEOC Incident No. 230928-000254 Requesting Reopening from OFPFMP, EEOC Charge No. 520-2022-01233 [Incident_ 231129-000758]

**Moody Ex. 3** - EEOC Reconsideration Request, EEOC Charges No. 520-2024-02267 and 520-2022-01233

**Moody Ex. 4** - EEOC Notice of Appeal-Complaint on Dismissal of Charges dated 4-19-2024, EEOC Charges No. 520-2024-02267 and 520-2022-01233

**Moody Ex. 5** - Letter to HR Connect Appealing the Denial of Application for Medical Exemption dated 9-27-2021

**Moody Ex. 6** - Letter to HR Connect on Medical Exemption Challenging LWOP and Asking for Remote Work dated 10-6-2021

**Moody Ex. 7** - Letter to Chancellor Porter-Application for Religious Exemption to COVID-19 Vaccine Mandate date 11-21-2021

**Moody Ex. 8** - Email to Michael Mulgrew Asking to File Special Grievance on COVID-19 Vaccine Mandate dated 11-29-2021

**Moody Ex. 9** - Letter from Aura Moody-UFT to Kim Hill Asking to Arrange a Conference to Discuss Step 1 Grievance dated 11-30-2021

**Moody Ex. 10** - Emails between Raul Garcia and Aura Moody on New Guidance for itinerant Employees due to COVID-19 from 9-13-2020 to 9-15-2020

**Moody Ex. 11** - Email from Andrea Bishop to Queens South Staff-Guidance on Special Education Meetings for the 2021-22 School Year dated 9-24-2022

**Moody Ex 12** - Email Regarding United Healthcare Services Sued by EEOC for Religious Discrimination dated 9-20-2023

**Moody Ex. 13** – Email Regarding Urbana School District No, 116 to Pay $206, 301 in EEOC Age Discrimination Lawsuit dated 4-17-2024

**Moody Ex. 14** – Email Regarding Hank's Furniture to Pay $110,000 in EEOC Religious Discrimination Lawsuit dated 7-18-2024

**Moody Ex. 15** - Affirmation of Eric Eichenholtz on MLC v City of New York F19,769 in Response to FOIL Request 2-9-2022

**Moody Ex. 16** - NYCCHR Guidance for Employers on Equitable Implementation of COVID-19 Vaccine dated 12-15-2021

**Moody Ex. 17** - NYCCHR Guidance on Vaccination Accommodations for Workers Per Order of Health Commissioner dated 12-20-2021

**Moody Ex. 18** – NYC Health Commissioner Dave Chokshi Letter to All City Employees on Vax-or-Test Policy dated 7-27-2021

**Moody Ex. 19** - NYC Health Commissioner Dave Chokshi Order on COVID-19 Vaccination for DOE Employees dated 8-24-2021

**Moody Ex. 20** - NYC Health Commissioner Dave Chokshi Orde Rescinding Previous Health Order on COVID-19 Vaccination dated 9-15-2021

**Moody Ex. 21** - Press Release from Office of Mayor Bill de Blasio Regarding Vax-or-Test Policy for All City Employees dated 7-26-2021

**Moody Ex. 22** - Letter to NYC Officials from Municipal Labor Committee dated 8-12-2021.

**Moody Ex. 23** - Letter to NYC Officials from Municipal Labor Committee on Vax-or-Test Policy for All City Employees dated 8-17-2021

**Moody Ex. 24** - Email to Chancellor Porter Challenging LWOP and Denial of Medical Exemption 10-29-2021

**Moody Ex. 25** - Letter to Chancellor Porter on Medical-Religious Exemptions LWOP Blocked Email and SOLAS Deficiencies dated 11-30-2021

**Moody Ex. 26** - Email from Aura Moody to Ellie Engler Informing her Email Account Has Been Blocked dated 10-15-2021.

**Moody Ex. 27** - Notice of Leave Without Pay Issued to Aura Moody by the DOE dated 10-2-2021.

**Moody Ex. 28** - Email from Aura Moody to Michael Mulgrew Asking that the UFT File Emergency Motion to Stop Termination of Unvaccinated Employees dated 2-8-2022

**Moody Ex. 29** - Email from Aura Moody to Michael Mulgrew Asking that the UFT File Emergency Motion to Stop Termination of Unvaccinated Employees dated 2-8-2022

**Moody Ex. 30** - Scheinman Fundraising Invite for Bill de Blasio dated 10-3-2013

**Moody Ex. 31** - Letter from LeRoy Barr to Aura Moody Informing that the Ad Com Committee Decided Not to Proceed with Step 2 Grievance 4-25-2022

**Moody Ex. 32** - Stacie Tedesco's Letter Giving Aura Moody Permission to Share her FOIL Documents 7-15-2022 to 7-18-2022.

**Moody Ex. 33** - Gothamist Article-City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees - Gothamist dated 9-24-2021

**Moody Ex. 34** - Emails between Gene Mann and Aura Moody Regarding OPI-Problem Code and Asking for Investigation 10-8-2021 to 5-23-2022

**Moody Ex. 35** - Letter to Chancellor David Banks from NY Congress Members Regarding Problem Code dated 6-23-2023.

**Moody Ex.  36** - Emails Between Aura Moody and David Campbell on Expired UFT Award and Asking for Reinstatement of Unvaccinated Members 6-30-2022 to 7-13-2022.

**Moody Ex. 37** - AdCom Committee Decision on Step 1 Grievance Regarding Inability to Apply for Per Session during 2021-2022 School Year dated 12-7-2023

Re: Incident: 230928-000254 , EEOC Charge No. 520-2022-01233

From: quinonesmoody@aol.com (quinonesmoody@aol.com)

To: ofpfmp@eeoc.gov; info@eeoc.gov

Date: Wednesday, November 29, 2023 at 03:11 PM EST

To Whom It May Concern:

This is a follow up to my voice mail message left on your voice mail - (202) 921-3210 - a few minutes ago. I am reaching out to inquire about the status of my request.

Respectfully,

Aura Moody

On Tuesday, November 21, 2023 at 10:57:05 AM EST, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Dear Ms. Mercedes Casasola:

I would like to know whether you received my email. I hope it was sent to the correct address.

Attached please find the letter that I addressed to Mr. William Sanchez on September 15, 2023 (without Exhibits) regarding my request to reopen my charge.

Below is a link about the COVID-19 vaccine requirement for military personnel. The unlawfully fired employees are being reinstated.

https://youtu.be/i5VxuhGEbig?si=uxdQ9_vACNSwko4c

I also need to be reinstated as I was discriminated against and unlawfully terminated. I am struggling financially and emotionally.

I am not sure if the email that I sent to you on November 20, 2023 was received by your office. Therefore, I am including the main email for EEOC as a recipient of this instant email in the event you did not receive it. Please acknowledge receipt of my correspondence.

Thank you for you attention and consideration in this matter!

Sincerely,

Aura Moody

**Attachment:**   Statement of Facts and Arguments on COVID-19 Vaccine Mandate Dated 9-15-2023 for EEOC Charge

On Mon, Nov 20, 2023 at 12:45 PM, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Dear Ms. Mercedes Casasola:

As per our telephone conversation held on November 20, 2023, I am forwarding to you some of the emails that I have sent to the EEOC requesting that my charge be reopened.

To recap, on October 2, 2021, I was unlawfully placed on leave without pay while my application for a medical exception to the COVID-19 vaccine requirement was pending a decision, in contravention of the law. On November 21, 2021, I applied for a religious exemption, but I have not received a response from the DOE. I was allegedly terminated from my employment on February 11, 2022, but I have not been served with a final notice of placement on leave without pay nor with a termination notice since my DOE email account was blocked on October 15, 2021, and it was never restored despite my timely notification to the DOE and UFT. As a tenured pedagogue, on February 9, 2022, I requested a 3020-a hearing, which was expected to be processed within 60 days, but I have not even received an acknowledgement. I asked to work remotely while a decision on my applications for medical and religious exemptions were pending, but my request was not considered. I will provide more details about my case if deemed appropriate. Please let me know if you need additional information.

I would also like to bring to the attention of the EEOC that I initially filed charges against the DOE and UFT. However, my charge against the UFT has not been processed. I have already submitted documents regarding this matter. A claim about age discrimination also needs to be addressed.

As per our telephone conversation held this morning, I will not attach my evidence since it is already in the record. However, I am including the case of the United Healthcare Services dated September 20, 2023, which refers to a case similar to my situation. As a Bilingual School Social Worker, I was not required to have face-to-face contact with the students and parents/guardians I worked with. Furthermore, I worked remotely before I was unlawfully placed on unpaid leave. I voluntarily submitted weekly COVID-19 tests to the DOE and UFT since the time I was unlawfully placed on unpaid leave until January 2022 proving that I was not contagious. **Equal application of the law has not taken place in my case. Justice has not been served!**

I am seeking justice. Thank you in advance for reopening my case. In God I Trust!

Respectfully,

Aura Moody

----- Forwarded Message -----
**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**To:** EEOC - I I G <info@eeoc.gov>; GWENDOLYN HOY <gwendolyn.hoy@eeoc.gov>; WILLIAM SANCHEZ <william.sanchez@eeoc.gov>; LUIS CALZADA <luis.calzada@eeoc.gov>
**Cc:** ashraf.ahmed@eeoc.gov <ashraf.ahmed@eeoc.gov>; madeline.mcgrath@eeoc.gov <madeline.mcgrath@eeoc.gov>; EEOC Digital Support <digitalsupport@eeoc.gov>; eeoc@updates.eeoc.gov <eeoc@updates.eeoc.gov>; fedenews@eeoc.gov <fedenews@eeoc.gov>
**Sent:** Friday, November 17, 2023 at 11:32:17 AM EST
**Subject:** Re: Incident: 230928-000254 , EEOC Charge No. 520-2022-01233

To Whom It May Concern:

Please be advised that, this morning (November 17, 2023), I called the EEOC at (800) 669-4000 to inquire about the status of my charge, my request for reconsideration and my

request for an investigation on the handling of my charge. I spoke with a gentleman who identified himself as Willie. Upon listening to my concerns/grievances, he instructed me to call the Office of Field Programs/Field Management Program at (202) 921-3210 for further assistance. I immediately called that number, but nobody answered the phone so I left a message on the voice mail. He issued the Incident No. 231117-000150.

I am looking forward to hearing from the EEOC as soon as possible. I am seeking justice and equal treatment under the law!

Sincerely,

Aura Moody

On Friday, November 17, 2023 at 09:47:12 AM EST, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

To Whom It May Concern:

I am reaching out to the EEOC to inquire about the status of my case. As part of my due and equal process rights, I am entitled to a response and action.

Sincerely,

Aura Moody

On Thursday, September 28, 2023 at 11:13:40 AM EDT, EEOC - I I G <info@eeoc.gov> wrote:



**Response**

Thank you for contacting the United States Equal Employment Opportunity Commission.  This automated response confirms receipt of your inquiry and is not intended to address your specific questions.  For those of you wishing to file a charge of employment discrimination, please note that there is a time limit of either 180 or 300 days to file a charge, depending on a number of factors.  If you want to begin the process, you can use our online assessment tool at [US EEOC](US EEOC) .  You can not file a charge via email.  We will respond to your specific questions as quickly as possible.

**Subject**

**Document Added to EEOC Charge 520-2022-01233 / Documento Agregado a la Queja/Querella 520-2022-01233**

**Auto-Response By (Administrator)** (09/28/2023 10:13 AM)

Thank you for contacting the United States Equal Employment Opportunity Commission. This automated response confirms receipt of your inquiry and is not intended to address your specific questions. For those of you wishing to file a charge of employment discrimination, please note that there is a time limit of either 180 or 300 days to file a charge, depending on a number of factors. If you want to begin the process, you can use our online assessment tool at US EEOC . You can not file a charge via email. We will respond to your specific questions as quickly as possible.

---

**Customer By CSS Email (Aura Moody)** (09/28/2023 10:13 AM)

Please be advised that when I called earlier this morning, Crystal provided me with the Incident No. 230928000118.
Aura Moody
On Thursday, September 28, 2023 at 11:03:40 AM EDT,
quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:


To Whom It May Concern:
I am calling to follow up on my request to reopen my charge, as well as for an investigation as to they way how my case was handled by the Puerto Rico Regional Office.
On September 28, 2023, I called the EEOC at (800) 669-4000 and spoke with Crystal about my requests. In addition, I would like to know why the UFT has not submitted a Position Statement from the UFT since I included both the DOE and UFT as respondents when I filed my charge on March 3, 2022. Please refer to the attached emails that I exchanged with Ms. Madeline McGrath on March 3, 2022 for additional information and action.
I strongly believe that justice has not been served. Therefore, I am again requesting that my charge against the DOE and UFT be reopened, that an investigation on the handling of my charge be conducted, and that I be provided with the UFT's Position Statement. I also want to see the evidence that the DOE and UFT have submitted to the EEOC for my perusal and dispute as deemed necessary.
Thank you in advance for your prompt response!
Sincerely,
Aura Moody
Attachment
On Wednesday, September 27, 2023 at 12:12:43 AM EDT,
quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Dear Mr. William Sanchez:

Please be advised that I have not received a response to the email that I sent you on September 20, 2023.

Sincerely,

Aura Moody

On Wednesday, September 20, 2023 at 11:05:40 AM EDT, [quinonesmoody@aol.com](mailto:quinonesmoody@aol.com) <[quinonesmoody@aol.com](mailto:quinonesmoody@aol.com)> wrote:

Dear Mr. William Sanchez:

Attached please find the email that I received from the EEOC on September 20, 2023 regarding the case filed by the United States Equal Employment Opportunity Commission against United Healthcare Services for religious exemption discrimination due to the COVID-19 vaccine mandate. See Moody Ex. 20.

I would like the United Healthcare Services case to be considered when processing my request to reopen my charge for reconsideration, as per my email to you dated September 14, 2023. Upon reviewing the grounds for the EEOC to sue United Healthcare Services, I find that my case is similar to the Telecommuter since my job duties do not require face-to-face contact with the parents/guardians and students I work with. Furthermore, I worked during the 2020-2021 school year virtually. After I was denied due process and unlawfully placed on Leave Without Pay on October 4, 2021, I submitted to the DOE and UFT the results of my negative COVID-19 test results up to January 4, 2022 on a weekly basis showing that I was not a health threat to others, but I was completely ignored. My requests  to work remotely pending a decision on my applications for medical and religious exemptions were neither considered nor acknowledged..

I strongly believe that I would be a subject of discrimination and differential treatment by the EEOC if my charge is not reopened given the similarities of these cases. In addition, the merits of my charge are irrefutable given the particularities of my case and the fact that the Respondents did not submit any evidence demonstrating undue hardship. Please refer to my statements of facts, arguments and evidence that I have previously submitted to the EEOC to substantiate my request to reopen my charge for reconsideration.

Thank you in advance for incorporating this document into the record of my charge.

Please confirm receipt of this email and its attachment.

Sincerely,

Aura Moody

Attachment: Moody Ex. 20
On Friday, September 15, 2023 at 10:56:40 PM EDT,
quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Here are the remaining Exhibits.
Aura Moody
On Friday, September 15, 2023 at 10:53:19 PM EDT,
quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Dear Mr. Sanchez:
Thank you for sending me your letter dated September 15, 2023.
With all due respect, I disagree with some of your statements. I have
not been provided with any evidence from the NYC Department of
Education and United Federation of Teacher to substantiate their
claims. The DOE's Position Statement consisted of inaccurate
allegations and was not supported by any evidence whereas my
rebuttal was supported by tangible evidence. As part of my due
process, I am entitled to review the evidence that they have against
me, and it did not happen. The evidence that I submitted was not
properly reviewed in order to make a sound and fair decision, based
on the preponderance of evidence. Therefore, I am respectfully
requesting that my charge be reopen for reconsideration, as per my
email below.
Attached please find my Statement of Facts and Arguments on
COVID-19 Vaccine Mandate dated September 15, 2023 along with 19
Exhibits for your perusal and action. Due to the size of the
documents, I will send them in two separate emails.
I an looking forward to the reopening of my charge, as a matter of
law, I disagree with the issuance of a right to sue letter. I would also
like a change of jurisdiction.
Thank you in advance for your attention and consideration in this
matter,
Sincerely,
Aura Moody
Attachments
On Friday, September 15, 2023 at 09:25:30 AM EDT, WILLIAM
SANCHEZ <william.sanchez@eeoc.gov> wrote:

Mrs. Moody:

Please see attach letter.

William R. Sanchez

Director

San Juan Local Office

525 FD Roosevelt Ave.

Ste. 1202

San Juan, PR 00918

Tel. 787-520-5629

william.sanchez@eeoc.gov

www.eeoc.gov

From: quinonesmoody@aol.com <quinonesmoody@aol.com>
Sent: Thursday, September 14, 2023 5:57 PM
To: WILLIAM SANCHEZ <WILLIAM.SANCHEZ@EEOC.GOV>
Cc: LUIS CALZADA <LUIS.CALZADA@EEOC.GOV>; INFO
<info@eeoc.gov>; gwendolyn.hoy@eeoc.com; ASHRAF AHMED
<ASHRAF.AHMED@EEOC.GOV>
Subject: Re: Document Added to EEOC Charge 520-2022-01233 /
Documento Agregado a la Queja/Querella 520-2022-01233

| |
You don't often get email from quinonesmoody@aol.com. Learn why
this is important
| |

| |
CAUTION: The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails tophishing@eeoc.gov.
|

SENT VIA EMAIL AND FAX No. (787) 771-1485

September 14, 2023

Mr. William Sanchez

Regional Director

San Juan Local Office

Equal Employment Opportunity Commission

Re:   EEOC Charge No. 520-2022-01233

Dear Mr. Sanchez:

Considering that I had not received a response to my emails below, on September 14, 2023, I called the office in Puerto Rico at (787) 520-5614/(787) 520-5627 and left three (3) messages on the voice mail,

but nobody got back to me. At this point, I called the national office at (800) 669-4000 and spoke with Donna from the New Jersey office. She told me that my case had been closed on September 7, 2023 by Investigator Luis Calzada. As per my emails below, I have not seen the documents that were reportedly sent to me on September 7, 2023 because I could not access my account on the EEOC Public Portal.

In light of the above, I am reaching out to you to express my discontent with the way how my case was handled, as well as to request the reopening of my charge to reexamine the evidence that I believe was incorrectly analyzed by the Investigator, a person who never contacted me to discuss the allegations in my charge and failed to objectively review the monumental evidence that I had submitted to EEOC in order to substantiate my claims against the New York City Department of Education and United Federation of Teachers. This is a travesty of justice!

Please be advised that I have requested that this matter be escalated for an investigation by the pertinent authorities due to the procedural errors and legal flaws in handling my case. It is unconceivable and suspicious that my case was closed without contacting me and giving weight to the preponderance of evidence. Donna provided me with the Reference No. 230914-000645. Justice has not been served. In God I Trust!

Thank you in advance for your prompt attention and consideration to this important matter. I am including Mr. Luis Calzada and other EEOC officials as recipients of this email, which I will sign and subsequently send to your office via facsimile for formally processing of my request to reopen the charge.

Sincerely

.

Aura Moody

Charging Party

On Thursday, September 14, 2023 at 03:47:25 PM EDT, quinonesmoody@aol.com < quinonesmoody@aol.com> wrote:

I am trying to get in contact with the EEOC. Please get back to me at (347) 248-5208. Thanks!

Aura Moody

On Thursday, September 14, 2023 at 08:40:31 AM EDT, quinonesmoody@aol.com < quinonesmoody@aol.com> wrote:

Hi Gwendolyn:

Can you please provide an answer to my emails below? Thanks!

Aura Moody

----- Forwarded Message -----

11/23/24, 4:04 AM AOL Mail - Re: Document Added to EEOC Charge 520-2022-01233 / Documento Agregado a la Queja/Querella 520-2022-01233

Case 1:24-cv-03320-RA-KHP Document 45 Filed 11/25/24 Page 31 of 172

From:quinonesmoody@aol.com <quinonesmoody@aol.com>

To:ashraf.ahmed@eeoc.gov <ashraf.ahmed@eeoc.gov>

Sent: Thursday, September 14, 2023 at 08:29:15 AM EDT

Subject: Fw: Document Added to EEOC Charge 520-2022-01233 / Documento Agregado a la Queja/Querella 520-2022-01233

Hi Mr. Ashraf Ahmed:

I retrieved the email below on September 14, 2023, but I was not able to retrieve it. Can you please provide me with the name and phone number of the person handling my charge? Thanks!

Aura Moody

----- Forwarded Message -----

From:quinonesmoody@aol.com <quinonesmoody@aol.com>

To: EEOC <no-reply@service.eeoc.gov>

Sent: Thursday, September 14, 2023 at 12:32:52 AM EDT

Subject: Re: Document Added to EEOC Charge 520-2022-01233 / Documento Agregado a la Queja/Querella 520-2022-01233

I was not able to retrieve this document. Please assist!

Aura Moody

11/23/24, 4:04 AM AOL Mail - Re: Document 3245000254 filed to charge No. 520-2022...

Case 1:24-cv-03320-RA-KHP    Document 45    Filed 11/25/24    Page 32 of 172

On Thursday, September 14, 2023 at 12:18:12 AM EDT, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

I just saw this email. I will check and get back to you.

Aura Moody

On Thursday, September 7, 2023 at 10:07:44 AM EDT, EEOC <no-reply@service.eeoc.gov> wrote:

|

|

U.S. Equal Employment Opportunity Commission

|

A new document was added to EEOC Charge No. 520-2022-01233, Ms. Aura A. Moody v. New York City DEPARTMENT OF EDUCATION. To view it, sign-in to theEEOC Public Portal.

Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact info@eeoc.gov and destroy all copies of the original message and attachments.

Se ha agregado un nuevo documento a la queja/querella de la EEOC, número 520-2022-01233, Ms. Aura A. Moody v. New York City DEPARTMENT OF EDUCATION. Para verlo, inicie sesión en el Portal Público de la EEOC.

Este correo electrónico es una notificación oficial de la Comisión para la Igualdad de Oportunidades en el Empleo (EEOC, por sus siglas en inglés) con respecto a la queja/querella 520-2022-01233. Por favor, no responda a este correo electrónico.

Aviso de confidencialidad: La información contenida en este correo electrónico puede contener información privilegiada y confidencial, incluida información protegida por las leyes de privacidad federales y estatales. Está destinada únicamente al uso de la(s) persona(s) nombrada(s) anteriormente. Si usted no es el(la) destinatario(a) previsto(a), se le notifica que cualquier revisión, difusión, distribución o duplicación de esta comunicación está estrictamente prohibida y puede ser ilegal. Si usted no es el(la) destinatario(a) previsto(a), póngase en contacto con nosotros eninfo@eeoc.gov y destruya todas las copias del mensaje original y los archivos adjuntos.

MOODY EX. 2

## Incident: 230928-000254 , EEOC Charge No. 520-2022-01233 [Incident: 231129-000758]

From: EEOC - I I G (info@eeoc.gov)

To: quinonesmoody@aol.com

Date: Monday, December 11, 2023 at 09:36 AM EST

---

 Recently you requested personal assistance from our on-line support center. Below is a summary of your request and our response. We hope we have answered your questions or referred you to the appropriate place to have your questions answered.
*To access your question from our support site, click here*

**Subject**

**Incident: 230928-000254 , EEOC Charge No. 520-2022-01233**

| Response By Email (Inquiry) (12/11/2023 08:36 AM) |
|---|

Thank you for contacting us.

It appears that you have included the general contact info@eeoc.gov with your correspondence to EEOC Staff/ The information will be stored at the EEOC as a matter of record only. Please feel free to contact us at anytime if you require additional assistance.

Alternatively, you may call us at

San Juan Local Office
525 FD Roosevelt Ave
Plaza Las Americas Ste 1202
San Juan, PR 00918
Direct Dial: 787-520-5627
or 787-520-5619
Fax: 787-771-1485

Sincerely,

U.S. Equal Employment Opportunity Commission

| Customer By CSS Email (Aura Moody) (11/29/2023 02:11 PM) |
|---|

To Whom It May Concern:
This is a follow up to my voice mail message left on your voice mail - (202) 921-3210 - a few minutes ago. I am reaching out to inquire about the status of my request.

Respectfully,
Aura Moody


On Tuesday, November 21, 2023 at 10:57:05 AM EST,
quinonesmoody@aol.com wrote:


Dear Ms. Mercedes Casasola: I would like to know whether you
received my email. I hope it was sent to the correct address. Attached
please find the letter that I addressed to Mr. William
Sanchez on September 15, 2023 (without Exhibits) regarding my
request to reopen my charge. Below is a link about the COVID-19
vaccine requirement for military personnel. The unlawfully fired
employees are being reinstated. https://youtu.be/i5VxuhGEbig?
si=uxdQ9_vACNSwko4c I also need to be reinstated as I was
discriminated against and unlawfully terminated. I am struggling
financially and emotionally. I am not sure if the email that I sent to
you on November 20, 2023 was received by your office. Therefore, I
am including the main email for EEOC as a recipient of this instant
email in the event you did not receive it. Please acknowledge receipt
of my correspondence. Thank you for you attention and
consideration in this matter! Sincerely, Aura Moody Attachment:
Statement of Facts and Arguments on COVID-19 Vaccine Mandate
Dated 9-15-2023 for EEOC Charge On Mon, Nov 20, 2023 at 12:45
PM, quinonesmoody@aol.com wrote:
Dear Ms. Mercedes Casasola: As per our telephone conversation held
on November 20, 2023, I am
forwarding to you some of the emails that I have sent to the EEOC
requesting that my charge be reopened. To recap, on October 2,
2021, I was unlawfully placed on leave without pay while my
application for a medical exception to the COVID-19 vaccine
requirement was pending a decision, in contravention of the law. On
November 21, 2021, I applied for a religious exemption, but I have
not received a response from the DOE. I was allegedly terminated
from my employment on February 11, 2022, but I have not been
served with a final notice of placement on leave without pay nor with
a termination notice since my DOE email account was blocked on
October 15, 2021, and it was never restored despite my timely
notification to the DOE and UFT. As a tenured pedagogue, on
February 9, 2022, I requested a 3020-a hearing, which was expected
to be processed within 60 days, but I have not even received an
acknowledgement. I asked to work remotely while a decision on my
applications for medical and religious exemptions were

pending, but my request was not considered. I will provide more details about my case if deemed appropriate. Please let me know if you need additional information. I would also like to bring to the attention of the EEOC that I initially filed charges against the DOE and UFT. However, my charge against the UFT has not been processed. I have already submitted documents regarding this matter. A claim about age discrimination also needs to be addressed. As per our telephone conversation held this morning, I
will not attach my evidence since it is already in the record. However, I am including the case of the United Healthcare Services dated September 20, 2023, which refers to a case similar to my situation. As a Bilingual School Social Worker, I was not required to have face-to-face contact with the students and parents/guardians I worked with. Furthermore, I worked remotely before I was unlawfully placed on unpaid leave. I voluntarily submitted weekly COVID-19 tests to the DOE and UFT since the time I was
unlawfully placed on unpaid leave until January 2022 proving that I was not contagious. Equal application of the law has not taken place in my case. Justice has not been served! I am seeking justice. Thank you in advance for reopening my case. In God I Trust! Respectfully, Aura Moody

----- Forwarded Message -----
From: quinonesmoody@aol.com To: EEOC - I I G ; GWENDOLYN HOY ; WILLIAM SANCHEZ ; LUIS CALZADA Cc: ashraf.ahmed@eeoc.gov ; madeline.mcgrath@eeoc.gov ; EEOC Digital Support ; eeoc@updates.eeoc.gov ; fedenews@eeoc.gov Sent: Friday, November 17, 2023 at 11:32:17 AM EST Subject: Re: Incident: 230928-000254 , EEOC Charge No. 520-2022-01233

To Whom It May Concern: Please be advised that, this morning (November 17, 2023), I called the EEOC at (800) 669-4000 to inquire about the status of my charge, my request for reconsideration and my request for an investigation on the handling of my charge. I spoke with a gentleman who identified himself as Willie. Upon listening to my
concerns/grievances, he instructed me to call the Office of Field Programs/Field Management Program at (202) 921-3210 for further assistance. I immediately called that number, but nobody answered the phone so I left a message on the voice mail. He issued the Incident No. 231117-000150. I am looking forward to hearing from the EEOC as soon as possible. I am seeking justice and equal treatment under the law! Sincerely, Aura Moody

On Friday, November 17, 2023 at 09:47:12 AM EST,
quinonesmoody@aol.com
wrote:

To Whom It May Concern: I am reaching out to the EEOC to inquire
about the status of my case. As part of my due and equal process
rights, I am entitled to a response and action. Sincerely, Aura Moody

On Thursday, September 28, 2023 at 11:13:40 AM EDT, EEOC - I I G
wrote:

**Question Reference # 231129-000758**

Date Created: 11/29/2023 02:11 PM
Date Last Updated: 12/11/2023 08:36 AM
Status: Closed

## Re: Reconsideration request 520-2024-02267 and 520-2022-01233

From:  quinonesmoody@aol.com (quinonesmoody@aol.com)

To:  alexander.adeshchenko@eeoc.gov

Date:  Saturday, April 20, 2024 at 12:59 AM EDT

Dear Mr. Alexander Adeshchenko:

Please be advised that I filed a Notice of Appeal/Petition-Complaint with the EEOC Office of Federal Operations on April 19, 2024.

Sincerely,

Aura Moody

> On Friday, April 19, 2024 at 02:45:34 PM EDT, ALEXANDER ADESHCHENKO <alexander.adeshchenko@eeoc.gov> wrote:
>
> Dear Ms. Moody,
>
> As I previously stated to you, EEOC complaint process does not provide an appeal procedure, except for Federal sector employees. Appeals | U.S. Equal Employment Opportunity Commission (eeoc.gov)
>
> Respectfully,
>
> Alexander Adeshchenko
>
> Supervisory Investigator
>
> Equal Employment Opportunity Commission
>
> New York District Office-Enforcement
>
> 33 Whitehall Street
>
> New York, NY 10004
>
> (929) 506-5312
>
> alexander.adeshchenko@eeoc.gov



**WARNING**: The information contained in this e-mail and any attachments (including, but not limited to, any attached e-mails) may be legally privileged and confidential. If you are not the addressee(s), or an employee or agent of the addresses(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

Parties may obtain status checks, upload and view documents via our portals:

Charging Parties:

https://publicportal.eeoc.gov

Respondents:

https://nxg.eeoc.gov/rsp/login.jsf

For assistance with the portals:

digitalsupport@eeoc.gov

1.800.569.7118

---

**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Thursday, April 18, 2024 5:13 PM
**To:** ALEXANDER ADESHCHENKO <ALEXANDER.ADESHCHENKO@EEOC.GOV>
**Subject:** Re: Reconsideration request 520-2024-02267 and 520-2022-01233

Dear Mr. Alexander Adeshchenko:

I am trying to file my appeal using the EEOC Public Portal, but I having difficulty doing so. Can you please assist? Thanks!

Aura Moody

On Monday, April 8, 2024 at 11:01:25 PM EDT, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

Thank you for the information, Adeshchenko!

Aura Moody

On Monday, April 8, 2024 at 12:06:33 PM EDT, ALEXANDER ADESHCHENKO <alexander.adeshchenko@eeoc.gov> wrote:

Dear Ms. Moody,

Here is our contact for process complaints:

**Equal Employment Opportunity Commission** **Joyce T. Willoughby, Inspector General**

131 M Street, N.E., Suite 6NE23M, Washington, D.C. 20507

**Main Phone Number:** (202) 663-4327

**Hotline Number:** (800) 849-4230

**Hotline Number:** FAX: (202) 221-7781

**URL:** https://oig.eeoc.gov/

Respectfully,

Alexander Adeshchenko

Supervisory Investigator

Equal Employment Opportunity Commission

New York District Office-Enforcement

33 Whitehall Street

New York, NY 10004

(929) 506-5312

alexander.adeshchenko@eeoc.gov



**WARNING**: The information contained in this e-mail and any attachments (including, but not limited to, any attached e-mails) may be legally privileged and confidential. If you are not the addressee(s), or an employee or agent of the addresses(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.


Parties may obtain status checks, upload and view documents via our portals:

Charging Parties:

https://publicportal.eeoc.gov


Respondents:

https://nxg.eeoc.gov/rsp/login.jsf


For assistance with the portals:

digitalsupport@eeoc.gov

1.800.569.7118


**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Monday, April 8, 2024 9:00 AM

**To:** ALEXANDER ADESHCHENKO <ALEXANDER.ADESHCHENKO@EEOC.GOV>
**Subject:** Re: Reconsideration request 520-2024-02267 and 520-2022-01233

Dear Mr. Alexander Adeshchenko:

Your statement "Only Federal sector employees can request an appeal under the EEOC investigation process" is discriminatory itself. If that is the case, the EEOC policies need to be reviewed. Your agency did not review my facts and evidence correctly; otherwise the outcome would have been different. I would like to contact the person who is above you.

There are numerous DOE employees who are also disappointed about the EEOC's decision not to investigate their cases, and they are also interested in contacting the person(s) above you as they have been discriminated against. Please provide the requested information.

Sincerely,

Aura Moody

On Monday, April 8, 2024 at 07:57:04 AM EDT, ALEXANDER ADESHCHENKO <alexander.adeshchenko@eeoc.gov> wrote:

Good morning Ms. Moody,

The Commission requested a "substantial **new** and relevant evidence", where you reiterated your previous arguments that were already considered by the Commission.  Only Federal sector employees can request an appeal under the EEOC investigation process; Appeals | U.S. Equal Employment Opportunity Commission (eeoc.gov)

Respectfully,

Alexander Adeshchenko

Supervisory Investigator

Equal Employment Opportunity Commission

New York District Office-Enforcement

33 Whitehall Street

New York, NY 10004

(929) 506-5312

alexander.adeshchenko@eeoc.gov



**WARNING**: The information contained in this e-mail and any attachments (including, but not limited to, any attached e-mails) may be legally privileged and confidential. If you are not the addressee(s), or an employee or agent of the addresses(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

Parties may obtain status checks, upload and view documents via our portals:

Charging Parties:

https://publicportal.eeoc.gov

Respondents:

https://nxg.eeoc.gov/rsp/login.jsf

For assistance with the portals:

digitalsupport@eeoc.gov

1.800.569.7118

---

**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Friday, April 5, 2024 2:19 PM
**To:** ALEXANDER ADESHCHENKO <ALEXANDER.ADESHCHENKO@EEOC.GOV>
**Cc:** MADELINE MCGRATH <MADELINE.MCGRATH@EEOC.GOV>
**Subject:** Re: Reconsideration request 520-2024-02267 and 520-2022-01233

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Dear Mr. Alexander Adeshchenko:

I insist that the EEOC made an error when rendering a decision on my charges. The decisions were contrary to law and the facts. I presented persuasive arguments and substantial and relevant evidence in support of my charges. However, the EEOC overlooked the evidence and misinterpreted the facts in evaluating your charge. Therefore, I am appealing your decision.

Sincerely,

Aura Moody

On Friday, April 5, 2024 at 01:38:25 PM EDT, ALEXANDER ADESHCHENKO <alexander.adeshchenko@eeoc.gov> wrote:

Dear Ms. Moody,

I hope this message finds you well.  During our phone conversation on March 25, 2024, I explained to you that as per established the Equal Employment Opportunity Commission (EEOC) reconsideration process, EEOC charge 520-2022-01233 Aura Moody v. NYC DOE was reviewed by San Juan field office with reconsideration letter issued to you on September 15, 2023,  by Director William Sanchez (attached).  EEOC charge 520-2024-02267 Aura Moody v. United Federation of Teachers was closed due to lack of jurisdiction by EEOC to address a breach of the duty of fair representation involving public sector employees/no employer-employee relationship.

EEOC has no obligation to reconsider the final findings we have issued on a charge. EEOC directors, therefore, may decline to review a request to reconsider an EEOC final finding unless the charging party presents substantial new and relevant evidence, or a persuasive argument that the EEOC's prior decision was contrary to law or the facts. Our review has determined that no appropriate evidence has been overlooked or misinterpreted in evaluating your charge.

On March 25, 2024, I invited you to submit evidence, as described above, that and which may have affected the outcome.  On April 4, 2024, you submitted a statement reiterating your previous position.

We regret your dissatisfaction with the results of the processing of your charge. Please be assured that we have reviewed your case and the information you provided. This information, however, would not

alter the final action taken on your charge. The final dismissal notice you received described your right to pursue the matter in court by filing a lawsuit within 90 days of your receipt of the dismissal notice. This 90-day period for filing a private lawsuit cannot be waived, extended, or restored by the EEOC.

Respectfully,

Alexander Adeshchenko

Supervisory Investigator

Equal Employment Opportunity Commission

New York District Office-Enforcement

33 Whitehall Street

New York, NY 10004

(929) 506-5312

alexander.adeshchenko@eeoc.gov



**WARNING**: The information contained in this e-mail and any attachments (including, but not limited to, any attached e-mails) may be legally privileged and confidential. If you are not the addressee(s), or an employee or agent of the addresses(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

Parties may obtain status checks, upload and view documents via our portals:

Charging Parties:

https://publicportal.eeoc.gov

Respondents:

https://nxg.eeoc.gov/rsp/login.jsf

For assistance with the portals:

digitalsupport@eeoc.gov

1.800.569.7118

---

**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Thursday, April 4, 2024 11:56 PM
**To:** ALEXANDER ADESHCHENKO <ALEXANDER.ADESHCHENKO@EEOC.GOV>
**Cc:** MADELINE MCGRATH <MADELINE.MCGRATH@EEOC.GOV>; FIELD MANAGEMENT
PROGRAMS OFP-FMP <ofpfmp@eeoc.gov>; INFO <info@eeoc.gov>
**Subject:** Re: Reconsideration request 520-2024-02267 and 520-2022-01233

Dear Mr. Alexander Adeshchenko:

I noticed that the email below that I sent to you this afternoon (April 4, 2024) was incomplete or unclear. Therefore, I am submitting the content of my email in a letter format for processing (**see attached**).

Sincerely,

Aura Moody

**Attachment**

On Thursday, April 4, 2024 at 03:08:27 PM EDT, quinonesmoody@aol.com <quinonesmoody@aol.com> wrote:

**Dear Mr. Alexander Adeshchenko:**

I strongly disagree with your decision. As per your email below, I was preparing my formal request for reconsideration, but you have decided to deny it this morning (April 4, 2024), before the deadline. I have a good faith belief that the Equal Employment Opportunity Commission (EEOC) has been biased and discriminated

against me when rendering its decisions. Please provide me with the name and contact information about the next level of appeal so I can continue seeking relief pursuant to the provisions of the United States Departments of Labor and Justice.

I am respectfully requesting that the Right to Sue letters issued by the EEOC against the United Federation of Teachers (EEOC Charge No. 520-2024-02267) and the New York City Department of Education (EEOC Charge No. 520-2022-01233) concerning my charges of employment discrimination be rescinded. The EEOC should proceed with the investigation of my charges in the interest of justice.

As the evidence in the record shows, the New York City Department of Education denied me a reasonable accommodation to the unconstitutional COVID-19 vaccine mandate upon my applications for medical and religious exemptions. Contrary to the provisions of the UFT Award issued on September 10, 2021 (which was developed under a "constitutionally suspect" Health Order issued on August 24, 2021), I was unlawfully placed on leave without pay while awaiting a decision on my application/appeal for a medical exemption. I was not afforded a legally sound appeal process on the denial of my application for a medical exemption. My application for a religious exemption based on my Catholic faith was not processed at all. As a **Catholic, I was not eligible to apply for a religious exemption in the beginning** as I did not meet the criteria established by Arbitrator Martin Scheinman and Mayor Bill de Blasio (**see below**). It was until the Second Circuit rendered a decision in the **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al** on November 15, 2021, following a successful challenge of the UFT Award on constitutional grounds, that employees like me felt encouraged to apply for a religious exemption, to no success. My request to work remotely was not addressed by the DOE although my position does not require face-to-face contact with the students and their parents/guardians, that I worked in-person during the 2021-2022 school year without being vaccinated, and that I voluntarily submitted my negative COVID-19 tests on a weekly basis to the DOE and UFT since the time that I was illegally placed on unpaid leave up until January 2022. I was not engaged in cooperative dialogue, as required by the City's EEO Policy. I was not served with a Final Notice of Leave Without Pay and/or Employment Termination Notice (documents that were allegedly served via email) since the DOE blocked my email account on October 15, 2021 while I was on unpaid leave and failed to restore it despite timely notification to my employer and union, etc.

**The Established Standards To Apply For Religious Exemptions Or Accommodations Pursuant To The UFT Award Were Discriminatory, Warranting EEOC Investigation And Action**

**Arbitrator Martin Scheinman and Mayor Bill de Blasio marginalized and discriminated against the religious beliefs** of employees who have religious objections to the vaccine mandate by establishing that requests be documented in writing by a religious official and that requests only be considered for certain religions.

**On page 9 of the UFT Award**, Arbitrator Martin Scheinman stipulated that "*Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source) or where the objection is personal, political, or philosophical in nature. Exemptions requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).*" *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

**On September 24, 2021**, Mayor Bill de Blasio "*imposed a strict policy on DOE employees who must show proof of at least one dose of a COVID19 vaccine by the end of Monday, September 27th. After legal challenges by unions representing DOE workers, the city was forced to carve out exemptions for medical or religious reasons. De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science and Jehovah's Witnesses, that have a history on this, of a religious opposition.*" *See* https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Rescinded by The City As It Did Not Provide For Reasonable Accommodations, Nor Did It Address Matters Of Due Process With Regard To Job And Benefit Protections**

The Health Commissioner Dave Chokshi's **August 24, 2021 Health Order** was deemed "legally defective" as it did not provide for accommodations and due process. [**Moody Ex 3**]. Upon the City realizing that the Health Order was unlawful, it was overturned and amended. *See https://*www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.
**On September 15, 2021,** Health Commissioner Chokshi cured the error by rescinding and amending the August 24, 2021 Order clarifying that "6. *Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.*" *See* https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Deemed "Constitutionally Suspect" By The United States Court Of Appeals for the Second Circuit**

Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the September 10, 2021 UFT Award limited the exemptions to certain religions, **on September 21 and October 27, 2021**, **approximately 15 DOE employees filed two separate lawsuits** against, *inter alia*, the DOE in the United States District Court for the Southern District of New York ("District Court"), but they were denied relief.

**On November 15, 2021**, **the Second Circuit Motions Panel determined that the UFT Award issued under the August 24, 2021 Health Order was "constitutionally suspect"** as the DOE employees who unsuccessfully sought religious exemptions pursuant to the UFT Award were not given broad consideration that adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law. Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the UFT Award limited the exemptions to certain religions, **the Second Circuit ordered that accommodations be considered for all sincerely held religious observances, practices and beliefs**, and the Plaintiffs were granted temporary interim relief until the matter is decided by the Merits Panel. The DOE agreed to extend this same relief to similarly situated UFT employees who were not named Plaintiffs. *See* **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al**, Docket No. **21-2678-cv, 21-2711-cv., 19 F. 4**[th] **152, at 162.**

**The UFT Award Is Plagued With Procedural Errors and Legal Flaws**
The UFT Award was developed and implemented arbitrarily, capriciously and in bad faith, in contravention of New York Civil Service Law $\mathcal{T}$ 209.3(f) because it was a binding arbitration award not sanctioned by the statutes in school district impasse negotiations. *See*
https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf

**The Arbitrator Exceeded His Authority By Not Providing Exemptions And Due Process For The Employees**

**The due process procedures guaranteed by New York Education Law $\mathcal{T}$ $\mathcal{T}$ 3020 & 3020-a are curtailed by the UFT Award.** **Article 22 of the CBA (c)** states: "*[An] arbitrator shall limit his decision strictly to the application and interpretation to the provisions of this Agreement and he shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law.*." State education laws demonstrate a desire to protect tenured teachers from being dismissed without a hearing once their competency has been demonstrated. *See* **Abramovich v Board of Education, 1978, 62 AD2d 252 [1978]**. Just to quote some irregularities: **The UFT Award was not signed by the parties**. It only has the signature of the arbitrator. **The UFT Award was not approved and ratified** by the union members. **The UFT Award discriminates and retaliates against certain employees**. **The UFT Award excludes per diem employees** who work less than twenty (20) hours per week from applying for medical and religious exemptions or accommodations although they pay their union dues. **The UFT Award excludes employees who have no objections** as it only provides exemptions for those employees with medical and religious exceptions, and it places everyone else in unpaid status without an opportunity to challenge the decision or be heard at all.

**The UFT Award violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, New York State Constitution, New York State Human Rights Law, New York State Education Law, New York State Public Health Law, New York State Civil Service Law, New York City Human Rights Law and the DOE-UFT Contract.**

**The UFT Award tramples upon the Constitutional freedom of religion granted by the First Amendment** as it requires that religious exemptions be documented in writing by a religious official, that requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccines, and that requests shall be only considered for recognized and established religious organizations such as Christian Scientists. The First Amendment says that "*everyone in the United States has the right to practice his or her own religion, or no religion at all.*"

Please refer to my Rebuttal Statement to the UFT's Position Statement dated February 9, 2024 and its accompanying 118 Exhibits containing tangible evidence in support of my claims. Below is the link for the Rebuttal to the UFT's Position Statement and the Exhibits combined into one document.

https://acrobat.adobe.com/id/urn:aaid:sc:US:9729a458-43fd-4391-9f42-37694df00fe5

11/23/24, 4:26 AM
Case 1:24-cv-03320-RA
Document 45
Filed 11/25/24
Page 49 of 172
AXH.html - Reconsideration Request EEOC 2024-025734 and 520-2022-01233

Also see my Statement of Facts and Arguments on COVID-19 Vaccine Mandate dated September 15, 2023 regarding the closing of my case by the San Juan Local Office, without me being contacted by Investigator Calzada. I strongly disagree with the EEOC's statement dated September 15, 2023 in response to my inquiry dated September 14, 2023, concerning my charge of employment discrimination filed with the EEOC against NYC Department of Education (EEOC Charge No. 520-2022-01233) that "*The evidence obtained by the EEOC in your case showed that you could not safely perform the essential functions of the position of teacher while unvaccinated. This would present an undue hardship and expose you and others to considerable risk.*" I was not provided with any evidence showing that my employer met its burden of proof, as required by the City's EEO Policy. On the other hand, the EEOC failed to share with me any evidence produced by the DOE and UFT supporting their allegations that I was not discriminated against because of my disability, religion and retaliation. This is a travesty of justice!

I believe that all the evidence and information I offered during the processing of my charges were not carefully considered before a final determination was made by the EEOC in the matter. I was not provided with any evidence nor given an opportunity to rebut the evidence offered by my employer and union, if any, to establish that the DOE met its burden of proof, as required by the City's EEO Policy and other regulations. Furthermore, the UFT did not provide any evidence advocating on my behalf to demand that the DOE comply with the law. The union remained silent rather than defending the unvaccinated members like me from discrimination and retaliation by the DOE. The union favored the vaccinated employees and the one who allegedly used fake vax cards to keep their jobs. This is flagrant discrimination, which is a ground for EEOC investigation.

Below are some links containing additional and new information/evidence about the discrimination that has been perpetrated against unvaccinated NYC workers like me.

The City of New York prioritizes illegal aliens over American Citizens.

[Mayor Adams Announces Expedited Sprint to Identify Asylum Seekers Eligible to Apply for Work Permits](#)

---

**Mayor Adams Announces Expedited Sprint to Identify Asylum Seekers Eligib...**

Mayor Adams Announces Expedited Sprint to Identify Asylum Seekers Eligible to Apply for Work Permits

---

https://ny1.com/nyc/all-boroughs/politics/2024/01/31/gov--hochul-approves-temporary-government-jobs-for-migrants

https://www.instagram.com/reel/CxCYnZQNRhW/

New York Mandate Podcast, Ep. 48: Social Worker Diane Pagen

---

**New York Mandate Podcast, Ep. 48: Social Worker Diane Pagen**

Aimee

"I love New York.": A conversation with a social worker, policy analyst, and native New Yorker who was removed f...

---

https://youtu.be/GAaHH0TaHu8?si=hCJMsWzRLnKc3F5Xhttps://nypost.com/2024/03/19/us-news/teachers-union-needs-to-help-nyc-recruit-talent-to-comply-with-class-size-law-mayor-adams/amp/

https://www.schools.nyc.gov/learning/special-education/supports-and-services/related-services/finding-an-independent-provider

ttps://www.nyc.gov/office-of-the-mayor/news/698-21/mayor-de-blasio-vaccine-mandate-new-york-city-workforce

https://www.cbsnews.com/amp/news/covid-vaccine-new-york-shake-shack-fries/.

**New York Mayor Bill de Blasio tempts New Yorkers with free fries: "Mmm, ...**

The New York mayor did what many would love to do on a work video call: chow down on fries and a burger.

Scratch-offs, beer and more: Here's the free stuff you can get with your NY COVID vaccine

**Scratch-offs, beer and more: Here's the free stuff you can get with your...**

New York will hand out $20 'Mega Multiplier' tickets next week, which comes with a chance at a top prize of $5 m...

**Scratch-offs, beer and more: Here's the free stuff you can get with your...**

New York will hand out $20 'Mega Multiplier' tickets next week, which comes with a chance at a top prize of $5 m...

https://www.fox5ny.com/news/free-cannabis-with-a-covid-shot-on-4-20-at-different-nyc-locations.amp

NYC Offers $100 Incentive to Get Booster Shot: De Blasio

MOODY EX. 4
SENT VIA FAX No. (202) 663-7022

 **U.S. Equal Employment Opportunity Commission**

# NOTICE OF APPEAL/PETITION – COMPLAINANT

**Management Directive 110**

TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information: (Please Print or Type)**

Complainant's name (Last, First, M.I.):
Moody, Aura A.

Home/mailing address:
112-26 197 Street

City, State, ZIP Code:
Saint Albans, NY 11412

Daytime Telephone # (with area code)
(347) 248-5208

E-mail address (if any):
Quinonesmoody@aol.Com

**Attorney/Representative Information (if any):**

N/A

Attorney name:

Non-Attorney Representative name:
Aura Moody, Pro Se

Address:
112-26 197 Street

City, State, ZIP Code:
Saint Albans, NY 11412

Telephone number (if applicable):
(347) 248-5208

E-mail address (if any):
Quinonesmoody@aol.com

**General Information:**

Name of the agency being

charged with discrimination:
United States Equal Employment Opportunity Commission

Identify the Agency's complaint number:
EEOC Charges No. 520-2022-01233/520-2024-02267

Location of the duty station or local facility
in which the complaint arose:
New York District Office/San Juan Local Office

Has a final action been taken by the agency,    ☑ Yes Date Received 3/21/2024 & 9/7/2023
an Arbitrator, FLRA, or MSPB on this             (Remember to attach a copy)
complaint?

                                    ☐ No

☐ This appeal alleges a breach of a settlement agreement

Has a complaint been filed on this same matter with the Commission, another agency, or through any other administrative or collective bargaining procedures?

☒ No

☐ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate)

Has a civil action (lawsuit) been filed in connection with this complaint?

☒ No

☐ Yes (Attach a copy of the civil action filed)

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the Commission Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the Commission and with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, submitted, or faxed to the Commission at the address above.

Please specify any reasonable accommodations you will require to participate in the appeal process:

Signature of complainant or complainant's representative:

*Aura Moody*

Date:
*April 19, 2024*

Method of Service on Agency:
*Fax # (202) 663-7022 and Email (ofpfmp@eea.gov)*

4/19/24, 10:53 AM

Case 1:24-cv-03320-RA-KHP    Document 45    Filed 11/25/24    Page 55 of 172
NOTICE OF APPEAL/PETITION - COMPLAINANT | U.S. Equal Employment Opportunity Commission

Date of Service:

## PRIVACY ACT STATEMENT ON REVERSE SIDE.

## EEOC Form 573 REV 2/09

## PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, February 2009

2. **AUTHORITY:** 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and effectively adjudicate appeals filed by federal employees, former federal employees, and applicants for federal employment.

4. **ROUTINE USES:** Information provided on this form may be disclosed to: (a) appropriate federal, state, or local agencies when relevant to civil, criminal, or regulatory investigations or proceedings; (b) a Congressional office in response to an inquiry from that office at your request; and (c) a bar association or disciplinary board investigating complaints against attorneys representing parties before the Commission. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a database for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

You may send your appeal to:

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

**Fax it to (202) 663-7022 or submit it through the Commission's electronic submission portal.**

PLEASE SEE ATTACHED STATEMENT IN SUPPORT OF AURA MOODY'S APPEAL/COMPLAINT

# STATEMENT IN SUPPORT OF APPEAL ON DISMISSAL OF EEOC CHARGES

April 19, 2024

**Via Email (ofpfmp@eeoc.gov) and Fax No. (202) ) 663-7022**

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

> **Re:**   Aura Moody v. NYC Department of Education and United Federation of Teachers
> EEOC Charges No. 520-2022-01233 and 520-2024-02267

To Whom It May Concern:

I strongly disagree with the Equal Employment Opportunity Commission (EEOC)'s dismissal of my Charges of discrimination and retaliation against the New York City Department of Education (DOE) and United Federation of Teachers (UFT), hereinafter referred to as Respondents. [**Moody Ex. 1**]. I have a good faith belief that the EEOC has been biased and discriminated against me when rendering its decisions. Respondents did not deny the specifics of my charges whereas the EEOC failed to thoroughly address and consider my Charges. Therefore, I am filing an appeal.

I respectfully request that the Right to Sue letters issued by the EEOC for my Charges against the UFT (EEOC Charge No. 520-2024-02267) and the DOE (EEOC Charge No. 520-2022-01233) be rescinded. [**Moody Ex. 2, 3**]. The EEOC should proceed with an exhaustive investigation of my Charges in the interest of justice. **I am pleading that the EEOC apply the same standards of review used when investigating the cases of United Healthcare Services and Urbana School District No. 116**. [**Moody Ex. 4, 5**]. I will be discriminated against if my requests are not honored.

**Please refer to my Rebuttal Statement to the UFT's Position Statement dated February 9, 2024**, and its accompanying 118 Exhibits containing tangible evidence in support of my claims. *See* https://acrobat.adobe.com/id/urn:aaid:sc:US:9729a458-43fd-4391-9f42-37694df00fe5

**Also see my letter to William Sanchez dated September 15, 2023**, regarding the closing of my case by the San Juan Local Office without being contacted by Investigator Luis Calzada (without Exhibits). *See* https://drive.google.com/file/d/1JqfJ5Y3s7k_otEPpwx1G_XQt8HIOs4oy/view?usp=sharing

I strongly disagree with the EEOC's statement dated September 15, 2023, in response to my inquiry dated September 14, 2023, concerning my charge of employment discrimination filed with the EEOC against the DOE that "*The evidence obtained by the EEOC in your case showed that you could not safely perform the essential functions of the position of teacher while unvaccinated. This would present an undue hardship and expose you and others to considerable risk.*" I was not provided with any evidence showing that my employer met its burden of proof, as required by the City's Equal Employment Opportunity Policy (EEO Policy). Further, the EEOC failed to share with me any evidence produced by the Respondents supporting their allegations that I posed considerable risk as a school-based Social Worker. I assert that I was discriminated against because of my disability, religion and in retaliation.

1

As the evidence in the record shows, the DOE denied me a reasonable accommodation to the unconstitutional COVID-19 vaccine mandate (vaccine mandate) upon my applications for medical and religious exemptions. Respondents inaccurately and dishonestly attempt to rely heavily on their notion that the exemption process was legitimate and fair, even though it has been confirmed to have been flawed and discriminatory. The process itself was a sham!

Respondents would have the EEOC believe that they can be trusted to have carried out the exemption process fairly but ignore the fact that the DOE was forced by the United States Court of Appeals for the Second Circuit (Second Circuit) to re-do its exemption process. Contrary to the provisions of the UFT Award (aka as Impact Bargaining) issued on September 10, 2021 (which was developed under a "constitutionally suspect" Health Order issued on August 24, 2021), I was unlawfully placed on Leave Without Pay (LWOP) while awaiting a decision on my applications/appeals for a medical exemption. I was not afforded a legally sound appeal process on the denial of my applications for a medical exemption. My application for a religious exemption was not processed at all. As a **Catholic,** I was not eligible to apply for a religious exemption in the beginning as I do not meet the criteria established by Arbitrator Martin Scheinman and Mayor Bill de Blasio. It was until the Second Circuit rendered a decision in the **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al** on November 15, 2021, following a successful challenge of the UFT Award on constitutional grounds, that employees like me felt encouraged to apply for a religious exemption, to no success. My request to work remotely was not addressed by the DOE although my position does not require face-to-face contact with the students and their parents/guardians, that I worked in-person during the 2020-2021 School Year without being vaccinated, and that I voluntarily submitted my negative COVID-19 tests on a weekly basis to the DOE and UFT since the time that I was illegally placed on unpaid leave up until January 2022. I was not engaged in cooperative dialogue, as required by the Citty's EEO Policy. **I was not served with a Final Notice of Leave Without Pay and/or Employment Termination Notice (documents that were allegedly served via email). The DOE blocked my email account on October 15, 2021** while I was placed on unpaid leave and failed to restore it despite timely notification to my employer and union. The DOE allegedly placed a "problem code" on the personnel files of unvaccinated employees including mine, without knowledge and consent, an action intended to get others to view us as criminals and unhireable. *See*
- https://dailycaller.com/2023/02/09/problem-codes-fbi-nyc-religious-employees-fired-covid-19-vaccine/
- https://advocatz.com/2023/02/12/the-new-york-city-department-of-education-problem-code-continues-to-prevent-unvaxxed-employees-from-working/

I believe that all the evidence and information I offered during the processing of my Charges were not carefully considered before final determinations were made by the EEOC in the matters. I was not provided with any evidence nor given an opportunity to rebut the evidence offered by my employer and union, if any, to establish that the DOE met its burden of proof, as required by the City's EEO Policy and other regulations. Furthermore, the UFT did not provide any evidence showing that they advocated on my behalf to demand that the DOE comply with the law. The union remained silent instead of defending me from discrimination and retaliation by the DOE. The UFT favored the vaccinated employees and the ones who allegedly used fake vax cards to keep their jobs. This is flagrant discrimination, which is a ground for EEOC investigation.

I submitted material facts and evidence showing that the Respondents committed acts of discrimination and retaliation against me. It is important to highlight that they do not deny the

2

unlawful employment actions taken against me. I established a prima facie case of discrimination and retaliation because I am a member of a protected class, I was qualified for the position, and I suffered an adverse employment action, requiring remedy.

Respondents claim without evidence that my placement on LWOP and termination benefited the public health. I disagree. The implementation of the vaccine mandate was not motivated to protect the public health. I would like the EEOC to take judicial notice that I was allowed to enter the school buildings and worked unvaccinated during the 2020-2021 School Year, without posing a risk to others' health. Between the date that unvaccinated employees were not allowed to go to work (October 4, 2021) and December 1, 2021, the daily "COVID Tracker" on the DOE webpage was recording huge spikes of about 600 percent in COVID-19 cases in the schools. The reason for the increases was officially recognized the following year, when the CDC updated its science and confirmed that the vaccines never prevented transmission. An interpretation of the "COVID Tracker" indisputably shows that COVID-19 cases in schools were more than quadrupling after the unvaccinated employees were out of the schools. The DOE should have returned me to my schools. Moreover, in a decision rendered on January 13, 2023, in **Medical Professionals for Informed Consent v. Bassett**, Judge Gerard Neri noted, "*DOH (The NYS Department of Health) ignored special expertise as the vaccine does not prevent transmission,*" when he ruled in favor of the unvaccinated terminated health care workers and ordered them to be returned to their jobs with backpay. *See* https://law.justia.com/cases/new-york/other-courts/2023/2023-ny-slip-op-23020.html

While implementing the vaccine mandate, the DOE fostered a hostile work environment. I was ridiculed and forced to disclose my vaccination status, which is a clear HIPAA violation. Mayor Bill de Blasio and Mayor Eric Adams held press conferences, sometimes accompanied by the Health Commissioners Dave Chokshi and Ashwin Vasan, where they spent portions of the time defaming and insulting employees like me who have any reasonable questions about the vaccine mandate. They also bribed employees to get vaccinated. The UFT was complacent, which is a dereliction of duty.

Respondents also committed fraud by claiming to have added a "condition of employment" to my labor contract without following proper established contractual bargaining procedures. COVID-19 vaccines were not required when I was hired and during the peak of the pandemic, at which time I was working unvaccinated, in person. Upon information and belief, the DOE and UFT did not include COVID-19 vaccines as a condition of employment when they negotiated their latest contract in 2023. Unconceivably, employees received $3,000.00 ratification bonus. *See*

- https://www.nyc.gov/office-of-the-mayor/news/415-23/mayor-adams-uft-tentative-contract-agreement-providing-substantial-wage-increases-to#/0
- https://www.uft.org/news/you-should-know/qa-on-issues/money-included-new-contract

If vaccination was so essential for the employees to perform their duties, why was not COVID-19 vaccines incorporated into the new DOE-UFT Contract and the employees had to be given an inducement to ratify the Contract? Respondents' actions me infer that the vaccine mandate was an unnecessary abuse of power and a blatant violation of my constitutional and labor rights. Ironically, I was placed on LWOP and terminated for adhering to my then legal DOE-UFT Contract. The fact that they had to give incentives for employees to get inoculated against their will shows that there was not scientific rationale and legal justification to impose a vaccine mandate.

The DOE does not have the legal authority to simply "unilaterally separate or terminate" any of its employees without due process. Pursuant to the Collective Bargaining Agreement between the DOE and UFT and New York Education Law § 3020, I have a labor contract that was breached. The DOE put me on LWOP in violation of my Contract (*see* **Article 15 of the DOE-UFT Contract for School Psychologists and Social Workers**). I would like the EEOC to take judicial notice that unvaccinated employees in the City of New York were allowed to work in schools and other places. Respondents' actions and tactics to keep me out of the school buildings were reckless, arbitrary, capricious and in bad faith. After I was unlawfully placed on unpaid leave, the DOE allowed employees who had received only one dose of the COVID-19 vaccine to remain in their jobs beyond the compliance deadline to submit proof of vaccination. Thus, the DOE contradicted itself about the need to keep unvaccinated staff "out of school buildings" and away from others. These employees were similarly situated but treated differently and better than me.

**On February 8, 2022, I requested a 3020-a due process hearing**, but the Respondents did not process my request. However, there are several news stories of DOE employees whose due process hearings to address accusations of misconduct have gone on for years but remained on payroll. *See* https://nypost.com/2022/09/03/nyc-principals-booted-from-schools-still-rake-in-pay-and-benefit 6 s /

In addition to being discriminated against by the DOE in my capacity of public employee, I was subject to disparate treatment compared to the elites and private sector workers. Respondents did not object to the discriminatory Executive Order 62 issued by Mayor Eric Adams on March 24, 2022 that exempted "performers and athletes" with high incomes from the vaccine mandate while continuing to insist that municipal employees like me could not safely go to work. *See* https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62

**The Established Standards To Apply For Religious Exemptions Or Accommodations Pursuant To The UFT Award Were Discriminatory, Warranting EEOC Investigation**

**Arbitrator Martin Scheinman and Mayor Bill de Blasio marginalized and discriminated against the religious beliefs of employees** who have religious objections to the vaccine mandate by establishing that requests be documented in writing by a religious official and that requests only be considered for certain religions.

**On page 9 of the UFT Award**, Arbitrator Martin Scheinman stipulated that "*Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source) or where the objection is personal, political, or philosophical in nature. Exemptions requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).*" *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf.

**On September 24, 2021,** Mayor Bill de Blasio, without legal authority, "*imposed a strict policy on DOE employees who must show proof of at least one dose of a COVID19 vaccine by the end of Monday, September 27th. After legal challenges by unions representing DOE workers, the city was forced to carve out exemptions for medical or religious reasons. De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science*

4

*and Jehovah's Witnesses, that have a history on this, of a religious opposition.*" *See* https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees.

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Rescinded By The City As It Did Not Provide For Reasonable Accommodations, Nor Did It Address Matters Of Due Process With Regard To Job And Benefit Protections**

New York City Health Commissioner Dave Chokshi's **August 24, 2021 Health Order** (Health Order) **was deemed "legally defective"** as it did not provide for accommodations and due process. Upon the City realizing that the Health Order was unlawful, it was overturned and amended. *See* *https://*www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.

**On September 15, 2021,** Health Commissioner Dave Chokshi cured the error by rescinding and amending the August 24, 2021 Health Order clarifying that "6. *Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.*" However, **the UFT Award was not amended to reflect the changes of the September 15th Health Order.** *See*
- https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf.
- https://nypost.com/2021/09/14/nyc-court-temporarily-blocks-city-halls-doe-vaccine-mandate/

**The Health Order Mandating COVID-19 Vaccines For DOE Employees Was Deemed "Constitutionally Suspect" By The United States Court Of Appeals for the Second Circuit**

Considering that the Health Order issued on August 24, 2021 did not provide for exemptions or accommodations and that the UFT Award issued on September 10, 2021 limited the exemptions to certain religions, **on September 21 and October 27, 2021, approximately 15 DOE employees filed two separate lawsuits** against, *inter alia*, the DOE in the United States District Court for the Southern District of New York (District Court), but they were denied relief.

**On November 15, 2021**, **the Second Circuit Motions Panel determined that the UFT Award issued under the August 24, 2021 Health Order was "constitutionally suspect"** as the DOE employees who unsuccessfully sought religious exemptions pursuant to the UFT Award were not given broad consideration that adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law. Considering that the August 24, 2021 Health Order did not provide for exemptions or accommodations, and the UFT Award limited the exemptions to certain religions, **the Second Circuit ordered that accommodations be considered for all sincerely held religious observances, practices and beliefs,** and the Plaintiffs were granted temporary interim relief until the matter is decided by the Merits Panel. The DOE agreed to extend this same relief to similarly situated UFT employees who were not named Plaintiffs. *See* **Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al**, Docket No. 21-2678-cv, 21-2711-cv., 19 F. 4th 152, at 162.

**The UFT Award Is Plagued With Procedural Errors And Legal Flaws**

**The UFT Award was developed and implemented arbitrarily, capriciously and in bad faith**, in contravention of New York Civil Service Law § 209.3(f) because it was a binding arbitration award not sanctioned by the statutes in school district impasse negotiations. *See* https://www.uft.org/sites/default/files/attachments/DOC091021_%28003%29.pdf

5

**The Arbitrator Exceeded His Authority By Not Providing Exemptions And Due Process**

**The due process procedures guaranteed by New York Education Law §§ 3020 & 3020-a are curtailed by the UFT Award.** Article 22 of the Contract Bargaining Agreement-CBA (c) states: "*[An] arbitrator shall limit his decision strictly to the application and interpretation to the provisions of this Agreement and he shall be without power or authority to make any decision: 1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law..*" State education laws demonstrate a desire to protect tenured teachers from being dismissed without a hearing once their competency has been demonstrated. *See* **Abramovich v Board of Education, 1978, 62 AD2d [1978].** Just to quote some irregularities: **The UFT Award was not signed by the parties.** It only has the signature of the arbitrator. **The UFT Award was not approved and ratified by the union members. The UFT Award discriminates and retaliates against certain employees. The UFT Award excludes per diem employees** who work less than twenty (20) hours per week from applying for medical and religious exemptions or accommodations although they pay their union dues. **The UFT Award excludes employees who have no objections** as it only provides exemptions for those employees with medical and religious exceptions, and it places everyone else in unpaid status without an opportunity to challenge the decision or be heard at all.

**The UFT Award Violates The Due Process And Equal Protection Clauses Of The Fourteenth Amendment, Title VII Of The Civil Rights Act Of 1964, The Fifth Amendment's Due Process Clause, New York State Constitution, New York State Human Rights Law, New York State Education Law, New York State Public Health Law, New York State Civil Service Law, New York City Human Rights Law And DOE-UFT Contract**

**The UFT Award tramples upon the Constitutional freedom of religion granted by the First Amendment** as it requires that religious exemptions be documented in writing by a religious official, that requests shall be denied where the leader of the religious organization has spoken in favor of the vaccines, and that requests shall be only considered for recognized and established religious organizations such as Christian Scientists. **The First Amendment** says: "*Everyone in the United States has the right to practice his or her own religion, or no religion at all.*"

**The vaccine mandate violates my right to bodily autonomy, medical privacy and to refuse medical treatment, among others.** Respondents abused their powers. Upon information and belief, the **Doctrine of Ultra Vires** has been developed to protect people from overreach by government bodies or corporations: "*As a matter of law, no person has the authority to require another person to participate in any drug, biologic, or device authorized for emergency use pursuant to the EUA Statute because such a product does not have a legal indication by the FDA to treat, cure, or prevent any known disease. Moreover, an individual considering participation in the product's administration cannot be placed under a sanction (consequence) for refusing the product. No person outside the U.S. Congress can establish prohibited acts under 21 U.S.C. § 331, assign penalties under 21 U.S.C. § 333, and determine the enforcement process according to the Fifth Amendment's Due Process Clause.*" This statement proves any person who mandated the use of an EUA product was acting only under ultra vires authority. Travesty of justice at its best!

Below are some links containing additional and new information/evidence about the discrimination that has been perpetrated against unvaccinated New York City employees like me.

6

The City of New York prioritizes illegal aliens over American Citizens.

- Mayor Adams Announces Expedited Sprint to Identify Asylum Seekers Eligible to Apply for Work Permits
- https://ny1.com/nyc/all-boroughs/politics/2024/01/31/gov--hochul-approves-temporary-government-jobs-for-migrants
- https://www.instagram.com/reel/CxCYnZQNRhW/
- https://nooneyouknow.substack.com/p/new-york-mandate-podcast-ep-48-social
- https://youtu.be/GAaHH0TaHu8?si=hCJMsWzRLnKc3F5Xhttps://nypost.com/2024/03/19/us-news/teachers-union-needs-to-help-nyc-recruit-talent-to-comply-with-class-size-law-mayor-adams/amp/
- https://www.nyc.gov/office-of-the-mayor/news/698-21/mayor-de-blasio-vaccine-mandate-new-york-city-workforce
- https://www.schools.nyc.gov/learning/special-education/supports-and-services/related-services/finding-an-independent-provider
- https://www.nyc.gov/office-of-the-mayor/news/698-21/mayor-de-blasio-vaccine-mandate-new-york-city-workforce
- https://www.cbsnews.com/amp/news/covid-vaccine-new-york-shake-shack-fries/.
- Scratch-offs, beer and more: Here's the free stuff you can get with your NY COVID vaccinehttps://www.fox5ny.com/news/free-cannabis-with-a-covid-shot-on-4-20-at-different-nyc-locations.amp
- NYC Offers $100 Incentive to Get Booster Shot: De Blasio

The City of New York's COVID-19 vaccine mandate was unlawful and irrational.

- https://madmaxworld.tv/watch?id=65d7db8fdcab3e9a7f4ff9e0
- German Gov't Admits There Was No PandemicA Wide-Ranging Collection of Irrefutable Evidence: The Grave Harms Caused by the Covid Vaccines

**Some Court Decisions Declaring the Vaccine Mandate Unlawful And Ruling In Favor Of Unvaccinated Workers Nationwide**

I would like the EEOC to take judicial notice that the vaccine mandates have been deemed unconstitutional in some jurisdictions in the United States of America and abroad.

**On July 27, 2022,** an Ohio federal judge blocked the Biden administration from enforcing the COVID-19 requirement nationwide. Judge Maurice Rose issued a National Preliminary Injunction prohibiting the Air Force, Space Force and Air National Guard from penalizing service members that refused COVID-19 vaccines for religious reasons. *See* https://www.fox19.com/2022/07/28/cincinnati-federal-judge-stops-air-force-air-national-guard-globally-discharging-religious-vaccine-refusers/

**On August 25, 2022,** a Washington DC Superior Court Judge ruled that vaccine mandate for government workers is unlawful. He ruled that the vaccination mandate Mayor Muriel Bowser imposed on City government workers was unlawful in response to opposition from the D.C. Police Union. The order from Judge Maurice Ross came in response to a lawsuit filed by the D.C. Police Union and other police groups that opposed the mandate. *See* https://www.washingtonpost.com/dc-md-va/2022/08/25/dc-coronavirus-vaccine-mandate-workers/

**On October 24, 2022,** New York State Supreme Court Judge Ralph Porzio ordered the reinstatement with backpay of 16 fired Sanitation workers who did not comply with the vaccine mandate. *See* https://law.justia.com/cases/new-york/other-courts/2022/2022-ny-slip-op-22335.html

**On January 13, 2023,** New York State Supreme Court Judge Gerard Neri invalidated the New York State COVID-19 Vaccine Mandate continuously requiring health care workers to be fully vaccinated against COVID-19. *See* Healthcare Law Alert: New York State Supreme Court Judge Invalidates COVID-19 Vaccine Mandate.

**On March 11, 2024,** Los Angeles County Superior Court Judge ruled in favor of former LAPD officers and firefighters who challenged their terminations for infringing upon their due process rights related to City's COVID-19 vaccine requirement. They were reinstated with backpay. *See* https://apbweb.com/2024/03/court-rules-in-favor-of-l-a-s-covid-19-vaccination-mandate-ex-lapd-officers-entitled-to-back-pay/

### Some Court Decisions Rendered In Favor Of Unvaccinated Workers In New York City

There are **cases similar to mine that have been decided in favor of unvaccinated City employees** after the denial of their religious exemptions. The Courts reversed the denials of their religious exemptions and granted them reinstatement with back pay, costs and disbursements.

Some of the cases are: **Loiacono v. The Board of Education of the City of New York, et al**, Index No. 154875/2022, NYSCEF Doc. # 46; **Matthew Maxwell v. New York City Police Department, et al**, Index No. 719355/2022, NYSCEF Doc. # 36; Andrew Schiefer v. The Board of Education of the City of New York, et al, Index No. 155983/2022, NYSCEF Doc. # 51; **Frank Schimenti v. City of New York, et al,** Index No. 85075/2022, Doc. # 80; **Carlos Cano v. The City of New York, et al,** Index No. 156355/2022, NYSCEF Doc. # 39; **George Garvey, et al v. The City of New York, et al,** Index No. 85163/2022, NYSCEF Doc. # 38; **Morgan Sprague v. New York City Police Department, et al,** Index No. 718618/2022, NYSCEF Doc. # 17; **Andre Perez v. New York City Police Department, et al,** Index No. 718825/2022, NYSCEF Doc. # 18; **Gregg Roberts v. New York City Police Department, et al,** Index No. 157372/2022, NYSCEF Doc. # 30; **Brian Finely v. The City of New York, et al,** Index No. 717617/2022, NYSCEF Doc. # 20; **Alexander DeLetto v. Eric Adams, et al,** Index No. 156459/2022, NYSCEF Doc. # 10; **John Verrilli v. City of New York, et. al,** Index No. 157088/2022, NYSCEF Doc. # 17; **Christopher Anderson v. Eric Adams, et al,** Index No. 156824/2022, NYSCEF Doc. # 15; **Kyle Sutliff v. Eric Adams, et al,** Index No. 156891/2022, NYSCEF Doc. # 12; **Police Benevolent Association of The City of New York, Inc, et al v. City of New York, et al,** Index No. 151531/2022, NYSCEF Doc. # 88.

I am looking forward to the reopening of my charges for investigation by the EEOC. In God I Trust!

Thank you in advance for your attention and consideration to this important matter.

Sincerely,

Aura Moody

**Attachments: Moody Ex. 1-5**

8

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 520-2022-01233 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Ms. Aura A. Moody | (718) 465-3725 | |

Street Address

112-26 197 Street

SAINT ALBANS, NY 11412

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| New York City DEPARTMENT OF EDUCATION | Unknown Number Of Employees | (718) 935-4000 |

Street Address

65 Court Street

BROOKLYN, NY 11201

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| United Federation of Teachers | 501+ Employees | |

Street Address

52 Broadway

New York, NY 10004

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Disability, Retaliation, Religion | Earliest    Latest<br>08/01/2021    02/24/2022<br><br>Continuing Action |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. Aura A. Moody**<br>03/03/2022<br><br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED    AND    SWORN    TO    BEFORE    ME    THIS    DATE<br>(month, day, year) |

1/4

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 520-2022-01233 |

| | New York State Division Of Human Rights | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

My name is Aura A. Moody, I am Catholic, and I have an ADA-qualifying disability and/or I was regarded as disabled by my employer. I began employment at the New York City Department of Education in or around 1999 as a Bilingual School Social Worker. On or about July 20, 2021, despite the absence of any new emergency, the New York City Health Commissioner, without administrative or statutory authority, issued an Order requiring staff in public healthcare and clinical settings to demonstrate proof of COVID-19 vaccination or undergo weekly testing. On or about July 26, 2021, the former New York City Mayor announced his plan to implement a vax-or-test mandate pursuant to which all City workers were going to be required to complete their vaccine series by September 13, 2021 or undergo a weekly virus test. Until then, unvaccinated workers would be required to wear masks at work. The vax-or-test element of this planned policy was superseded, with respect to most City employees, by later announcements, and never came fully into effect. In or about August 2021, I was notified by my employer that it would be requiring all employees to be fully vaccinated by the beginning of the school year. During my employment, I notified my employer and union (United Federation of Teachers) that I have a disability that protects me from COVID-19 exposure. I informed them that my disability produces an immunity that is more effective than a vaccine, according to the results of relevant scientific research and available data. In or about August 2021, I notified my employer and union that my natural immunity prevents me from effectively utilizing the vaccine. Considering that I sincerely hold a religious belief that conflicts with my employers vaccination requirement, I notified my employer and union of my medical condition and religious belief and requested a disability accommodation and a religious accommodation to Respondents COVID-19 vaccination mandate. I initially requested a medical accommodation to be exempt from the vaccine but was denied and/or ignored, my appeal was also denied, and I was denied the opportunity for a hearing despite my request. After my application for a medical exemption was denied without due process, I submitted my religious accommodation request, but I never received a response. Shortly before I and others began submitting these requests for accommodations and notifying our employer of our interest in submitting religious and disability related accommodation requests, my employer and union created an agreement via an Arbitrator that stated that testing would no longer be allowed instead of vaccination. It appears to be in retaliation for our interest in submitting accommodation requests. The Arbitration Agreement between the DOE and UFT (Impasse Bargaining or UFT Award) was reached on September 10, 2021, but it was not made in accordance with requirements of union representation and was not supported by the union members who were not consulted for feedback. It is important to highlight that the UFT Award only has the signature of the Arbitrator, but it lacks the signatures of the DOE and UFT representatives, which makes me question its legality and enforcement. It should be noted that employees were given short notice to apply for medical and religious exemptions/accommodations. There is no indication in the DOE-UFT Contract for School Psychologists and Social Workers that COVID-19 vaccination is a requirement or condition of employment. However, on October 1, 2021, I was placed on involuntary unpaid leave, which I challenged immediately. The agreement reached between my employer and union indicates the employees would be compensated while their requests for exemptions/accommodations were pending, but I was not provided with these benefits. My benefits were discontinued, and I was not provided any compensation. I requested that my employer make accommodations for me to work remotely (since remote work is an option) while a decision on my requests for medical and religious exemptions/accommodations were pending, but I never received a response. Upon information and belief, other state-city agencies were provided these benefits while their applications were pending. Furthermore, I have been blocked from accessing my DOE email account while on leave without pay, and my employer has failed to restore it despite timely notification. Based on information that I have received from my union, my employer is seeking unilateral employment termination although I have not been served with any charge against me, nor have I been granted a due process hearing, as required by Educational Law, Section 3020-a. Tenured employees are entitled to due process prior to termination. It is of paramount importance to highlight that any change in the condition of employment requires good-faith bargaining, as per the contracts between the City of New York and Unions. As it pertains to the UFT, I have a good faith belief that the union failed to fairly represent its members during the arbitration process. I have challenged the UFT Award because I believe it is procedurally defective and should be vacated. There are allegations of conflict of interest among my employer, my union and the Arbitrator, which raises the issue of impartiality. Provisions such as the arbitrary placement of employees on leave without pay, the prohibition of gainful work while on unpaid leave, the denial of unemployment insurance benefits while on unpaid leave, the waiving of the right to sue in order to maintain health insurance, the unilateral employment termination and the denial of due process before my employer's adverse actions took place are unreasonable and morally repulsive. Upon information and belief, my employer and union have engaged in discriminatory and differential treatment acts that cannot be tolerated and are punishable by law. Unvaccinated employees have been ostracized, deprived of their livelihoods and jeopardized their professional careers as a result of the draconian decisions made by politicians, legislators and health bureaucrats (whose salaries are paid by the taxpayers), causing irreparable harm. They have used unconstitutional coercive tactics to force employees to choose between their sincerely held religious beliefs and their jobs. It should be noted that scientific research and data from various studies conducted in more than 145 countries have shown that naturally acquired immunity is more effective than vaccination. Some members, including myself, brought the issue of natural immunity to the union's attention before

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. Aura A. Moody**<br>03/03/2022<br><br><center>*Charging Party Signature*</center> | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED    AND    SWORN    TO    BEFORE    ME    THIS    DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 520-2022-01233 |
| **New York State Division Of Human Rights** | | and EEOC |
| *State or local Agency, if any* | | |

the UFT Award was issued and the vaccine mandate was implemented, but it appears that our concerns were ignored and never brought to the negotiation table for discussion and decision-making. In my numerous correspondence addressed to my employer and union, I have alluded possible collusion and the use of coercive tactics to force employees to get vaccinated against their sincerely held religious beliefs and medical conditions, and they have not refuted my claims, which may constitute an admission of the material facts alleged in my charge. I believe I have been retaliated and discriminated against because of my religion (Catholic) and disability, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended. I believe other unvaccinated employees have been subject to arbitrary and capricious employment termination as well. Hence, they have been discriminated against because of their religion and disability, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Ms. Aura A. Moody**  **03/03/2022**  *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT  SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE  *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

MOODY EX. 2

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

San Juan Local Office
525 F.D. Roosevelt Ave
Plaza Las Americas, Suite 1202
San Juan, PR 00918
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/07/2023

**To:** Ms. Aura A. Moody
112-26 197 Street
SAINT ALBANS, NY 11412

Charge No: 520-2022-01233

EEOC Representative and email:     LUIS CALZADA
Investigator
luis.calzada@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally signed by William R.
Sanchez
Date: 2023.09.07 10:02:20 -04'00'

William R. Sanchez
Director

Cc:

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 520-2022-01233 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2022-01233 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

✓ **Only one** major life activity need be substantially limited.

✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

- are not considered in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

MOODY EX. 3

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/21/2024

**To:** Ms. Aura A. Moody
112-26 197 Street
SAINT ALBANS, NY 11412
Charge No: 520-2022-01233

EEOC Representative and email:     MADELINE MCGRATH
Investigator
madeline.mcgrath@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
03/21/2024

Yaw Gyebi, Jr.
District Director

Cc:

Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 520-2022-01233 to the

District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2022-01233 to the District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

☐ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

☐ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

☐ **Only one** major life activity need be substantially limited.

☐ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

☐ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

☐ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

☐ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

MOODY EX. 4

**From:** U.S. Equal Employment Opportunity Commission <eeoc@updates.eeoc.gov>
**To:** "quinonesmoody@aol.com" <quinonesmoody@aol.com>
**Sent:** Wednesday, September 20, 2023 at 09:09:21 AM EDT
**Subject:** UNITED HEALTHCARE SERVICES SUED BY EEOC FOR RELIGIOUS DISCRIMINATION



# EEOC NEWS
## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

EEOC Cleveland Field Office
1240 E. 9th St., Ste. 3001
Cleveland, OH 44199
TEL (800) 669-4000 • TTY (800) 669-6820

Contact: Deora M. Lawrence, Regional Attorney
(410) 209-2734
Jessi Isenhart, Senior Trial Attorney
(216) 306-1121
Terrence W. Carr, Outreach & Training
Coordinator
(216) 306-3996

FOR IMMEDIATE RELEASE
September 20, 2023

## UNITED HEALTHCARE SERVICES SUED BY EEOC FOR RELIGIOUS DISCRIMINATION

### Healthcare Provider Refused to Accommodate Telecommuter with Religious Exemption from COVID-19 Vaccine Requirement, Federal Agency Charges

CLEVELAND – United Healthcare Services, Inc. (United) violated federal law when it discriminated against a full-time telecommuter by refusing to grant her a religious exemption from the company's COVID-19 vaccine requirement, the U.S. Equal Employment Opportunity Commission (EEOC) charged in a lawsuit it announced today.

According to EEOC's lawsuit, a supervisor of clinical administration had performed her job entirely from home since 2018 and had no job duties that required her to meet face-to-face or to enter the healthcare provider's facilities. When the company implemented a COVID-19 vaccination policy that required employees to be vaccinated in Oct. 2021, she received notifications directing her to receive the COVID-19 vaccine, even though the company's vaccine policy stated it did not apply to full-time telecommuters. She informed her supervisor and human capital partner of her religious objections to vaccination and filed two requests for religious accommodation in which she sought exemption from the vaccination requirement, but the company denied her requests without any discussion with her and demanded she get a COVID-19 vaccine within 30 days or be fired, the EEOC said. When she did not get the vaccine within that time, she was fired.

Such alleged conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination because of an individual's religion and requires employers to reasonably accommodate an employee's religious observance or practice unless doing so

would cause an undue hardship. The EEOC filed suit (EEOC v. United Healthcare Services, Inc., Case No.2:23-cv-03010-MHW-KAJ in U.S. District Court for the Southern District of Ohio after first attempting to reach a pre-litigation settlement through its administrative conciliation process. The EEOC is seeking permanent injunctive relief prohibiting United from discriminating against employees because of religion in the future, lost wages, compensatory and punitive damages, and other relief.

"Once an employer is on notice that an employee's sincerely held religious belief, practice, or observance prevents the employee from getting a COVID-19 vaccine, the employer must provide a reasonable accommodation unless it would pose an undue hardship," said Debra Lawrence, regional attorney for the EEOC's Philadelphia District Office. "Neither healthcare providers nor COVID-19 vaccination requirements are excepted from Title VII's protections against religious discrimination."

For more information on religious discrimination, please visit https://www.eeoc.gov/religious-discrimination.

The EEOC's Philadelphia District Office has jurisdiction over Pennsylvania, Maryland, Delaware, West Virginia, and parts of New Jersey and Ohio. The legal staff of EEOC also prosecutes discrimination cases in Washington, D.C., and parts of Virginia.

The EEOC advances opportunity in the workplace by enforcing federal laws prohibiting employment discrimination. More information is available at www.eeoc.gov. Stay connected with the latest EEOC news by subscribing to our email updates.

MOODY EX. 5

Re: Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

From: quinonesmoody@aol.com (quinonesmoody@aol.com)

To:    eeoc@updates.eeoc.gov

Cc:    info@eeoc.gov; ofpfmp@eeoc.gov

Date: Wednesday, April 17, 2024 at 01:06 PM EDT

To Whom It May Concern:

I filed employment discrimination charges against the New York City Department of Education and United Federation of Teachers in 2022. Although I have grounds for the EEOC to investigate my Charges, I was issued Right to Sue letters despite my objections.

I would like the EEOC to apply the case of Urbana School District No. 116 to the EEOC Charges filed by NYC employees against their employers and unions as it pertains to the implementation of the unconstitutional COVID-19 vaccine mandate. Thousands of employees like me were unlawfully placed on leave without pay and subsequently terminated for non-compliance with a vaccine requirement that was not in our contract at the time of hiring nor was negotiated by the unions and ratified by the members following the COVID-19 pandemic. Instead of investigating our Charges, the EEOC issued Right to Sue Letters, to wit, many of us disagreed. I have a good faith belief that we have been discriminated against by the EEOC by refusing to investigate our meritorious Charges. Justice for the unvaccinated workers in New York City has not been served, and relief is warranted in the interest of justice.

As I am in the process of appealing the EEOC dismissal of my Charges, I respectfully request that the EEOC also apply the case of United Healthcare Services to my case, which is similar to the telecommuter's case (**see attached**). In God I Trust!

Sincerely,

Aura Moody

**Attachment**

On Wednesday, April 17, 2024 at 11:07:45 AM EDT, U.S. Equal Employment Opportunity Commission <eeoc@updates.eeoc.gov> wrote:



# EEOC NEWS

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**FOR IMMEDIATE RELEASE**

Apr. 17, 2024

# Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

### *Settlement Follows Court Order Finding the District Limited*

### *Compensation of Teachers Based on Age*

CHICAGO – Urbana School District No. 116 agreed to pay $206,301 to settle an age discrimination lawsuit brought by the U.S. Equal Employment Opportunity Commission, the federal agency announced today.

According to the EEOC's lawsuit, the Urbana School District limited the salary increases of Charles Koplinski and a group of other teachers over the age of 45 because of their age, due to a provision of a collective bargaining agreement between the school district and the union representing teachers, Urbana Education Association IEA-NEA.

The Illinois state pension code provides that if a teacher's final average salary for purposes of calculating pension benefits includes a year in which the teacher received a salary increase of more than 6%, the school district must contribute to the Teacher's Retirement System to cover the increased pension cost attributable to the salary increase over 6%.

The EEOC's lawsuit challenged a provision of the collective bargaining agreement limiting the salary increases of teachers who are within 10 years of retirement eligibility to no more than 6% above their previous year's salary.

The Age Discrimination in Employment Act (ADEA) prohibits discrimination because of age against individuals who are age 40 or over, including discrimination with respect to compensation.

The EEOC filed suit in the U.S. District Court for the Central District of Illinois, Urbana Division (Equal Employment Opportunity Commission v. Urbana School District No. 116 and Urbana Education Association, IEA-NEA; Civil Action No. 18-cv-02212) on Aug. 10, 2018, after first attempting to reach a pre-litigation settlement through the EEOC's conciliation process.

On Nov. 7, 2023, the district court granted summary judgment to the EEOC, holding that the collective bargaining agreement provision violated the ADEA by limiting the compensation of teachers age 45 and older because of their age. In addition, the court ordered the district to pay lost wages to a group of 32 affected teachers whose compensation the district did not dispute had been limited by the collective bargaining agreement provision.

The EEOC also sought additional lost wages for some of the same teachers and other teachers that were not determined by the district court's summary judgment decision and would have needed to be determined after a trial. The settlement eliminates the need for a trial on additional damages and provides monetary relief to 40 teachers who lost wages between 2015 and 2020 because of the collective bargaining agreement provision. The district and union agreed to a collective bargaining agreement that eliminated the discriminatory compensation provision starting with the 2020-21 school year.

The court approved a consent decree resolving the litigation on Apr. 17, 2024. In addition to providing lost wages to 40 teachers affected by the discriminatory collective bargaining agreement provision, the three-year decree enjoins the district going forward from limiting the ability of teachers to earn salary increases because of age; enjoins the district from engaging in retaliation against anyone who participated in the case or who has complained about age discrimination; enjoins the district and union from entering into any agreement that limits a teacher's compensation based on age or proximity to retirement eligibility; requires training for district personnel involved in collective bargaining; requires posting of a notice about the resolution of the suit; and requires periodic reporting to EEOC.

"This suit should serve as a lesson to Illinois school districts that they cannot try to limit TRS contributions by capping salary increases for older teachers based on their age," said Gregory Gochanour, regional attorney for the EEOC's Chicago District Office. "Federal law prohibits paying teachers over and under the age of 40 differently based on age, just as it prohibits paying women less men or paying workers differently based on race or national origin."

Amrith Kaur Aakre, district director of the Chicago District Office, said, "In addition to limiting salary increases teachers earned through furthering their education, because of the collective bargaining agreement provision, the district prevented some teachers over age 45 from performing extra paid work for the district, with those opportunities going to teachers younger than 45. Limiting work opportunities based on age is illegal."

The EEOC's Chicago District Office is responsible for processing charges of discrimination, administrative enforcement and the conduct of agency litigation in Illinois, Wisconsin, Minnesota, Iowa and North and South Dakota, with Area Offices in Milwaukee and Minneapolis.

The EEOC advances opportunity in the workplace by enforcing federal laws prohibiting employment discrimination. More information is available on its website at www.eeoc.gov. Stay connected with the latest EEOC news by subscribing to our email updates.

###

Contact:

Chicago District Office

230 S Dearborn St

Suite 2920

Chicago, IL 60604

ASL videophone 844-234-5122

Ann Henry

Trial Attorney

(312) 872-9659

ann.henry@eeoc.gov


Emma Heo

Trial Attorney

(312) 872-9740

emma.heo@eeoc.gov


Greg Gochanour

Regional Attorney

(312) 872-9685

gregory.gochanour@eeoc.gov



U.S. Equal Employment Opportunity Commission

131 M St. NE, Washington, D.C. 20507

www.eeoc.gov | info@eeoc.gov

800-669-4000 | 844-234-5122 (ASL Videophone)

      

Subscriber Services: Manage Subscriptions | Unsubscribe All | Help

This email was sent to quinonesmoody@aol.com using GovDelivery Communications Cloud on behalf of:
U.S. Equal Employment Opportunity Commission · 131 M Street, NE · Washington, DC 20507



Moody Ex. 104 - Email to Aura Moody Regarding United Healthcare Services Sued by EEOC for religious
Discrimination dated 9-20-2023.pdf
106kB

HP OfficeJet Pro 9010 series

Fax Log for
Apr 20 2024 3:25am

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Apr 20 | 3:07am | Fax Sent | 12026637022 | 17:28 N/A | 33 | OK |

MOODY EX. 5

September 27, 2021

HR Connect
Medical, Leaves, and Records Administration
New York City Department of Education

<div align="center">

**Re:**  CASE #: A80327
FILE #: 0752536
EMP ID #: 866129

</div>

To Whom It May Concern:

On September 26, 2021, I retrieved your email dated September 24, 2021 denying my request for a Medical Exemption to the COVID-19 Vaccine Mandate. In your determination, you allege that "Antibodies alone are not a reason not to get the vaccine". You also state that my "application was reviewed in accordance with applicable City, State and Federal laws." I am hereby appealing your decision. With all due respect, I believe the decision that you issued is unfair and defective.

Firstly, your decision does not indicate that I have the right to appeal and/or the procedure to be followed in order to challenge it, which I presume is a clear violation of my due process rights under the XIV Amendment to the Constitution of the United States of America and other relevant statutes-regulations. Moreover, your decision does not specify the data and scientific research that were reviewed and considered prior to denying my request.

Secondly, it is my understanding that an administrative decision involving civil and constitutional rights concerns must be based on fact-finding, conclusions of law and supported by tangible evidence. It should also indicate the instance(s) of appeal as a matter of right. When I applied for a Medical Exemption, I submitted scientific proof in the form of Lab Tests verifying that I have Natural Immunity. However, a review of your decision makes me infer that it is not transparent and legally sound since it does not reflect that those requirements have been fully met.

Thirdly, I disagree with your statement that "Antibodies alone are not a reason not to get the vaccine." As it relates to COVID-19, upon information and belief, scientific research states that there are two types of immunity: natural immunity and acquired artificial immunity. Without pretending to be a Scientist or lecture anyone, I would like to point out that an Israeli study did find Natural Immunity effective in fighting COVID-19. By contrast, Israelis who were vaccinated were 6.72 times more likely to get infected after the shot than after natural infection. The study also revealed that nearly 40% of new COVID-19 patients were vaccinated, compared to just 1% who had been infected previously. In addition, there have been studies in other countries that did show that patients with immunity from natural infection were far less likely to become infected again in comparison to the patients who only had immunity via vaccination. By the way, many people who have been vaccinated in the United States of American have been reportedly infected again, and some of them have died.

Fourthly, I tested Positive for COVID-19 on December 7, 2020. I recovered without being admitted to the hospital or taking regenerative-therapeutic treatment. Subsequently, I have undergone COVID-19 tests on several occasions. My most recent test was done on September 10, 2021. All the test results have shown a negative status for COVID-19. It is pertinent to highlight that nine (9) months have transpired since I got infected with COVID-19 and recovered naturally. I still have a high level of Positive Antibodies, as per the SARS-COV-2 ANTIBODY TEST I underwent on September 21, 2021.

1/2

Fifthly, upon information and belief, members of Congress, United States Postal Service employees and migrants coming through the Southern Border, among others, are not required to take the COVID-19 vaccine. Nevertheless, the DOE is imposing that I get inoculated although I have Natural Immunity. Considering that the individuals in question are not mandated to get vaccinated, I believe your decision against me constitutes a violation of the Equal Protection Clause of the XIV Amendment and other pertinent statutes-regulations.

In conclusion, based on the medical documentation that I have submitted, I have been able to demonstrate clinically that I have Natural Immunity whereas the DOE has not proven that vaccines are more effective in fighting COVID-19 and that "Antibodies alone are not a reason not to get the vaccine." Given the fact that I have COVID-19 antibodies, I am invoking the Bill of Rights and respectfully requesting that the DOE honor my decision to reject the imposed inoculation by granting this appeal.

Please be advised that I have timely notified the United Federation of Teachers (UFT) about my position regarding mandated vaccination, as well as my intention to file this appeal. Also note that, along with my application for a Medical Exemption, I submitted the emails that I had exchanged with UFT officials since August 28, 2021 until that date.

I am looking forward to hearing from you at your earliest convenience. Thank you in advance for your prompt attention and consideration in this matter.

Sincerely,

*Aura Moody*

Aura Moody
Bilingual School Social Worker


Cc:     Michael Mulgrew, UFT President (via email)

2/2

MOODY EX. 6

October 6, 2021

HR Connect
Medical, Leaves, and Records Administration
New York City Department of Education

<div align="right">

**Re:**     CASE #: A80327
FILE #: 0752536
EMP ID #: 866129

</div>

To Whom It May Concern:

On October 3, 2021, I retrieved an email from the NYC Department of Education issued on October 2, 2021 informing me that I have been placed on a Leave Without Pay (LWOP) because I am not in compliance with the DOE's COVID-19 Vaccine Mandate (see attached). I would like to express my disagreement with the DOE's decision. I strongly believe that the decision is arbitrary, capricious and unfair, in violation of my constitutional and labor rights. Therefore, I am appealing it. Please refer to my letter addressed to HR Connect on September 27, 2021 and supportive evidence for further information.

First, I have not applied for LWOP. **Article Ten, Section E of the DOE-UFT Contract for School Psychologists and School Social Workers** deals with Leaves of Absence Without Pay. Pursuant to Section E of Article Ten, Leaves of Absence Without Play should be granted upon application for the following purposes: "a. Study related to the employee's license field; b. Study to meet eligibility requirements for a license other than that held by the employee; c. Acceptance of a teaching position in a foreign country for one year, with such leave renewable for an additional year. Such teaching position shall be sponsored or approved by the government of the United States." A review of the Notice of Leave Without Pay dated October 2, 2021 does not meet these criteria. Refusal to get inoculated while having Natural Immunity should not be a reason for termination and/or suspension of employment, warranting a reversal of the DOE's decision.

Secondly, when I applied for a Medical Exemption, I submitted scientific proof in the form of Lab Tests verifying that I have Natural Immunity for over 9 months since the time I contracted COVID-19. As the record shows, I tested Positive for COVID-19 on December 8, 2020. I still have a high level of Positive Antibodies, as per the SARS-COV-2 ANTIBODY TEST I underwent on September 21, 2021. Since my recovery, I have undergone numerous COVID-19 tests, being the most recent one on October 5, 2021 (see attached). All test results have revealed a negative status for COVID-19. Based on the medical documentation that I have submitted to the DOE, I have been able to demonstrate clinically that I have Natural Immunity whereas the DOE has not proven that vaccines are more effective in fighting COVID-19, that "Antibodies alone are not a reason not to get the vaccine" and that "Post-COVID condition is not sufficient (e.g. outside isolation period)," as alleged on the denials of my applications for a Medical Exemption. Moreover, the DOE has not provided me with any data and scientific information ensuring that people who have recovered from COVID-19 cannot suffer damages as a result of being inoculated. What about the fear of mutation in COVID-19? As part of my due process rights, I am kindly requesting that the DOE produce all the data and medical evidence that were reviewed prior to denying my applications for a Medical Exemption.

Thirdly, upon information and belief, federal, state and city laws protect employees from unlawful termination and/or suspension without pay for long periods without due process, including but not limited to firing and/or suspending employees as an act of discrimination or retaliation. Employees are also

1/2

protected by international labor laws. In my case, I have a good faith belief that I have been illegally suspended from my job by placing me on LWOP, to wit, I have not applied for. My record neither shows that I have been suspended or disciplined in the past for poor performance. In my opinion, an exhaustive review of the medical documentation that I have submitted to the DOE demonstrates that I am not a public health threat. I am willing to comply with my job duties. Considering that I cannot report to work in person, I am requesting that the DOE make arrangements so I can work virtually, pending a sound and fair decision on my appeal by the pertinent authorities. I will suffer financial, emotional and other damages if the DOE continues to deprive me from earning a salary to support my needs as a human being. Needless to say, the law provides special attention and protection to the group of employees who are approaching the age of retirement that cannot be violated, like in my case.

In summary, I would like to reiterate that I have not resigned to my position as a Bilingual School Social Worker. Therefore, I am requesting that I put back on active status. Please take notice that on August 28, 2021, before the DOE and UFT allegedly reached an agreement on the COVID-19 Mandate, I contacted the UFT regarding Natural Immunity, but my concerns were not addressed. Some of the numerous emails that I have exchanged with UFT officials were attached to my initial application for a Medical Exemption.

I am looking forward to hearing from you at your earliest convenience. Thank you in advance for your prompt attention and consideration in this matter.

Sincerely,

Aura Moody
Bilingual School Social Worker

**Attachments:**   Notice of Leave Without Pay dated 10/2/2021
COVID-19 Test Result dated 10/5/2021

Cc:    Michael Mulgrew, UFT President (via email)

2/2

SENT VIA EMAIL

November 21, 2021

Ms. Meisha Porter
Chancellor
New York City Department of Education
52 Chambers Street
New York, NY 10007

Re      Application for Religious Exemption from Mandated COVID-19 Vaccines
        File #: 0752536
        EMP ID #: 866129

Dear Chancellor Porter:

I am a God-fearing individual. I am pro-life. I am pro-Constitution. I am pro-America, the land of freedom and opportunities. As per the email that I sent you on November 19, 2021, I am formally applying for a Religious Exemption to the COVID-19 Vaccine Mandate. I authorize that this letter be shared only with those in charge of approving my exemption and the pertinent DOE-UFT officials involved in this case.

As background information, I am a New York City Department of Education (DOE) employee who is not vaccinated. I tested positive to COVID-19 on December 8, 2020. I recovered and gained Natural Immunity, which several medical experts say is just effective as the immunity acquired through a vaccine. Since the time I contracted the virus, I have undergone COVID-19 tests, being the most recent one on November 16, 2021. All the test results have shown a negative status for COVID-19. I still have a high level of Positive Antibodies, as per the SARS-COV-2 ANTIBODY TEST I underwent on September 21, 2021. At this point, I strongly believe that I do not need to be inoculated since I have Natural Immunity.

As you know, the DOE has mandated that all employees be vaccinated. On September 23, 2021, I applied for a Medical Exemption under the grounds of Natural Immunity. Along with my application, I submitted scientific proof in the form of Lab Tests verifying that I have Natural Immunity, as well as the emails that I had exchanged with the United Federation of Teachers (UFT) since August 28, 2021 until that date. I indicated that I am Catholic. My application for a Medical Exemption was denied on September 24, 2021 alleging that "Antibodies alone are not a reason not to get the vaccine." The DOE's decision also state that my "application was reviewed in accordance with applicable City, State and Federal Laws." It is my understanding that an administrative decision involving civil and constitutional rights concerns must be based on fact-finding, conclusions of law and supported by tangible evidence. It should also indicate the instances of appeal as a matter of right. In my opinion, the DOE's decision is not transparent and legally sound since it does not reflect that those requirements have been met. It does not indicate that I have a right to appeal and/or the procedure to challenge it, which I presume is a flagrant violation of my due process and equal protection rights under the Fourteenth Amendment to the

1/5

Constitution of the United States of America and other relevant statutes-regulations. Moreover, the decision does not specify the medical data, scientific research and applicable laws that were reviewed and considered prior to denying my application for a Medical Exemption. On September 28, 2021, I appealed the DOE's arbitrary and defective decision, but it was denied on September 30, 2021 alleging that "Post-COVID condition is not sufficient (e.g. outside isolation period)." On October 2, 2021, I was issued a Notice of Leave Without Pay (LWOP) because I was not in compliance with the DOE's COVID-19 Vaccine Mandate. On October 6, 2021, I addressed a letter to HR Connect expressing my disagreement with the LWOP, to wit, I had not applied for. In my letter, I stressed that the LWOP violates Article Ten, Section E of the DOE-UFT Contract for School Psychologists and Social Workers. As part of my due process rights, I requested that the DOE produce all the data and medical evidence that were reviewed prior to denying my application, and I asked for a Medical Exemption again. On October 13, 2021, the DOE issued a determination and denied my application alleging that there was "Insufficient medical documentation to determine if there is valid reason to defer or delay vaccination." What the decision does not state is that the DOE ignored the fact that I have submitted medical documentation showing that I have Natural Immunity and that I am not a public health threat based on the results of my ongoing COVID-19 tests whereas the DOE has not proven that vaccines are more effective than Natural Immunity in fighting COVID-19. By the way, I worked in-person during the 2020-2021 School Year, when the COVID-19 infections were at their worst. To my knowledge, I did not endanger the safety, health or welfare of any student and/or staff member. All applications for a Medical Exemption were denied without granting me a hearing, which is an outright infringement on my due process and equal protection rights. On October 29, 2021, I sent an email to Chancellor Porter regarding the DOE's capricious LWOP. I asked that the DOE make accommodations for me to work remotely until a decision on my appeal for a Medical Exemption is made by the pertinent authorities, but I have not received a response or acknowledgment. Since the time that I was placed on LWOP, I have submitted proof of negative COVID-19 tests weekly, but the DOE has not taken any action.

In addition to my request for a Medical Exemption under the grounds of Natural Immunity, I am hereby applying for a Religious Exemption since the COVID-19 Vaccine Mandate also conflicts with my faith. I chose not to apply for a Religious Exemption before because my personal religious beliefs did not match the requirements of the standards that were set forth in the application process, so I concluded an application would be futile at that time. In the *Kane v. De Blasio* and *Keil v. City of New York*, cases now pending before the United States Court of Appeals for the Second Circuit, the Defendants have conceded that the process and standards they had used to consider Religious Exemption applications and appeals were "constitutionally suspect" and proposed an alternative process with purportedly constitutional standards. I struggle every day with the impending November 30, 2021 deadline by which I will need to choose between the vaccine, my livelihood and job prospects. Hence, I am exhausting administrative remedies.

In support of my application for a Religious Exemption, I would like to submit the following statements: The COVID-19 vaccination requirements as set forth by the City of New York are contrary to my personal religious beliefs. I was brought up in the Christian faith and have been a lifelong follower of the teachings of God. My Christian upbringing, my studying the Old and New Testaments, my lifelong following of the teachings of God and my daily prayers with God are the

2/5

foundation of my personal religious beliefs. Through these experiences, I believe that if I take any of the COVID-19 vaccines God will seek retribution against me for not following his laws and for my lack of faith in him.

One of God's commandments is "You shall not kill." See Exodus 20:13. Upon information and belief, all the COVID-19 vaccines have used aborted fetal cell lines as part of their development or testing of the vaccines. The Pfizer vaccine was protein tested using the abortion-derived cell line HEK-293. These human cells were taken from an aborted unborn child and have been "cultivated" and were used to develop the various treatments for COVID-19. The Moderna vaccine was also protein tested using the same abortion-derived cell line HEK-293. Johnson & Johnson has publicly admitted to using human cells which were taken from an aborted unborn child, and which today have been called cell line PER.C6 for the development of their COVID-19 vaccine. If I take any of these vaccines, I am participating in the abortions which resulted in these cell lines and committing a sin against God.

Scripture is critical for me as a Christian and gives me the guiding principles for my life. The scriptures were written in an era when vaccines did not exist, so they do not specifically address that issue, but they contain the principles which are relevant to whether I should put into my body anything which is unclean. Precisely, but not inclusive of all the scriptures which address this principle is Daniel 1:8 (defilement by ingesting improper things), Leviticus 19:19 and Deuteronomy 22:11 (mixing fabrics), Romans 14:23 (if one does act from faith, it is sin) and 1 Corinthians 6:19-20 (our body is the temple of God and should not be defiled). "But if you do not harken to the voice of the Lord your God, and are not careful to observe all his commandments which I enjoin on you today, all these curses shall come upon you and overwhelm you." Deuteronomy 28:15 -19: "God has created man in his image, in the divine image he created him; male and female he created them." According to Genesis 1: 27, God has made me in his image, my body is a temple of God that belongs to him and by taking any of these vaccines my personal religious belief is that it desecrates my body and will bring the wrath of God down upon me because of this sin. God does not want me to sin. "Flee from sin as from a serpent that will bite you if you go near it; Its teeth are lion's teeth destroying the soul of men." Sirach 21: 2.

"God alone is my rock and my salvation, my secure height, I shall not fall. My safety and glory are with God, my strong rock and refuge. Trust God at all times, my people!" Psalms 62: 7-9: "It was not through the law that the promise was made to Abraham and his descendants that he would inherit the world, but through the righteousness that comes from faith. For if those who adhere to the law are the heirs, faith is null and the promise is void. For the law produces wrath; but where there is no law, neither is there violation. For this reason, it depends on faith, so that it may be a gift, and the promises may be guaranteed to all his descendants..." Romans 4:13-15. If I take the COVID-19 vaccine, I break faith in God by not having faith in him and his laws and then I will subject my soul to the fires of Hell.

The Catechism of the Catholic Church supports my personal religious beliefs. According to a 1992 volume which dealt with the issue of conscience, "Man has the right to act in conscience and in freedom so as personally to make moral decisions." The Vatican II document Dignitatis Humanae, says: "He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters." The Code of Canon Law, Canon 748, Section 1, declares that "All are bound to seek the truth in matters which concern God and his Church; when they have found it, then by divine law they are bound, and they have the

3

right to embrace and keep it."

It is clear from the several quotes from the many potential quotes that I used from the Bible that God would seek retribution for my breaking of his laws and breaking my faith in him. Besides the proof from the Bible, my prayers with God have also proven to me that God does not want me to take any COVID-19 vaccine. I also believe to be morally wrong to use the methods of so-called fetal therapy to take the human fetus at some stage of his or her development, to cause an abortion, and then to use the body parts in attempts to treat diseases. Abortion is a serious sin, and I cannot find any justification for it, even if someone may possibly benefit from the destruction of a conceived human life. It is sin, and it is inconsistent with my faith to participate in it or benefit from it. As such, and because of the principles of the sanctity of human life drawn from the entirety of the Holy Scripture, which principles are partly exemplified as the principles underlying the Bible verses set forth above, I cannot in conscience based on my religious faith take these vaccines as is within my rights. I assert my religious beliefs to be demonstrably, wholly and unequivocally sincere. In God I trust!

The government is expected to protect my religious liberty, among other rights. The First Amendment to the Constitution of the United States of America protects my free exercise of religion, and the Fourteenth Amendment protects the due process and equal protection of law. Because I work as a Social Worker and am therefore employed by the government, the government may not abridge my civil rights. For instance, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1983, the Americans with Disabilities Act of 1990 and the NYS Executive Law, Human Rights Law, Article 15, Section 296, among other statutes-regulations, protect individuals from unlawful discriminatory practices related to employment at all levels of government.

It is my good faith belief that the DOE's COVID-19 Vaccine Mandate is constitutionally illegal and discriminatory for the aforementioned reasons. Differential treatment between the vaccinated and unvaccinated is inappropriate. Denial of my application for a Medical Exemption is unfair. Violation of the civil rights of my religious beliefs is immoral. Furthermore, the vaccine mandate violates a fundamental constitutional right - the right to privacy, which includes bodily autonomy. The DOE's failure to give due process before putting me on no-pay status is a violation of Federal, State and City laws. Additionally, the DOE has overlooked the fact that the United States of America (including New York City) has probably reached herd immunity via Natural Immunity and vaccination. The DOE has also failed to recognize the side effects and fear of mutation for COVID-19, concerns that should have been taken into consideration by the administrators and medical teams that have embraced COVID-19 Vaccine Mandate.

It is of paramount importance to highlight that any change in the condition of employment requires good-faith bargaining, as per the contracts between the City and Unions. An exhaustive review of what has transpired in this case would reveal grave civil and constitutional rights violations by the DOE and UFT pertaining to COVID-19 Vaccine Mandate that need to be remedied. With all due respect, it is my impression that the DOE and UFT did not act in good faith by excluding Natural Immunity as a ground for exemption, in disregard of the available data and scientific research showing that Natural Immunity is in fact effective as the immunity acquired through a vaccine. I brought the issue of Natural Immunity to the attention of the UFT on August 28, 2021 via email, before the DOE-UFT Agreement was negotiated via an Arbitrator and the COVID-19 Vaccine Mandate was implemented, but my concerns were not

4/5

addressed. I believe that people who have contracted COVID-19 are being discriminated against whereas Vaccine Mandates are being politicized. Insomuch as, the UFT has failed to fairly represent me. Instead of helping me, the UFT attempted to coerce me to get vaccinated. I have been significantly damaged by this unconstitutional COVID-19 Vaccine Mandate. In light of the above, I am seeking relief.

Please note that I have been unable to access my DOE email account since October 15, 2021. Therefore, I am sending this correspondence via my personal email instead of SOLAS. Upon learning that access to my account had been blocked, I notified the DOE and UFT about this situation, but the problem has not been solved. Please refer to the email that I sent to UFT officials on October 15, 2021 at 10:13:38 AM. I am including the emails that I exchanged with the UFT since August 28, 2021 until October 13, 2021 as an attachment to this letter for verification of my statements. Thank you in advance for your time and consideration!

Respectfully,

*Aura Moody*

Aura Moody
Bilingual School Social Worker


**Attachment:**  Emails between Aura Moody and UFT officials dated 8/23/-2021-10/13/2021


Cc:     Division of Human Capital, DOE HR Connect (via email)
        Michael Mulgrew, UFT President (via email)
        Pertinent DOE-UFT Staff Involved in this Case

5/5

Case 1:24-cv-03320-RA-KHP    Document 45    Filed 01/25/24    Page 95 of 172                    MOODY EX. 8

|  |  |
|---|---|
| **From:** | quinonesmoody@aol.com, |
| **To:** | mmulgrew@uft.org, |
| **Cc:** | bnorton@uft.org, msill@uft.org, |
| **Subject:** | Expedited Resolution Needed on DOE's COVID-19 Vaccine Mandate |
| **Date:** | Mon, Nov 29, 2021 1:22 am |
| **Attachments:** | Aira Moody - Application for  Religious Exemption to COVID-19 Vaccine Mandate dated 11-21-2021.pdf (5008K), Aura Moody - Emails between Aura  Moody and UFT on Natural Immunity dated 8-23-2021 thru 10-13-2021.pdf (13844K) |

November 29, 2021

Mr. Michael Mulgrew
UFT President

Dear Mr. Mulgrew:

My name is Aura Moody. I have been a New York City Department of Education employee since 1999. On November 21, 2021, I applied for a Religious Exemption to the DOE's COVID-19 Vaccine Mandate (see attached letter addressed to Chancellor Porter). However, I have not received a response. I struggle every day with the impending November 30, 2021 deadline by which I will need to make important decisions on my career and life.

In the *Kane v. De Blasio* and *Keil v. City of New York*, cases now pending before the United States Court of Appeals for the Second Circuit, the Defendants have conceded that the process and standards (Arbitration Agreement Section I.C.) they had used to consider religious exemption applications and appeals were "constitutionally suspect" and proposed an alternative process with purportedly constitutional standards. Accordingly, the Court ordered the Plaintiffs to be reassessed under this alternative process.

In the cases *Kane v. De Blasio* and *Keil v. City of New York* heard on November 10, 2021 before the United States Court of Appeals for the Second Circuit, the DOE's Attorney, Ms. Susan Paulson, admitted to the Court that the Arbitrator's Award was constitutional suspicious. In Ms. Paulson's own words, she stated: "I grant you that the award is not a picture of clarity, and I am not sure… this is a place [where] further factual development will aid our understanding." In response, Judge Jose Cabranes asked Ms. Paulson: "Are you saying to us that to the extent that to the arbitrator's award includes aspects that are constitutional questionable, we should just disregard them because it's not absolutely clear that the city is acting in accordance with them?" Ms. Paulson's rebuttal stated: "I don't think that we should disregard them… it should narrow the lens to which we look at the relief here." She said that "some may have been denied religious exemption based upon the application of improper criteria."

Since my Religious Exemption would probably be considered under the same admittedly unconstitutional process introduced by the Arbitration Agreement, I hereby demand that the UFT bring a claim directly to Scheinman Arbitration and Mediation Services by November 30, 2021 for expedited resolution because I have reasons to believe the Arbitration Agreement was not created and implemented in good faith, as I have previously expressed to the UFT and DOE (see attached emails between Aura Moody and UFT, as well as my letter addressed to Chancellor Porter).

Besides Section I.C. in the Arbitration Agreement, I also have reasons to believe that the following terms in the Arbitration Agreement were not created and implemented in good faith. On page 14 in Section II.C it states: "During such leave without pay, employee shall continue to be eligible for health insurance. As with other DOE leave without pay, employees are prohibited from engaging in gainful employment during the leave period."

In the *Maniscalco v. New York City Department of Education* case heard on October 14, 2021 before the United States Court of Appeals for the Second Circuit, the Judge commented: "Isn't the basic answer for why the city is doing that is to coerce them to get shots? To get their vaccinations? You know, this will do it. They've got mortgage payments. It's rough stuff, but that's really what's going on here."

Upon information and belief, the DOE has been using coercion tactics such as prohibition from gainful employment during the unpaid leave period to force union members to take the COVID-19 vaccines. Therefore, I demand that the UFT consider deleting such terms prohibiting members from gainful employment during the unpaid leave period and consider allowing members to have gainful employment during the Leave Without Pay, to wit, I did not apply for.

1/2

On page 17 in Section III.B it states: "In order to extend this leave pursuant to this section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022." Such form or waiver mentioned in Section III.B was never shown to me with detailed explanation on the meanings of such form or waiver. One of union members' basic

rights is the protection of the right to sue, and this basic right is not respected or protected in this section. The <u>Landrum-Griffin Act</u> was passed in 1959 as a way to protect union members. Also known as the <u>Labor-Management Reporting and Disclosure Act</u> (LMRDA), the Act guarantees certain rights to union members, such as

- equal rights to participate in union activities
- freedom of speech and assembly
- voice in setting rates of dues, fees, and assessments
- **protection of the right to sue**
- safeguards against improper discipline

Therefore, I demand that the UFT consider deleting such terms requiring union members to waive their rights to challenge including, but not limited to, involuntary resignation.

Based on the aforementioned reasons, I hereby demand again that the UFT bring a claim directly to Scheinman Arbitration and Mediation Services before November 30, 2021 for expedited resolution because the Arbitration Agreement was not created and implemented in good faith.

Kindly respond to this email in writing by 12:00 PM of November 30, 2021 business day. Please do not call me on this matter because I am trying to avoid excessive phone bills. I have already been significantly damaged and your expedient attention to this matter will avoid further injury. Any delay will continue to compromise my career and life in a manner that is unfair, unbearable and entirely unconstitutional.

Thank you in advance for your prompt attention to this request, and I look forward to hearing from you.

Sincerely,

Aura Moody
Bilingual School Social Worker

**Attachments**:   Letter to Chancellor Porter from Aura Moody dated 11/21/2021
                Emails between Aura Moody and UFT dated 8/23/2021-10/13/2021

2/2

MOODY EX. 9



## STEP ONE GRIEVANCE

**Case Number:**    Q73732

**Name of Grievant:** Aura Moody

**Title:**    Social Worker

**File Number:** 0752536

**School:** PS95Q            **District:** 29

**File Date** 11/30/21

Dear Ms. Hill:

Pursuant to the procedures set forth in Article 16B of the Collective Bargaining Agreement covering Psychologists and Social Workers, please arrange a conference with me to discuss the following complaint:

I have been placed on an improper unpaid leave without pay.


**Articles Violated:** 14

**Remedy Sought:**
I am to be immediately removed from unpaid leave status and restored to paid status. I am to be made whole in all ways.

I shall be represented at the conference by my union representative.


Sincerely,

Aura Moody

112-26 197 Street

Saint Albans, NY 11412

(718) 465-3725

1/1

MOODY EX. 10

## Re: New guidance for itinerant employees

From: quinonesmoody@aol.com

To: RGarcia@uft.org

Cc: bmintz@gmail.com

Date: Tuesday, September 15, 2020 at 12:06 PM EDT

Thanks for the clarification, Raul. Have a fantastic day!

Aura

On Tuesday, September 15, 2020 Raul Garcia <RGarcia@uft.org> wrote:

Good Morning,

The message that was sent out on Sunday was based on an agreement we had been informed was made over the weekend. For reasons beyond my knowledge, the agreement was modified. At this time, SBST is required to report to their payroll schools and service all schools in their clusters remotely. This matter continues to be discussed and a final agreement is still pending. I hope to provide a better resolution soon since we do not believe our members should be in the buildings unnecessarily. While some work can only be done in person, a large portion of our work can be done remotely. In the meantime, the UFT will continue to add pressure on the DOE to make the right decisions.

**Raul D. Garcia, PsyD**

UFT Functional Chapter Leader

Social Worker and Psychologist

52 Broadway

New York, NY 10004

E-Mail: RGarcia@uft.org

Office: 212-598-7724

**From:** "quinonesmoody@aol.com" <quinonesmoody@aol.com>
**Date:** Monday, September 14, 2020 at 3:26 PM
**To:** Raul Garcia <RGarcia@uft.org>
**Cc:** "bmintz@gmail.com" <bmintz@gmail.com>
**Subject:** RE: New guidance for itinerant employees

FYI

On Monday, September 14, 2020 quinonesmoody <quinonesmoody@aol.com> wrote:

Hi Raul:

I prefer to work in person. Is it possible? Thanks!

Aura Moody

On Sunday, September 13, 2020 Raul Garcia, Social Workers and Psychologists Chapter Leader <reply-fec815757d640474-222_HTML-32914087-100022908-2@uftmail.org> wrote:

View Online

3/14/24, 11:20 PM
Case 1:24-cv-03320-RA-KHP    Document 45    Filed 11/25/24    Page 100 of 172
Blended learning guidance for itinerant employees

**Your Rights**     **Your Benefits**     **Your Union**

# Social Workers & Psychologists

Dear Aura,

In such an uncertain time, the UFT is fighting for common-sense working conditions for all titles in our membership. To that end, the union has reached agreement with the Department of Education on itinerant employees during the blended learning period.

School social workers and psychologists who are itinerant employees will not have to report to multiple worksites. If you have a payroll school, but you are split among two or more schools, you will only report to your payroll school for your regularly assigned work hours. If you don't have a payroll school, you will be assigned to only one school, as designated by your supervisor, and any work that is not done at that school will be done remotely.

School-based IEP team school psychologists and social workers should continue to provide services to all schools in their cluster remotely from home for the 2020-21 school year as per the finalized Pattern of Services. School psychologists in training will continue to work remotely through Oct. 1. With reasonable advance notice, employees in these roles may be directed to report to a school in person.

I will continue to share new guidance with you as it becomes available.

Sincerely,

Raul

## Raul Garcia

Social Workers & Psychologists Chapter Leader

RGarcia@uft.org

YOUR CHAPTER  |  YOUR UNION

This email was sent to: quinonesmoody@aol.com

United Federation of Teachers
*A Union of Professionals*
52 Broadway, New York, NY 10004

Unsubscribe    |    Preferences    |    Privacy Policy

PLEASE DO NOT REPLY TO THIS EMAIL. We are not able to respond to emails received as a reply to this email. Should you have questions or concerns, please Contact Us.

©2020 United Federation of Teachers All Rights Reserved

## Stand with us »

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.

MOODY EX. 11

**From:** Bishop Andrea <ABishop3@schools.nyc.gov>
**Sent:** Friday, September 24, 2021 8:23 AM
**To:**
**Subject:** Re: Guidance on Special Education Meetings for the 2021–22 School Year (September 24, 2021)

# Guidance on Special Education Meetings for the 2021–22 School Year

During the 2021–22 school year, special education meetings with parents should continue to be held remotely, by phone or using a DOE-approved virtual-conferencing platform. The Special Education Meetings in the 2021-2022 School Year guidance outlines policies and best practices when holding remote meetings. Special education meetings include Individualized Education Program (IEP) meetings, social history meetings, manifestation determination review (MDR) meetings, conferences to develop behavioral intervention plans (BIPs), meetings to discuss initial referrals or requests for initial referrals, and meetings to develop suspension plans.

At the parent/guardian's request, special education meetings can be held in-person. If the meeting is held in-person, all 2021–22 school year policies regarding health and safety must be complied with, including the COVID-19 vaccination requirement currently in effect for visitors. Special education meetings do not constitute "emergency circumstances," under which a visitor who is unable or unwilling to show proof-of-vaccination upon sign-in may enter the building.

For questions about holding special education meetings, please contact your BCO administrator of special education (ASE).

☐Like
☐604 Views
☐Save for later

*Andrea Bishop*
New York City Department of Education
*Queens South NYCDOE Borough Citywide Offices*
Administrator of Special Education
82-01 Rockaway Blvd
Ozone Park, NY 11416
Office Tel: (718) 642-5757
Fax: (718) 642 -5705
**BB: (718) 310-8961**
QS Remote Learning Resources Webpage
Join our QS Remote Learning Support Team In Microsoft Teams!
For technical support, please fill out the Queens South Technical Assistance Support Form

**1/1**

**From:** U.S. Equal Employment Opportunity Commission <eeoc@updates.eeoc.gov>
**To:** "quinonesmoody@aol.com" <quinonesmoody@aol.com>
**Sent:** Wednesday, September 20, 2023 at 09:09:21 AM EDT
**Subject:** UNITED HEALTHCARE SERVICES SUED BY EEOC FOR RELIGIOUS DISCRIMINATION



EEOC Cleveland Field Office
1240 E. 9th St., Ste. 3001
Cleveland, OH 44199
TEL (800) 669-4000 • TTY (800) 669-6820

Contact:  Debra M. Lawrence, Regional Attorney
(410) 209-2734
Jessi Isenhart, Senior Trial Attorney
(216) 306-1121
Terrence W. Carr, Outreach & Training
Coordinator
(216) 306-3996

FOR IMMEDIATE RELEASE
September 20, 2023

## UNITED HEALTHCARE SERVICES SUED BY EEOC FOR RELIGIOUS DISCRIMINATION

### Healthcare Provider Refused to Accommodate Telecommuter with Religious Exemption from COVID-19 Vaccine Requirement, Federal Agency Charges

CLEVELAND – United Healthcare Services, Inc. (United) violated federal law when it discriminated against a full-time telecommuter by refusing to grant her a religious exemption from the company's COVID-19 vaccine requirement, the U.S. Equal Employment Opportunity Commission (EEOC) charged in a lawsuit it announced today.

According to EEOC's lawsuit, a supervisor of clinical administration had performed her job entirely from home since 2018 and had no job duties that required her to meet face-to-face or to enter the healthcare provider's facilities. When the company implemented a COVID-19 vaccination policy that required employees to be vaccinated in Oct. 2021, she received notifications directing her to receive the COVID-19 vaccine, even though the company's vaccine policy stated it did not apply to full-time telecommuters. She informed her supervisor and human capital partner of her religious objections to vaccination and filed two requests for religious accommodation in which she sought exemption from the vaccination requirement, but the company denied her requests without any discussion with her and demanded she get a COVID-19 vaccine within 30 days or be fired, the EEOC said. When she did not get the vaccine within that time, she was fired.

Such alleged conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination because of an individual's religion and requires employers to reasonably accommodate an employee's religious observance or practice unless doing so

1/2

would cause an undue hardship. The EEOC filed suit (EEOC v. United Healthcare Services, Inc., Case No.2:23-cv-03010-MHW-KAJ in U.S. District Court for the Southern District of Ohio after first attempting to reach a pre-litigation settlement through its administrative conciliation process. The EEOC is seeking permanent injunctive relief prohibiting United from discriminating against employees because of religion in the future, lost wages, compensatory and punitive damages, and other relief.

"Once an employer is on notice that an employee's sincerely held religious belief, practice, or observance prevents the employee from getting a COVID-19 vaccine, the employer must provide a reasonable accommodation unless it would pose an undue hardship," said Debra Lawrence, regional attorney for the EEOC's Philadelphia District Office. "Neither healthcare providers nor COVID-19 vaccination requirements are excepted from Title VII's protections against religious discrimination."

For more information on religious discrimination, please visit https://www.eeoc.gov/religious-discrimination.

The EEOC's Philadelphia District Office has jurisdiction over Pennsylvania, Maryland, Delaware, West Virginia, and parts of New Jersey and Ohio. The legal staff of EEOC also prosecutes discrimination cases in Washington, D.C., and parts of Virginia.

The EEOC advances opportunity in the workplace by enforcing federal laws prohibiting employment discrimination. More information is available at www.eeoc.gov. Stay connected with the latest EEOC news by subscribing to our email updates.

Re: Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

From: quinonesmoody@aol.com (quinonesmoody@aol.com)

To: eeoc@updates.eeoc.gov

Cc: info@eeoc.gov; ofpfmp@eeoc.gov

Date: Wednesday, April 17, 2024 at 01:06 PM EDT

To Whom It May Concern:

I filed employment discrimination charges against the New York City Department of Education and United Federation of Teachers in 2022. Although I have grounds for the EEOC to investigate my Charges, I was issued Right to Sue letters despite my objections.

I would like the EEOC to apply the case of Urbana School District No. 116 to the EEOC Charges filed by NYC employees against their employers and unions as it pertains to the implementation of the unconstitutional COVID-19 vaccine mandate. Thousands of employees like me were unlawfully placed on leave without pay and subsequently terminated for non-compliance with a vaccine requirement that was not in our contract at the time of hiring nor was negotiated by the unions and ratified by the members following the COVID-19 pandemic. Instead of investigating our Charges, the EEOC issued Right to Sue Letters, to wit, many of us disagreed. I have a good faith belief that we have been discriminated against by the EEOC by refusing to investigate our meritorious Charges. Justice for the unvaccinated workers in New York City has not been served, and relief is warranted in the interest of justice.

As I am in the process of appealing the EEOC dismissal of my Charges, I respectfully request that the EEOC also apply the case of United Healthcare Services to my case, which is similar to the telecommuter's case (**see attached**). In God I Trust!

Sincerely,

Aura Moody

**Attachment**

On Wednesday, April 17, 2024 at 11:07:45 AM EDT, U.S. Equal Employment Opportunity Commission <eeoc@updates.eeoc.gov> wrote:



**FOR IMMEDIATE RELEASE**

Apr. 17, 2024

# Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

### *Settlement Follows Court Order Finding the District Limited*

### *Compensation of Teachers Based on Age*

CHICAGO – Urbana School District No. 116 agreed to pay $206,301 to settle an age discrimination lawsuit brought by the U.S. Equal Employment Opportunity Commission, the federal agency announced today.

According to the EEOC's lawsuit, the Urbana School District limited the salary increases of Charles Koplinski and a group of other teachers over the age of 45 because of their age, due to a provision of a collective bargaining agreement between the school district and the union representing teachers, Urbana Education Association IEA-NEA.

The Illinois state pension code provides that if a teacher's final average salary for purposes of calculating pension benefits includes a year in which the teacher received a salary increase of more than 6%, the school district must contribute to the Teacher's Retirement System to cover the increased pension cost attributable to the salary increase over 6%.

The EEOC's lawsuit challenged a provision of the collective bargaining agreement limiting the salary increases of teachers who are within 10 years of retirement eligibility to no more than 6% above their previous year's salary.

The Age Discrimination in Employment Act (ADEA) prohibits discrimination because of age against individuals who are age 40 or over, including discrimination with respect to compensation.

The EEOC filed suit in the U.S. District Court for the Central District of Illinois, Urbana Division (Equal Employment Opportunity Commission v. Urbana School District No. 116 and Urbana Education Association, IEA-NEA; Civil Action No. 18-cv-02212) on Aug. 10, 2018, after first attempting to reach a pre-litigation settlement through the EEOC's conciliation process.

On Nov. 7, 2023, the district court granted summary judgment to the EEOC, holding that the collective bargaining agreement provision violated the ADEA by limiting the compensation of teachers age 45 and older because of their age. In addition, the court ordered the district to pay lost wages to a group of 32 affected teachers whose compensation the district did not dispute had been limited by the collective bargaining agreement provision.

The EEOC also sought additional lost wages for some of the same teachers and other teachers that were not determined by the district court's summary judgment decision and would have needed to be determined after a trial. The settlement eliminates the need for a trial on additional damages and provides monetary relief to 40 teachers who lost wages between 2015 and 2020 because of the collective bargaining agreement provision. The district and union agreed to a collective bargaining agreement that eliminated the discriminatory compensation provision starting with the 2020-21 school year.

4/17/24, 2:08 PM
Case 1:24-cv-03320-RA-KHP    Document 45    Filed 11/25/24    Page 109 of 172
AOL Mail - Re: Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

The court approved a consent decree resolving the litigation on Apr. 17, 2024. In addition to providing lost wages to 40 teachers affected by the discriminatory collective bargaining agreement provision, the three-year decree enjoins the district going forward from limiting the ability of teachers to earn salary increases because of age; enjoins the district from engaging in retaliation against anyone who participated in the case or who has complained about age discrimination; enjoins the district and union from entering into any agreement that limits a teacher's compensation based on age or proximity to retirement eligibility; requires training for district personnel involved in collective bargaining; requires posting of a notice about the resolution of the suit; and requires periodic reporting to EEOC.

"This suit should serve as a lesson to Illinois school districts that they cannot try to limit TRS contributions by capping salary increases for older teachers based on their age," said Gregory Gochanour, regional attorney for the EEOC's Chicago District Office. "Federal law prohibits paying teachers over and under the age of 40 differently based on age, just as it prohibits paying women less men or paying workers differently based on race or national origin."

Amrith Kaur Aakre, district director of the Chicago District Office, said, "In addition to limiting salary increases teachers earned through furthering their education, because of the collective bargaining agreement provision, the district prevented some teachers over age 45 from performing extra paid work for the district, with those opportunities going to teachers younger than 45. Limiting work opportunities based on age is illegal."

The EEOC's Chicago District Office is responsible for processing charges of discrimination, administrative enforcement and the conduct of agency litigation in Illinois, Wisconsin, Minnesota, Iowa and North and South Dakota, with Area Offices in Milwaukee and Minneapolis.

The EEOC advances opportunity in the workplace by enforcing federal laws prohibiting employment discrimination. More information is available on its website at www.eeoc.gov. Stay connected with the latest EEOC news by subscribing to our email updates.

###

Contact:

Chicago District Office

230 S Dearborn St

Suite 2920

Chicago, IL 60604

ASL videophone 844-234-5122

4/17/24, 2:08 PM
Case 1:24-cv-03320-RA-KHP    Document 45    Filed 11/25/24    Page 110 of 172
AOL Mail - Re: Urbana School District No. 116 to Pay $206,301 in EEOC Age Discrimination Lawsuit

Ann Henry

Trial Attorney

(312) 872-9659

ann.henry@eeoc.gov


Emma Heo

Trial Attorney

(312) 872-9740

emma.heo@eeoc.gov


Greg Gochanour

Regional Attorney

(312) 872-9685

gregory.gochanour@eeoc.gov



U.S. Equal Employment Opportunity Commission

131 M St. NE, Washington, D.C. 20507

www.eeoc.gov | info@eeoc.gov

800-669-4000 | 844-234-5122 (ASL Videophone)

     

Subscriber Services: Manage Subscriptions  |  Unsubscribe All  |  Help

This email was sent to quinonesmoody@aol.com using GovDelivery Communications Cloud on behalf of:
U.S. Equal Employment Opportunity Commission · 131 M Street, NE · Washington, DC 20507

**GOVDELIVERY**

📄 Moody Ex. 104 - Email to Aura Moody Regarding United Healthcare Services Sued by EEOC for religious
Discrimination dated 9-20-2023.pdf
106kB

Case 1:24-cv-03320-RA-KHP   Document 45   Filed 11/25/24   Page 111 of 172

MOODY EX. 14

## Hank's Furniture to Pay $110,000 in EEOC Religious Discrimination Lawsuit

From:   U.S. Equal Employment Opportunity Commission (eeoc@updates.eeoc.gov)

To:     quinonesmoody@aol.com

Date:   Thursday, July 18, 2024 at 04:17 PM EDT

View as a webpage  /  Share



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# FOR IMMEDIATE RELEASE
## July 18, 2024

## Hank's Furniture to Pay $110,000 in EEOC Religious Discrimination Lawsuit

### *Settles Federal Charges Nationwide Furniture Retailer Failed to Accommodate an Employee's Sincerely Held Religious Beliefs and Terminated Her*

**MOBILE, Ala -** Hank's Furniture, Inc. (HFI), a nationwide furniture retailer, will pay $110,000 and furnish other relief to settle a religious discrimination lawsuit brought by the U.S. Equal Employment Opportunity Commission (EEOC), the federal agency announced today.

According to the lawsuit, a former assistant manager at HFI's Pensacola, Florida, location notified the company that her religious beliefs prevented her from receiving a COVID-19 vaccine. Rather than discuss the employee's religious beliefs to determine the feasibility of an accommodation, management ignored accommodation requests then summarily denied the employee's requests and attempted to dispute the validity of her sincerely-held religious beliefs.

Such alleged conduct violated Title VII's prohibition on religious discrimination, which requires an employer to accommodate an employee's sincerely held religious beliefs if the employer knows or suspects the beliefs conflict with an employer requirement, and there is no undue burden on the employer. The EEOC filed suit (EEOC v. Hank's Furniture, Inc., Case No. 3:23-cv-24533-MCR-HTC) in the U.S. District Court for the Northern District of Florida after first attempting to reach a pre-litigation settlement through its administrative conciliation process.

Under the three-year decree settling the case, HFI will also adopt and implement a written policy assuring employees HFI will interpret religious accommodation requests broadly based on EEOC guidance and will accommodate religious beliefs that do not put an undue burden on the company. Additionally, decision makers, managers and employees will receive updated training about Title VII's religious accommodation and anti-discrimination provisions.

"Although the COVID-19 pandemic posed novel issues, employers must remain mindful of their obligation to accommodate sincerely held religious beliefs of employees, absent an undue burden," said Marsha Rucker, regional attorney for the EEOC's Birmingham District Office. "Title VII's principles and ideals stand strong, even during a pandemic."

Birmingham District Director Bradley Anderson said, "Employees should not have to renounce their religious beliefs in order to remain employed. Let this case serve as a reminder that employers should afford accommodation for religious beliefs unless doing so would cause an undue hardship."

For more information on religious discrimination, please visit https://www.eeoc.gov/religious-discrimination.

The EEOC's Birmingham District Office has jurisdiction over Alabama, the Florida Panhandle, and Mississippi, except 17 northern counties.

The EEOC advances opportunity in the workplace by enforcing federal laws prohibiting

employment discrimination. More information is available at www.eeoc.gov. Stay connected with the latest EEOC news by subscribing to our email updates.

### 

*Please contact newsroom@eeoc.gov for media inquiries.*

**Contact**
Office of Communications & Legislative Affairs
131 M Street NE
Washington, DC 20507
newsroom@eeoc.gov
ASL videophone 844-234-5122

Marsha L. Rucker
Regional Attorney
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
205-651-2045
marsha.rucker@eeoc.gov



U.S. Equal Employment Opportunity Commission

131 M St. NE, Washington, D.C.  20507

www.eeoc.gov | info@eeoc.gov

800-669-4000 | 844-234-5122 (ASL Videophone)

      

Subscriber Services: Manage Subscriptions  |  Unsubscribe All  |  Help

This email was sent to quinonesmoody@aol.com using GovDelivery Communications Cloud on behalf of:
U.S. Equal Employment Opportunity Commission · 131 M Street, NE · Washington, DC 20507



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------- x

THE NEW YORK CITY MUNICIPAL LABOR
COMMITTEE, by its Chair HARRY NESPOLI; et al

                                Plaintif

            fs,

        -against-

The City of New York, et al.,

                        Defendants.

-------------------------------------------------------------------------- x

**AFFIRMATION OF ERIC EICHENHOLTZ IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

Index No. 151169/2022

       **ERIC J. EICHENHOLTZ**, an attorney admitted to practice before the Courts of

the State of New York, affirms, pursuant to the Civil Practice Law and Rules ("CPLR") and under

penalty of perjury, that the following is true and correct:

       1.     I am the Chief Assistant Corporation Counsel for Employment Policy and

Litigation within the New York City Office of the Corporation Counsel. I have held this position

since October, 4, 2021. In this capacity, I oversee the Law Department's Labor and Employment

Law, Worker's Compensation and E-Discovery Divisions. I also provide legal advice and counsel

to City agencies and officials in employment matters. Prior to October 4, 2021, I served as the

Chief of the Labor and Employment Law Division within the Office of the Corporation Counsel.

As Chief of the Labor and Employment Law Division I oversaw all litigation brought against the

City arising out of the City's role as an employer.

       2.     This Affirmation is based on my own personal knowledge, as well as the

books and records of the City of New York, and statements made to me by other employees of the

City of New York. I submit this Affirmation in opposition to petitioners' application for a

preliminary injunction in the above captioned matter.

1/11

3.      Pursuant to local, state and federal law, the City has an obligation as an employer to provide reasonable accommodations to qualified employees with disabilities, unless to do so would cause undue hardship or present a direct threat to the health and safety of others. The City is also required under applicable laws to reasonably accommodate an employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless providing the accommodation would create an undue hardship or present a direct threat.

4.      As per the City's EEO Policy, an agency's Equal Employment Opportunity ("EEO") Officer and/or Disability Rights Coordinator receives requests for accommodations in the first instance. Once received, the EEO Office and/or Disability Rights Coordinator evaluates the request and engages the employee in cooperative dialogue to assess the employee's accommodation needs and explore ways to meet those needs in a way that does not cause an undue hardship for the agency.

5.      In the typical course, under the City's EEO Policy, the agency's EEO Office must notify the employee within 30 days of the conclusion of the cooperative dialogue if their request was granted or denied. Under the City's EEO Policy, employees may appeal the denial of an accommodation to their agency head.

6.      On October 20, 2021, Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") Dave A. Chokshi, M.D., issued an order requiring all City employees to show proof of at least one dose of a vaccination against COVID-19 by 5:00 p.m. on October 29, 2021 (the "City Order").

7.      In response to the City Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests that would be made by City employees.

8.      One day after the issuance of the City Order, on October 21, 2021, the New York City Department of Citywide Administrative Services ("DCAS") issued guidance in connection with the City Order, which included the "FAQ on New York City Employees Vaccine Mandate," and a document entitled "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate" (collectively, "the Guidelines"). *See* https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed Feb. 9, 2022); Plaintiffs' Ex. 19. These documents laid out the guidelines for seeking an exemption from the City Order through a reasonable accommodation request.

9.      The Guidelines specified that a reasonable accommodation was to be submitted by an employee to their agency's EEO Officer on or before October 27, 2021. Any employee who requested a reasonable accommodation on or before that date was, and continues to be, required to submit a negative PCR test result within every seven-day period until their reasonable accommodation or subsequent appeal is decided.

10.     However, any employee who sought a reasonable accommodation after October 27, 2021, was to be placed on Leave Without Pay ("LWOP") status effective November 1, 2021 while their request, including any appeal, was pending.

11.     A grant of a reasonable accommodation for an employee on LWOP results in the employee being restored to payroll and provided with back pay for the period of time they were on LWOP status.

12.     Any employee who is denied a reasonable accommodation by their agency has the right to appeal that denial to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel").

13. The Citywide Panel was created specifically in response to the City Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency.

14. The purpose of the Citywide Panel is to ensure that employees who are denied a reasonable accommodation can have their appeals heard and considered consistent with the standards established by the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the New York City Human Rights Law. The Citywide Panel evaluates appeals under the standards set by those laws and consistent with the guidance issued by the U.S. Equal Employment Opportunity Commission ("EEOC") to assist employers in implementing COVID-19 related strategies compliant with Title VII and the ADA. This EEOC guidance specifically addresses accommodation requests made in response to an employer-issued vaccine mandate. See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last accessed on Feb. 9, 2022).

15. The Citywide Panel also ensures that appeals of reasonable accommodation requests concerning the vaccine mandate are processed in a uniform manner throughout the City's workforce.

16. The Citywide Panel is comprised of representatives from the Office of the Corporation Counsel (" Law Department"), DCAS, DOHMH and the City Commission on Human Rights ("CCHR"). The composition of the Citywide Panel was specifically designed to utilize the extensive subject matter expertise and knowledge-base of individuals employed at these City agencies with respect to medical and religious accommodation requests.

- 4 -

4/11

17.    Furthermore, in order to tailor the Citywide Panel to best evaluate accommodation requests, the composition of the Citywide Panel that considers a particular request changes depending on the nature of the request. When the appeal concerns a request for a medical accommodation, the Law Department, DCAS and DOHMH panel members consider the appeal. If the appeal concerns a request for an accommodation based on a religious need, the Law Department, DCAS and CCHR consider the appeal. This was done by design so as to utilize the scientific knowledge of DOHMH in evaluating appeals concerning medical requests and, similarly, to leverage the expertise of the CCHR with respect to religious accommodation requests.

18.    In the event an appeal concerns both a denial of a medical accommodation and a religious accommodation, it is separated into two appeals. Each appeal is considered independently from the other.

19.    In terms of the members of the Citywide Panel, for the Law Department, five attorneys, including myself, currently sit on the Citywide Panel and are tasked with reviewing appeals in order to ensure compliance with local, state and federal law.

20.    For DCAS, the agency General Counsel, an attorney in the DCAS General Counsel's office and two managers within the City's Office of Citywide Equity and Inclusion currently sit on the panel.

21.    For DOHMH, three employees are tasked with reviewing appeals based on medical accommodations.

22.    For CCHR, the agency General Counsel, a Deputy General Counsel and another agency employee familiar with religious accommodations are tasked with reviewing appeals based on a religious accommodation request.

23.    Each case is reviewed by three Panel members (one Panel member from each applicable agency). As detailed below, following a thorough review the appeal, each panel member exercises their agency's vote on the Citywide Appeal for that particular appeal. Therefore, in a religious accommodation appeal, the Law Department, DCAS and CCHR each have one vote. Similarly, in a medical accommodation appeal, the Law Department, DCAS and DOHMH each have one vote. Each agency may vote to affirm the denial of the accommodation or to reverse the agency decision and grant the accommodation. When there is disagreement amongst the three agencies concerning the outcome, the majority rules.

24.    Each agency separately reviews each request, although the panel members can confer if they deem it necessary. Once all three agencies have voted, either myself or the General Counsel of DCAS, Sanford Cohen, will perform a final review of the case for quality assurance purposes and finalize the case. Once the case is finalized, the agency and employee are notified of the appeals panel decision.

25.    Prior to reaching the appellate level, with respect to agency-level denials, all City employees who are denied a vaccine mandate accommodation by their agency is provided with written information on the appeals process, including a link to the City's online appeals request portal: www.nyc.gov/vaxappeal.

26.    If an employee is denied a reasonable accommodation by their agency, they may appeal the decision within three business days.

27.    An employee may submit an appeal via the online review request portal, which will automatically notify their agency EEO Officer of the appeal. Upon notification of the appeal, the agency's EEO Office will upload all records concerning the agency's denial of the reasonable accommodation request within one business day.

28. Once the Citywide Panel is in receipt of an appeal, it is reviewed to determine whether supplemental information is necessary from either the agency or the employee in order to make a determination on the appeal. If such information is necessary, the panel makes that request to the agency, the employee or both.

29. The applicable panel members then review all the materials provided by the agency and the employee. In so reviewing, the panel utilizes the below-described standards which comport with city, state and federal law.

30. For medical accommodations, these standards include an assessment of: (1) whether the medical condition identified fits within the CDC guidelines concerning whether and when vaccination is contraindicated; (2) whether the employee has provided documentation from a health care provider demonstrating the nature of their impairment and the extent to which that impairment prevents vaccination; and (3) whether the accommodation requested, i.e. exemption from the City Order, would result in an undue hardship or poses a direct threat to the health and safety of others.

31. On the undue burden/direct threat issue, the Citywide Panel also considers the following guidance from the EEOC: "The ADA regulation requires an employer to consider the duration of the risk, the nature and severity of the potential harm, the likelihood that the potential harm will occur, and the imminence of the potential harm. Analysis of these factors will likely include considerations based on the severity of the pandemic in a particular area and the employee's own health (for example, is the employee's disability well-controlled), and his particular job duties. A determination of direct threat also would include the likelihood that an individual will be exposed to the virus at the worksite. Measures that an employer may be taking in general to protect all workers, such as mandatory social distancing, also would be relevant."

See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws at Section K (last accessed on Feb. 9, 2022).

32.    With respect to religious accommodation requests, Title VII requires employers to accommodate only those religious beliefs that are "sincerely held" and directly conflict with the City Order. In accordance with EEOC guidance, employers may request that an employee explain the religious nature of their belief and the Citywide Panel and/or a City agency may therefore make this request of an employee. Additionally, if the City has an objective basis for questioning either the religious nature or the sincerity of a particular belief or practice, the City is justified in seeking additional supporting information. Id. at Section L.    The Citywide Panel also relies upon the EEOC's guidance with respect to evaluating those "factors that – either alone or in combination – might undermine an employee's assertion that he sincerely holds the religious belief at issue [which] include: whether the employee has behaved in a manner markedly inconsistent with the professed belief; whether the accommodation sought is a particularly desirable benefit that is likely to be sought for secular reasons; whether the timing of the request renders it suspect (e.g., it follows an earlier request by the employee for the same benefit for secular reasons); and whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons." Id.

33.    With respect to religious accommodation requests, the Citywide Panel also considers whether the accommodation presents an undue hardship on City operations. EEOC guidance provides that requiring an employer to bear more than a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an undue hardship. Costs include not only monetary expenses but also the burden on the operations of the City– including, in this instance,

the risk of the spread of COVID-19 to other employees or to the public. In assessing whether a requested religious accommodation presents an undue hardship, the Citywide panel considers the particular facts of each appeal and examines, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public. As the EEOC has made clear via its guidance, another relevant consideration is the number of employees who are seeking a similar accommodation (i.e., the cumulative cost or burden on the City).

34.     Finally as to religious accommodations, it is important to note that Title VII does not protect social, political, or economic views, or personal preferences. "Thus, objections to COVID-19 vaccination that are based on social, political, or personal preferences, or on nonreligious concerns about the possible effects of the vaccine, do not qualify as 'religious beliefs' under Title VII." Id. The Citywide Panel will review the record in order to determine whether the source of the employee's objection to vaccination is religious in nature or, in contrast, arises from personal or other non-religious preferences.

35.     It is with these guiding principles in mind that the Citywide Panel considers each and every appeal put before it. Once the panel members have had sufficient time to review all materials provided, each agency votes as to whether to affirm the denial or grant the requested accommodation.

36.     The Panel members also meet on a weekly basis to review the progress of the Panel's caseload, discuss specific appeals, if needed, as well as any emergent issues relevant to the Panel's work.

37.    Prior to voting on an appeal, any Citywide Panel member may request that the request be remanded back to the agency. This request is not subject to a vote. Any request by a panel member for a remand results in a request being sent to the agency for further review or continued cooperative dialogue at the agency level. A panel member may remand back to the agency in advance of a vote for a multitude of reasons, including because: (1) information is missing from the record on appeal; (2) the agency appeared to have overlooked information that had been previously submitted; (3) the employee raised a new matter for the first time on appeal that merits agency review; or (4) the panel member believes additional cooperative dialogue between the agency and employee is needed to better understand the employee's request. Again, these remands are designed to ensure that the employee's request for an accommodation is accorded all reasoned consideration and attention under the circumstances.

38.    In the event an appeal is granted, the employee and the agency are promptly notified of that decision and the agency is instructed to implement the accommodation.

39.    In the event an appeal is denied, the employee is notified in writing of that decision. The decision issued by the Citywide Panel does not provide information as to the reasons for the denial. This comports with applicable local, state and federal law which does not require an employer to provide an employee with a written justification as to why the accommodation was denied. See N.Y.C. Admin. Code § 8-107(28)(d) ("Upon reaching a final determination at the conclusion of a cooperative dialogue pursuant to paragraphs (a) and (c) of this subdivision, the covered entity shall provide any person requesting an accommodation who participated in the cooperative dialogue with a written final determination identifying any accommodation granted or denied.").

40.    The above-described process is uniform for all City agencies and employees.

41.    With respect to DOE employees, any DOE employee who submitted a request for a religious accommodation to DOE and had that request denied, was afforded the opportunity to appeal that denial before a neutral arbitrator. In the event the arbitrator affirmed the denial, the DOE employee was subsequently given the opportunity to submit an additional appeal to the Citywide Panel. Once an appeal is filed with the Citywide Panel, the process applies described in Paragraphs 14 through 39. The Citywide Panel does not accept appeals of denials of medical accommodations from DOE employees

Dated:    New York, New York
          February 9, 2022

_____
ERIC J. EICHENHOLTZ

11/11

MOODY EX. 16



12/15/2021

# Guidance for Employers on Equitable Implementation of COVID-19 Vaccine Requirements

**The New York City Commission on Human Rights is a resource to help employers strengthen their business, become more inclusive employers, and conform their employment practices to the New York City Human Rights Law (NYCHRL).**

As a result of the public health crisis posed by COVID-19 and the effectiveness of available vaccines against COVID-19 infection, many employers in New York City already require their employees to show proof of vaccination against COVID-19. Beginning December 27, 2021, most employees in New York City will be required to provide proof of vaccination against COVID-19 in order to enter their workplaces.

New York City employers with four or more employees are covered by the NYCHRL. This document provides guidance to covered employers on how to ensure equitable implementation of vaccine requirements for their employees, independent contractors, and interns.

## 1.    PROHIBITION ON DISCRIMINATION

When implementing vaccine requirements, employers should take care that their policies and practices do not treat employees differently because of their race, national origin, disability, gender, religion/creed, age, or any other characteristic protected by the NYCHRL.

For example, employers should not:

- Scrutinize proof of vaccination more closely when it is provided by employees of a particular race, national origin, or religion based on the perception that people in those groups are less likely to be vaccinated;

- Require proof of vaccination only for older employees or employees with disabilities based on the belief that COVID-19 is more dangerous for them; or

Refuse to accept certain types of valid proof of vaccination, such as official immunization records from countries outside the United States or photographs of CDC vaccination cards.

## 2.    REASONABLE ACCOMMODATIONS

When applying vaccine requirements, employers must consider requests for reasonable accommodations from employees who need them because of disability, pregnancy, childbirth, lactation, religious beliefs or observances, or status as a victim of domestic violence, stalking, or sex offenses. If an employee requests an exception to a vaccine requirement or additional time to provide their proof of vaccination for one of these reasons, their employer must engage with them in a cooperative dialogue, or a good faith discussion, to see if a reasonable accommodation is possible.

Reasonable accommodations can take many forms. For example, an unvaccinated employee could work remotely, submit to regular testing for COVID-19 infection and wear personal protective equipment, change their work station or work schedule to avoid close contact with coworkers or customers, and/or take a leave of absence. Employers do not have to grant any reasonable accommodation that would cause a direct threat to other employees or customers, or to the requester, or otherwise impose an undue hardship on the employer's business. Examples of accommodations that are likely to pose a direct threat include accommodations that would allow an unvaccinated employee to engage in a high-risk activity, such as yelling or exercising, while in close proximity to others, or to work in close proximity to high-risk individuals.

If there is no reasonable accommodation that would enable an unvaccinated employee to continue performing their job duties without posing a direct threat or an undue hardship, their employer can offer a leave of absence until the employee is able to provide proof of vaccination, or until it is otherwise safe for them to return to work. Employers do not need to pay employees during a leave of absence unless the employer pays other workers who are unable to work for similar reasons.

 **Commission on Human Rights**

12/15/2021

Employers responding to reasonable accommodation requests from employees regarding vaccine requirements should adhere to the following principles regarding whether and when to request supporting documentation:

- Employees who are seeking reasonable accommodations because of a disability, pregnancy, childbirth, or lactation can be asked to provide a note from their medical provider.

- Employees who are seeking reasonable accommodations because of their religious beliefs should not be required to submit supporting documentation unless their employer has an objective basis to question the sincerity of the religious basis for the employee's inability to show proof of vaccination. However, employees may be asked to explain the religious nature of their belief. Note that the NYCHRL protects not only employees who belong to organized religions, such as Buddhism, Christianity, Hinduism, Islam, and Judaism, but also employees who have religious, ethical, or moral beliefs that are sincerely held with the strength of religious views. The law does not protect social, political, or economic views, or personal preferences.

Employees who are seeking reasonable accommodations because of their status as a victim of domestic violence, sex offenses, or stalking can be asked to provide a note from a related service provider, such as a social worker, attorney, doctor, or clergy member, supporting their inability to show proof of vaccination.

## 3.    RETALIATION

Employers are prohibited from retaliating against employees because they requested an accommodation, opposed discrimination, or filed or assisted with a claim under the NYCHRL. Retaliation includes any action that is likely to discourage employees from exercising their rights. It covers not only firing or demoting an employee, but also, for example, assigning them to less favorable shifts or subjecting them to harassment.

**For additional information about your responsibilities as an employer under the NYCHRL, visit NYC.gov/HumanRights to learn more or sign up for a free workshop.**



**Guidance on Accommodations for Workers**

Per the December 13, 2021 Order of the Commissioner of Health workplaces are required to exclude staff who are not vaccinated and do not fit within exceptions provided by the Order no later than December 27, 2021.

Pursuant to Section 6 of that order, workers may apply for a Reasonable Accommodation to be exempt from this requirement. Reasonable accommodations may be granted for religious reasons and for documented medical reasons (including documented medical reasons relating to pregnancy).

In some cases it may be appropriate to allow a brief extension of time to be vaccinated for a person who is the victim of domestic violence, sex offenses or stalking. A claim for a reasonable accommodation on this basis should be supported by documentation from a social worker, clergy member or other professional who can confirm the worker's status as a victim.

Employers may deny accommodations that impose an undue burden on the employer. EEOC guidance states that whether undue hardship exists should be based on an analysis of several factors, including:

• the nature and cost of the accommodation needed;

• the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility;

• the overall financial resources, size, number of employees, and type and location of facilities of the employer (if the facility involved in the reasonable accommodation is part of a larger entity);

• the type of operation of the employer, including the structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer;

• the impact of the accommodation on the operation of the facility.

The attached checklists are not legal advice. The checklists are intended to guide employers and managers in evaluating requests they may receive from workers for reasonable accommodations or exemptions from the requirement that they be vaccinated against COVID-19. It is not intended, nor is it a substitute for legal advice from a licensed attorney.

For more information about the reasonable accommodation process you can review the information provided by the New York City Commission on Human Rights and the Equal Employment Opportunity Commission.

**MAINTAIN COPIES OF COMPLETED CHECKLISTS TO SERVE AS A RECORD FOR ANY EXEMPTIONS OR ACCOMMODATIONS THAT ARE GRANTED.**

1/3

12.20.21

**Accommodation for Medical Reasons**

All medical documentation must be from the worker's health care provider with a valid medical license. The below are circumstances found by the CDC and the New York City Department of Health and Mental Hygiene as worthy of medical exemption from vaccination:

1.  A **Permanent** Medical Exemption may be granted if:

    Worker had a severe allergic reaction (for example, anaphylaxis or angioedema) after a previous dose or to a component of all three approved COVID-19 vaccines.

    Worker has a known diagnosed allergy to a component in all three approved COVID-19 vaccines.

2.  A **Temporary** Medical Exemption may be granted if:

    Worker has presented medical documentation showing that they are within 90 days of monoclonal antibody or convalescent plasma treatment of COVID-19.

    Worker has presented medical documentation showing they recently underwent stem cell transplant, CAR Tcell therapy, or other therapy or treatment that would temporarily interfere with the worker's ability to respond adequately to vaccination, or mount an immune response due to treatment.

    Worker has Pericarditis or myocarditis.

The length of a temporary medical exemption will be determined on a case-by-case basis after considering the medical documentation. An employee will be required to be vaccinated at the end of the temporary period.

If any of the above boxes in 1 or 2 are checked, Worker may receive an accommodation and not be vaccinated.

**Accommodation**

    Weekly PCR testing for COVID-19 and Masking at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.

    Telework or remote work that does not expose others to the accommodated worker.

    Leave of Absence.

    Other _____

    No accommodation is granted because the unvaccinated worker would likely pose a direct threat to themselves or others.

    No accommodation is granted because accommodation presents an undue burden on the employer.

Worker Name:_____ Date: _____

Temporary Accommodation Ends On: _____

Employer Representative: _____ Title: _____ 2/3

12.20.21

**Accommodation for Religious Reasons**

1.   Is the request based <u>solely</u> on a personal, political, or philosophical preference?
     The government should not force people to get vaccines or interfere with medical decisions.
     This vaccine is not safe or ineffective.
     COVID is a hoax.
     Other expression of personal, political or philosophical belief _____
_____

**If any of the above are the only basis for the accommodation request, Worker does not qualify for a religious accommodation.**

2.   Is the request based on a sincerely held religious, moral, or ethical belief?
     Worker has explained/documented how the belief requires the worker not to be vaccinated.
      > Worker saying, for example, they practice a particular religion is not enough on its own.
      > A clergy letter is not required, but helpful and persuasive when the clergy is someone who has a personal relationship with the employee; Form letters or letters from out-of-town clergy who do not know the worker generally are not.
     The worker has not taken other kinds of vaccinations previously.
      >If worker has received other vaccines, they should explain why those vaccines were not against their religion.
     Worker says religious belief prevents them from allowing certain substances to enter their body.
      >If yes, the worker should list/describe other commonly used medicines, food/drink, or other substances that they do not allow to enter their bodies.
_____
     Worker says that they cannot take the vaccine because it was developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion.
      >Does worker takes medications such as ibuprofen (Advil), acetaminophen (Tylenol), or any other medications similarly developed or tested using fetal cell derivative lines? Such behavior would be inconsistent with this religious belief and generally means the worker would be denied an accommodation.

**If any of the above are checked, Worker may qualify for a religious accommodation.**

**Accommodation**

     Weekly PCR testing for COVID-19 and Masking at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.
     Telework or remote work that does not expose others to the accommodated worker.
     Leave of Absence.
     Other _____
     No accommodation is granted because the unvaccinated worker would likely pose a direct threat to themselves or others.
     No accommodation is granted because accommodation presents an undue burden on the employer.

Worker Name:_____ Date: _____

Employer Representative: _____ Title: _____

3/3

MOODY EX. 18

1/2

**From:** Renee Campion (OLR) <rcampion@olr.nyc.gov>
**Sent:** Tuesday, July 27, 2021 4:32 PM
**To:** Harry Nespoli - USA Local 831 (Pres831secy@usa-sbf.com) <Pres831secy@usa-sbf.com>
**Cc:** Klinger, Alan M. <aklinger@stroock.com>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Subject:** [EXTERNAL] Letter to All Employees

Harry –
The Health Commissioner will be sending out a letter to all City employees this evening.

I have attached the letter below.

Please reach out to me if you have any questions.

-Renee

**Letter to All NYC Employees from NYC Health Commissioner**

I want to take a moment to thank all of you for your tireless dedication this past year and a half. Whether you're in the office or in our communities, New York City's employees stepped up to keep the city safe and moving forward. As a result, we made enormous strides in our fight against COVID-19, even before the vaccination stage of our response.

But as you know, nothing can provide a higher level of protection against the virus or do more to speed the city's recovery than vaccines, which are safe and lifesaving, and which we have made free and accessible all over the city.

To protect each other and those we serve, and to set an example for our fellow New Yorkers, the Mayor has announced that all City employees and contractors will soon be responsible for meeting the COVID-Safe Requirement, to be phased in from August 2nd to September 13th. This policy requires all City employees and contractors to show either one-time proof of vaccination or a negative COVID-19 test once every seven days.

Convenient and community-based vaccination sites are accessible via nyc.gov/vaccinefinder or by calling 877-VAX-4-NYC.

For those who choose instead to be tested weekly, a diagnostic PCR test -- which has the highest level of accuracy -- will be required. Most PCR tests must be sent to a lab for processing and come back within one or two days, but some are rapid and can yield a result while you wait. Either is acceptable for meeting the COVID-Safe Requirement. There are hundreds of PCR testing locations in the five boroughs; the list can be found at nyc.gov/covidtest. If you'd like to receive a test specifically at a City-sponsored site, that list can be found here: https://www.nychealthandhospitals.org/test-and-trace/testing/.

While testing is available it cannot replace the moral and health imperative to get vaccinated. I urge you in the strongest of terms: it is time to get vaccinated if you have not already. By not getting vaccinated you are putting yourself, your loved ones, and your City at risk. Vaccination is safe, effective, and free. It is the best thing we can do to keep each other, our loved ones, and all New Yorkers safe.

Thank you,
Dave A. Chokshi, MD, MSc
Commissioner
NYC Department of Health and Mental Hygiene

2/2

MOODY EX, 19

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 3.01(d) of the New York City Health Code ("Health Code"), the existence of a public health emergency within the City as a result of COVID-19, for which certain orders and actions are necessary to protect the health and safety of the City of New York and its residents, was declared; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS** New York State has announced that, as of September 27, 2021 all healthcare workers in New York State, including staff at hospitals and long-term care facilities, including nursing homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27; and

**WHEREAS**, section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infection diseases such as COVID-19; and

**WHEREAS**, in accordance with section 17-109(b) of such Administrative Code, the Department may adopt vaccination measures in order to most effectively prevent the spread of communicable diseases; and

**1/4**

**WHEREAS**, pursuant to Section 3.07 of the Health Code, no person "shall do or assist in any act which is or may be detrimental to the public health or to the life or health of any individual" or "fail to do any reasonable act or take any necessary precaution to protect human life and health;" and

**WHEREAS**, the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume] full operations… [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS**, a system of vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on July 21, 2021, I issued an order requiring staff in public healthcare and clinical settings to demonstrate proof of COVID-19 vaccination or undergo weekly testing; and

**WHEREAS,** on August 10, 2021, I issued an order requiring staff providing City operated or contracted services in residential and congregate settings to demonstrate proof of COVID-19 vaccination or undergo weekly testing;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and hereby order that:

1. No later than September 27, 2021 or prior to beginning employment, all DOE staff must provide proof to the DOE that:
   a. they have been fully vaccinated; or
   b. they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or
   c. they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

2. All City employees who work in-person in a DOE school setting or DOE building must provide proof to their employer no later than September 27, 2021 or prior to beginning such work that:
   a. they have been fully vaccinated; or
   b. they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or

      c.   they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

3.   All staff of contractors of DOE and the City who work in-person in a DOE school setting or DOE building, including individuals who provide services to DOE students, must provide proof to their employer no later than September 27, 2021 or prior to beginning such work that:

      a.   they have been fully vaccinated; or
      b.   they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or
      c.   they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

Self-employed independent contractors hired for such work must provide such proof to the DOE.

4.   All employees of any school serving students up to grade 12 and any UPK-3 or UPK-4 program that is located in a DOE building who work in-person, and all contractors hired by such schools or programs to work in-person in a DOE building, must provide proof to their employer, or if self-employed to the contracting school or program, no later than September 27, 2021 or prior to beginning such work that:

      a.   they have been fully vaccinated; or
      b.   they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or
      c.   they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

5.   For the purposes of this Order:

      a.   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

      b.   "Fully vaccinated" means at least two weeks have passed after a person received a single dose of a one-dose series, or the second dose of a two-dose series, of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

      c.   "DOE school setting" includes any indoor location, including but not limited to DOE buildings, where instruction is provided to DOE students in public school kindergarten through grade 12, including residences of pupils receiving home instruction and places where care for children is provided through DOE's LYFE program.

     d.     "Staff of contractors of DOE and the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school setting or other DOE building, and includes individuals working as independent contractors.

     e.     "Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting or other DOE building. It does not include individuals who enter a DOE school setting or other DOE location only to deliver or pickup items, unless the individual is otherwise subject to this Order.  It also does not include individuals present in DOE school settings or DOE buildings to make repairs at times when students are not present in the building, unless the individual is otherwise subject to this Order.

6.  This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated:   <u>August 24th, 2021</u>

                                      Dave A. Chokshi, M.D., MSc
                                      Commissioner

MOODY EX. 20

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS**, a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS**, unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

a. Students attending school or school-related activities in a DOE school setting;
b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
f. Individuals entering for the purpose of COVID-19 vaccination;
g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

MOODY EX, 21

**Brian Geller (OLR)**

| | |
|---|---|
| **From:** | Mayor's Press Office <pressoffice@cityhall.nyc.gov> |
| **Sent:** | Monday, July 26, 2021 2:08 PM |
| **To:** | Mayor's Press Office |
| **Subject:** | RECOVERY FOR ALL OF US: MAYOR DE BLASIO ANNOUNCES CITY WORKFORCE HEALTH CARE MANDATE |



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, NY 10007

**FOR IMMEDIATE RELEASE:** July 26, 2021
**CONTACT:** pressoffice@cityhall.nyc.gov, (212) 788-2958

### RECOVERY FOR ALL OF US: MAYOR DE BLASIO ANNOUNCES CITY WORKFORCE HEALTH CARE MANDATE

*Beginning September 13th, City will require proof of vaccination or weekly COVID-19 tests for all city workers*

*City also makes official call to private sector to enact vaccine and test mandates at all offices, workplaces, and facilities*

**NEW YORK—**Mayor Bill de Blasio, Department of Health and Mental Hygiene Commissioner (DOHMH) Dr. Dave A. Chokshi and NYC Health + Hospitals (H+H) President and CEO Dr. Mitchell Katz today announced a new health care mandate requiring all city workers to provide one-time proof of vaccination or weekly COVID-19 tests beginning September 13th.

In advance of this benchmark, the City is mandating 45,000 City workers and contractors in residential and congregate care settings by August 16th. Both of these recent mandates are in addition to the Health Worker COVID-Safe Requirement the Mayor announced last week, requiring NYC Health + Hospitals employees and those working in Department of Health and Mental Hygiene clinical settings to provide either a one-time verification of immunization, or weekly proof of a negative COVID-19 test by August 2nd.

"This is what it takes to continue our recovery for all of us while fighting back the delta variant," said **Mayor de Blasio**. "It's going to take all of us to finally end the fight against COVID-19."

"These new requirements reflect our commitment to each other and the people we serve," said **Health Commissioner Dr. Dave A. Chokshi**. "In the tug of war between vaccines and the variants, we should continue to bet on the vaccines. But now is the time for our whole City to pull together to defeat Delta."

"We've come a long way from once being the 'epicenter of the epicenter' of COVID-19, but this pandemic is not over yet," said **NYC Health + Hospitals President and CEO Mitchell Katz, MD**. "We have a moral responsibility to take every precaution possible to ensure we keep ourselves, our colleagues and loved ones safe. Our City's new testing

requirement for city workers provides more piece of mind until more people get their safe and effective COVID-19 vaccine."

The Mayor also made an official call for the private sector to enact vaccine and test mandates at their offices, workplaces, stores, and restaurants. Approximately 4.9 million New Yorkers have received at least one dose of the vaccine. This includes over 100,000 doses from mobile vaccination sites, 280,000 doors knocked by canvassers, and 20,000 doses given in-home to anyone who needs it. There have also been more than $80,000 in Referral Bonuses given to community organizations.

###

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

**CHAIRPERSON**
HARRY NESPOLI
Local 831, I.B.T. Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFL-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**

ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers' Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSEPH COLANGELO
S.E.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN A. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees, CWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors,
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

MAF MISBAH UDDIN
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

*Executive Secretary*
ELLEN MEDWID

August 12, 2021

Hon. Dean Fuleihan
First Deputy Mayor
City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
   Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

I write to express the severe concern—and great disappointment—of the MLC Union leaders on the lack of progress in arriving at a negotiated program to implement the City's vaccine/testing policy.

Several weeks ago, the City announced, without prior consultation or bargaining with the Unions, a policy that would require public employees either to be vaccinated or be tested weekly to avoid suspension without pay. Despite this unilateral action, with an eye towards the unfortunate advance of the Delta variant, the MLC's officers agreed to meet and discuss the proposed policy with you and numerous other key City officials on July 28th. The tenor of the discussion, we thought, was the City's desire to work collaboratively with the Unions to navigate a path towards achieving the objectives of the policy.

City leadership collectively asked the Union leaders to provide proposals and raise concerns, which we did. Primary among those concerns was the major logistical hurdle of providing timely and accessible testing to the likely 100,000 City workers who, despite the encouragement of many (including Union leaders), would opt out of vaccination for medical, religious and other reasons. This major dilemma, the Unions warned, would exist even if the policy was successful in encouraging a significant portion of the currently unvaccinated employees to vaccinate.

**1/2**

Page 2...Vaccine/Testing Policy

The MLC officers cautioned that logistics take time to work out, would necessarily be agency specific in places and that, without proper planning, the City would be in a position of having to order so many employees home without pay that there would be insufficient staffing to carry out the duties required to appropriately provide services to the residents of the City. We also raised fundamental questions, including, with regard to testing, whether it would be performed at the work site and on work time, and if not, where testing would be available and how workers would be compensated for complying with the mandated policy.

The discussion concluded on a hopeful note with the City agreeing to take back many of the comments, concerns and suggestions for consideration and to continue the discussions with the Unions. *That was two weeks ago*. While there have been sporadic discussions with some, MLC inquiries regarding these essential matters have essentially gone unanswered. This is unacceptable.

The MLC and its leaders have been firm and consistent that while the Unions support encouraging vaccination (and have made considerable efforts on their own to encourage their members to vaccinate), they will not abdicate their legal right and responsibility to protect the rights of workers to opt for either vaccination or testing, to be held harmless for both the time and cost of testing and vaccination, and to have a fair process for any form of discipline. Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under collective bargaining agreements and law.

Accordingly, we seek a prompt meeting to continue this vital discussion. In the meantime, no policy should be implemented before it is negotiated.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:    Henry Garrido
       Co-Chair
       District Council 37

       Michael Mulgrew
       Executive Vice Chair
       United Federation of Teachers

       Gregory Floyd
       Secretary
       Local 237, City Employees Union

       Mark Cannizzaro
       Treasurer
       Council of School Supervisors & Administrators

**2/2**

MOODY EX. 23

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

August 17, 2021

**CHAIRPERSON**
HARRY NESPOLI
Local 831, I.B.T. Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFL-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**

ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers' Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSEPH COLANGELO
S.E.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN A. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees, OWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors,
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

MAF MISBAH UDDIN
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

**Executive Secretary**
ELLEN MEDWID

Hon. Dean Fuleihan
First Deputy Mayor City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

As I have written before, the MLC and its constituent
Unions believe strongly that it was inappropriate for the City to
have announced the vaccination/testing policy without having
met first with the Unions. Nonetheless, we have been working
with you on the policy and have sought follow-up meetings, in
particular regarding the testing component of the policy.

We are hearing now that the City is considering jettisoning
the vaccination/testing program before it has even started in
favor of an across the board vaccination mandate. To be clear,
any such unilateral action would be improper and a violation of
the City's duty to bargain pursuant to the Taylor Law, the New
York City Collective Bargaining Law and various collective
bargaining agreements.

Should the City move to unilaterally implement a
vaccination mandate without the option for regular testing in
lieu of vaccination, the MLC and likely various individual Unions
would be compelled to take appropriate steps, including legal
action, to protect the rights of their members.

**1/2**

Page 2... Vaccination/Testing Program

We look forward to continuing working collaboratively on the vaccination/testing program.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:    Henry Garrido
       Co-Chair
       District Council 37

       Michael Mulgrew
       Executive Vice Chair
       United Federation of Teachers

       Gregory Floyd
       Secretary
       Local 237, City Employees Union

       Mark Cannizzaro
       Treasurer
       Council of School Supervisors & Administrators

**2/2**

| | |
|---|---|
| **From:** | quinonesmoody@aol.com, |
| **To:** | nycchancellor@schools.nyc.gov, |
| **Cc:** | mmulgrew@uft.org, ocr.newyork@ed.gov, jungie.zhang@ed.gov, ocr@ed.gov, |
| **Subject:** | Leave Without Pay |
| **Date:** | Fri, Oct 29, 2021 1:41 pm |
| **Attachments:** | Aura Moody - PCOT SARS-COV-2                    REALTIME dated 12-8-2020.pdf (336K), Aura Moody - COVID-19 Test Result                Dated 9-28-2021.pdf (392K), Aura Moody - COVID-19 Test Result                Dated 10-5-2021.pdf (375K), Aura Moody - COVID-19 Test Result                Dated 10-12-2021.pdf (427K), Aura Moody - COVID-19 Test Result                Dated 10-19-2021.pdf (395K), Aura Moody - COVID-19 Test Result                Dated 10-26-2021.pdf (402K), Aura Moody - Emails between Aura                Moody and UFT on Natural Immunity dated 8-23-2021 thru                10-13-2021.pdf (13844K), Aura Moody - Letter to HR Connect                dated 9-27-2021 on Vaccine Mandate.pdf (1488K), Aura Moody - Letter to HR Connect                dated 10-6-2021 on LWOP.pdf (1536K) |

October 29, 2021

Ms. Meisha Porter
Chancellor
New York City Department of Education

Dear Chancellor Porter:

I am a New York City Department of Education  (DOE) employee who is not vaccinated. Attached please find the letters that I addressed to HR Connect on September 27, 2021 and October 6, 2021 regarding the COVID-19 Vaccine Mandate for DOE employees. I am also attaching medical documentation regarding my COVID-19 status, as well as the emails that I have exchanged with the UFT from August 28, 2021 through October 13, 2021.

It is not my intention to breach HIPAA privacy regulations, but I feel compelled to share some background and medical information related to my case. I tested positive for COVID-19 on December 8, 2020. Since then, I have undergone numerous COVID-19 tests, being the most recent one on October 26, 2021. All the test results have shown a negative status for COVID-19. I still have a high level of Positive Antibodies, as per the SARS-COV-2 ANTIBODY TEST I underwent on September 21, 2021. At this point, I strongly believe that I do not need to be inoculated since I have Natural Immunity. The medical documents that I have submitted to the DOE and United Federation of Teachers (UFT) reveal that I am not a public health threat. By the way, I worked in person during the 2020-2021 School Year. To my knowledge, I did not endanger the safety, health or wellfare of any student and/or staff member.

On September 23, 2021, I applied for a Medical Exemption under the grounds of Natural Immunity. My request was denied on September 24, 2021 alleging that "Antibodies alone are not a reason not to get the vaccine." On September 28, 2021, I filed an appeal. It was denied on September 30, 2021 alleging that "Post-COVID condition is not sufficient (e.g. outside isolation period)." On October 6, 2021, I asked for a Medical Exemption again. On October 13, 2021, the DOE issued a determination and denied my application alleging that there was "Insufficient medical documentation to determine if there is valid reason to defer or delay vaccination." What the decision did not state is that the DOE has ignored the fact that I had submitted medical documentation showing that I have Natural Immunity and that I had tested negative for COVID-19 since the time I contracted the virus. In addition, the decision failed to indicate that I have the right to appeal as a matter of law. All requests were denied without granting me a hearing, which is an outright contravention of my due process rights. Presently, I am facing employment termination. On October 2, 2021, I was issued a Notice of Leave Without Pay (LWOP). Your illegal decision is denying me the most fundamental constitutional right of all - that to life itself. I insist, I did not apply for a LWOP. I was forcibly placed onto unpaid leave through action taken by the DOE, to wit, I vehemently disagree. I have not quit. I will not be resigning or retiring. The DOE has constructively discharged me. I will not be signing your waiver of my right to sue to get the benefits that you have abruptly taken away from me. I am ready, willing and able to return to my position as a Bilingual School Social Worker. Without income, I cannot pay my bills and satisfy my other needs. In paragraph 4 of my letter addressed to HR Connect on October 6, 2021, I requested that the DOE make arrangements for me to work virtually pending a sound and fair decision on my appeal by the pertinent authorities, but I have not received a response. I would like to reiterate that I have not quit or resigned. I will continue to suffer financial, emotional and other irreparable damages if the DOE continues to deprive me from earning a living.

1/2

As it relates to COVID-19, upon information and belief, scientific research states that there are two types of immunity: Natural Immunity and Acquired Artificial Immunity. Without pretending to be a Scientist or lecture anyone, I would like to point out that an Israeli study did find Natural Immunity effective in fighting COVID-19. By contrast, Israelis who were vaccinated were 6.72 times more likely to get infected after the shot than after natural infection. The study also revealed that nearly 40% of new COVID-19 patients were vaccinated, compared to just 1% who had been infected previously. In

addition, studies conducted in several countries, including the United States of America, have shown that patients with immunity from natural infection are far less likely to become infected again in comparison to the patients who only have immunity via vaccination. It is of paramount importance to highlight that many people who have been vaccinated in the United States of America have been infected again, and some of them have died or suffered side effects and/or permanent injury. What about the fear of mutation for COVID-19? What about the USA (and specifically NYC) reaching herd immunity via Natural Immunity and vaccination? It is reasonable for the unvaccinated people like me to demand that these questions be answered by the administration and medical team that are implementing the COVID-19 Vaccine Mandates.

Upon information and belief, members of Congress, United States Postal Service employees and illegal migrants coming through the Southern Border, among others, are not required to get tested or take the COVID-19 vaccine. Nevertheless, the DOE is imposing that I get inoculated although I have Natural Immunity. Considering that the individuals in question are not mandated to get vaccinated, I have a good faith belief that the DOE's decision against me is discriminatory and constitutes a blatant violation of the Due Process and Equal Protection Clauses of the XIV Amendment to the Constitution, the Civil Rights Act of 1964, the Rules of Practice and Procedure of the Equal Employment Opportunity Commission (EEOC), as well as other relevant statutes-regulations.

Based on the medical information and arguments I have submitted to the DOE and UFT in support of my application for a Medical Exemption, I would like to challenge the legality of the DOE-UFT Agreement reportedly reached on September 10, 2021 via an Arbitrator. I believe the Arbitration proceeding is faulty, and it needs to be vacated. It is my impression that the DOE and UFT did not act in good faith by excluding Natural Immunity as a ground for exemption, in disregard of the available data and scientific research showing that Natural Immunity is fundamental in achieving herd immunity for COVID-19. With all due respect, I feel that the UFT failed to fairly represent the members, specifically the ones who have Natural Immunity, like in my case. Please be advised that I brought the issue of Natural Immunity to the attention of the UFT on August 28, 2021 via email, before the DOE-UFT Agreement was agreed upon and the COVID-19 Vaccine Mandate was implemented, but my concerns were ignored. Instead, the UFT attempted to coerce me to get vaccinated. I have been denied an appeal as per the UFT, which I believe is a flagrant violation of my due process and equal protection rights by both the DOE and UFT. I believe that people who have contracted COVID-19 are being discriminated against whereas vaccine mandates are being politicized.

Please be advised that I have no access to my DOE email account. Therefore, I am sending this correspondence via my personal email. I am looking forward to an expeditious resolution to this matter. Thank you for your time and consideration!

Cordially,

Aura Moody
Bilingual School Social Worker

**Attachments (9 in total)**

2/2

MOODY EX. 25

SENT VIA EMAIL

November 30, 2021

Ms. Meisha Porter
Chancellor
New York City Department of Education
52 Chambers Street
New York, NY 10007

        Re     Applications for Medical and Religious Exemptions from Mandated
                 COVID-19 Vaccines
                 Maintaining Right to Sue for Wrongful Termination
                 File #: 0752536
                 EMP ID #: 866129

Dear Chancellor Porter:

I have been informed by some colleagues that they have received a Final Notice of Leave
Without Pay (LWOP) status from NYCDOE Division of Human Capital on or about November
29, 2021. In this notice, it states "If you remain non-compliant and have not opted to extend you
LWOP or return from LWOP status by November 30, you are subject to termination from
service with the NYCDOE beginning December 1, 2021."

I am writing this letter to inform you of the following:

1.    I have NOT received the Final Notice of LWOP. Therefore, I am not able to submit my
decision as to whether or not to extend my LWOP status in SOLAS by 11:59 PM on November
30, 2021. **I am already losing my pay in exchange for the DOE holding my position. I am
NOT waiving my right to sue for wrongful termination. Considering that I have not
received the Final Notice of LWOP, I should not be held liable for the DOE's notification
failures and due process rights violations. As a matter of law, I am entitled to a hearing
before the DOE's alleged termination or involuntary resignation, to wit, I have not been
formally informed.** I would like to stress that I have been significantly damaged by the DOE's
capricious and arbitrary employment action against me, and immediate remedy is warranted to
avert further injury.

2.    I am NOT waiving my right to seek Medical and Religious Exemptions and
Accommodations from any requirement that conflicts with my medical condition based on
Natural Immunity and my sincerely held religious beliefs. Also, I am not waiving my rights to
seek legal redress from any wrongful denial of such exemptions or accommodations.

3.    I am NOT waiving my right to challenge the involuntary resignation, including but not
limited to, through a contractual or statutory disciplinary process.

1/2

4.    I am NOT waiving my right to challenge any wrongful termination by the DOE.

As you may recall based on my previous correspondence, I tested positive to COVID-19 on December 8, 2020. I recovered and gained Natural Immunity, which several medical experts say is just effective as the immunity acquired through a vaccine. Since the time I contracted the virus, I have undergone COVID-19 tests, being the most recent one on November 30, 2021. All the test results have shown a negative status for COVID-19. I still have a high level of Positive Antibodies, as per the SARS-COV-2 ANTIBODY TEST I underwent on September 21, 2021. Following the involuntary placement on LWOP by the DOE, I have been submitting the results of my COVID-19 tests to the DOE and UFT on a weekly basis. My positive antibodies and negative COVID-19 test results show that I am not a public health threat.

I would like to reiterate that I have reasons to believe that my application for a Medical Exemption under the grounds of Natural Immunity, which I submitted to the DOE in September of 2021, was wrongfully denied by the DOE. According to the UFT, I was denied an appeal, in contravention of my Fourteenth Amendment rights and the DOE--UFT Contract, among other applicable statutes-regulations at the federal, state and city levels. On November 21, 2021, I submitted an application for a Religious Exemption via email, but I have not received a response as of yet. Please refer to my emails below for further information-clarification.

As stated in my previous correspondence, I have no access my DOE email account since October 15, 2021. Therefore, I am sending this letter via my personal email instead of SOLAS. Upon learning that access to my account had been blocked, I notified the DOE and UFT about this situation, but the problem has not been resolved. Please refer to the email that I sent to UFT officials on October 15, 2021 at 10:13:38 AM for verification. Please be reminded that I included the emails that I had exchanged with the UFT since August 28, 2021 through October 13, 2021 as an attachment to the letter that I addressed to Chancellor Porter on November 21, 2021.

Thank you in advance for your attention to this matter.

Cordially,

*Aura Moody*

Aura Moody
Bilingual School Social Worker


**Attachment:**  Result of COVID-19 Test dated 11/30/2021


Cc:    Division of Human Capital, DOE HR Connect (via email)
       Michael Mulgrew, UFT President (via email)
       Pertinent DOE-UFT Staff Involved in this Case

2/2

| | |
|---|---|
| **From:** | eengler@uft.org, |
| **To:** | quinonesmoody@aol.com, |
| **Subject:** | Re: Natural Immunity |
| **Date:** | Fri, Oct 15, 2021 10:14 am |

you are off payroll

Get Outlook for iOS

**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Friday, October 15, 2021 10:13:38 AM
**To:** Ellie Engler <eengler@uft.org>
**Cc:** Michael Mulgrew <MMulgrew@uft.org>; Raul Garcia <RGarcia@uft.org>; Rana Quamina <RQuamina@uft.org>; queensclinicians@gmail.com <queensclinicians@gmail.com>; Michael Sill <MSill@uft.org>
**Subject:** Re: Natural Immunity

Good morning All:

Please be informed that I do not have access to my DOE emails. Earlier this morning (October 15, 2021), I called the IT Department and spoke with Mr. Remy. He told me that it appears that access to my account has been blocked.

Sincerely,

Aura Moody

-----Original Message-----
From: quinonesmoody@aol.com
To: eengler@uft.org <eengler@uft.org>
Cc: mmulgrew@uft.org <mmulgrew@uft.org>; rgarcia@uft.org <rgarcia@uft.org>; rquamina@uft.org <rquamina@uft.org>; queensclinicians@gmail.com <queensclinicians@gmail.com>; msill@uft.org <msill@uft.org>
Sent: Thu, Oct 14, 2021 10:33 am
Subject: Re: Natural Immunity

Good morning All:

Attached please find the DOE's Determination on my application for a COVID-19 Vaccine Medical Exemption rendered on October 13, 2021, which I retrieved from my DOE email on October 14, 2021. The reason for the denial is: "Insufficient medical documentation to determine if there is valid reason to defer or delay vaccination." What the decision does not state is that the DOE has ignored the fact that I have submitted medical documentation showing that I have Natural Immunity and that I have tested negative for COVID-19 since the time I contracted the virus in December 2020 until October 12, 2021, the date I had my last COVID-19 test done. In addition, the decision should indicate that I have the right to appeal, but it does not. I am looking forward to an appeal as a matter of law.

Sincerely,

Aura Moody

-----Original Message-----
From: quinonesmoody@aol.com
To: eengler@uft.org <eengler@uft.org>
Cc: mmulgrew@uft.org <mmulgrew@uft.org>; rgarcia@uft.org <rgarcia@uft.org>; rquamina@uft.org <rquamina@uft.org>; queensclinicians@gmail.com <queensclinicians@gmail.com>; msill@uft.org <msill@uft.org>
Sent: Wed, Oct 13, 2021 10:52 am
Subject: Re: Natural Immunity

Ms. Engler:

I will not honor your request to stop emailing the UFT because, in my opinion, your organization has failed the membership, particularly when it comes to Natural Immunity. I pay my union dues, and therefore the UFT has a responsibility to advocate on my behalf. I will seek legal options, as deemed appropriate.

## Notice of Leave Without Pay - PLEASE READ

**NYCDOE** <noreply@schools.nyc.gov>

Sat 10/2/2021 12:10 PM

To: Moody Aura <AMoody@schools.nyc.gov>



Dear Aura Moody,

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's COVID-19 Vaccine Mandate.** If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must <u>not</u> report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the **DOE Vaccination Portal**

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the **DOE Vaccination Portal**, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door. You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

1/2

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately. Failure to

return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,

NYCDOE Division of Human Capital

2/2

Case 1:24-cv-03320-RA-KHP   Document 45   Filed 11/25/24   Page 153 of 172

**From:** quinonesmoody@aol.com,                                              MOODY EX. 28
**To:** mmulgrew@uft.org,
**Cc:** bnorton@uft.org, smagnus@uft.org,
**Subject:** Re: Improperly Terminated Inquiry Form [ ref:_00D1U108On._5003p2eMm2t:ref ]
**Date:** Tue, Feb 8, 2022 2:20 pm

Dear Mr. Mulgrew:

Upon information and belief, unvaccinated DOE employees will be illegally terminated on February 11, 2022. This is a travesty of justice. At this point, I am kindly requesting that the UFT file an Emergency Motion with the Court for an Injunction to stop the wrongful termination of the affected employees. We deserve fair representation so justice can be served. In God I trust!

Your immediate attention to this urgent matter is greatly appreciated.

Sincerely,

Aura Moody on behalf of the unvaccinated DOE employees

-----Original Message-----
From: quinonesmoody@aol.com
To: smagnus@uft.org <smagnus@uft.org>
Sent: Fri, Feb 4, 2022 6:06 pm
Subject: Re: Improperly Terminated Inquiry Form [ ref:_00D1U108On._5003p2eMm2t:ref ]

Hi Stephanie:

I completed the form online and submitted it a few minutes ago.

Sincerely,

Aura Moody

-----Original Message-----
From: Stephanie Magnus <smagnus@uft.org>
To: quinonesmoody@aol.com <quinonesmoody@aol.com>
Sent: Fri, Feb 4, 2022 8:58 am
Subject: Improperly Terminated Inquiry Form [ ref:_00D1U108On._5003p2eMm2t:ref ]

? Hi,

You may have received an email from the DOE informing you that you will be terminated in February 2022. If you believe you received this email in error, please fill out this form to explain why you believe you should not be terminated. A UFT representative will contact you.


https://uft.wufoo.com/forms/rtxxas91boahsz/



Thank you, Stephanie M



ref:_00D1U108On._5003p2eMm2t:ref



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
EBA Room 987
Albany, New York 12234

Ph:  (518) 473-2829
Fax:  (518) 402-5940

(09/21)

## Hearing Request/Waiver for Education Law §3020-a or §3020-b Charges

| Instructions to the Tenured Employee: | This form is for you to request a hearing on the Education Law §3020-a or §3020-b charges brought against you, or to waive your right to a hearing on such charges. You must return this form within 10 days of receipt of the charges to the Clerk or Secretary of the Board of Education that brought charges against you. If you fail to request a hearing or waive your right to a hearing within 10 days, you will be deemed to have waived your right to a hearing on the charges and your employing board will meet to determine a penalty. |
|---|---|

### Tenured Employee Information

| Name | Aura Moody | Phone | (347) 248-5208 |
|---|---|---|---|
| Address | 112-26 197 Street | Phone | |
| Address | | Fax | (718) 465-3725 |
| City, State Zip | Saint Allbans, NY 11412 | Email | Quinonesmoody@aol.com |

### Hearing Request or Waiver

☒ I have not been served with any charge against me or termination letter.

I request a hearing on the charges served against me pursuant to Education Law §3020-a or §3020-b I am requesting that I be put back on payroll pending a decision on my case. Please see attached emails between Aura Moody and UFT officials (2 pages)

☐ I waive the right to have a hearing pursuant to Education Law §3020-a or §3020-b. I understand the Board of Education will meet to determine the case and fix the penalty or punishment, if one is to be imposed.

### Tenured Employee Attorney Information

| Firm Name | | | |
|---|---|---|---|
| Attorney Name | | Phone 1 | |
| Address | | Phone 2 | |
| Address | | Fax | |
| City, State, Zip | | Email | |

### Tenured Employee Signature

| Signature | Aura Moody | Date | February 9, 2022 |
|---|---|---|---|

1/1

MOODY EX, 30

*Laurie & Marty Scheinman and Michael Balboni, Esq.*

*Jeffrey Brown, Esq.    Resi Cooper    Warren Feldman, Esq.    Craig Johnson, Esq.*
*Alan Klinger, Esq.    Lenard Leeds, Esq.    Barry Peek, Esq.    Dr. Asif Rehman*
*Robert Scheinman*
*(Host Committee in Formation)*

cordially invite you to an event in support of

# Bill de Blasio

## Democratic Candidate for Mayor of NYC

### Thursday, October 3, 2013
6:30pm- 8:00pm

### Scheinman Residence
*225 Fifth Avenue, Apt. 2J*
*New York, NY (at the corner of 26th Street)*

### Contribution Levels:
Chair: $25,000
Host: $10,000
Co-Host: $4,950
Individual: $1,000

Maximum contribution allowed per individual: $4,950

Personal contributions only. Corporate, LLC, and LLP contributions are strictly prohibited.

Please make checks payable to: **"New Yorkers for de Blasio"**

**So that we may plan accordingly, please RSVP to**
**Hayley Prim by email: Hayley@billdeblasio.com or phone: (631) 902-5150**

Paid for by New Yorkers for de Blasio

1/1

MOODY EX. 31



**United Federation of Teachers**
*A Union of Professionals*

April 25, 2022

Aura Moody
11226 197th St.
Saint Albans, NY 11412

**UFT Case# Q73732**

Dear Ms. Moody,

On April 4, 2022, you appealed the grievance department's decision not to proceed to Step II concerning your grievances, UFT case number Q73732. The following members of the ADCOM Committee were present for your appeal, Abe Ruda, Kerry Dowling, Greg Lundahl, Elaine Haynesworth, and Matthew Foglino.

You filed a grievance alleging you were improperly placed on a leave without pay stemming from the Department of Education's COVID-19 Vaccine mandate. You have since been terminated based the same policy and are seeking to be restored to payroll with a religious exemption honored.

At your hearing, you stated that you were terminated without notice. You stated that the Arbitration award which created the exemptions for Religious and Medical issues with the vaccine and subsequent appeals process was Unconstitutional. You stated this was not a law, but an order of the Mayor who exceeded his authority when issuing it. You also alleged that the Award which established the vaccine appeal process is biased in that the arbitrator who issued it had raised money for Mayor DeBlasio in the past. You stated that you have

52 Broadway, New York, NY 10004  p: 212.777.7500  www.uft.org

Officers: Michael Mulgrew *President*, LeRoy Barr *Secretary*, Michael Sill *Assistant Secretary*, Debra Penny *Treasurer*, Tom Brown *Assistant Treasurer*
Vice Presidents: Karen Alford, MaryJo Ginese, Anne Goldman, Janella T. Hinds, Richard Mantell, Leo Gordon

1/2



requested a 3020-a hearing.  You provided documentation demonstrating that you have tested every week for COVID and have no problem continuing to be tested.

It is the Ad Com Grievance Appeal Committee's decision not to proceed the Chancellor's Level concerning your case. Article 22C of the Collective Bargaining Agreement states "The decision of the arbitrator, if made in accordance with his/her jurisdiction and authority under this Agreement will be accepted as final by the parties to the dispute and both sides will abide by it."  The vaccine appeal process was established through impact bargaining and the resulting arbitration award in response to the Department's attempt to issue a far stricter vaccine requirement.  This Award is final and binding so the Union cannot bring any grievances based on Department actions which were conducted in accordance with the Award.

While the Union recognizes this is not the result you were looking for, please be assured your case was given serious and thorough consideration.

Sincerely,

LeRoy Barr
Director of Staff

LB/mj

cc:  David Campbell

Officers: Michael Mulgrew *President*, LeRoy Barr *Secretary*, Michael Sill *Assistant Secretary*, Debra Penny *Treasurer*, Tom Brown *Assistant Treasurer*
Vice Presidents: Karen Alford, MaryJo Ginese, Anne Goldman, Janella T. Hinds, Richard Mantell, Leo Gordon

**2/2**

July 18, 2022

To Whom It May Concern,

I give Aura Moody permission to use any documents that were sent to me regarding FOIL request #F19,769.

Sincerely,

*Stacie Tedesco* (signature)

Stacie Tedesco

1/3



**Department of
Education**
Chancellor David C. Banks

**Liz Vladeck**
*General Counsel*

July 15, 2022

**VIA EMAIL**
Stacie T
stacieslp@gmail.com

**RE:    #F19,769**
Vaccine Accommodations

Dear Stacie T:

This letter is in final response to the Freedom of Information Law (FOIL) request referenced above. With respect to your request for the number of requests for religious exemption to the vaccine mandate and the number of those requests that were approved, a diligent search for records has been completed. Responsive data has been located. Below please find such data.

| # of Requests for Religious Exemption | # of Religious Exemption Requests Approved |
|---|---|
| 3186 | 169 |

With respect to your request for the members of the citywide panel, a diligent search for records has been conducted. A responsive record has been located. Attached please find such record.

As we advised you by letter dated April 13, 2022, to the extent you are seeking information and explanations, the remainder of your request has not been processed. Please keep in mind that FOIL is a mechanism for the public to request records from an agency. FOIL does not obligate an agency to answer questions or provide explanations or legal conclusions. See FOIL-AO-10675 (Sept. 29, 1997). In addition, FOIL does not require government officers or employees to respond to questions, supply information in response to questions, or offer explanations for their governmental activities. See FOIL-AO-16621a (June 18, 2007).

This concludes the FOIL Unit's response and your request will be marked as "closed" in the Unit's database as of the date of this letter.

Stacie T
July 15, 2022
Page 2

Any person denied access to a record may appeal the decision in writing within thirty days.  Please state a specific ground for appeal and include copies of the initial request and the denial.  Appeals should be sent to: Liz Vladeck, General Counsel, c/o Office of Legal Services, New York City Department of Education, 52 Chambers Street – Room 308, NY, NY 10007, FOIL@schools.nyc.gov.

<div style="text-align: right">

Sincerely,

*Kristen Woychowski /s/*

Kristen Woychowski
Deputy Records Access Officer
FOIL@schools.nyc.gov

</div>

**3/3**

MOODY EX. 33

https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees

# City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees

BY SOPHIA CHANG AND JESSICA GOULD

PUBLISHED SEPTEMBER 24, 2021



Students at PS 59 in Queens in September 2021  NYC SCHOOLS CHANCELLOR TWITTER

Over 500 public school employees have officially been granted medical or religious exemptions to the city's vaccination mandate. But union leaders warned that many Department of Education staffers in non-teaching positions remain unvaccinated, which could leave schools short-staffed next week.

Mayor Bill de Blasio has imposed a strict policy on DOE employees who must show proof of at least one dose of a COVID-19 vaccine by the end of Monday, September 27th. After legal challenges by unions representing DOE workers, the city was forced to carve out exemptions for medical or religious reasons. De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science and Jehovah's Witnesses, that have a history on this, of a religious opposition." The mayor warned those exemptions would be rare.

"What we're seeing so far is a very small number of requests for medical or religious exemption. Only in the hundreds have been approved so far," de Blasio told WNYC's Brian Lehrer Friday. "And again, there's well over 100,000 teachers and staff, and we're going to work with anyone who needs to get vaccinated between now and the deadline."

There may still be more exemptions granted because the DOE said they're still reviewing applications.

As of Friday, "81% of all DOE employees have received at least one dose of the vaccine," said Katie O'Hanlon, a spokesperson for the DOE in a statement. She noted that 87% of teachers have received at least one dose.

1/1

**From:** quinonesmoody@aol.com,

MOODY EX. 34

**To:** gmann@optonline.net,

**Cc:** aarundell@uft.org, mmulgrew@uft.org, bnorton@uft.org, dcampbell@uft.org,

**Subject:** Re: Your grievance (Q72792) - OPI Issue

**Date:** Mon, May 23, 2022 3:09 pm

**Attachments:**

---

Dear Recipients:

Please be advised that there was an error with two of the email addressees in the previous email (Beth Norton and David Campbell). Please ignore the previous email. I am resubmitting it with all the corrected email addresses. Sorry for the mishap! The implementation of the unconstitutional COVID-19 vaccine mandate that has led to my placement on unpaid leave is still causing a lot of stress in my life.

Sincerely,

Aura Moody

-----Original Message-----
From: quinonesmoody@aol.com
To: gmann@optonline.net <gmann@optonline.net>
Cc: aarundell@uft.org <aarundell@uft.org>; mmulgrew@uft.org <mmulgrew@uft.org>; bnorton@aol.com <bnorton@aol.com>; dcampbell@aol.com <dcampbell@aol.com>
Sent: Mon, May 23, 2022 2:05 pm
Subject: Re: Your grievance (Q72792) - OPI Issue

Dear Mr. Mann:

As per the emails below, I understand that the issue of OPI is beyond your powers of representation during the per session grievance conference held on October 14, 2021. However, I am reaching out to you again to inquire about the status of my request for clarification of the alleged OPI issue on my record since I have not received a response from the UFT. I would like to know whether my personnel file has been tampered without my consent, knowledge and notification.

I would greatly appreciate an immediate response from the pertinent parties on this important issue, as you promised in your email sent to me on October 14, 2021 at 11:46 AM that you had already brought this matter to the union's attention and were forwarding the e-mail below to Amy Arundell, the Queens Borough Representative. I am including Ms. Amy Arundell, Mr. Michael Mulgrew, Ms. Beth Norton and Mr. David Campbell as recipients of this email.

Thank you in advance for following up!

Sincerely,

Aura Moody

-----Original Message-----
From: quinonesmoody@aol.com
To: gmann@optonline.net <gmann@optonline.net>
Cc: aarundell@uft.org <aarundell@uft.org>
Sent: Thu, Oct 14, 2021 11:52 am
Subject: Re: Your grievance (Q72792)

Thank you Gene for your response. I understand that the issue of OPI is out of the scope of your representation at the per session grievance. I would like to reiterate that I want this issue to be addressed as soon as possible. I am including Ms. Amy Arundell as a recipient of this email.

Gratefully,

Aura Moody

-----Original Message-----
From: Gene J. Mann <gmann@optonline.net>
To: Aura Moody <quinonesmoody@aol.com>
Sent: Thu, Oct 14, 2021 11:46 am

1/3

Subject: Re: Your grievance (Q72792)

Aura:

These issues are beyond my powers as a grievance representative; however, I promise you that I have already brought this matter to the union's attention and am forwarding this e-mail to Amy Arundell, the Queens Borough Representative.



Fraternally, Gene

Four things to fear: the hoof of a horse, the horn of a bull, the smile of a Saxon, the promise of a principal.  (freely adopted from the Irish)

The views, opinions, and judgments expressed in this message are solely those of the author.  The message contents have not been reviewed or approved by the UFT.

On Oct 14, 2021, at 10:07 AM, quinonesmoody@aol.com wrote:

Hi Gene:

This is a follow up to our telephone conversation held on October 14, 2021 at approximately 9:31 AM, upon conclusion of the per session grievance. I am extremely concerned about the alleged OPI incident on my record. As far as I know, I have not been informed that I am or have been the subject of any investigation by the DOE, which I consider is a flagrant violation of my due process rights. If that is the case, such investigation is a retaliatory act because I sued the DOE on behalf of my son in the past. Although I have not gotten the credit, I am the person who forced the DOE to launch SESIS and implement other reasonable policies for children with special needs in the City of New York. As a result, I have probably become a target since my case went all the way to the Supreme Court of the United States. I have submitted a copy of my Writ of Certiorari to UFT officials in the past.

I would like to discuss this matter further when you have a chance. Again, monumental thanks for representing me at the per session grievance held earlier this morning.

Fraternally,

Aura Moody

-----Original Message-----
From: quinonesmoody@aol.com
To: gmann@optonline.net <gmann@optonline.net>
Sent: Thu, Oct 14, 2021 9:32 am
Subject: Re: Your grievance (Q72792)

Thank you Gene for representing me at the per session grievance. Good job!

Aura
-----Original Message-----
From: quinonesmoody@aol.com
To: gmann@optonline.net
Sent: Fri, Oct 8, 2021 10:04 am
Subject: RE: Your grievance (Q72792)

Thank you Gene. I am looking forward to your phone call.

On Friday, October 8, 2021 Gene J. Mann <gmann@optonline.net> wrote:
Aura:

I will be representing you at a Step II grievance on Thursday, October 14, at 9:00AM. I will be calling you over the weekend from 516.633.4076 to discuss your case.   You may text me to suggest a convenient time.


Fraternally, Gene

Four things to fear: the hoof of a horse, the horn of a bull, the smile of a Saxon, the promise of a principal.  (freely adopted from the Irish)

The views, opinions, and judgments expressed in this message are solely those of the author.  The message contents have not been reviewed or approved by the UFT.

3/3



NICHOLAS A. LANGWORTHY
23RD DISTRICT, NEW YORK

RULES

OVERSIGHT

AGRICULTURE

## Congress of the United States
## House of Representatives
## Washington, DC 20515–3223

DC OFFICE
1630 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–3223
(202) 225–3161

DISTRICT OFFICES
8201 MAIN STREET
SUITE 13
WILLIAMSVILLE, NY 14221
(716) 547–6844

THE FENTON BUILDING
2–6 EAST SECOND STREET
JAMESTOWN, NY 14701
(716) 488–8111

1 BLUEBIRD SQUARE
OLEAN, NY 14760
(585) 543–5033

89 MARKET STREET
CORNING, NY 14830
(607) 377–3130

June 23, 2023

Chancellor David Banks
New York City Department of Education
52 Chambers St, Suite 1
Manhattan, NY 10007
United States

Dear Chancellor Banks,

I am writing to request greater information about the New York City Department of Education's (NYCDOE) practice of assigning "Problem Codes" to the records of New York City educators who lawfully chose not to receive COVID-19 vaccinations. Despite recent claims by the Department, these Problem Codes have had serious external consequences for current and former employees.

As you know, The Problem Code in question serves disciplinary purposes, and whether the codes are permanent or temporary is irrelevant. Shockingly, the same Problem Code used to flag unvaccinated teachers is also utilized for individuals accused of molesting, raping, or harming a child. As a result, these codes have a profoundly negative impact on the flagged educators and can hinder their future employment prospects.

Earlier this year, City Hall had publicly denied the use of problem codes on the records of employees who chose not to receive the COVID-19 vaccination with this statement:

"No code is part of anyone's permanent personnel record or is ever sent to any other department, agency or outside organization. In fact, no outside entity can see any code placed on anyone's internal [human-resources] record for any reason."[1]

However, this statement from City Hall has been found to be factually inaccurate. In an email dated February 9, 2022, NYC Department of Education employee Eric Amato stated, "PR =

---

[1] NYC teachers who refused COVID vaccine slapped with 'scarlet letter' in personnel files: lawyer." New York Post, 14 Feb. 2023, nypost.com/2023/02/14/nyc-teachers-who-refused-covid-vaccine-slapped-with-scarlet-letter-in-personnel-files-lawyer/

Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave."[2]

Removing a Problem Code is an arduous process, even with legal assistance, and most educators are unaware of its presence until they face employment rejections elsewhere. Therefore, City Hall's further assertion that the Department of Education does not disclose these codes to external parties is also incorrect. Moreover, the Department sent educators' fingerprints to the Federal Bureau of Investigation (FBI) and the New York Criminal Justice Services.[3] Many questions surround the City's protocols and procedures for sharing or flagging fingerprints, especially after the inclusion of Problem Codes. However, City Hall denies any such occurrences:

"City Hall added that the standard background – check procedure is: HR units request information from the FBI or state agency based solely on fingerprinting information."[4]

City Hall's false and misleading statements regarding the existence, nature, utilization, and impact of Problem Codes on teachers' livelihoods cannot be accepted at face value. The City has been less than forthcoming about the Problem Codes issued to educators. I therefore request answers to the following questions related to the use of Problem Codes:

1. What is the purpose of these Problem Codes and how are they utilized by the New York City Department of Education?

2. Can you explain the discrepancy between City Hall's claim that the Problem Codes have no external consequences and the reports stating otherwise?

3. Is it true that the same Problem Code used for unvaccinated teachers is also used for individuals accused of child molestation, rape, or harm to a child? If so, why are these different situations treated the same way?

---

[2] The New York City Department of Education Problem Code Continues to Prevent Unvaxxed Employees from Working." Advocatz, 12 Feb. 2023, advocatz.com/2023/02/12/the-new-york-city-department-of-education-problem-code-continues-to-prevent-unvaxxed-employees-from-working/

[3] Fingerprints of unvaccinated NYC teachers reportedly sent to FBI with 'problem codes,' raising privacy concerns." Fox News, 13 February 2023, www.foxnews.com/media/fingerprints-unvaccinated-nyc-teachers-reportedly-sent-fbi-problem-codes-invasion-privacy.

[4] Fingerprints of unvaccinated NYC teachers reportedly sent to FBI with 'problem codes,' raising privacy concerns." Fox News, 13 February 2023, www.foxnews.com/media/fingerprints-unvaccinated-nyc-teachers-reportedly-sent-fbi-problem-codes-invasion-privacy.

4. How and when are educators informed about the presence of a Problem Code in their record?

5. Did the Department send educators' fingerprints to the FBI and the New York Criminal Justice Services?

6. Can you address City Hall's denial of the occurrences related to the sharing or flagging of fingerprints and the inclusion of Problem Codes?

7. Are there any plans to review or revise the current practices and policies related to the assignment of Problem Codes based on personal medical decisions?

8. What steps will be taken to rectify any unjust consequences faced by educators as a result of Problem Codes being assigned to them?

I look forward to receiving responses to my questions and request a full review into how the Department chooses to use Problem Codes in employees' personnel records.


Sincerely,


Nicholas A. Langworthy
Member of Congress


Andrew Garbarino
Member of Congress


Claudia Tenney
Member of Congress


Elise Stefanik
Member of Congress


Anthony D'Esposito
Member of Congress


Nick LaLota
Member of Congress

3/4

Michael V. Lawler
Member of Congress

Marcus Molinaro
Member of Congress

Brandon Williams
Member of Congress

| | |
|---|---|
| **From:** | quinonesmoody@aol.com, |
| **To:** | DCampbell@uft.org, MMulgrew@uft.org, |
| **Cc:** | BNorton@uft.org, MSill@uft.org, AArundell@uft.org, RGarcia@uft.org, RQuamina@uft.org, khill@schools.nyc.gov, pleddy@schools.nyc.gov, |
| **Subject:** | Re: Request to File a Grievance |
| **Date:** | Wed, Jul 13, 2022 9:05 pm |
| **Attachments:** | Decision Order on Motion Loiacono.pdf (122K) |

Dear Mr. Campbell:

I strongly disagree with the UFT's decision not to file a grievance against the DOE on my behalf so I can be reinstated to my position as a Bilingual School Social Worker immediately, with back pay and all other benefits, as requested on June 30, 2022 (see email below). With all due respect, your statements are misleading, unreasonable, capricious and baseless.

As you may know, the UFT Award issued on September 10, 2021 by the non-impartial Arbitrator Martin Scheinman is illegal and discriminatory on different grounds and must continue to be challenged in order to correct the injustices that have been perpetrated against the unvaccinated employees. We must keep fighting the UFT Award that allowed DOE employees to be placed on involuntary unpaid leave and/or terminated without due process and justification. A cautious review of the UFT Award shows that its language is confusing and misleading. It does not say that the unvaccinated employees would be "terminated;" it only says that they would be "unilaterally separated." The definition of both of those terms is different. "Unilaterally separated" does not necessarily mean "terminated."

I sincerely believe that the UFT Award and its implementation are plagued with procedural errors and legal flaws. Contrary to your assertion below, the process determined by Arbitrator Scheinman can be grieved. In a recent decision, Elizabeth Loiacono v. The Board of Education of the City of New York, et al, the Supreme Court of the State of New York ruled in favor of the petitioner who sought to annul respondents' determination denying her a religious exemption. In an Order issued on July 11, 2022, the Court rejected the respondents' arguments and found that the petitioner was entitled to a religious exemption from the COVID-19 vaccine mandate and entitled to back pay from October 6, 2021 (see attached Court Order).

In your email dated July 11, 2022 (in response to my email addressed to UFT and DOE officials on June 30, 2022, which was coincidentally sent to me the same date the Supreme Court of the State of New York rendered its decision in favor of my colleague Elizabeth Loiacono), you claim that "The UFT is continuing to challenge the DoE's decision to remove employees from payroll without due process through the Courts." However, you did not include any tangible evidence to support your statement. Given the fact that the Court recently found that the actions taken by the respondents against Ms. Loiacono had no rational basis, were arbitrary, capricious and unjustified, this case can be used as a precedent to validate my request for a new grievance against the DOE. I would like to reiterate that the COVID-19 vaccine mandate is unconstitutional on its face. Upon information and belief, an Executive Order is not the same as making a Law, and it is not expected to be in perpetuity.

In light of the above, I am respectfully asking the UFT to reconsider its decision and file a grievance against the DOE on my behalf, as previously requested.

Thank you in advance for your attention, consideration and cooperation in this matter.

Sincerely,
.
Aura Moody

-----Original Message-----
From: David Campbell <DCampbell@uft.org>
To: quinonesmoody@aol.com <quinonesmoody@aol.com>; Michael Mulgrew <MMulgrew@uft.org>
Cc: Beth A. Norton <BNorton@uft.org>; Michael Sill <MSill@uft.org>; Amy Arundell <AArundell@uft.org>; Raul Garcia <RGarcia@uft.org>; Rana Quamina <RQuamina@uft.org>; khill@schools.nyc.gov <khill@schools.nyc.gov>; pleddy@schools.nyc.gov <pleddy@schools.nyc.gov>
Sent: Mon, Jul 11, 2022 4:45 pm
Subject: RE: Request to File a Grievance

Hi Aura,

The Scheinman arbitration award applies to the 2021-22 school year. As we have stated, the process determined by the arbitrator in that decision cannot be grieved. That is still true

today. ==The DoE has yet to issue it's policy regarding the vaccine mandate or possible accommodations for the 2022-23 school year. The UFT is continuing to challenge the DoE's decision to remove employees from payroll without due process== through the courts.

David

---

**From:** quinonesmoody@aol.com <quinonesmoody@aol.com>
**Sent:** Thursday, ==June 30, 2022 10:40 PM==
**To:** Michael Mulgrew <MMulgrew@uft.org>
**Cc:** Beth A. Norton <BNorton@uft.org>; Michael Sill <MSill@uft.org>; David Campbell <DCampbell@uft.org>; Amy Arundell <AArundell@uft.org>; Raul Garcia <RGarcia@uft.org>; Rana Quamina <RQuamina@uft.org>; khill@schools.nyc.gov; pleddy@schools.nyc.gov
**Subject:** Request to File a Grievance

---

| WARNING: |
| :---: |
| This email originated outside of the UFT. Please **DO NOT CLICK links or attachments** unless you know the content is safe. |

---

Mr. Michael Mulgrew:

==Upon information and belief, the illegal Impact Bargaining/UFT Award issued by Arbitrator Martin Scheinman on September 10, 2021 was for the 2021-2022 School Year. Considering that the school year for School Psychologists and Social Workers ended today (June 30, 2022), I am respectfully requesting that the UFT file a grievance on my behalf so I== can be reinstated to my position as a Bilingual School Social Worker immediately, with back pay and all other benefits. ==Please be reminded that I have not been served with a termination notice, as documented on the record.==

Thank you in advance for your cooperation in filing my grievance as soon as possible.

Sincerely,


Aura Moody
Bilingual School Social Worker at PS95Q and IS 238Q



The time is now!
**#OurKidsNeed** Smaller Class Sizes
Learn more »

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT

2/2

MOODY EX. 37



United Federation of Teachers
*A Union of Professionals*

December 7, 2023

Aura Moody
11226 197th St.
Saint Albans, NY 11412

**UFT Case# Q76690**
**Appeal Decision**

Dear Ms. Moody,

On May 1, 2023, you appealed the UFT Grievance Department's decision not to proceed to the Chancellor's Level concerning your grievance, UFT case number Q76690. The following members of the ADCOM Committee were present for your appeal, Abe Ruda, Greg Lundhal, Kerry Dowling, Elaine Haynesworth, and George Geist.

You filed a grievance alleging you were denied the ability to apply for the 2021-22 school year Committee on Special Education per session activities due to your improper termination on February 11, 2022 due to the vaccine mandate.

At your hearing you stated you consider yourself a DOE employee who has not been terminated.  You said that you never received notice, and that you are an active employee who has not been paid since October, 2021.  You claimed that the DOE illegally placed you on a leave without pay, that you received notice of that leave on 10/2/21, and that was the last document you received. You said you never received your final notice of termination.  You stated you were entitled to a 3020a hearing, and requested one in February, 2022, but have not received any response.  You claim that because you received no notice, you are entitled to per session because you have always worked it and were not

1/2



terminated.  You said you could not apply because you lost access to the DOE's system.   You stated that the Scheinman award is illegal as he had no legal standing to issue the award.

It is the Ad Com Grievance Appeal Committee's decision not to proceed the Chancellor's Level concerning your case. In August of 2021, the City announced announcement that all Department employees would be subject to a "Vaccine Only" mandate which did not provide for exceptions or accommodations.   The Union challenged this through impact bargaining, proceeded to Arbitration and achieved exemption and accommodation processes. This Award is final, and binding and the Union cannot bring any grievances based on Department actions which were conducted in accordance with the Award including suspension and termination. As your employment was terminated effective February 2022 due to vaccine non-compliance, you do not have standing for employment in per-session and/or CSE work.   The Union will not be able to meet our burden of proof to demonstrate that he Department of Education violated the terms of the Scheinman award.

While the Union recognizes this is not the result you were looking for, please be assured your case was given serious and thorough consideration.

Sincerely,

*LeRoy Barr*

LeRoy Barr
Director of Staff

LB/sm
cc:  Mark Collins

52 Broadway, New York, NY 10004  p: 212.777.7500  www.uft.org

Officers: Michael Mulgrew *President*, LeRoy Barr *Secretary*, Michael Sill *Assistant Secretary*, Debra Penny *Treasurer*, Tom Brown *Assistant Treasurer*
Vice Presidents: Karen Alford, MaryJo Ginese, Anne Goldman, Janella T. Hinds, Richard Mantell, Leo Gordon, Mary Vaccaro